UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| BIRD GLOBAL, INC., *et al.*,[1] | Case No.: 23-20514-CLC |
| Debtors. _____/ | (Jointly Administered) |
| CITY OF LONG BEACH,<br>a California Municipal Corporation, | |
| Plaintiff, | |
| v. | Adv. No. _____ |
| DANIEL DIAMANTIDES-ABEL; RYAN DANESHRAD; TARYN JACOBSON; MICHELLE DOR; AND RYAN DANESHRAD LAW PC D/B/A LA CENTURY LAW, | EXPEDITED RELIEF REQUESTED |
| Defendants. _____/ | |

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE
RELIEF AND FOR DECLARATORY RELIEF**

Plaintiff, the City of Long Beach (the "City"), pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and other applicable law, sues Defendants, Daniel Diamantides-Abel ("Abel"), Ryan Daneshrad Law PC d/b/a LA Century Law ("Century Law"), Ryan Daneshrad, Esq. ("Daneshrad"), Taryn Jacobson, Esq. ("Jacobson"), and Michelle Dor, Esq. ("Dor"), and alleges as follows:

---

[1] At the time of the filing of the Chapter 11 petitions, the address of the Debtors was 392 Northeast 191st Street, #20388, Miami, FL 33179.  The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

1

## NATURE OF ACTION

1. This adversary proceeding is brought pursuant to 11 U.S.C. §§ 105(a) and 541(a), and Rule 7065 of the Federal Rules of Bankruptcy Procedure, to enjoin the Defendants from prosecuting a lawsuit against the City in an action now pending in the Superior Court of California in and for the County of Los Angeles, Case No. 24LBCV00078 (the "California Action"), and to obtain a declaration of this Court interpreting its August 2, 2024 Amended Order (I) Approving the First Amended Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Liquidation on a Final Basis, (II) Confirming the Debtors' Second Amended Joint Chapter 11 Plan of Liquidation, (III) Approving the Insurance Settlement Agreements, and (IV) Entering Bar Order and Channeling Injunction [Bankr. Doc. 1214] (the "Confirmation Order").

## PARTIES, JURISDICTION, AND VENUE

2. The City of Long Beach is a municipality located in the state of California.

3. Upon information and belief, Abel is a resident of the state of California.

4. Century Law is a California professional corporation located at, *inter alia*, 1880 Century Park East, Suite 1101, Century City, CA 90067, and doing business across California and Texas.

5. Daneshrad is an attorney at Century Law. Upon information and belief, Daneshrad is a resident of the state of California and is Abel's counsel in connection with the matters described herein.

6. Jacobson is an attorney at Century Law. Upon information and belief, Jacobson is a resident of the state of California and is Abel's counsel in connection with the matters described herein.

7. Dor is an attorney at Century Law. Upon information and belief, Dor is a resident of the state of California and is Abel's counsel in connection with the matters described herein.

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b).

9. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11. All conditions precedent to bringing this action have occurred or been waived.

### GENERAL ALLEGATIONS

#### *The Bankruptcy Case*

12. On December 20, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, section 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Bankruptcy Court"), commencing bankruptcy cases numbered 23-20514-CLC (the "Main Case") through 23-20518-CLC (collectively, the "Bankruptcy Cases").

13. On January 26, 2024, this Court entered its Order Granting Debtors' Emergency Motion to Extend the Automatic Stay and for a Preliminary Injunction (24-01010-CLC, Doc. 10) against known tort claimants and, on March 11, 2024, entered its Order Granting Debtors' Second Motion to Extend the Automatic Stay and for a Preliminary Injunction as to Fourteen (14) Additional City Litigations and New City Litigations Once Filed (24-01010-CLC, Doc. 42), prohibiting fourteen (14) additional state court lawsuits against cities as well as any new lawsuits filed post-petition for which the Debtors were obligated to defend and indemnify cities.

14. The Debtors and affected municipalities intended to have all state court litigations similarly situated enjoined pending confirmation and such orders were amended from time to time

3

to add additional lawsuits to the scope of the injunction. On April 4, 2024, the Debtors filed a Motion to (I) Fix Bar Date for Filing Tort Claims, and (II) Approve Form and Manner of Notice of Tort Claims Bar Date [Doc. No. 540].

15. On April 10, 2024, this Court entered its Order Granting Debtors' Motion to (I) Fix Bar Date for Filing Tort Claims, and (II) Approve Form and Manner of Notice of Tort Claims Bar Date [Bankr. Doc. 603] (the "Tort Claims Bar Date Order"), finding that the form and manner of giving notice of the Tort Claims Bar Date was appropriate and satisfactory.

16. On June 3, 2024, the Debtors filed their Second Amended Joint Chapter 11 Plan of Liquidation [Bankr. Doc. 802] (the "Plan"). A true and correct copy of the Plan is attached as **Exhibit A**.

17. This Court considered confirmation of the Plan, as well as objections thereto, at a confirmation trial conducted on June 10 and 12, 2024, and concluded on July 29, 2024 (collectively, the "Confirmation Hearing"). At the Confirmation Hearing, this Court took evidence, heard objections and considered argument of the parties, ultimately taking the confirmation decision under advisement.

18. Following this Court's deliberation and the opportunity to provide post-Confirmation Hearing briefing and argument on the impact of the *Purdue Pharma* decision, on July 29, 2024, this Court announced its oral ruling confirming the Plan, which include approval of Insurance Settlement Agreements and imposition of a Bar Order and Channeling Injunction in connection therewith.

19. On August 2, 2024, this Court entered its written Amended Order (I) Approving the First Amended Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Liquidation on a Final Basis, (II) Confirming the Debtors' Second Amended Joint Chapter 11 Plan

4

of Liquidation, (III) Approving the Insurance Settlement Agreements, and (IV) Entering Bar Order and Channeling Injunction [Bankr. Doc. 1214] (the "<u>Confirmation Order</u>"). A true and correct copy of the Confirmation Order is attached as **Exhibit B**.

20. Among other things, the Confirmation Order also found that the form of notice to creditors and claimants was appropriate and satisfactory.

21. Section 13.6 of the Plan, as confirmed by this Court, clearly lays out the terms of the Channeling Injunction and Bar Order, and the scope of their application on litigation brought by tort claimants against the Debtors, any of the municipalities where the Debtors operated, or both, including the state-court litigation being prosecuted by the Defendants (described in more detail below).

22. As to the Channeling Injunction, the Confirmation Order provided:

In furtherance of the Plan and the Insurance Settlement Agreements:

i. any and *all Channeled Claims[2] are hereby channeled to and shall be paid solely and exclusively from the Tort Claims Trust*, which shall assume any and all liability of the Debtors and the Insurance Settlement Released Parties[3] for such Tort Claims[4]; and

ii. *all Persons or Entities who have held or asserted, hold or assert, or may in the future hold or assert a Channeled Claim* against the Debtors or any of the Insurance Settlement Released Parties *are hereby permanently and forever barred, estopped, stayed, and enjoined* from taking any action, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets, including without limitation:

---

[2] Channeled Claims means any Tort Claim against any of the Debtors and/or any of the Insurance Settlement Released Parties. *See* Main Case, Doc. No. 802.
[3] Insurance Settlement Released Parties means the Settling Insurers' Parties, all Named Insureds, Additional Insureds, the Purchaser Parties and the Debtors, and is intended to include each Municipality, including, but not limited to, the City of Long Beach. *See* Main Case, Doc. No. 802.
[4] Tort Claims means all Claims to be entitled to coverage under any of the Insurance Policies, including the claims asserted by Abel. *See* Main Case, Doc. No. 802.

1. pursuing or seeking to pursue, by any manner or means, any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties;

2. continuing or commencing, or seeking to continue or commence, by any manner or means, any action or proceeding of any kind with respect to any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets;

3. enforcing, attaching, collecting or recovering, or seeking to enforce, attach, collect or recover, by any manner or means, any judgment, award, decree, or order with respect to any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets;

4. creating, perfecting or enforcing, or seeking to create, perfect or enforce, by any manner or means, any lien, claim or encumbrance of any kind with respect to any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets; and

5. asserting, implementing or effectuating, or seeking to assert, implement or effectuate, by any manner or means, with respect to any Channeled Claim, any right of setoff, recoupment, indemnification, subrogation or other similar right of any kind, against:

    a. the Debtors or any of the Insurance Settlement Released Parties;

    b. any obligation due to any of any of the Debtors or any of the Insurance Settlement Released Parties; or

    c. the property or assets of the Debtors or any of the Insurance Settlement Released Parties.

The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation. *In the event of a violation of the Channeling Injunction, the Debtors or Liquidating Trustee, as applicable, the Tort Claims Trustee and/or any of the Insurance Settlement Released Parties may seek an order from the Bankruptcy Court enforcing the Channeling Injunction* and enjoining such violation and, in connection therewith, *may seek an award of costs (including reasonable attorneys' fees and expenses) against the Person or Entity who is found to have violated the Channeling Injunction*, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

(Bankr. Doc. 1214 at 50-52) (emphasis added).

23. The Confirmation Order and Plan further provided the terms of the Bar Order, as follows:

In furtherance of the Plan and the Insurance Settlement Agreements:

a. *All Persons and Entities holding a Barred Claim, including without limitation all Barred Persons, shall be permanently and forever barred, estopped, stayed, and enjoined* from taking any action, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets, including without limitation:

   i. pursuing or seeking to pursue, by any manner or means, any Barred Claim against any of the Insurance Settlement Released Parties;

   ii. continuing or commencing, or seeking to continue or commence, by any manner or means, any action or proceeding of any kind with respect to any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets;

   iii. enforcing, attaching, collecting or recovering, or seeking to enforce, attach, collect or recover, by any manner or means, any judgment, award, decree, or order with respect to any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets;

   iv. creating, perfecting or enforcing, or seeking to create, perfect or enforce, by any manner or means, any lien, claim or encumbrance of any kind with respect to any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets; and

   v. asserting, implementing or effectuating, or seeking to assert, implement or effectuate, by any manner or means, with respect to any Barred Claim, any right of setoff, recoupment, indemnification, subrogation or other similar right of any kind, against:

      1. any of the Insurance Settlement Released Parties;
      2. any obligation due to any of the Insurance Settlement Released Parties; or
      3. the property or assets of any of the Insurance Settlement Released Parties.

b. *All Persons and Entities shall be permanently and forever barred, estopped, stayed, and enjoined from taking any action*, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting,

7

> enforcing, or attempting to assert or enforce, any Claim *against any of the Insurance Settlement Released Parties* arising under or relating to the Insurance Policies, including (i) claims for contribution, subrogation or other equitable apportionment and (ii) claims asserting bad faith.
>
> *In the event of a violation of the Bar Order, any of the Insurance Settlement Released Parties may seek an order from the Bankruptcy Court enforcing the Bar Order* and enjoining such violation and, in connection therewith, *may seek an award of costs (including reasonable attorneys' fees and expenses) against the Person or Entity who is found to have violated the Bar Order*, and such other legal or equitable remedies are just and proper, after notice and a hearing.

(Bankr. Doc. 1214 at 55-56) (emphasis added).

24. The scope of the Barred Claims and Channeling Injunction unquestionably covers any claim arising out of any use of a Bird or Spin scooter, on or before March 22, 2024, whether the claimant sues a municipality, a Debtor, or both.

### *The California Action*

25. On or about January 16, 2024, Abel, through Century Law, filed an action styled *Daniel Diamantides-Abel v. City of Long Beach, County of Los Angeles, State of California, and DOES 1 to 25*, in the Superior Court of California in and for County of Los Angeles (the "Superior Court") under Case No. 24LBCV00078, asserting a claim based upon the use of a Bird scooter on or about June 23, 2023.[5] A true and correct copy of Abel's Complaint is attached hereto as **Exhibit C**.

26. On May 14, 2025, the Superior Court conducted a hearing, on its own motion, at which the Superior Court lifted the automatic stay and set new trial dates in January 2026. *See* Minute Order, a true and correct copy of which is attached hereto as **Exhibit D**.

---

[5] The docket of the California Action can be found at https://www.lacourt.ca.gov/pages/lp/access-a-case/tp/find-case-information/cp/os-civil-case-access.

8

38373193v2

27. Accordingly, on May 27, 2025, the City filed its *Defendant City of Long Beach's Notice of Motion and Motion for Reconsideration or in the Alternative Leave to File a Cross Complaint; Memorandum of Points and Authorities; Declaration of Michael Swift in Support Thereof* (the "Motion for Reconsideration"). A true and correct copy of the Motion for Reconsideration is attached hereto as **Exhibit E**.

28. On August 27, 2025, in response, Abel, through Daneshrad, Jacobson, and Dor, filed *Plaintiff's Opposition to Defendant's Motion for Reconsideration or, in the Alternative, Leave to File a Cross-Complaint; Memorandum of Points and Authorities; Declaration in Support Thereof* (the "Opposition"). A true and correct copy of the Opposition is attached hereto as **Exhibit F**.

29. In their Opposition, the Defendants *sub judice* assert, *inter alia*, the following:

- "The City also attempts to rely on Bird's Chapter 11 plan and 'channeling injunction' to argue that claims like Plaintiff's are barred. This overreaches. Those protections apply to barred claims asserted against the debtor and its insurers, not to independent municipal liability claims against the City itself." Opposition at 4-5.

- "Because the defect at issue is the roadway itself, not the [Bird] scooter, the City's attempt to invoke Bird's bankruptcy is a red herring." Opposition at 5.

30. Those assertions are categorically incorrect. Tort claimants, making the very same argument that this Court's Orders do not apply to them, have been uniformly rejected by this Court.

31. On September 22, 2025, the Superior Court entered its *Notice of Ruling re Defendant City of Long Beach's Motion for Reconsideration or in the Alternative Leave to File a Cross-Complaint* (the "Superior Court's Ruling"), by which the Superior Court denied the Motion for Reconsideration and, to the extent the Motion for Reconsideration included an alternative motion for leave to file a cross-complaint, also denied the same. A true and correct copy of the Superior Court's Ruling is attached hereto as **Exhibit G**.

38373193v2

32. Immediately following the Superior Court's Ruling, the undersigned began to investigate the veracity of Daneshrad's, Jacobson's, and Dor's positions argued in Superior Court regarding the Confirmation Order and participation in the Chapter 11 Cases.

*Notice to Abel*

33. On April 24, 2024, Abel was timely served with both: (a) the "Notice of Deadline for Timely Filing Proofs of Claim Relating to, or Arising From, Property Damages, Personal Injury, Wrongful Death or Tort Claims," dated April 19, 2024, *related to Doc. No. 603*; and (b) the "Proof of Claim Form." *See* Bankr. Doc. 649.

34. On April 23, 2024, copies of those items were delivered via first class mail to Abel, as reflected by the Certificate of Service filed in the Main Case, on May 2, 2024 [Bankr. Doc. 649] (the "Certificate of Service"). A true and correct copy of the Certificate of Service is attached hereto as **Exhibit H**.

35. This Court, both in the Tort Claims Bar Date Order and on confirmation, found that notice to all Bird scooter users was appropriate and satisfactory based upon the circumstances of the Bankruptcy Cases, was in compliance with the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Southern District of Florida, and no other or further notice thereof was necessary or required, including to bind all parties in interest thereto. *See* Bankr. Doc. 603.

## COUNT I
### Temporary and Permanent Injunction Against the Defendants

36. The City realleeges the foregoing paragraphs 1 through 35 as if fully set forth herein.

37. This is an action for preliminary and permanent injunction against the Defendants pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and Rule 65 of the Federal Rules of Civil Procedure.

38. A bankruptcy court may enter final orders on state law claims where "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

39. Here, the claims in Abel's California Action would necessarily be resolved by process of ruling on Abel's claim in the bankruptcy proceedings had Abel filed one after Abel received both notice of the Claims Bar Date and a Proof of Claim form. As set forth above, in lieu of pursuing the California Action, the confirmed Plan provided that all Channeled Claims shall be paid solely and exclusively from the Tort Claims Trust pursuant to a claim resolution process set forth in the Plan.

40. This Court may enter an injunction pursuant to Section 105(a) of the Bankruptcy Code upon a showing that the enjoined action would "impede, impair or irreparably interfere with the administration of the estate." *In re Lickman*, 297 B.R. 162, 205 (Bankr. M.D.Fla. 2003), citing *Baptist Medical Center of New York v. Singh (Baptist Medical Center of New York),* 80 B.R. 637, 644 (Bankr. E.D.N.Y. 1987).

41. Indeed, "Section 105(a) contemplates injunctive relief in precisely those instances where parties are 'pursuing actions pending in other courts that threaten the integrity of a

bankrupt's estate.' " *Id.*, quoting *Manville Corp. v. Equity Security Holders Committee (In re Johns–Manville Corp.),* 801 F.2d 60, 63 (2d Cir.1986).

42. Paragraph 22 of the Confirmation Order (and Section 13.9 of the confirmed Plan) provides: "All Persons and Entities holding a Barred Claim, including without limitation all Barred Persons, shall be permanently and forever barred, estopped, stayed, and enjoined from taking any action, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets, including without limitation... (ii) continuing or commencing, or seeking to continue or commence, by any manner or means, any action or proceeding of any kind with respect to any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets…." (Bankr. Doc. 1214, at 54).

43. A "Barred Claim" is defined in the Plan and Confirmation Order to include "all Claims against the Debtors and/or the Insurance Settlement Released Parties" and a "Barred Person" means "all Persons and Entities having Claim against the Debtors and/or the Insurance Settlement Released Parties (Bankr. Doc. 1214, at 52-53).

44. An "Insurance Settlement Released Party" is defined in the Plan and Confirmation Order to include "the Settling Insurers' Parties, all Named Insureds, Additional Insureds, the Purchaser Parties and the Debtors, and is intended to include each Municipality." (Bankr. Doc. 1214, at 53).

45. "Municipality" is defined in the Plan and Confirmation Order to include "all of the cities in which the Debtors previously operated and which is either a Named Insured, Additional

Insured, or otherwise an entity any of the Debtors is contractually obligated to indemnify….," which includes the City of Long Beach.

46. The California Action is a Barred Claim raised by a Barred Person because the claims asserted therein arise out of a Bird scooter incident that occurred on June 23, 2023, and was brought against an Insurance Settlement Released Party (the City of Long Beach).

47. Accordingly, in pursuing the California Action, the Defendants have violated and continue to violate the Confirmation Order.

48. Paragraph 22 of the Confirmation Order provided: "[i]n the event of a violation of the Bar Order, any of the Insurance Settlement Released Parties may seek an order from the Bankruptcy Court enforcing the Bar Order and enjoining such violation and, in connection therewith, may seek an award of costs (including reasonable attorneys' fees and expenses) against the Person or Entity who is found to have violated the Bar Order." (Bankr. Doc. 1214, at 55-56).

49. For the reasons stated herein, the City will succeed on the merits of this complaint.

50. The City has suffered and will continue to suffer irreparable harm if the Defendants are not enjoined from litigating the California Action.

51. To the extent the California Action is proceeding, legal determinations may be made that destroy the effect of the Plan for all concerned parties, including the City, the insurance carriers, the asset purchaser and potentially other parties.

52. The threatened injury to the City, the other Insurance Settlement Released Parties, and the efficacy of the Plan, if an injunction is not issued against the Defendants, outweighs any damage the injunction may cause Abel given the relief he has been afforded by this Court.

53. If the Court does not enjoin the Defendants from litigating in the California Action, the City would be required to defend Abel's allegations at the City's expense, potentially resulting in claims against the other Insurance Settlement Released Parties.

54. The City, along with other municipalities across the United States, have already contributed to the Plan's Tort Claims Trust, and claims are proceeding through the Tort Claims Protocol and Alternative Dispute Resolution Procedures independent from any respective state court actions.

55. The California Action should not be allowed to proceed.

56. Remedies available at law, such as monetary damages, are inadequate to compensate the threatened injury to the City and to this Court's Confirmation Order.

57. Considering the balance of hardship between the City and the Defendants, a remedy in equity is warranted.

58. The issuance of an injunction against the Defendants would be in the public interest.

59. It is in the best interest of the Estate and the Debtors' creditors, as well as the principles embodied in the Bankruptcy Code, that the Defendants be enjoined from litigating in forums other than this Court any claims arising from the use of a Bird or Spin scooter on before March 22, 2024.

60. The City was obligated to engage counsel to pursue this relief and will be obligated to pay its counsel for having pursued this relief.

WHEREFORE, the City respectfully requests that this Court enter a judgment (i) preliminarily and permanently enjoining the Defendants from prosecuting the California Action; (ii) awarding the City its attorney fees against the Defendants for pursuing the California Action unquestionably in violation of the Confirmation Order; (iii) finding the Defendants in contempt

for violating the Confirmation Order; and (iv) granting such other relief as is just and proper under § 105(a).

**Count II**
**Declaratory Relief to Interpret the Application**
**and Meaning of the Plan Provisions and Confirmation Order**

61. The City realleges the foregoing paragraphs 1 through 35 as if fully set forth herein.

62. This is an action brought against the Defendants for declaratory relief.

63. As stated herein, the incident forming the basis of the California Action arose out of the use of a Bird scooter on June 23, 2023, and therefore occurred on or before March 22, 2024.

64. The California Action is against an Insurance Settlement Released Party—the City of Long Beach.

65. As such, the California Action involves a Barred Claim, and continued prosecution of the California Action violates the Confirmation Order and the releases, injunction and bar issuing from the confirmed Plan and Confirmation Order.

66. The City does not seek legal advice, but, instead, a resolution of the City's and the Defendants' actual rights regarding the present controversy.

67. An actual controversy exists between the City and the Defendants concerning whether and how the Bar Order and Channeling Injunction apply to the claim forming the basis of the California Action.

68. All parties necessary to the resolution of these issues are presently before this Court.

69. The Defendants had adequate notice of these cases and related proceedings and Abel289435's claim is squarely within the Plan's definition of a Barred Claim.

70. Therefore, consistent with this Court's Confirmation Order, the Defendants should be "permanently and forever barred, estopped, stayed, and enjoined, from taking any action,

directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing or attempting to assert or enforce," the California Action and any other claim based on the subject incident thereof. (Bankr. Doc. 1214).

WHEREFORE, the City respectfully requests that this Court enter an Order granting the relief sought herein, determining the rights as between the City and the Defendants respecting the California Action and for such further and additional relief as this Court deems just and equitable.

**Dated: October 23, 2025**                     **SHUMAKER, LOOP & KENDRICK, LLP**

By: /s/ Steven M. Berman
**Steven M. Berman, Esq.**
Florida Bar No. 856290
101 E. Kennedy Blvd., Ste. 2800
Tampa, Florida 33602
Phone: (813) 229-7600;
Fax: (813) 229-1660
*Counsel for the City of Long Beach*

38373193v2