UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| BIRD GLOBAL, INC., *et al.*,[1] | Case No.: 23-20514-CLC |
| Debtors. _____/ | (Jointly Administered) |
| CITY OF LONG BEACH,<br>a California Municipal Corporation, | |
| Plaintiff, | |
| v. | Adv. No. 25-ap-01344-CLC |
| DANIEL DIAMANTIDES-ABEL; RYAN DANESHRAD; TARYN JACOBSON; MICHELLE DOR; AND RYAN DANESHRAD LAW PC D/B/A LA CENTURY LAW, | EXPEDITED RELIEF REQUESTED |
| Defendants. _____/ | |

**EXPEDITED VERIFIED MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, the City of Long Beach (the "City"), pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, moves this Court for entry of a preliminary injunction against Defendants, Daniel Diamantides-Abel ("Abel"), Ryan Daneshrad Law PC d/b/a LA Century Law ("Century Law"), Ryan Daneshrad, Esq. ("Daneshrad"), Taryn Jacobson, Esq. ("Jacobson"), and Michelle Dor, Esq. ("Dor"), enjoining Abel, Century Law, Daneshrad, Jacobson, and Dor

---

[1] At the time of the filing of the Chapter 11 petitions, the address of the Debtors was 392 Northeast 191st Street, #20388, Miami, FL 33179. The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

1

(collectively, the "Defendants"), from prosecuting a lawsuit against the City in an action now pending in the Superior Court of California in and for the County of Los Angeles, Case No. 24LBCV00078.  In support thereof, the City respectfully states:

## BACKGROUND

### *The Bankruptcy Case*

1. On December 20, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, section 101 *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Bankruptcy Court"), commencing bankruptcy cases numbered 23-20514-CLC (the "Main Case") through 23-20518-CLC (collectively, the "Bankruptcy Cases").

2. On January 26, 2024, this Court entered its Order Granting Debtors' Emergency Motion to Extend the Automatic Stay and for a Preliminary Injunction (24-01010-CLC, Doc. 10) against known tort claimants and, on March 11, 2024, entered its Order Granting Debtors' Second Motion to Extend the Automatic Stay and for a Preliminary Injunction as to Fourteen (14) Additional City Litigations and New City Litigations Once Filed (24-01010-CLC, Doc. 42), prohibiting fourteen (14) additional state court lawsuits against cities as well as any new lawsuits filed post-petition for which the Debtors were obligated to defend and indemnify cities.

3. On April 4, 2024, the Debtors filed a Motion to: (I) Fix Bar Date for Filing Tort Claims, and (II) Approve Form and Manner of Notice of Tort Claims Bar Date (Doc. No. 540).

4. On April 10, 2024, this Court entered its Order Granting Debtors' Motion to: (I) Fix Bar Date for Filing Tort Claims, and (II) Approve Form and Manner of Notice of Tort Claims Bar Date [Bankr. Doc. 603] (the "Tort Claims Bar Date Order"), finding that the form and manner

2

of giving notice of the Tort Claims Bar Date was appropriate and satisfactory.

5. On June 3, 2024, the Debtors filed their Second Amended Joint Chapter 11 Plan of Liquidation [Bankr. Doc. 802] (the "Plan"). A true and correct copy of the Plan is attached as **Exhibit A**.

6. This Court considered confirmation of the Plan, as well as objections thereto, at a confirmation trial conducted on June 10 and 12, 2024, and concluded on July 29, 2024 (collectively, the "Confirmation Hearing"). At the Confirmation Hearing, this Court took evidence, heard objections, and considered arguments of the parties, ultimately taking the confirmation decision under advisement.

7. Following this Court's deliberation and the opportunity to provide post-Confirmation Hearing briefing and argument on the impact of the *Purdue Pharma* decision, on July 29, 2024, this Court announced its oral ruling confirming the Plan, which include approval of Insurance Settlement Agreements and imposition of a Bar Order and Channeling Injunction in connection therewith.

8. On August 2, 2024, this Court entered its written Amended Order (I) Approving the First Amended Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Liquidation on a Final Basis, (II) Confirming the Debtors' Second Amended Joint Chapter 11 Plan of Liquidation, (III) Approving the Insurance Settlement Agreements, and (IV) Entering Bar Order and Channeling Injunction [Bankr. Doc. 1214] (the "Confirmation Order"). A true and correct copy of the Confirmation Order is attached as **Exhibit B**.

9. Among other things, the Confirmation Order also found that the form of notice of the Plan, the Insurance Settlement Agreements (including the Channeling Injunction and the Bar Order therein) and all related documents, provided to creditors was appropriate and satisfactory.

10. Section 13.6 of the Plan, as confirmed by this Court, clearly lays out the terms of the Channeling Injunction and Bar Order, and the scope of their application on litigation brought by tort claimants against the Debtors, any of the municipalities where the Debtors operated, or both, which litigation includes the state-court litigation being prosecuted by the Defendants (described in more detail below).

11. As to the Channeling Injunction, the Confirmation Order provided:

In furtherance of the Plan and the Insurance Settlement Agreements:

i. any and *all Channeled Claims[2] are hereby channeled to and shall be paid solely and exclusively from the Tort Claims Trust*, which shall assume any and all liability of the Debtors and the Insurance Settlement Released Parties[3] for such Tort Claims[4]; and

ii. *all Persons or Entities who have held or asserted, hold or assert, or may in the future hold or assert a Channeled Claim* against the Debtors or any of the Insurance Settlement Released Parties *are hereby permanently and forever barred, estopped, stayed, and enjoined* from taking any action, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets, including without limitation:

1. pursuing or seeking to pursue, by any manner or means, any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties;

2. continuing or commencing, or seeking to continue or commence, by any manner or means, any action or proceeding of any kind with respect to any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets;

3. enforcing, attaching, collecting or recovering, or seeking to enforce, attach,

---

[2] Channeled Claims means any Tort Claim against any of the Debtors and/or any of the Insurance Settlement Released Parties. *See* Main Case, Doc. Nos. 802, 1214.
[3] Insurance Settlement Released Parties means the Settling Insurers' Parties, all Named Insureds, Additional Insureds, the Purchaser Parties and the Debtors, and is intended to include each Municipality, including, but not limited to, the City of Long Beach. *See* Main Case, Doc. Nos. 802, 1214.
[4] Tort Claims means all Claims to be entitled to coverage under any of the Insurance Policies. *See* Main Case, Doc. No. 802.

4

    collect or recover, by any manner or means, any judgment, award, decree, or order with respect to any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets;

4. creating, perfecting or enforcing, or seeking to create, perfect or enforce, by any manner or means, any lien, claim or encumbrance of any kind with respect to any Channeled Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets; and

5. asserting, implementing or effectuating, or seeking to assert, implement or effectuate, by any manner or means, with respect to any Channeled Claim, any right of setoff, recoupment, indemnification, subrogation or other similar right of any kind, against:

   a. the Debtors or any of the Insurance Settlement Released Parties;
   b. any obligation due to any of any of the Debtors or any of the Insurance Settlement Released Parties; or
   c. the property or assets of the Debtors or any of the Insurance Settlement Released Parties.

The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation. *In the event of a violation of the Channeling Injunction, the Debtors or Liquidating Trustee, as applicable, the Tort Claims Trustee and/or any of the Insurance Settlement Released Parties may seek an order from the Bankruptcy Court enforcing the Channeling Injunction* and enjoining such violation and, in connection therewith, *may seek an award of costs (including reasonable attorneys' fees and expenses) against the Person or Entity who is found to have violated the Channeling Injunction*, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

(Bankr. Doc. 1214 at 50-52) (emphasis added).

    12.    The Confirmation Order and Plan further provided the terms of the Bar Order, as follows:

    In furtherance of the Plan and the Insurance Settlement Agreements:

    a. *All Persons and Entities holding a Barred Claim, including without limitation all Barred Persons, shall be permanently and forever barred, estopped, stayed, and enjoined* from taking any action, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets, including without limitation:

5

      i. pursuing or seeking to pursue, by any manner or means, any Barred Claim against any of the Insurance Settlement Released Parties;

      ii. continuing or commencing, or seeking to continue or commence, by any manner or means, any action or proceeding of any kind with respect to any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets;

      iii. enforcing, attaching, collecting or recovering, or seeking to enforce, attach, collect or recover, by any manner or means, any judgment, award, decree, or order with respect to any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets;

      iv. creating, perfecting or enforcing, or seeking to create, perfect or enforce, by any manner or means, any lien, claim or encumbrance of any kind with respect to any Barred Claim against any of the Insurance Settlement Released Parties, or any of their property or assets; and

      v. asserting, implementing or effectuating, or seeking to assert, implement or effectuate, by any manner or means, with respect to any Barred Claim, any right of setoff, recoupment, indemnification, subrogation or other similar right of any kind, against:

1. any of the Insurance Settlement Released Parties;
2. any obligation due to any of the Insurance Settlement Released Parties; or
3. the property or assets of any of the Insurance Settlement Released Parties.

b. *All Persons and Entities shall be permanently and forever barred, estopped, stayed, and enjoined from taking any action*, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Claim *against any of the Insurance Settlement Released Parties* arising under or relating to the Insurance Policies, including (i) claims for contribution, subrogation or other equitable apportionment and (ii) claims asserting bad faith.

*In the event of a violation of the Bar Order, any of the Insurance Settlement Released Parties may seek an order from the Bankruptcy Court enforcing the Bar Order* and enjoining such violation and, in connection therewith, *may seek an award of costs (including reasonable attorneys' fees and expenses) against the Person or Entity who is found to have violated the Bar Order*, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

(Bankr. Doc. 1214 at 55-56) (emphasis added).

6

13. "'Barred Claim' means all Claims against the Debtors and/or Insurance Settlement Released Parties." Main Case, Doc. Nos. 802 at 4, 1214 at 52.

14. The Plan defines "Claim" as follows:

Claim means (a) an asserted or unasserted right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) any past, present and future claims, causes of action, obligations, rights, suits, judgments, remedies, interests, actions, liabilities, demands, duties, injuries, damages, liens, interest, expenses, fees, or costs of whatever kind or nature (including attorney's fees and expenses), whether foreseen or unforeseen, known or unknown, asserted or unasserted, contingent or matured, liquidated or unliquidated, whether in tort, contract, extracontractual or otherwise, whether statutory, at common law or in equity, including but not limited to claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, unfair claim settlement practices, statutory or regulatory violations, for indemnity or contribution, or punitive, compensatory, exemplary, extra-contractual, statutory or other damages or relief of any type, including, without limitation: (i) all claims for wrongful death, personal injury, emotional distress, property damage, economic loss, or environmental damage, remediation or exposure including, without limitation, any Tort Claim against a Municipality (whether asserted or unasserted); (ii) all claims on payment and performance bonds; (iii) all claims relating to the Insurance Policies including, without limitation, the issuance of the Insurance Policies, coverage under the Insurance Policies, the defense of litigation arising out of a Tort Claim, or any act or omission of any Settling Insurer of any type for which the Debtors, the Debtors' Insurers, or any Claimant might or may seek relief in connection with the Insurance Policies; and (iv) any other "claim," as that term is defined in section 101(5) of the Bankruptcy Code.

(Bankr. Doc. 802 at 5).

15. The Confirmation Order defines "Tort Claim" as follows:

Tort Claims means all Claims, whether asserted or unasserted, held by any Person or Entity against the Debtors, the Settling Insurers' Parties, the Purchaser Parties or any Person or Entity who may claim to be an Insured, Additional Insured, or otherwise claim to be entitled to coverage under any of the Insurance Policies or any Insurance Program for bodily or personal injury, tort claim, or property damage related to, or arising out of the use, placement, operation, transportation, renting, leasing, and/or recovery of the Debtors' micro-mobility vehicles and/or arising out of the operation of the Debtors' businesses. Tort Claims include Municipal Claims but exclude the Talon Claims. Notwithstanding the foregoing, Tort Claims do not include claims based on incidents involving automobiles that would otherwise be entitled to coverage under the Debtors' Auto Insurance Policies.

7

(Bankr. Doc. 1214, at 54).

16. The scope of the Barred Claims and Channeling Injunction unquestionably covers any claim arising out of any use of a Bird or Spin scooter on or before March 22, 2024, whether the claimant sues a municipality, a Debtor, or both.

17. The plain language of the Channeling Injunction and Bar Order makes clear that it is immaterial whether the Defendants omitted allegations concerning a Debtor or a Debtor's negligence, so long as the subject claim arose from the "use, placement, [or] operation" of the "Debtors' micro-mobility vehicles."  Bankr. Doc. 1214, at 54.

### *The California Action*

18. On or about January 16, 2024, Abel, through Century Law, filed an action styled *Daniel Diamantides-Abel v. City of Long Beach, County of Los Angeles, State of California, and DOES 1 to 25*, in the Superior Court of California in and for County of Los Angeles (the "Superior Court") under Case No. 24LBCV00078, asserting a claim arising out of the use of a Bird scooter on or about June 23, 2023.[5]  A true and correct copy of Abel's Complaint is attached hereto as **Exhibit C**.

19. On May 14, 2025, the Superior Court conducted a hearing, on its own motion, at which the Superior Court lifted the automatic stay and set new trial dates in January 2026.  *See* Minute Order, a true and correct copy of which is attached hereto as **Exhibit D**.

20. Accordingly, on May 27, 2025, the City filed its *Defendant City of Long Beach's Notice of Motion and Motion for Reconsideration or in the Alternative Leave to File a Cross Complaint; Memorandum of Points and Authorities; Declaration of Michael Swift in Support*

---

[5] The docket of the California Action can be found at https://www.lacourt.ca.gov/pages/lp/access-a-case/tp/find-case-information/cp/os-civil-case-access.

*Thereof* (the "Motion for Reconsideration"). A true and correct copy of the Motion for Reconsideration is attached hereto as **Exhibit E**.

21. On August 27, 2025, in response, Abel, through Daneshrad, Jacobson, and Dor, filed *Plaintiff's Opposition to Defendant's Motion for Reconsideration or, in the Alternative, Leave to File a Cross-Complaint; Memorandum of Points and Authorities; Declaration in Support Thereof* (the "Opposition"). A true and correct copy of the Opposition is attached hereto as **Exhibit F**.

22. In their Opposition, the Defendants *sub judice* asserted, *inter alia*, the following:

- "The City also attempts to rely on Bird's Chapter 11 plan and 'channeling injunction' to argue that claims like Plaintiff's are barred. This overreaches. Those protections apply to barred claims asserted against the debtor and its insurers, not to independent municipal liability claims against the City itself." Opposition at 4-5.

- "Because the defect at issue is the roadway itself, not the [Bird] scooter, the City's attempt to invoke Bird's bankruptcy is a red herring." Opposition at 5.

23. Those assertions are categorically incorrect. Tort claimants, making the very same argument that this Court's Orders do not apply to them, have been uniformly rejected by this Court.

24. On September 22, 2025, the Superior Court entered its *Notice of Ruling re Defendant City of Long Beach's Motion for Reconsideration or in the Alternative Leave to File a Cross-Complaint* (the "Superior Court's Ruling"), by which the Superior Court denied the Motion for Reconsideration and, to the extent the Motion for Reconsideration included an alternative motion for leave to file a cross-complaint, also denied the same. A true and correct copy of the Superior Court's Ruling is attached hereto as **Exhibit G**.

25. Following the Superior Court's Ruling, the undersigned was consulted and began to investigate the veracity of Daneshrad's, Jacobson's, and Dor's arguments to the Superior Court regarding the Confirmation Order and participation in the Chapter 11 Cases.

9

*Notice to Abel*

26.     On April 24, 2024, Abel was timely served with both: (a) the "Notice of Deadline for Timely Filing Proofs of Claim Relating to, or Arising From, Property Damages, Personal Injury, Wrongful Death or Tort Claims," dated April 19, 2024, *related to Doc. No. 603*; and (b) the "Proof of Claim Form."  *See* Bankr. Doc. 649.

27.     On April 23, 2024, copies of those items were delivered via first class mail to Abel, as reflected by the Certificate of Service filed in the Main Case, on May 2, 2024 [Bankr. Doc. 649] (the "<u>Certificate of Service</u>").  A true and correct copy of the Certificate of Service is attached hereto as **Exhibit H**.

28.     This Court, both in the Tort Claims Bar Date Order and on confirmation, found that notice to all Bird scooter users was appropriate and satisfactory based upon the circumstances of the Bankruptcy Cases, was in compliance with the provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Southern District of Florida, and no other or further notice thereof was necessary or required, including to bind all parties in interest thereto.  *See* Bankr. Doc. 603.

**BASIS FOR RELIEF**

***Legal Standard for Temporary Injunction***

29. The elements necessary to the issuance of a preliminary injunction are "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

30. As set forth below, the City can satisfy its burden with respect to all four elements; therefore, this Court should grant this Motion.

***Substantial Likelihood of Success on the Merits***

31. The City will succeed on the merits of its Complaint.

32. Courts have an inherent interest in enforcing their orders, and plan injunction violations constitute "core" matters under 28 U.S.C. § 157(b). Courts routinely recognize that 'interpreting and enforcing a Chapter 11 plan amounts to interpreting and enforcing an order of the court, bankruptcy courts have core arising-in jurisdiction to interpret and enforce their own orders, and all this applies to Chapter 11 plans and the orders confirming them." *See In re Bay Club of Naples*, 2025 WL 1139323, at 8 (Bankr. M.D. Fla. April 17, 2025) (*quoting In re Murray Energy Holdings Co.*, 662 B.R. 604, 617-18 (Bankr. S.D. Ohio 2024) (citations omitted); *see also Mesabi Mettalics Co. v. B. Riley FBR, Inc. (In re Essar Steel Minn., LLC)*, 47 F.4th 193 (3d Cir. 2022); *In re Chesapeake Energy Corp.*, 70 4th 273, 281 (5th Cir. 2023).

33. In *Stern v. Marshall*, the Supreme Court held that bankruptcy court could enter final orders on state law claims where "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. 462, 499 (2011).

34. Here, notwithstanding that the California Action has been enjoined by virtue of the automatic stay, the preliminary injunction, the channeling injunction, and now the confirmation injunction, Century Law, Daneshrad, Jacobson, and Dor continue to prosecute the California Action even though Abel had the ability to timely file a claim in the Bankruptcy Cases.

35. The Bankruptcy Court has the exclusive jurisdiction to interpret the Plan's effect on claims. This, too, is a "core" matter within the meaning of that term under 28 U.S.C. § 157(b). *In re FFS Data, Inc.*, 509 B.R. 403 (Bankr. S.D. Fla. 2014), *aff'd in part, appeal denied in part sub nom. Iberiabank v. Geisen*, 2015 WL 631398 (S.D. Fla. Feb. 13, 2015) ("As the Court is asked to interpret its own confirmation order and the related plan of reorganization, this is a core matter under 28 U.S.C. § 157(b)(2).").

36. The Superior Court was misled by the Defendants misrepresenting or misunderstanding the effect of the Confirmation Order and the various injunctions effected thereby, asserting, *inter alia*,

- "The City also attempts to rely on Bird's Chapter 11 plan and 'channeling injunction' to argue that claims like Plaintiff's are barred. This overreaches. Those protections apply to barred claims asserted against the debtor and its insurers, not to independent municipal liability claims against the City itself." Opposition at 4-5.

- "Because the defect at issue is the roadway itself, not the [Bird] scooter, the City's attempt to invoke Bird's bankruptcy is a red herring." Opposition at 5.

37. The plain language of the Channeling Injunction and Bar Order makes clear that it is immaterial whether the Defendants omitted allegations concerning a Debtor or a Debtor's negligence, so long as the subject claim arose from the "use, placement, [or] operation" of the "Debtors' micro-mobility vehicles." Bankr. Doc. 1214, at 54.

38. The City is an Insurance Settlement Released Party, and Abel, through Century Law, is asserting a claim against the City "arising out of the use" of one of the "Debtors' micro-

12

mobility vehicles." Bankr. Doc. 1204, at 54.

39. This Court found the notice provided by the Debtors—of the Tort Claims Bar Date and of the Plan and confirmation, let alone the actual notice that the City provided Abel and his counsel—was good and sufficient notice in accordance with Bankruptcy Rule 2002(l). *See* Tort Claims Bar Date Order at 1 & Confirmation Order at 3, 10, 43.

40. This Court has exclusive jurisdiction to determine the effect of the confirmed Plan and Confirmation Order on Abel and his counsel, and retained such jurisdiction in paragraph 38 of the Confirmation Order. *See* Confirmation Order, at 66.

41. While the Superior Court may have jurisdiction over how it manages its docket as to cases lawfully pending before it, it lacks jurisdiction to interpret or enforce the effect of the confirmed Plan or this Court's Confirmation Order.

42. As set forth above, however, the Certificate of Service reflects that Abel received actual notice. *See* Exhibit H.

43. It is well established that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), *citing GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375, 386 (1980).

44. This Court may enter an injunction pursuant to Section 105(a) of the Bankruptcy Code upon a showing that the enjoined action would "impede, impair or irreparably interfere with the administration of the estate." *In re Lickman*, 297 B.R. 162, 205 (Bankr. M.D.Fla. 2003), citing *Baptist Medical Center of New York v. Singh (Baptist Medical Center of New York),* 80 B.R. 637, 644 (Bankr. E.D.N.Y. 1987).

45. Indeed, "Section 105(a) contemplates injunctive relief in precisely those instances

where parties are 'pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate.'" *Id.*, quoting *Manville Corp. v. Equity Security Holders Committee (In re Johns–Manville Corp.),* 801 F.2d 60, 63 (2d Cir.1986).

### *Irreparable Injury Will be Suffered Unless an Injunction Issues*

46. The City, the Debtors, the insurance carriers and the purchaser of the Debtors' assets, and any other Insurance Settlement Released Parties will all suffer irreparable harm if the Defendants are not enjoined from litigating the California Action, as well as any other enjoined and barred claims.

47. Legal determinations by the Superior Court may continue to be made that will adversely affect the confirmed Plan and Confirmation Order for all concerned parties.

48. As set forth in this Court's Confirmation Order, the injunctions, exculpations, and releases are an integral part of the Plan.

### *Balance of Hardships*

49. The threatened injury to the City, the other Insurance Settlement Released Parties, and the efficacy of the Plan, if an injunction is not issued against the Defendants, outweighs any damage the injunction may cause Abel given the relief he has been afforded by this Court.

50. If this Court does not enjoin the Defendants from proceeding with the California Action, the City will be forced to bear the consequences of the Clerk's Default entered against it, including potential liability on Abel's allegations at the City's expense and the risk of derivative claims against other Insurance Settlement Released Parties.

51. The City, along with other municipalities across the United States, have already contributed to the Plan's Tort Claims Trust and monies have been disbursed by the Tort Claims

Trustee to various creditors.

52. Additionally, the Defendants' conduct poses great risk to the viability of the Plan itself as well as this Court's Confirmation Order.

53. The California Action should not be allowed to proceed.

54. Remedies available at law, such as monetary damages, are inadequate to compensate the threatened injury to the City and to this Court's Confirmation Order.

55. Considering the balance of hardship between the City and the Defendants, a remedy in equity is warranted.

### *An Injunction Will Serve the Public Interest*

56. The issuance of an injunction against the Defendants would be in the public interest.

57. It is in the best interest of the Estate and the Debtor's creditors, as well as the principles embodied in the Bankruptcy Code, that the Defendants be enjoined from litigating in forums other than this Court, claims arising from the use of a Bird or Spin scooter on before March 22, 2024.

58. The City was obligated to engage counsel to pursue this relief and will be obligated to pay its counsel for having pursued this relief.

### CONCLUSION

59. As set forth above, the City has a substantial likelihood of success on the merits of its Complaint against the Defendants; irreparable injury will be suffered unless an injunction issues against the Defendants; the threatened injury to the City outweighs whatever damage the proposed injunction may cause the Defendants; and, if issued, an injunction would not be adverse to the public interest.

15

60. Accordingly, this Court should enjoin the Defendants from prosecuting the California Action against the City.

*Good Faith Effort to Obtain Defendants' Compliance with this Court's Orders*

61. On or about September 30, 2025, the undersigned emailed counsel seeking the Defendants' voluntary compliance with this Court's Orders and the Defendants did not respond.

WHEREFORE, the City respectfully requests that the Court enter a temporary injunction: (i) further enjoining Daniel Diamantides-Abel and any and all persons acting on his behalf, including his counsel, Ryan Daneshrad Law PC d/b/a LA Century Law, Ryan Daneshrad, Taryn Jacobson, and Michelle Dor, from prosecuting the California Action; and (ii) granting such other relief as is just and proper.

**SHUMAKER, LOOP & KENDRICK, LLP**

By: /s/ *Steven M. Berman*
**Steven M. Berman, Esq.**
Florida Bar No. 856290
101 E. Kennedy Blvd., Ste. 2800
Tampa, Florida 33602
Phone: (813) 229-7600
Facsimile: (813) 229-1660
*Counsel for the City of Long Beach*

## VERIFICATION

Under the penalty of perjury, I declare that I have read the above Verified Motion for Preliminary Injunction and certify that the facts contained therein are true and correct.

Executed on October 22, 2025

                                                         */s/ Michael Swift*
                                                         Michael Swift, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 23, 2025, the foregoing will be mailed by overnight FedEx delivery and e-mailed to the following:

Ryan Daneshrad, Esq.
Taryn Jacobson, Esq.
Michelle Dor, Esq.
LA Century Law
1880 Century Park East, Suite 1101
Los Angeles, CA 90067
ryan@lacenturylaw.com
taryn@lacenturylaw.com
michelled@lacenturylaw.com

                                                   */s/ Steven M. Berman*
                                                   **Attorney**