# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

BIRD GLOBAL, INC., *et al.*,[1]

Debtors.

Chapter 11 Cases

Case No. 23-20514-CLC

(Jointly Administered)

## DEBTORS' SECOND AMENDED
## JOINT CHAPTER 11 PLAN OF LIQUIDATION

**BERGER SINGERMAN, LLP**
Paul Steven Singerman
Florida Bar No. 378860
Jordi Guso
Florida Bar No. 863580
Robin J. Rubens
Florida Bar No. 959413
Clay B. Roberts
Florida Bar No. 116058
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Telecopier: (305)714-4340
Email: singerman@bergersingerman.com
        jguso@bergersingerman.com
        rrubens@bergersingerman.com
        croberts@bergersingerman.com

*Attorneys for Debtors and Debtors-in-Possession*

Dated: June 3, 2024

---

[1] The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179. The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

12987629-3

# TABLE OF CONTENTS

**Page**

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ........................... 1

    1.1    Defined Terms ............................................................... 1

    1.2    Rules of Interpretation ....................................................... 19

    1.3    Exhibits ...................................................................... 19

**ARTICLE II ADMINISTRATIVE, PRIORITY AND UNCLASSIFIED CLAIMS** ........... 20

    2.1    Administrative Claims in General .............................................. 20

    2.2    Superpriority Administrative Expense Claims under the Final DIP Financing Order ................................................................ 20

    2.3    Cure Claims ................................................................. 20

    2.4    Professional Compensation Claims ............................................. 20

    2.5    Priority Tax Claims .......................................................... 21

    2.6    Statutory Fees ............................................................... 21

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** ................................................................ 22

    3.1    Summary .................................................................... 22

    3.2    Classification and Treatment of Claims and Equity Interests ...................... 23

**ARTICLE IV ACCEPTANCE, REJECTION, AMENDMENT AND REVOCATION OR WITHDRAWAL OF THE PLAN** .......................... 26

    4.1    Classes Entitled to Vote ...................................................... 26

    4.2    Acceptance by Class of Claims ................................................ 26

    4.3    Nonconsensual Confirmation .................................................. 26

    4.4    Revocation or Withdrawal; No Admissions ..................................... 26

    4.5    Claims Paid and Payable by Third Parties ...................................... 27

    4.6    Special Provision Governing Unimpaired Claims ............................... 27

**ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN** ...................... 27

    5.1    Joint Chapter 11 Plan ........................................................ 27

    5.2    Means for Implementation of Plan and Source of Funding for Distributions ................................................................. 28

    5.3    Corporate Action ............................................................ 28

    5.4    Post-Effective Date Governance of the Debtors ................................. 28

**ARTICLE VI LIQUIDATING TRUST** .............................................. 29

    6.1    Establishment of Liquidating Trust ............................................ 29

# TABLE OF CONTENTS

(continued)

**Page**

| | | |
|---|---|---|
| 6.2 | Purpose of Liquidating Trust | 29 |
| 6.3 | Liquidating Trust Assets | 30 |
| 6.4 | Non-Transferability of Liquidating Trust Interests | 30 |
| 6.5 | Administration of Liquidating Trust | 30 |
| 6.6 | Liquidating Trustee | 31 |
| 6.7 | Cash Investments | 33 |
| 6.8 | No Revesting of Liquidating Trust Assets | 33 |
| 6.9 | Distribution of Liquidating Trust Assets | 34 |
| 6.10 | Liquidating Trust Mechanics | 34 |
| 6.11 | Tax Reporting | 36 |
| 6.12 | Dissolution | 36 |
| 6.13 | Post-Effective Date Reporting | 37 |
| 6.14 | Effectuating Documents; Further Transactions | 37 |
| 6.15 | Withholding and Reporting Requirements | 37 |
| 6.16 | Exemption From Certain Transfer Taxes | 38 |
| 6.17 | Preservation of Retained Causes of Action | 39 |
| 6.18 | Closing of the Chapter 11 Cases | 39 |
| 6.19 | Notice of Effective Date | 39 |
| **ARTICLE VII TORT CLAIMS TRUST** | | 40 |
| 7.1 | Purpose and Funding of the Tort Claims Trust | 40 |
| 7.2 | Establishment of Tort Claims Trust; Conflict With Plan or Plan Confirmation Order | 40 |
| 7.3 | Distributions and Payments from the Tort Claims Trust | 40 |
| 7.4 | Tax Matters; Medicare/Medicaid/SSA Reporting and Set-Asides | 41 |
| 7.5 | Appointment of the Tort Claims Trustee | 42 |
| 7.6 | Rights and Responsibilities of Tort Claims Trustee | 42 |
| 7.7 | Investment Powers; Permitted Cash Expenditures | 42 |
| 7.8 | Registry of Beneficial Interests | 42 |
| 7.9 | Non-Transferability of Interests | 42 |
| 7.10 | Termination | 42 |
| 7.11 | Immunity; Liability; Indemnification | 43 |

# TABLE OF CONTENTS

(continued)

**Page**

| | | |
|---|---|---|
| 7.12 | Treatment of Tort Claims | 44 |

**ARTICLE VIII INSURANCE SETTLEMENT AGREEMENTS** ........................ 45

| | | |
|---|---|---|
| 8.1 | Insurance Settlement Agreements | 45 |
| 8.2 | Additional Documentation; Non-Material Modifications | 46 |
| 8.3 | Conflict | 46 |

**ARTICLE IX PROVISIONS GOVERNING DISTRIBUTIONS** ........................ 46

| | | |
|---|---|---|
| 9.1 | Manner of Cash Payments Under the Plan | 46 |
| 9.2 | Entity Making Distributions | 46 |
| 9.3 | Distribution Dates | 47 |
| 9.4 | Record Date for Distributions | 47 |
| 9.5 | Delivery of Distributions | 47 |
| 9.6 | Undeliverable and Unclaimed Distributions | 47 |
| 9.7 | Compliance with Tax Requirements | 48 |
| 9.8 | No Payments of Fractional Dollars | 49 |
| 9.9 | No Interest on Claims | 49 |
| 9.10 | No Distribution in Excess of Allowed Amount of Claim | 49 |
| 9.11 | Setoff and Recoupment | 49 |
| 9.12 | De Minimis Distributions; Charitable Donation | 49 |
| 9.13 | Intentionally Omitted | 50 |
| 9.14 | Withholding from Distributions | 50 |
| 9.15 | Distributions in Satisfaction; Allocation | 50 |
| 9.16 | No Distributions on Late-Filed Claims | 50 |

**ARTICLE X DISPUTED CLAIMS** ........................ 51

| | | |
|---|---|---|
| 10.1 | Disputed Claims Reserve | 51 |
| 10.2 | Resolution of Disputed Claims | 51 |
| 10.3 | Objection Deadline | 51 |
| 10.4 | Estimation of Claims | 51 |
| 10.5 | No Distributions Pending Allowance | 52 |
| 10.6 | Disallowed Claims | 52 |
| 10.7 | Resolution of Claims | 52 |

# TABLE OF CONTENTS
(continued)

Page

**ARTICLE XI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................................................................. 52

11.1    General Treatment; Rejected if not Previously Assumed ..................... 52

11.2    Bar to Claims Arising from Rejection, Termination or Expiration ..................... 53

11.3    Assumption of Executory Contracts and Unexpired Leases ............................... 53

11.4    Indemnification and Reimbursement ................................................ 54

**ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** .............................................................. 54

12.1    Conditions Precedent to the Effective Date ..................................... 54

12.2    Waiver ........................................................................... 55

**ARTICLE XIII EFFECT OF CONFIRMATION; INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS** ................. 55

13.1    Compromise and Settlement ...................................................... 55

13.2    Vesting of Assets ............................................................... 55

13.3    Binding Effect .................................................................. 56

13.4    Sale Order ...................................................................... 56

13.5    Term of Injunctions or Stays .................................................... 56

13.6    Channeling Injunction ........................................................... 56

13.7    Releases ........................................................................ 58

13.8    Exculpation ..................................................................... 60

13.9    Bar Order ....................................................................... 61

13.10   Injunction ...................................................................... 62

13.11   Release of Liens ................................................................ 63

**ARTICLE XIV RETENTION OF JURISDICTION** ............................... 63

**ARTICLE XV MISCELLANEOUS PROVISIONS** ................................ 65

15.1    Modification of Plan ............................................................ 65

15.2    Revocation of Plan .............................................................. 65

15.3    Successors and Assigns .......................................................... 66

15.4    Governing Law ................................................................... 66

15.5    Reservation of Rights ........................................................... 66

15.6    Intentionally Omitted ........................................................... 66

iv

**TABLE OF CONTENTS**
(continued)

**Page**

15.7   Section 1125(e) Good Faith Compliance ............................................................. 66

15.8   Further Assurances .............................................................................................. 66

15.9   Service of Documents ......................................................................................... 66

15.10  Filing of Additional Documents ......................................................................... 67

15.11  Intentionally Omitted ......................................................................................... 67

15.12  Bankruptcy Rule 9019 Request; Impact ............................................................ 67

**EXHIBITS**

| | | |
|---|---|---|
| Exhibit 1 | – | Underwriters' Insurance Settlement Agreement |
| Exhibit 2 | – | Great American Insurance Settlement Agreement |
| Exhibit 3 | – | Lexington Insurance Settlement Agreement |
| Exhibit 4 | – | Municipality Settlement Term Sheet |
| Exhibit 5 | – | Liquidating Trust Agreement |
| Exhibit 6 | – | Schedule of Retained Causes of Action |

# INTRODUCTION

Bird Global, Inc., Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession (the "Debtors") propose this Second Amended Joint Chapter 11 Plan of Liquidation (including all addenda, exhibits, schedules, and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference, the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code (as defined in ARTICLE I, § 1.1 herein ("Defined Terms")).

For a discussion of the Debtors' history, business, operations, assets and liabilities, for a summary and analysis of the Plan, risk factors, liquidation analysis, tax implications and alternatives to the Plan, reference should be made to the *Second Amended Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Liquidation*, dated June 3, 2024, as such disclosure statement may be amended, modified or supplemented (the "Disclosure Statement").

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

1.1     Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.     **Acquired Assets** means the property described in the Asset Purchase Agreement and acquired by the Purchaser at Closing.

2.     **Additional DIP Funding** means $2,220,000, plus interest, in additional secured, post-petition financing advanced to the Debtors at Closing by the Purchaser as designee of and on behalf of the Junior DIP Lenders, the terms of which are set forth in the Supplemental DIP Loan Order and Global Settlement Term Sheet.

3.     **Additional DIP Funding Claim** means the Claim in the amount of $2,220,000 on account of the Additional DIP Funding, plus interest thereon at the rate of 12% per annum as of the Closing as classified and treated in Section 2.2 of the Plan.

4.     **Additional Insured(s)** means any Person or Entity who qualifies as an additional insured under the terms of the Insurance Policies, including but not limited to any Person or Entity the Debtors were required to add as an additional insured under the Policies: (a) pursuant to written contracts, agreements, regulations, local ordinances and/or terms and conditions in

12987629-3

certain permit applications and permits issued by various entities or municipalities; or (b) under any oral or implied agreement where a certificate of insurance was issued showing that Person or Entity as an Additional Insured, all as specified by the Policies. For purposes of the Insurance Settlement Agreement, Additional Insureds include Charleston, SC, Long Beach, CA, Los Angeles, CA, New Port News, VA, Sacramento, CA, Salt Lake City, UT, San Diego, CA, San Francisco, CA, Santa Clara, CA, Santa Monica, CA, Tempe, AZ, Washington, D.C., Orlando, FL, Chicago, IL, Portland, OR, Providence, RI, St. Louis, MO, and City of San Jose, CA.

5.    **Additional Insured Claim** means a Claim of an Additional Insured Claimant, any Claim by any Person or Entity against the Settling Insurers that, directly or indirectly, arises from, relates to or is in connection with a Tort Claim, including any such Claim for defense, indemnity, contribution, or similar relief.

6.    **Additional Insured Claimant** means an Additional Insured who has a Claim or may have a Claim or right against the Debtors and/or any of the Settling Insurers.

7.    **Administrative Expense Claim** means any right to payment for any cost or expense of administration of these Chapter 11 Cases asserted or arising under sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, any (i) actual and necessary cost or expense of preserving the Debtors' Estate or operating the Debtors' business arising on or after the Petition Date, (ii) cost, indebtedness or contractual obligation duly and validly incurred by the Debtors in the ordinary course of business arising on or after the Petition Date, and (iii) fees or charges assessed against any of the Debtors' Estates under section 1930 of title 28 of the United States Code; *excluding, however*, (i) Superpriority Administrative Expense Claims under the Final DIP Financing Order; (ii) Cure Claims; and, (iii) Professional Compensation Claims which shall be treated as provided in Sections 2.2 through 2.4 of the Plan.

8.    **Administrative Expense Claims Bar Date** means May 16, 2024, which was established by the Bankruptcy Court as the deadline for filing all requests for payment of Administrative Expense Claims.

9.    **Adversary Proceeding** means the adversary proceeding styled *Bird Global, Inc., et al. v. Gregory Amundson, et al.*, Case No. 24-01010-CLC pending before the Bankruptcy Court.

10.    **Allowed Claim** means a Claim Allowed in the particular category or Class identified.

11.    **Allowed** means with reference to any Claim (a) any Claim against the Debtors that has been listed in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with Section 10.2 of the Plan or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by

12987629-3

a Final Order to the extent such Final Order is in favor of the respective holder, or (c) any Claim expressly allowed by a Final Order or pursuant to the terms of the Plan.

12.    **Approved Budget** shall have the meaning set forth in the Final DIP Financing Order.

13.    **Asset Purchase Agreement** means the *Asset Purchase Agreement* dated as of December 22, 2023, between the Debtors and Purchaser as amended from time to time, including by the Global Settlement Term Sheet and the Transition Services Agreement.

14.    **Assets** means all legal or equitable prepetition and postpetition interests of the Debtors in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, cash, deposit accounts, reserves, deposits, equity interests, contractual rights, intellectual property rights, claims, causes of actions, assumed executory contracts and unexpired leases, other general intangibles, and the proceeds, products, offspring, rents or profits thereof.

15.    **Assigned Contract** means each contract assumed by the Debtors and assigned to the Purchaser pursuant to the terms of the Sale Order and the Asset Purchase Agreement and other orders of the Bankruptcy Court.

16.    **Avoidance Actions** means any and all causes of action which a trustee, debtors-in-possession, the estate or other appropriate party in interest, if appropriate, may assert under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan or any previous Order of the Bankruptcy Court).

17.    **Ballot** means the form of approved ballot accompanying the approved Disclosure Statement upon which Holders of Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

18.    **Bankruptcy Code** means title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in these Chapter 11 Cases.

19.    **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Florida (Miami Division) having jurisdiction over these Chapter 11 Cases and, to the extent of any withdrawal of the reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of Florida.

20.    **Bankruptcy Rules** means (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code, (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code, (c) the Local Rules of the United States Bankruptcy Court for the Southern District of Florida and the guidelines and requirements of the U.S. Trustee, and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and

modifications thereto to the extent applicable to these Chapter 11 Cases or proceedings herein, as the case may be.

21.     **Bar Date** means February 28, 2024, which was established by the Bankruptcy Court as the deadline for filing and serving all proofs of claim (other than with respect to Governmental Unit Claims, Administrative Expense Claims, and Tort Claims) against the Debtors in these Chapter 11 Cases.

22.     **Bar Date for Governmental Unit Claims** means June 17, 2024, which was established by the Bankruptcy Court as the deadline for Governmental Units to file and serve all proofs of claim against the Debtors in these Chapter 11 Cases, including, without limitation, claims for Taxes.

23.     **Bar Order** means the provisions of this Plan, the Insurance Settlement Agreement and the Plan Confirmation Order that shall permanently bar, prohibit, enjoin and restrain the filing, commencing, prosecuting, conducting, asserting or continuing in any manner, directly, indirectly or derivatively all Barred Claims, as more particularly described in ARTICLE XIII, Section 13.9, hereof.

24.     **Barred Claims** means all Claims against the Debtors and/or the Insurance Settlement Released Parties.

25.     **Barred Persons** means all Persons and Entities having Claims against the Debtors and/or any of the Insurance Settlement Released Parties.

26.     **Beneficial Holder** means the Entity holding the beneficial interest in a Claim.

27.     **Bidding Procedures Order** means the *Order Granting Debtors' Expedited Motion for Entry of an Order (I) Authorizing and Approving the Debtors' Entry into the Stalking Horse Bid Agreement with the Stalking Horse Bidder, Subject to the Bidding Procedures and the Sale Hearing, (II) Approving Bidding Procedures, (III) Scheduling the Bid Deadlines and the Auction, (IV) Scheduling a Hearing to Consider the Transaction, (V) Approving the Form and Manner of Notice Thereof, (VI) Approving Contract Procedures, and (VII) Granting Related Relief* entered by the Bankruptcy Court on January 25, 2024 [ECF No. 202].

28.     **Business Day** means any day other than a Saturday, Sunday or a Legal Holiday (as such term is defined in Federal Bankruptcy Rule 9006(a)).

29.     **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars.

30.     **Cause of Action** or **Causes of Action** means, individually or collectively and without limitation, any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, causes of action, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, accounts receivable, notes receivable and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, secured or unsecured and

whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtors, or the Estates, whether sounding in tort or contract, and any and all proceeds of the foregoing.

31.     **Channeled Claims** means any Tort Claim against any of the Debtors and/or any of the Insurance Settlement Released Parties.

32.     **Channeling Injunction** means the injunction imposed pursuant to Section 13.6 of the Plan.

33.     **Chapter 11 Cases** means the chapter 11 cases of the Debtors pending before the Bankruptcy Court, under lead Case No. 23-20514-CLC (Jointly Administered).

34.     **Claim** means (a) an asserted or unasserted right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) any past, present and future claims, causes of action, obligations, rights, suits, judgments, remedies, interests, actions, liabilities, demands, duties, injuries, damages, liens, interest, expenses, fees, or costs of whatever kind or nature (including attorney's fees and expenses), whether foreseen or unforeseen, known or unknown, asserted or unasserted, contingent or matured, liquidated or unliquidated, whether in tort, contract, extra-contractual or otherwise, whether statutory, at common law or in equity, including but not limited to claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, unfair claim settlement practices, statutory or regulatory violations, for indemnity or contribution, or punitive, compensatory, exemplary, extra-contractual, statutory or other damages or relief of any type, including, without limitation:  (i) all claims for wrongful death, personal injury, emotional distress, property damage, economic loss, or environmental damage, remediation or exposure including, without limitation, any Tort Claim against a Municipality (whether asserted or unasserted); (ii) all claims on payment and performance bonds; (iii) all claims relating to the Insurance Policies including, without limitation, the issuance of the Insurance Policies, coverage under the Insurance Policies, the defense of litigation arising out of a Tort Claim, or any act or omission of any Settling Insurer of any type for which the Debtors, the Debtors' Insurers, or any Claimant might or may seek relief in connection with the Insurance Policies; and (iv) any other "claim," as that term is defined in section 101(5) of the Bankruptcy Code.

35.     **Claimant** means the holder of a Claim.

36.     **Claims Objection Bar Date** means the first Business Day that is one hundred eighty (180) calendar days after the Effective Date; provided that the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon motion Filed by the Liquidating Trustee or the Purchaser with respect to Priority Claims.

37.     **Class** means a group of substantially similar Claims or Interests as classified in a particular class under the Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

38.     **Closing** means the closing of the purchase and sale of the Acquired Assets and the consummation of the other transactions contemplated by the Asset Purchase Agreement as approved in the Sale Order.

39.     **Closing Date** means March 22, 2024, the date the Closing took place.

40.     **Collateral** means any property or interest in property of the Estates of the Debtors subject to a lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, charge or other encumbrance is not subject to avoidance or is otherwise invalid under the Bankruptcy Code or applicable state law.

41.     **Committee** means the official committee of unsecured creditors appointed in the Chapter 11 Cases.

42.     **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

43.     **Confirmation Hearing** means the duly noticed hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1128, including any continuances thereof.

44.     **Creditor** means any Entity who holds a Claim against any of the Debtors.

45.     **Cure** means a Claim for all unpaid monetary obligations, or adequate assurance of cure or compensation, or other amounts as may be agreed upon by the parties or as determined by the Bankruptcy Court, under an executory contract or unexpired lease (whether assumed or assumed and assigned) by any Debtor pursuant to section 365 of the Bankruptcy Code or the Plan.

46.     **Cure Claim** means a Claim for Cure.

47.     **Debtors** means Bird Global, Inc., Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., including in their capacity as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

48.     **Debtors' Auto Insurance Policies** means the following insurance policies, collectively: (i) Bird Global, Inc. auto insurance policy with The First Liberty Insurance Corporation, Policy No. AS6-631-510760-033; (ii) Skinny Labs, Inc. auto insurance policy with Liberty Mutual Fire Insurance Company, Policy No. AS2-661-067334-033; and (iii) Skinny Labs, Inc. auto insurance policy with Liberty Surplus Insurance Corporation, Policy No. ASE-661-067334-043.

49.     **D&O Liability Insurance Policies** means the insurance policies identified in the Confirmation Order, including any run-off or tail policies, agreements, amendments, addenda, documents or instruments related thereto that provide coverage for Causes of Action that may exist against any of the Debtors' current or former directors, managers, members, officers and employees, subject in all events to the other terms of this Plan.

50.    **DIP Lenders** means the Senior DIP Parties and the Junior DIP Parties.

51.    **Disallow or Disallowed** means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtors which (i) has been disallowed, in whole or part, by a Final Order of the Bankruptcy Court, (ii) has been withdrawn and/or waived by agreement of the Debtors and the Holder thereof, in whole or in part, (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof of Claim or a Proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court or other applicable bankruptcy law, (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim or Proof of Interest, or (vi) is deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof of claim or Proof of Interest was not timely or properly Filed.  In each case a Disallowed Claim or Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

52.    **Disallowed Claim** means a Claim, or any portion thereof, that is Disallowed.

53.    **Disallowed Interest** means an Interest, or any portion thereof, that is Disallowed.

54.    **Disclosure Statement** means that certain *Second Amended Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Liquidation*, including the schedules and exhibits attached thereto, as amended, modified or supplemented from time to time, that is prepared and will be distributed (upon approval of the Bankruptcy Court) in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

55.    **Disputed** means with respect to a Claim or Interest, any Claim or Interest that has not been Allowed by a Final Order as to which (a) a Proof of Claim or Interest has been Filed with the Bankruptcy Court, or is deemed Filed under applicable law or order of the Bankruptcy Court, and (b) an Objection to such Claim or Interest has been or may be timely Filed or deemed Filed under applicable law by the Debtors or any other party in interest, and any such Objection has not been (i) withdraw, (ii) overruled or denied by a Final Order or (iii) granted by a Final Order.  For purposes of the Plan, a Claim or Interest that has not been Allowed by a Final Order shall be considered a Disputed Claim or Interest, whether or not an Objection has been or may be timely Filed, to the extent (A) the amount of the Claim or Interest specified in the Proof of Claim or Interest exceeds the amount of any corresponding Claim or Interest in the Schedules, (B) the classification of the Claim or Interest specified in the Proof of claim or Interest differs from the classification of any corresponding Claim or Interest listed in the Schedules, (C) any corresponding Claim or Interest has been listed in the Schedules as zero or as Disputed, contingent or unliquidated, (D) no corresponding Claim or Interest has been listed in the Schedules or (E) such Claim or Interest is reflected as zero or as unliquidated or contingent in the Proof of Claim or Interest Filed in respect thereof.

56.    **Disputed Claim** means a Claim, or any portion thereof, that is Disputed.

57. **Disputed Claims Reserve** means the reserve funds created pursuant to ARTICLE X herein.

58. **Distribution** means each distribution of Cash or property to Holders of Allowed Claims pursuant to and under the terms of this Plan by the Liquidating Trustee or Tort Claims Trustee, as applicable, on each Distribution Date.

59. **Distribution Agent** means the Person or Entity responsible for making Distributions under the Plan. Distributions to the holders of Allowed Claims in Classes 1-5 and 7 shall be made by the Liquidating Trustee. Distributions to the holders of Tort Claims shall be made by the Tort Claims Trustee pursuant to the Tort Claims Trust Agreement and the Tort Claim ADR Procedures.

60. **Distribution Date** means the date or dates on which a Holder of an Allowed Claim shall receive a Distribution of property under the terms of the Plan.

61. **Distribution Waterfall** means with respect to the Distribution of proceeds of Excluded Assets (other than Talon Proceeds and Distributions by the Tort Claims Trust), the following order of priority:

(i) First, to pay or reserve for the cost of monetizing the Excluded Assets, including the fees and expenses of the Liquidating Trustee and professionals retained by the Liquidating Trustee incurred in connection therewith;

(ii) Second, *Pro Rata* for payment of (A) the Excess Professional Fee Claims, and (B) the Additional DIP Funding Claim, until paid in full; and

(iii) Third, *Pro Rata* to the holders of Allowed General Unsecured Claims in Class 5.

62. **Effective Date** means the date selected by the Debtors that is (a) at least fifteen (15) days following occurrence of the Confirmation Date; and (b) no more than five (5) Business Days following the first date on which no stay of the Plan Confirmation Order is in effect and all conditions to the Effective Date set forth in ARTICLE XII hereof have been satisfied or, if waivable, waived pursuant to Section 12.2 hereof.

63. **Entity** means an entity as defined in section 101(15) of the Bankruptcy Code.

64. **Equity Interests** means as of the Petition Date, any and all currently owned equity interests, ownership interests or shares in the Debtors and issued by the Debtors prior to the Petition Date (including, without limitation, all capital stock, stock certificates, common stock, preferred stock, partnership interests, rights, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in any of the Debtors, partnership interests in any of the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights and liquidation preferences, puts, calls or commitments of any character whatsoever relating to any such equity, ownership interests or shares of capital

stock of the Debtors or obligating any Debtors to issue, transfer or sell any shares of capital stock) whether or not certificated, transferable, voting or denominated "stock" or a similar security.

65. **Estate** means, with regard to the Debtors, each estate created by the commencement by the Debtors of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges and Causes of Action of the Debtors and any and all Assets and interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that the Debtors or the Estates shall have had as of the Petition Date, or which the Estate acquired after the commencement of these Chapter 11 Cases; *excluding, however*, Acquired Assets).

66. **Excess Professional Fee Claims** means the Professional Compensation Claims of the Professionals retained by the Committee solely to the extent that such Professional Compensation Claims exceed $1,450,000 as of the Effective Date.

67. **Excluded Assets** means those assets or property of the Debtors' Estates under Section 541 of the Bankruptcy Code not sold, conveyed or assigned to the Purchaser pursuant to the Asset Purchase Agreement or not conveyed to the Tort Claims Trust as Tort Claims Trust Assets, and which shall be contributed to the Liquidating Trust on the Effective Date as Liquidating Trust Assets, including, but not limited to, Retained Causes of Action.

68. **Exculpated Parties** means the Senior DIP Parties, the Junior DIP Parties, the Junior DIP Agent (which shall include U.S. Bank Trust Company, National Association as collateral agent for the Junior DIP Parties), and each of their respective officers, directors, members, employees, Representatives, counsel, advisors, agents, parents, subsidiaries and affiliates, and each of their respective successors and assigns, the Debtors and their Professionals including, Berger Singerman LLP, Teneo Capital, LLC, Teneo Strategy, LLC, Cassel Salpeter & Co., LLC, the Committee including its members in their capacity as such and its Professionals including Fox Rothschild LLP and Berkeley Research Group LLC,  John Ivan Bitove, Kevin Talbot, Antonio Occhionero, Philip Evershed, Philip Ryan, Racquel Russell, Jim Mutrie, Robert Comin, John Jason Bitove, Stewart Lyons, Michael Washinushi, H. Joseph Prodan, Clint Johnson, Harvey L. Tepner, and Christopher Rankin.

69. **File** or **Filed** means file or filed with the Bankruptcy Court in these Chapter 11 Cases.

70. **Final Decree** means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

71. **Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest

court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

72.   **Final DIP Financing Order** means the *Final Order (1) Authorizing The Debtors to (A) Obtain PostPetition Financing, (B) Grant Senior Secured Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [ECF No. 296], entered by the Bankruptcy Court on February 8, 2024.

73.   **Ford Indemnity Obligations** means the Debtors' rights under or relating to the *Contribution and Exchange Agreement* dated March 1, 2022 by and between Spin, Ford Next, LLC, and Tier Mobility SE, including, without limitation, those relating to coverage, indemnity, contribution, reimbursement, breach of contract, or any other matters.

74.   **General Unsecured Claims** means Claims against the Debtors that are not Administrative Claims, Professional Compensation Claims, Cure Claims, Priority Tax Claims, Other Priority Claims, Senior DIP Deficiency Claims, Additional DIP Funding Secured Claims, Tort Claims, Subordinated Claims or Equity Interests.  Miscellaneous Secured Claims are treated as General Unsecured Claims, pursuant to Section 3.2(d) of the Plan.

75.   **Global Settlement Term Sheet** means the *Global Settlement and Plan Support Agreement Term Sheet* by and between the Debtors, the Committee, the Senior DIP Parties, the Junior DIP Parties and the Purchaser dated as of March 6, 2024.

76.   **Great American** means Great American E&S Insurance Company.

77.   **Great American Insurance Policies** means "Insurer's Policies" as defined in the Great American Insurance Settlement Agreement.

78.   **Great American Insurance Settlement Agreement** means the *Settlement, Release and Policy Buyback Agreement* between the Debtors and Great American and attached to the Plan as **Exhibit 2**, as it may be amended by the Plan Confirmation Order solely with respect to the Settlement Amount, which will be revised to Two Million Two Hundred Thousand Dollars ($2,200,000.00).

79.   **Holder** means the legal or Beneficial Holder of a Claim or Interest (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type).

80.   **Impaired** shall have the meaning ascribed to it in section 1124 of the Bankruptcy Code when used with reference to a Claim or an Interest.

81.   **Injunction** means one or more orders of the Bankruptcy Court, which shall include the Plan Confirmation Order, permanently releasing and enjoining the enforcement,

prosecution, continuation or commencement of any Tort Claims that any Person or Entity holds or asserts or may in the future hold or assert against the Debtors and/or the Insurance Settlement Released Parties.

82. **Insurance Policies** means (i) the Great American Insurance Policies, (ii) the Lexington Insurance Policies, and (iii) the Underwriters' Policies.

83. **Insurance Program** shall have the meaning ascribed to such term in the Insurance Settlement Agreements.

84. **Insurance Settlement Agreements** means the (i) Great American Insurance Settlement Agreement, (ii) Lexington Insurance Settlement Agreement, (iii) Underwriters' Insurance Settlement Agreement and (iv) the Municipality Settlement Term Sheet.

85. **Insurance Settlement Proceeds** means $19,216,036.50 in Cash.

86. **Insurance Settlement Released Parties** means the Settling Insurers' Parties, all Named Insureds, Additional Insureds, the Purchaser Parties and the Debtors, and is intended to include each Municipality.

87. **Intercompany Claims** means Claims of any parent or affiliate of any Debtor against any other Debtor, whether asserted or unasserted, contingent, disputed, undisputed or unliquidated that are not Acquired Assets under the Asset Purchase Agreement.

88. **IRC** means the Internal Revenue Code of 1986, as amended from time to time.

89. **Junior DIP Agent** shall have the meaning ascribed to such term in the Final DIP Financing Order.

90. **Junior DIP Parties** shall have the meaning ascribed to such term in the Final DIP Financing Order.

91. **Lexington** means Lexington Insurance Company.

92. **Lexington Insurance Policies** means the Commercial Umbrella Liability policy number 023627637, effective from March 19, 2019 to February 1, 2020, issued by Lexington to Bird Rides, Inc.

93. **Lexington Insurance Settlement Agreement** means the *Settlement, Release and Policy Buyback Agreement* between the Debtors and Lexington and attached to the Plan as **Exhibit 3**, as it may be amended by the Plan Confirmation Order.

94. **Lien** means a charge against, interest in or other encumbrance upon property to secure payment of a debt or performance of an obligation.

95. **Liquidating Trust** means the trust created on the Effective Date in accordance with the provisions of Article VI of the Plan and a Liquidating Trust Agreement, for

the benefit of holders of Allowed Claims, as determined by the Liquidating Trustee consistent with the purposes of any such Liquidating Trust pursuant to ARTICLE VI of the Plan.

96.    **Liquidating Trust Agreement** means the Liquidating Trust Agreement to be attached as **Exhibit 5** to this Plan.

97.    **Liquidating Trust Assets** means the Excluded Assets of each Debtor to be transferred to the Liquidating Trust for the benefit of Holders of Allowed Claims; *excluding, however*, the Holders of Tort Claims; *provided further, however*, to the extent that the Ford Indemnity Obligations relate to Tort Claims, the Liquidating Trust and the Tort Claims Trust will maintain a joint interest in the Ford Indemnity Obligations and any related Retained Causes of Action against Ford Next LLC or its affiliates, predecessors, successors or assigns.

98.    **Liquidating Trust Beneficiaries** means the Holders of Allowed Claims in Class 2, 3 and 5.

99.    **Liquidating Trust Interests** means the non-certificated beneficial interests of the Liquidating Trust allocable to Liquidating Trust Beneficiaries in accordance with the terms, conditions, and priorities set out in the Plan and the Liquidating Trust Agreement entitling each Liquidating Trust Beneficiary to Distributions (if any) of the Liquidating Trust.

100.    **Liquidating Trustee** means Joseph J. Luzinski of Development Specialists, Inc. who, as of the Effective Date, shall exercise the authority set forth in ARTICLE VI of the Plan pursuant to the Liquidating Trust Agreement in accordance with the terms of the Plan.

101.    **Local Rules** means the Local Rules of the United States Bankruptcy Court for the Southern District of Florida and the guidelines and requirements of the U.S. Trustee for the Southern District of Florida.

102.    **Miscellaneous Secured Claims** means Claims that are secured by Liens other than the Claims of the Prepetition First Lien Parties, the Prepetition Second Lien Parties, the Senior DIP Parties, and the Junior DIP Parties.

103.    **Municipality** means all of the cities in which the Debtors previously operated and which is either a Named Insured, Additional Insured, or otherwise an entity any of the Debtors is contractually obligated to indemnify, including Charleston, SC, Long Beach, CA, Los Angeles, CA, New Port News, VA, Sacramento, CA, Salt Lake City, UT, San Diego, CA, San Francisco, CA, Santa Clara, CA, Santa Monica, CA, Tempe, AZ, Washington, D.C., Orlando, FL, Chicago, IL, Portland, OR, Providence, RI, and St. Louis, MO.

104.    **Municipal Claims** means Claims of a Municipality arising from or relating to arising out of the use, placement, operation, transportation, renting, leasing, and/or recovery of the Debtors' vehicles and/or arising out of the operation of the Debtors' business, including but not limited to claims for indemnification under any permit or license issued by a Municipality to the Debtors, or Claims against the Debtors' insurers, including as additional insureds.

105.    **Municipality Settlement Term Sheet** means the Settlement Term Sheet between the Debtors and the City of San Diego, City of Los Angeles, City of San Jose, and City

12987629-3

of Santa Monica attached hereto as **Exhibit 4**, as it may be amended by the Plan Confirmation Order.

106.   **Non-Assumed Contracts** means any contracts to which any Debtors is a party but that are not Assigned Contracts.

107.   **Objection** means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim) or Interest other than a Claim or an Interest that is Allowed.

108.   **Person** means an individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an unincorporated organization, or a governmental unit as defined in section 101(41) of the Bankruptcy Code.

109.   **Petition Date** means December 20, 2023.

110.   **Plan** means the Debtors' Joint Chapter 11 Plan of Liquidation and all exhibits annexed hereto or referenced herein, as it may be amended, modified or supplemented from time to time in accordance with the provisions of the Plan or the Bankruptcy Code and Bankruptcy Rules.

111.   **Plan Cash** means $275,000 in Cash paid by the Purchaser to the Debtors on the Closing pursuant to the Asset Purchase Agreement.

112.   **Plan Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

113.   **Plan Documents** means all documents that aid in effectuating the Plan, including, without limitation, all addenda, exhibits and schedules.

114.   **Prepetition First Lien Parties** shall have the meaning ascribed to such term in the Final DIP Financing Order.

115.   **Prepetition Second Lien Parties** shall have the meaning ascribed to such term in the Final DIP Financing Order.

116.   **Priority Claim** means a Claim to the extent that it is of a kind described in, and entitled to priority under, sections 507(a)(2), (a)(3), (a)(4), (a)(5), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

117.   **Priority Claims Reserve** means Cash in the amount of $1,024,000.00 funded to the Debtors at Closing by the Purchaser to be held in escrow pending the Effective Date, and to be utilized by the Debtors or the Liquidating Trustee, as the case may be, to make Distributions on account of Allowed Priority Claims and to the extent not used to make Distributions on account

of Allowed Priority Claims, then refunded to the Purchaser as designee of and on behalf of the Junior DIP Lenders, as provided in the Global Settlement Term Sheet.

118. **Priority Tax Claim** means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

119. **Pro Rata** means the proportion (expressed as a percentage) that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims (including Disputed Claims but excluding disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

120. **Professional** means a Person (a) employed in these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 329, 330 and 331 of the Bankruptcy Code or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

121. **Professional Compensation Claim** means a Claim of a Professional retained in the Chapter 11 Cases by the Debtors or the Committee pursuant to a Final Order in accordance with sections 327 of the Bankruptcy Code, for compensation or reimbursement of actual and necessary costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

122. **Professional Funded Reserve Account** means the funds in the account maintained by Berger Singerman LLP in accordance with paragraph 13(b) of the Final DIP Financing Order for the benefit of Professionals, with such funds allocated for the benefit of each Professional in the amount set forth in the Approved Budget for each Professional.

123. **Proof of Claim** means any proof of Claim Filed with the Bankruptcy Court with respect to any of the Debtors pursuant to Bankruptcy Rules 3001 or 3002.

124. **Proof of Interest** means any proof of Interest Filed with the Bankruptcy Court with respect to any of the Debtors pursuant to Bankruptcy Rule 3002.

125. **Purchaser** means Bird Scooter Acquisition Corp. or its successors, assigns or designees, as purchaser, under the Asset Purchase Agreement.

126. **Purchaser Parties** means Purchaser and: (i) each of its past, present and future parents, subsidiaries, affiliates, and divisions, (ii) each of their respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies. related companies, divisions, joint ventures, and acquired companies holding companies, merged companies. related companies, divisions, joint ventures, and acquired companies; (iii) each of their respective past, present and future directors, officers, managers, members, shareholders, employees, partners, principals, agents, attorneys, lenders, joint ventures, joint venturers, representatives, and managing agents, insurers, reinsurers, and associated third-parties; and (iv) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or entities acting on behalf of, by, through or in concert with them.

127. **Record Date** means the date the Disclosure Statement is conditionally approved by the Bankruptcy Court.

128. **Released Parties** means each of the Senior DIP Parties, the Junior DIP Parties, the Junior DIP Agent (which shall include U.S. Bank Trust Company, National Association as collateral agent for the Junior DIP Parties), and each of their respective officers, directors, members, employees, Representatives, counsel, advisors, agents, parents, subsidiaries and affiliates, and each of their respective successors and assigns, the Debtors' Professionals including, Berger Singerman LLP, Teneo Capital, LLC, Teneo Strategy, LLC, Cassel Salpeter & Co., LLC, the Committee including its members in their capacity as such and its Professionals including Fox Rothschild LLP and Berkeley Research Group LLC, the Purchaser Parties, John Ivan Bitove, Kevin Talbot, Antonio Occhionero, Philip Evershed, Philip Ryan, Racquel Russell, Jim Mutrie (subject to the qualifications set forth in the last sentence of this definition), Robert Comin, John Jason Bitove, Stewart Lyons, Michael Washinushi, H. Joseph Prodan, Clint Johnson, Harvey L. Tepner, and Christopher Rankin; *provided, however*, that Released Parties shall not include any former officer or director of the Debtors (other than those explicitly identified in this definition), regardless of whether the officer or director resigned, was removed by corporate action, or otherwise terminated. The extent of the releases provided to the Released Parties is subject to the provisions in Article XIII of the Plan. Notwithstanding anything to the contrary in this Plan, Jim Mutrie is a Released Party only to the extent of any acts and omissions that occurred after the merger of Bird Canada Inc. with the Debtors on or about December 30, 2022; provided, however, that any damages with respect to any Retained Causes of Action against Jim Mutrie shall be payable solely from and limited to the extent of available coverage under the D&O Liability Insurance Policies. If the Court approves the Insurance Settlement Agreements, the Settling Insurers' Parties and the Additional Insureds shall be Released Parties.

129. **Releasing Parties** means the Released Parties.

130. **Rejection Claim** means a Claim for damages resulting from the rejection of an executory contract by the Debtors pursuant to Section 10.2 of the Plan.

131. **Representatives** means, with regard to an Entity (including the Debtors), any current officers, directors, employees, attorneys, Professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

132. **Reinstated** or **Reinstatement** means (i) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (a) curing any such default that occurred before or after the Petition Date, other than a default of a kind specific in section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim as such maturity existed before such default; (c) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitled the Holder of such Claim; *provided, however*, that any contractual right that

does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence or which prohibit certain transactions or actions contemplated by the Plan, or conditioning such transactions or action on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

133.  **Retained Causes of Action** means all Causes of Action of the Debtors or their Estates other than (i) Causes of Action acquired by the Purchaser under the Asset Purchase Agreement, and (ii) any Cause of Action released, settled or compromised pursuant to the Insurance Settlement Agreement, the Final DIP Financing Order, or the Asset Purchase Agreement, or this Plan.  Retained Causes of Action include Causes of Action against the Debtors' former directors, managers, members, officers and employees who are not Released Parties and Retained Causes of Action are identified in **Exhibit 6** to the Plan, subject to the terms and conditions set forth in Section 6.17 hereof.

134.  **Sale Order** means the *Order (I) Authorizing and Approving (A) The Sale of Substantially All of The Debtors' Assets Free And Clear of All Liens, Claims, And Encumbrances and (B) The Assumption And Assignment of Certain Executory Contracts And Unexpired Leases In Connection Therewith, And (II) Granting Related Relief* entered by the Bankruptcy Court on March 8, 2024 [ECF No. 464], as may be amended or supplemented by other orders of the Court.

135.  **Sale Transaction** means the transactions contemplated by the Asset Purchase Agreement, approved in the Sale Order and consummated at the Closing.

136.  **Schedule of Assumed Contracts and Unexpired Leases** means the schedules and exhibits Filed with the Bankruptcy Court identifying (i) the executory contracts and unexpired leases assumed by the Debtors and assigned to the Purchaser; and (ii) the amount of Cure Claims with respect to each executory contract or unexpired lease assumed and assigned to the Purchaser.

137.  **Scheduled** means as set forth on the Schedules.

138.  **Schedules** means the Schedules of Assets and Liabilities and the Statements of Financial Affairs Filed by the Debtors in accordance with Bankruptcy Code section 521 and Federal Bankruptcy Rule 1007, as the same may be amended from time to time prior to the Effective Date in accordance with Federal Bankruptcy Rule 1009.

139.  **Secured Tax Claims** means all Claims for Taxes against the Debtors that are secured by a Lien on, or security interest in, real property of the Debtors, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtors' interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in section 506 of the Bankruptcy Code.

140.  **Senior DIP Parties** shall have the meaning ascribed to such term in the Final DIP Financing Order.

141. **Senior DIP Deficiency Claim** means the Senior DIP Agent's Claim for unpaid fees and expenses as of the Effective Date, not to exceed $1,000,000.

142. **Settling Insurers** means (i) the underwriting members of Lloyd's Syndicate 1969 and 1971, (ii) Great American, and (iii) Lexington.

143. **Settling Insurers' Parties** means the Settling Insurers and: (i) each of their past, present and future parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies. related companies, divisions, joint ventures, and acquired companies; (iii) each of their respective past, present and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and managing agents, claims handling administrators, affiliates, insurers, reinsurers, and associated third-parties; and (iv) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or entities acting on behalf of, by, through or in concert with them.

144. **Subordinated Claims** means all claims subordinated by order of the Bankruptcy Court, by the terms of this Plan or by Final Judgment at any time prior to the entry of a Final Decree, including Intercompany Claims.

145. **Supplemental DIP Loan Order** means that certain *Order Granting Debtors' Expedited Supplemental Motion (i) Authorizing the Debtors to Obtain Postpetition Financing, (ii) Authorizing the Debtors to use Cash Collateral, (iii) Granting Adequate Protection to Senior Secured Lenders, (iv) Granting Liens and Superpriority Claims, and (v) Modifying the Automatic Stay on a Final Basis*, dated March 21, 2024 [ECF No. 506].

146. **Talon Causes of Action** means any of the Debtors' Claims and Causes of Action against Talon Auto Inc., et al., or as same may hereafter be amended.

147. **Talon Claims** means the Proofs of Claim filed by Scooter Removal LLC and against the Estates, including Claims Nos. 10449, 10450, 10452, 10453, and 10455, or as same may hereafter be amended.

148. **Talon Proceeds** means the proceeds, if any, of the Talon Causes of Action.

149. **Tax Code** means the United States Internal Revenue Code of 1986, as amended.

150. **Taxes** means all income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, excise, sales, use, employment, withholding, property, payroll or other taxes, assessments, or governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local or foreign governmental authority on or from the Debtors.

151. **Tort Claimant** means any Person or Entity holding or potentially holding a Tort Claim.

152.  **Tort Claim ADR Procedures** are the procedures described in Schedule 3 to the Underwriters' Insurance Settlement Agreement, which are incorporated as though fully set forth herein.

153.  **Tort Claims** means all Claims, whether asserted or unasserted, held by any Person or Entity against the Debtors, the Settling Insurers' Parties, the Purchaser Parties or any Person or Entity who may claim to be an Insured, Additional Insured, or otherwise claim to be entitled to coverage under any of the Insurance Policies or any Insurance Program for bodily or personal injury, tort claim, or property damage related to, or arising out of the use, placement, operation, transportation, renting, leasing, and/or recovery of the Debtors' micro-mobility vehicles and/or arising out of the operation of the Debtors' businesses.  Tort Claims include Municipal Claims but exclude the Talon Claims.  Notwithstanding the foregoing, Tort Claims do not include claims based on incidents involving automobiles that would otherwise be entitled to coverage under the Debtors' Auto Insurance Policies.

154.  **Tort Claims Administrator** means the Person selected by the Tort Claims Trustee subject to approval by the Bankruptcy Court after notice and a hearing who will analyze, assign relative values to, and allocate Trust Assets to holders of Tort Claims pursuant to the Tort Claim ADR Procedures.

155.  **Tort Claims Bar Date** means May 16, 2024, which was established by the Bankruptcy Court as the deadline for filing Tort Claims.

156.  **Tort Claims Trust** means the trust established by the Plan and the Trust Agreement for the benefit of Tort Claims and approved by the Confirmation Order.

157.  **Tort Claims Trust Agreement** means the trust agreement establishing the Tort Claims Trust which is Schedule 4 to the Underwriters' Insurance Settlement Agreement.

158.  **Tort Claims Trust Assets** means the Insurance Settlement Proceeds and interest thereon as well as a joint interest along with the Liquidating Trust in the Ford Indemnity Obligations and any related Retained Causes of Action against Ford Next LLC or its affiliates, predecessors, successors or assigns to the extent that the Ford Indemnity Obligations relate to Tort Claims.

159.  **Trust Documents** means the Tort Claims Trust Agreement and such additional documents as may be executed in connection with the Tort Claims Trust Agreement.

160.  **Tort Claims Trustee** means the Trustee of the Tort Claims Trust who shall be appointed by the Plan Confirmation Order.

161.  **Transition Services Agreement** means the Transition Services Agreement executed by the Debtors, as sellers, and the Purchaser at Closing.

162.  **Trust Election Date** means the date by which the Liquidating Trustee must, if necessary, elect to treat the relevant portion of the Liquidating Trust Assets subject to Disputed Claims as a "disputed ownership fund" pursuant to Treasury Regulation Section 1.468B-9.

163. **Underwriters' Insurance Settlement Agreement** *Settlement, Release and Policy Buyback Agreement* between the Debtors, Settling Insurers and the Purchaser attached as **Exhibit 1** to this Plan, as it may be amended by the Plan Confirmation Order solely with respect to the Settlement Amount, which will be revised to Eleven Million Dollars ($11,000,000.00).

164. **Underwriters' Policies** means the policies of insurance identified in Schedule 1 of the Underwriters' Insurance Settlement Agreement.

165. **U. S. Trustee** means the Office of the United States Trustee.

166. **Unimpaired** means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

1.2    Rules of Interpretation

(a)    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions and where indicated subject to the agreement of the parties thereto; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(b)    The provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

(c)    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

1.3    Exhibits

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth herein.  All exhibits and schedules to the Plan, shall be filed with the Clerk of the Bankruptcy Court not later than three (3) days prior to the deadline set by the Bankruptcy Court to vote to accept or reject the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtors' counsel by a written request sent to the following address:

Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Phone: 305-755-9500
Facsimile: 305-714-4340
ATTN: Paul Steven Singerman, Esquire
singerman@bergersingerman.com
Jordi Guso, Esquire
jguso@bergersingerman.com

**ARTICLE II**
**ADMINISTRATIVE, PRIORITY AND UNCLASSIFIED CLAIMS**

2.1     Administrative Claims in General

Except as provided in Sections 2.4, 3.2(b) and 3.2(c) below with respect to the treatment of Professional Compensation Claims, the Senior DIP Deficiency Claim and the Additional DIP Funding Claim, each Holder of an Allowed Administrative Expense Claim shall receive on account of the Allowed Administrative Expense Claim and in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Expense Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, as soon as practicable upon the earlier to occur of the Effective Date or ten (10) Business Days after the entry of a Final Order allowing such Administrative Expense Claim; *provided, however,* that Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases assumed by the Purchaser in accordance with the Asset Purchase Agreement shall be paid by the Purchaser in the ordinary course of business in accordance with the terms and conditions of any agreement or course of dealing relating thereto. Administrative Expense Claims must be filed on or before the Administrative Expense Claims Bar Date or shall be forever barred, waived and released.  Administrative Expense Claims are Unimpaired.

2.2     Superpriority Administrative Expense Claims under the Final DIP Financing Order

Except as provided in Section 3.2(b) and 3.2(c) below with respect to the Senior DIP Deficiency Claim and the Additional DIP Funding Claim, all Claims of the DIP Lenders under the Final DIP Financing Order were satisfied and released as of the Closing.

2.3     Cure Claims

Pursuant to the Asset Purchase Agreement, Cure Claims are an obligation of the Purchaser and have been or shall be paid by the Purchaser and not the Debtors.

2.4     Professional Compensation Claims

On or prior to the deadline set by the Bankruptcy Court for Professionals to file final fee applications, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Confirmation Hearing; *excluding, however*, Cassel Salpeter & Co., LLC, the Debtors' investment bankers, whose

12987629-3

compensation was approved in the Sale Order and paid by the Debtors at Closing and, therefore, is not required to file a final application for compensation. The Debtors shall pay the Allowed Professional Compensation Claims of each Professional up to the amounts in the Professional Funded Reserve Account in accordance with the Orders of the Bankruptcy Court and the Global Settlement Term Sheet, and as awarded by the Bankruptcy Court and payable pursuant to Section 7.1(b) of the Plan. From and after the Confirmation Date until the Effective Date, the Debtors, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period, up to the amount in the Professional Funded Reserve Account; *provided, however*, that any Excess Professional Fee Claims may be paid from proceeds of Excluded Assets in accordance with the Distribution Waterfall.

2.5    Priority Tax Claims

To the extent not previously paid or expressly assumed by the Purchaser pursuant to the Asset Purchase Agreement and/or the Global Settlement Term Sheet, the Debtors or the Liquidating Trustee, as applicable, shall pay each holder of an Allowed Priority Tax Claim, in satisfaction of such Allowed Priority Tax Claim, the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the later of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; *provided, however*, that the Debtors shall not pay any premium, interest or penalty in connection with such Allowed Priority Tax Claim.

2.6    Statutory Fees

Notwithstanding any other provisions of the Plan to the contrary, the Debtors shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within fifteen (15) days of the entry of the Plan Confirmation Order, for pre-confirmation periods and simultaneously file all the Monthly Operating Reports for the relevant periods, indicating the disbursements for the relevant period.

In addition, the Liquidating Trustee shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Liquidating Trustee until the earlier of the closing any Chapter 11 Case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing any Chapter 11 Case or converting any Chapter 11 Case to another chapter under the United States Bankruptcy Code. The Liquidating Trustee shall provide to the U.S. Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, consolidated, Post-Confirmation Quarterly Operating reports indicating all the combined disbursements for the relevant period.

Notwithstanding anything in the Plan or the Plan Confirmation Order to the contrary, no statutory fees shall be assessed or be payable on any Distributions made by the Tort Claims Trustee after the Effective Date, including Distributions to the holders of Tort Claims.

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

3.1    Summary

(a)    In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims, as described in ARTICLE II.

(b)    A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and Distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

(c)    The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, tabulating votes, and making Distributions with respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of any Debtor's business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, constitute a substantive consolidation of any of the Debtors, or cause the transfer of any assets.  Except as otherwise provided by or permitted under the Plan, all Debtors continue to exist as separate legal entities.

(d)    Holders of Allowed Claims or Allowed Interests may assert such Claims against or Interests in the Debtors obligated with respect to such Claims or Interest, and such Claims and Interests shall be entitled to share in the recovery provided for the applicable Claim against or Interest in the Debtors based upon the full Allowed amount of such Claims or Interests. Notwithstanding the foregoing, the holder of such a Claim or Interest that asserts such Claim against or Interest in more than one Debtor shall be entitled only to a single Distribution on account of such Claim or Interest.

(e)    Summary of Classification and Treatment of Classified Claims and Equity Interests.

| Class | Claim | Status | Entitled to Vote? |
|:---:|:---:|:---:|:---|
| 1 | Other Priority Claims | Unimpaired | No; Deemed to Accept the Plan. |
| 2 | Senior DIP Deficiency Claim | Impaired | Yes. |
| 3 | Additional DIP Funding Claim | Impaired | Yes. |
| 4 | Miscellaneous Secured Claims | Impaired | Yes. |
| 5 | General Unsecured Claims | Impaired | Yes. |
| 6 | Tort Claims | Impaired | Yes. |
| 7 | Subordinated Claims | Impaired | Yes. |
| 8 | Equity Interests | Impaired | No. Deemed to Reject the Plan. |

12987629-3

3.2     Classification and Treatment of Claims and Equity Interests

(a)     **Other Priority Claims (Class 1)**

(i)     **Classification**: Class 1 consists of Other Priority Claims.

(ii)     **Treatment**: Except to the extent that a holder of an Allowed Other Priority Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable classification and treatment, each holder of an Allowed Other Priority Claim shall receive the full unpaid amount of such Allowed Other Priority Claim in Cash, on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such Allowed Other Priority Claim becomes Allowed or as soon as practicable thereafter, and (iii) the date such Allowed Other Priority Claim is payable under applicable non-bankruptcy law; *provided, however*, that the Debtors shall not pay any premium, interest or penalty in connection with such Allowed Other Priority Claim. Distributions to the Holders of Allowed Claim 1 Claim shall be made from the Priority Claims Reserve.

(iii)     **Voting**: Class 1 is Unimpaired, and therefore, the holders of Other Priority Claims in Class 1 are not entitled to vote to accept or reject the Plan.

(b)     **Senior DIP Deficiency Claim (Class 2)**

(i)     **Classification**: Class 2 consists of the Senior DIP Deficiency Claim.

(ii)     **Treatment**: Senior DIP Deficiency Claim is deemed allowed in the amount of reasonably documented unreimbursed fees and expenses not to exceed $1,000,000. The Holder of the Senior DIP Deficiency Claim shall provide such documentation to the Liquidating Trustee within 30 days of the Effective Date. Subject to and in accordance with the Distribution Waterfall, after payment of the Excess Professional Fee Claims and the Additional DIP Funding Claim, the Holder of the Allowed Senior DIP Deficiency Claim shall receive fifty percent (50%) of the Talon Proceeds, if any, until the Allowed Senior DIP Deficiency Claim is paid in full. The foregoing Distributions shall be made on the Effective Date or as soon as practicable thereafter. Notwithstanding anything in the Final DIP Financing Order to the contrary, as of the Effective Date the Holder of the Senior DIP Deficiency Claim shall not receive or retain any other property under the Plan.

(iii)     **Voting**: Class 2 is Impaired and is entitled to vote to accept or reject the Plan.

(c)     **Additional DIP Funding Claim (Class 3)**

(i)     **Classification**: Class 3 consists of the Additional DIP Funding Claim.

(ii)     **Treatment**: The Class 3 Additional DIP Funding Claim is deemed Allowed in the amount of $2,220,000. Subject to and in accordance with the Distribution Waterfall, the Holder of the Allowed Additional DIP Funding Claim shall receive a Pro Rata share of the proceeds, if any, of the Liquidating Trust Assets (net of expenses) until such time as the

Allowed Additional DIP Funding Claim plus interest as set forth herein is paid in full.  The foregoing distributions shall be made on the Effective Date or as soon as practicable thereafter.

(iii)    **Voting**: Class 3 is Impaired and is entitled to vote to accept or reject the Plan.

(d)    **Miscellaneous Secured Claims (Class 4)**

(i)    **Classification:** Class 4 consists of Miscellaneous Secured Claims.

(ii)    **Treatment**: The Liens securing each Class 4 Claim are junior and subordinate to the Liens and Claims of the Prepetition First Lien Parties, the Prepetition Second Lien Parties, the Senior DIP Parties, the Junior DIP Parties and the Junior DIP Agent.  Accordingly, each Allowed Class 4 Claim is deemed unsecured and will be treated as a Class 5 General Unsecured Claim.

(iii)    **Voting**: Class 4 is Impaired and, therefore, the holders of Miscellaneous Secured Claims in Class 4 are entitled to vote to accept or reject the Plan.

(e)    **General Unsecured Claims (Class 5)**

(i)    **Classification**: Class 5 consists of General Unsecured Claims.

(ii)    **Treatment**: Except to the extent that a holder of an Allowed General Unsecured Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable classification or treatment of such claim, each holder of an Allowed General Unsecured Claim shall receive subject to and in accordance with the Distribution Waterfall (x) fifty percent (50%) of the Talon Proceeds, if any, until the Allowed Senior DIP Deficiency Claim is paid in full, then one hundred percent (100%) of any additional Talon Proceeds, plus (y) its Pro Rata share of the proceeds of remaining Liquidating Trust Assets (net of expenses) other than Talon Proceeds. The foregoing distributions shall be made on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such General Unsecured Claim becomes Allowed or as soon as practicable thereafter, and (iii) the date such Allowed General Unsecured Claim is payable under applicable non-bankruptcy law; *provided, however*, that neither the Debtors nor the Liquidating Trustee shall pay any premium, interest or penalty in connection with such Allowed General Unsecured Claim.

(iii)    **Voting**: Class 5 is Impaired and, therefore, the holders of Allowed General Unsecured Claims in Class 5 are entitled to vote to accept or reject the Plan.

(f)    **Tort Claims (Class 6)**

(i)    **Classification**: Class 6 consists of the Tort Claims.

(ii)    **Treatment**: Tort Claims in Class 6 shall be treated in accordance with one of the following alternatives:

12987629-3

(1)     Subject to the Bankruptcy Court's approval of the Insurance Settlement Agreements, the Plan establishes the Tort Claims Trust for the benefit of holders of Allowed Tort Claims, which claims are and shall be channeled to the Tort Claims Trust pursuant to Section 13.6 hereof.  If the Bankruptcy Court approves the Insurance Settlement Agreements, each holder of a Tort Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its claim against the Debtors or any of the Insurance Settlement Released Parties, a Distribution of the Tort Claims Trust Assets by the Tort Claims Trustee, in accordance with this Plan, the Tort Claims Trust Agreement and the Tort Claim ADR Procedures.  In no event shall a holder of a Tort Claim be entitled to any other or further recovery from or against any of the Debtors or the Insurance Settlement Released Parties or any of their property or assets; or

(2)     If the Bankruptcy Court does not approve the Insurance Settlement Agreements, (A) then the Channeling Injunction and Bar Order contained in Sections 13.6 and 13.9 of the Plan, respectively, and the Releases contained in Sections 13.7(a)(2) and 13.7(c), and the Insurance Settlement Agreements, shall be of no force and effect; and (B) notwithstanding the injunction contained in Section 13.10 of the Plan and the Plan Confirmation Order, sixty (60) days after the Effective Date (or such later date as determined by the Bankruptcy Court following notice and a hearing), holders of Tort Claims in Class 6 shall be permitted to pursue their Tort Claims against the Debtors solely to the extent of available insurance, if any, and as against any non-debtor.  In no event shall a holder of a Tort Claim be entitled to any other or further recovery from or against any of the Debtors.

(iii)    **Voting**: Class 6 is Impaired and, therefore, the holders of Tort Claims in Class 6 are entitled to vote to accept or reject the Plan.

(g)     **Subordinated Claims (Class 7)**

(i)     **Classification**: Class 7 consists of Subordinated Claims.

(ii)    **Treatment**: Except to the extent that a holder of a Subordinated Claim agrees to a less favorable classification and treatment, each holder of a Subordinated Claim shall receive its Pro Rata share of the net proceeds of Excluded Assets, if any, remaining after the making of the payments set forth in ARTICLE II and ARTICLE III, Section 3.2(a) through 3.2(e) of this Plan, inclusive.  Distributions to Holders of Claims in Class 7 shall be made only after Claims in Classes 1 through 6 of this Plan, inclusive, have been paid in full.

(iii)    **Voting**: Class 7 is Impaired and, therefore, is entitled to vote to accept or reject the Plan.

(h)     **Equity Interests (Class 8)**

(i)     **Classification**: Class 8 consists of Equity Interests.

(ii)    **Treatment**: The holders of Equity Interest shall not receive nor retain any property under the Plan.  Class 8 Equity Interests shall be extinguished as of the Effective Date of the Plan.

(iii)    **Voting**: Class 8 is Impaired and is deemed to have rejected the Plan.

# ARTICLE IV
# ACCEPTANCE, REJECTION, AMENDMENT AND
# REVOCATION OR WITHDRAWAL OF THE PLAN

4.1     Classes Entitled to Vote

Each holder of a Claim, as of the Record Date, in an Impaired Class, other than those Classes that are deemed to reject the Plan, shall be entitled to vote to accept or reject the Plan, subject to applicable law.  Class 1 is deemed to have accepted the Plan.  Votes from holders of Claims in Classes 2, 3, 4, 5, 6 and 7 will be solicited as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.  Class 8, Equity Interests, is deemed to reject the Plan and, therefore, the vote in Class 8 will not be solicited.

4.2     Acceptance by Class of Claims

Impaired Class of Claims shall be deemed to accept the Plan if (a) holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity or any Affiliate thereof shall be aggregated and treated as one Allowed Claim in such Class.  For purposes of any Claim in any Impaired Class that is Disputed as to its amount only, the holder of such claim shall be entitled to vote on the Plan as if such holder held an Allowed Claim in an amount equal to the undisputed portion of such Claim.

4.3     Nonconsensual Confirmation

In the event that any Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1129(a) of the Bankruptcy Code, the Debtors reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, or (b) alter, amend or modify the Plan in accordance with ARTICLE XIV.  The Debtors shall exercise the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

4.4     Revocation or Withdrawal; No Admissions

*Right to Revoke or Withdraw*.  Subject to the limitations contained in the Insurance Settlement Agreement, the Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtors in their sole discretion.

*Effect of Withdrawal or Revocation; No Admissions*.  If the Debtors revokes or withdraws the Plan or if entry of the Plan Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or

agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of either of the Debtors or any other Entity; or (c) constitute an admission of any sort by either of the Debtors or any other Entity.

### 4.5    Claims Paid and Payable by Third Parties

A Claim shall be disallowed without an objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, (i) to the extent that the Claim is an Assumed Liability under the Asset Purchase Agreement, or (ii) to the extent the holder of such Claim receives payment in full in cash on account of such Claim from a party that is not the Debtors, Liquidating Trustee or the Tort Claims Trustee of the Tort Claims Trust.  To the extent that a holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor, Liquidating Trustee or the Tort Claims Trustee of the Tort Claims Trust on account of such Claim, such holder shall repay, return, or deliver any Distribution held by or transferred to the holder to the applicable Debtor, Liquidating Trustee or the Tort Claims Trustee of the Tort Claims Trust to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Allowed Claim as of the date of any such Distribution.

### 4.6    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 5.1    Joint Chapter 11 Plan

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor.  In consideration for the classification, Distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action and controversies resolved pursuant to the Plan.  The entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, Causes of Action and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests is fair, equitable and is within the range of reasonableness.  Distributions made to Holders of Allowed Claims are intended to be indefeasible.

5.2      <u>Means for Implementation of Plan and Source of Funding for Distributions</u>

The Plan will be implemented through receipt of (a) the Plan Cash which shall be used by the Liquidating Trustee to begin the administration of the Plan; (b) the Priority Claims Reserve which shall be used to make Distributions to the holders of Allowed Priority Claims; (c) the remaining Additional DIP Funding; (d) proceeds of the Talon Claim and Excluded Assets which shall be used to make Distributions to the Holders of Allowed Claims in Classes 2, 3, 4, 5 and 7, as provided in the Plan; and (e) the proceeds of the Insurance Settlement Agreement which shall be used to fund the Tort Claims Trust for the benefit of Holders of Allowed Claims in Class 6.

5.3      <u>Corporate Action</u>

All actions contemplated to be performed by the Debtors pursuant to the Plan, or any corporate action to be taken by or required of the Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the shareholders, partners, members or managers of the Debtors. All Persons, the Liquidating Trustee, Governmental Units, title agencies, licensing agencies and offices of recordation may rely upon the authority vested in the Debtors' officers, or managers to act on the Debtors' behalf in order to effectuate the Plan and the transactions contemplated herein.

5.4      <u>Post-Effective Date Governance of the Debtors</u>

Effective as of immediately prior to the Effective Date, automatically and without further action, each existing member of the board of managers or directors of the Debtors, as applicable, will be deemed to have resigned or will be deemed to have been terminated. Each Debtor shall be deemed to have issued one share or one member interest, as applicable, to be held nominally by the Liquidating Trustee for purposes of administering the Plan.

On and after the Effective Date, (a) the Liquidating Trustee, in substitution for the management and the board of managers of the Debtors, shall be authorized and empowered, without action of the Debtors' respective members, or boards of managers, or managers (if any), to take any and all such actions as the Liquidating Trustee may determine are necessary or appropriate in the Liquidating Trustee's business judgment to implement, effectuate, consummate and perform any and all actions, documents, or transactions contemplated by the Plan or the Confirmation Order as reasonably required to implement the Plan and the wind up the Debtors subject to the terms of this Plan, and (b) the Liquidating Trustee shall act for the Debtors in the same fiduciary capacity as applicable to the board of managers or board of directors of the Debtors existing immediately prior to the Effective Date. Prior to the Effective Date, one or more of the Debtors may provide the Liquidating Trustee with one or more Debtor's Power of Attorney. On and after the Effective Date, the Liquidating Trustee may elect such additional managers, directors and officers as the Liquidating Trustee deems necessary to implement the Plan and the actions contemplated in the Plan. The Liquidating Trustee shall also have the sole and exclusive power to act by written consent, including to appoint or remove any directors, managers or officers at any time with or without cause.

# ARTICLE VI
# LIQUIDATING TRUST

### 6.1    Establishment of Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established and become effective for the benefit of the Liquidating Trust Beneficiaries.  The powers, authority, responsibilities, and duties of the Liquidating Trust, and the Liquidating Trustee are set forth in and shall be governed by the Plan and the Liquidating Trust Agreement.  The Liquidating Trust Agreement shall provide for the Distribution of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries.  In the event of any conflict between the terms of this ARTICLE VI and the terms of a Liquidating Trust Agreement as such conflict relates to the establishment of a Liquidating Trust, the terms of this ARTICLE VI shall govern.  The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

### 6.2    Purpose of Liquidating Trust

The Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Rev. Proc.  94-45, 1994-2 C.B. 684, for, among other purposes, the purpose of (i) receiving and holding the Liquidating Trust Assets; (ii) administering, disputing, objecting to, compromising, or otherwise resolving all Disputed  Claims; (iii) making Distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement; d (iv) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treasury Regulation Section 301.7701-4(d).  The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.  Subject to the DOF Election, the Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes within the meaning of sections 671 through 679 of the Tax Code and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as the sole grantors and owners of the Liquidating Trust.  To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).  To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

Except as otherwise provided in the Plan or the other Plan Documents, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all of the Excluded Assets shall vest in in the Liquidating Trustee free and clear of all Liens, Claims, charges, or other encumbrances.  All privileges with respect to the property of the Estates, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Liquidating Trustee.

6.3    Liquidating Trust Assets

The Liquidating Trust shall consist of Liquidating Trust Assets. On the Effective Date, and in accordance with sections 1123 and 1141 of the Bankruptcy Code, all title and interest in all of the Excluded Assets, which constitute all assets of the Debtors that have not been distributed on or prior to the Effective Date, sold and conveyed pursuant to the Sale Transaction, or contributed to the Tort Claims Trust on the Effective Date, shall irrevocably and automatically vest in the Liquidating Trust, free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or Liquidating Trust. Upon delivery of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their respective predecessors, successors and assigns, shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust in accordance with this Section 6.3. For all U.S. federal income tax purposes, and subject to the DOF Election described in Section 6.6(h) below, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, to the maximum extent provided by section 1146(a) of the Bankruptcy Code. In connection with the transfer of such Liquidating Trust Assets, any attorney client privilege, work product privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust and its representatives, and the Debtors and the Liquidating Trustee are directed to take all necessary actions to effectuate the transfer of such privileges. The Liquidating Trustee shall agree to accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the terms of the Plan and the Liquidating Trust Agreement. The Debtors, the Liquidating Trustee, and any party under the control of such parties will execute any documents or other instruments and shall take all other steps as necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust.

6.4    Non-Transferability of Liquidating Trust Interests

The Liquidating Trust Interests shall be non-transferable other than if transferred by will, intestate succession or otherwise by operation of law.

6.5    Administration of Liquidating Trust

The Liquidating Trust shall be administered by the Liquidating Trustee pursuant to the Liquidating Trust Agreement and the Plan. In the event of an inconsistency between the Plan and

a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

6.6    Liquidating Trustee

(a)    *Appointment of the Liquidating Trustee*

The Liquidating Trustee shall be selected by the Committee in consultation with the Debtors.  Upon the occurrence of the Effective Date, the Liquidating Trustee shall also be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee, subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable.

(b)    *Liquidating Trustee as Representative of the Estate*

From and after the Effective Date, the Liquidating Trustee shall act as the exclusive representative of the Estate for all purposes; *excluding, however*, all matters involving the funding and administration of the Tort Claims Trust which shall be administered exclusively by the Tort Claims Trustee in accordance with the Plan and the Tort Claims Trust Documents.  Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of this Plan and the Liquidating Trust Agreement.

(c)    *Responsibilities and Authority of the Liquidating Trustee*

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following rights and responsibilities, which shall be the exclusive rights and responsibilities of the Liquidating Trustee: (i) preserving and liquidating the Liquidating Trust Assets; (ii) administering and paying taxes for the Liquidating Trust, including, among other things, (A) filing tax returns for the Liquidating Trust, and (B) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (iii) retaining and paying, without the need for retention or fee applications, professionals in connection with the Liquidating Trustee's performance of its duties under this Plan and the Liquidating Trust Agreement; (iv) distributing information statements as required for U.S. federal income tax and other applicable tax purposes to the Liquidating Trust Beneficiaries; (v) filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; (vi) making Distributions to Liquidating Trust Beneficiaries in accordance with the Plan and Liquidating Trust Agreement; (vii) objecting to, reconciling, seeking to subordinate, compromising, defending or prosecuting any Retained Causes of Action, or settling all Claims as set forth herein; (viii) making Distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and Liquidating Trust Agreement; (ix) requesting an expedited determination of taxes, including with respect to any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code; and (x) such other

responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan and the Liquidating Trust Agreement, or an order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of this Plan.

(d)    *Powers of the Liquidating Trustee*

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement, in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein, *provided however*, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of this Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by this Plan.

The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following: (i) the power to invest funds of the Liquidating Trust (in demand and time deposits, or other temporary, liquid investments, except as otherwise determined to be reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the Liquidating Trust), and withdraw, make Distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with this Plan and the Liquidating Trust Agreement; (ii) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; or (iii) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, or by an order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of this Plan.

On and after the Effective Date, the Liquidating Trustee shall take commercially reasonable actions as required, consistent with applicable non-bankruptcy law and consistent with the implementation of the Plan, and when appropriate in the discretion of the Liquidating Trustee, to dissolve, liquidate, strike off or take such other similar action with respect to each Debtor (including the cancellation of all Interests in a Debtor pursuant to the Confirmation Order) and complete the winding down of such Debtor as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Debtor or its shareholders or members, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities or complying with the laws and procedures governing the winding down of any such Debtor; *provided, however*, that the foregoing does not limit the Liquidating Trustee's ability to otherwise abandon an Interest in a Debtor.  The Liquidating Trustee may, to the extent required by applicable non-bankruptcy law, maintain a Debtor as a limited liability company or corporation, as applicable, in good standing until such time as all aspects of the Plan pertaining to such Debtor and the winding down of such Debtor is complete.

12987629-3

(e)    *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee (and any Liquidating Trustee's retained professionals) shall not be required to file a fee application to receive compensation.

(f)    *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without Bankruptcy Court approval, to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.  For the avoidance of doubt, the Liquidating Trust can retain any professional currently retained by the Creditors' Committee.

(g)    *Liquidating Trust Expenses*

The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Liquidating Trust expenses.  All Liquidating Trust expenses shall be charged against and paid from the Liquidating Trust Assets.

(h)    *DOF Election*

The Liquidating Trust Agreement shall require the Liquidating Trustee to elect to treat that portion of the Liquidating Trust Assets subject to the Disputed Claims as a disputed ownership fund described in Treasury Regulation Section 1.468B-9 (the "<u>DOF Election</u>") unless, as of the Trust Election Date, either all of the Liquidating Trust Assets subject to Disputed Claims have been distributed to the Liquidating Trust Beneficiaries or the percentage of the Liquidating Trust Assets subject to Disputed Claims distributable to each of the Liquidating Trust Beneficiaries has become fixed and determinable.

6.7    <u>Cash Investments</u>

The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

6.8    <u>No Revesting of Liquidating Trust Assets</u>

No Liquidating Trust Asset will revest in any Debtor on or after the date such asset is transferred to the Liquidating Trust, but will vest upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement.

12987629-3

6.9     Distribution of Liquidating Trust Assets

The Liquidating Trustee shall distribute to the Liquidating Trust Beneficiaries on account of their Liquidating Trust Interests on a semi-annual basis or with such other frequency as the Liquidating Trustee determines in the exercise of its business judgment, Cash representing its net income plus all net proceeds from the sale of its assets (including any Cash received from the Debtors and treating any permissible investment as Cash for purposes of this Section 6.9), less such amounts that may be reasonably necessary to (i) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (ii) pay reasonably incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iii) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; *provided*, *however*, that such Liquidating Trustee shall not be required to make a Distribution pursuant to this Section 6.9 of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable. The Liquidating Trustee shall make Distributions from the segregated Liquidating Trust Assets for the benefit of the holders of Allowed Administrative Expenses in accordance with the Plan or the Liquidating Trust Agreement.  Notwithstanding anything herein to the contrary, the Liquidating Trustee shall comply with the Distribution Waterfall in connection with any Distributions to be made hereunder.

6.10    Liquidating Trust Mechanics

(a)     *Federal Income Tax Treatment of Liquidating Trust*

The U.S. federal income tax classification of the Liquidating Trust will be determined pursuant to subsection (b) and/or (c) below, as applicable.

(b)     *Disputed Claims Resolved Before Trust Election Date*

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), for all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (i) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (ii) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for the related Liquidating Trust Interests.  Subject to Section 6.11; (i) the Liquidating Trust is structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" for U.S. federal income tax purposes within the meaning of Sections 671 through 679 of the Tax Code to the Liquidating Trust Beneficiaries, consistent with the terms of the Plan, and the Liquidating Trust Agreement shall provide as such; (ii) Liquidating Trust Beneficiaries shall be treated as the beneficiaries and grantors of the Liquidating Trust; (iii) the sole purpose of the Liquidating Trust shall be the liquidation and

Distribution of the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), including the resolution of Allowed Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iv) all parties (including the Debtor, Liquidating Trust Beneficiaries, and the Liquidating Trustee) shall report consistently with such treatment (including the deemed receipt of the Liquidating Trust Assets, subject to applicable liabilities and obligations, by the Liquidating Trust Beneficiaries, followed by the deemed transfer of such Liquidating Trust Assets to the Liquidating Trust); (v) all parties shall report consistently for federal income tax purposes, and otherwise, with the valuation (as determined pursuant to Section 6.101 below) of the Liquidating Trust Assets transferred to the Liquidating Trust as determined by the Liquidating Trustee (or its designee); (vi) the Liquidating Trustee shall be responsible for filing returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a); (vii) the Liquidating Trustee shall annually send to each Liquidating Trust Beneficiary a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes; and (viii) all items of income, deductions and credit loss of the Liquidating Trust shall be allocated for federal income tax purposes to the Liquidating Trust Beneficiaries based on their respective interests in the Liquidating Trust, in such manner as the Liquidating Trustee deems reasonable and appropriate. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. For the purpose of this Section 6.10(b), the terms "party" and "Liquidating Trust Beneficiary" shall not include the United States or any agency or department thereof, or any officer or employee thereof acting in such capacity.

(c)     <em>Disputed Claims Unresolved by Liquidating Trust Election Date</em>

If all Disputed Claims have not been resolved by the Trust Election Date, then the Liquidating Trustee will elect to treat that portion of the Liquidating Trust Assets subject to the Disputed Claims as a "disputed ownership fund" as described in and governed by Treasury Regulation Section 1.468B-9, and all impacted parties (including the Debtor, and solely to the extent applicable, Liquidating Trust Beneficiaries, and the Liquidating Trustee), solely with respect to the impacted assets, shall report for United States federal, state, and local income tax purposes consistently with such election. The Liquidating Trustee shall file all income tax returns with respect to any income attributable to the disputed ownership fund and shall pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto. Any taxes imposed on the disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund (including any assets of the Liquidating Trust allocable to Disputed Claims) and any subsequent Distributions in respect of the allowance or disallowance of such claims will be reduced accordingly. In the event, and to the extent, that any Cash in any disputed ownership fund is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the disputed ownership fund, assets of the disputed ownership fund (including those otherwise distributable) may be sold to pay such taxes. The undisputed portion of the Liquidating Trust Assets will be treated as held in a grantor trust, with deemed Distribution to and contribution from the Liquidating Trust Beneficiaries, as described in the immediately preceding paragraph.

To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

6.11   Tax Reporting

(a)     Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidating Trust) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than, if applicable, assets allocable to Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust.  Similarly, taxable loss of a Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating Distribution of the remaining Liquidating Trust Assets.  The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(b)     As soon as reasonably practicable after the Liquidating Trust Assets are transferred to a Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets.  Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

6.12   Dissolution

(a)     The Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and a Liquidating Trust Agreement, or (ii) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit; *provided*, *however*, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating Trust pursuant to this Section 6.12 of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(b)    If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, (i) that the expense of administering a Liquidating Trust so as to make a final Distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, (ii) all Allowed Claims (other than those whose Distributions are deemed undeliverable under the Plan) have been paid in full, or (iii) the amount of any final Distributions to holders of Allowed Claims would be $100.00 or less and the aggregate amount of Cash available for Distributions to holders of Allowed General Unsecured Claims is less than $25,000.00, then, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (a) reserve any amount necessary to dissolve such Liquidating Trust, (b) donate any balance to one or more of the following organizations (each of which qualifies as a Tax Code section 501(c)(3) tax-exempt organization): (1) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (2) Legal Services of Greater Miami, Inc., and (c) dissolve such Liquidating Trust.

(c)    The Liquidating Trustee shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100.00; *provided that*, if any Distribution is not made pursuant to this Section 6.12(c) of the Plan, such Distribution shall be added to any subsequent Distribution to be made on behalf of such holder's Allowed Claim.  If either (i no further Distribution shall be made by the Liquidating Trustee and any surplus Cash shall be donated and distributed to one or more of the following organizations (each of which qualifies as a tax-exempt organization under Section 501(c)(3) of the Tax Code), (a) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (b) Legal Services of Greater Miami, Inc.

### 6.13   Post-Effective Date Reporting

No later than the 20th day of the month following the end of each calendar quarter, the Liquidating Trustee shall File with the Bankruptcy Court and serve on the Office of the United States Trustee quarterly reports summarizing the Post-Confirmation receipts received and disbursements made by the Liquidating Trustee in the prior quarter.

### 6.14   Effectuating Documents; Further Transactions

(a)    On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 6.15   Withholding and Reporting Requirements

(a)    *Withholding Rights.*  In connection with the Plan, to the extent applicable, the Liquidating Trustee and/or any party issuing any instrument or making any Distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Any

amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a Distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such Distribution. Any party issuing any instrument or making any Distribution pursuant to the Plan has the right, but not the obligation, to not make a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations, including requiring as a condition to the receipt of a Distribution, the compliance with Section 6.15(b) below. The Liquidating Trustee reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. Additionally, in the case of a non-Cash Distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (a) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (b) pay the withholding tax using its own funds and retain such withheld property.

(b)    *Forms.*    Any party entitled to receive any property as an issuance or Distribution under the Plan shall, upon request, deliver to the Liquidating Trustee or such other Person designated by the Liquidating Trustee (which Entity shall subsequently deliver to the Liquidating Trustee any such forms received) an executed IRS Form W-9 or (if the payee is a foreign Person) the appropriate IRS Form W-8 (including all relevant attachments). If such request is made by the Liquidating Trustee or such other Person designated by the Liquidating Trustee and the holder fails to comply before the date that is 90 calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the Liquidating Trustee and, the holder shall be forever barred from asserting any right to such Distribution against any Debtors, the Debtors' Estates and the Liquidating Trustee.

6.16    Exemption From Certain Transfer Taxes

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, (i) the issuance, Distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors, (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, or (iii) any sale by any Debtor consummated post-Confirmation, and any other transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales tax, use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

12987629-3

6.17    Preservation of Retained Causes of Action

**The Debtors expressly reserve any and all Retained Causes of Action**.  **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtors, the Liquidating Trustee, or the Tort Claims Trustee, as applicable, will not pursue any and all available Retained Causes of Action against them.**

Except as otherwise provided in the Plan or a Final Order of the Bankruptcy Court, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Retained Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that each Debtor had immediately prior to the Effective Date on behalf of the respective Debtor's Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Retained Causes of Action against parties with a relationship with the Debtor, other than the Released Parties.

On and after the Effective Date, the Liquidating Trustee or the Tort Claims Trustee, as applicable, shall have standing to and may pursue such Retained Causes of Action.

Subject to the Sale Order, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent, notice to or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court subject to the terms of this Plan; *provided that*, the Tort Claims Trustee shall have a joint interest in Retained Causes of Action related to the Ford Indemnity Obligations. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

6.18    Closing of the Chapter 11 Cases

After the Chapter 11 Cases of the Debtors have been fully administered, and all Disputed Claims have become Allowed or disallowed and all remaining Cash has been distributed in accordance with the Plan, the Liquidating Trustee shall promptly seek authority from the Bankruptcy Court to close the Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

6.19    Notice of Effective Date

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors or the Liquidating Trustee shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

## ARTICLE VII
## TORT CLAIMS TRUST

7.1    Purpose and Funding of the Tort Claims Trust

(a)    Purpose.  The Tort Claims Trust shall be established for the purposes of assuming any and all liability of the Insurance Settlement Released Parties for Tort Claims, which are and shall be channeled exclusively to the Tort Claims Trust pursuant to Section 13.6 hereof, receiving the Tort Claims Trust Assets from the Debtors, and distributing the Tort Claims Trust Assets to holders of Tort Claims pursuant to the Tort Claims Trust Agreement and the Tort Claim ADR Procedures.

(b)    Funding.  On the Effective Date, after the payment of fees assessed pursuant to 28 U.S.C. § 1930(a)(6) as provided in Section 2.6 of this Plan and any Professional Compensation Claims incurred in connection with obtaining Bankruptcy Court approval of the Insurance Settlement Agreements as may be awarded by the Bankruptcy Court, the Debtors shall deliver the Insurance Settlement Proceeds plus any interest thereon to the Tort Claims Trustee which shall constitute the Tort Claims Trust Assets.

7.2    Establishment of Tort Claims Trust; Conflict With Plan or Plan Confirmation Order

(a)    On the Confirmation Date, the Tort Claims Trust shall be established pursuant to the Tort Claims Trust Agreement and the Trust Documents. The Tort Claims Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Debtors is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Tort Claims Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3).

(b)    The Tort Claims Trust Agreement and the Trust Documents are incorporated herein by reference.  In the event of any conflict between the Tort Claims Trust Agreement and the Trust Documents, on the one hand, and the Plan or the Plan Confirmation Order, on the other hand, the Tort Claims Trust Agreement and the Trust Documents shall control; provided, however, that in the event of any conflict between the Tort Claims Trust Agreement and the Trust Documents, on the one hand, and the Insurance Settlement Agreements or the Plan provisions incorporating and implementing the Insurance Settlement Agreements, on the other hand, the Insurance Settlement Agreements and the Plan provisions incorporating and implementing the Insurance Settlement Agreements shall control.

7.3    Distributions and Payments from the Tort Claims Trust

(a)    General Corpus.  The following Distributions and payments will be made from the Tort Claims Trust Assets:

(i)    Distributions.  Distributions on Class 6 Claims as determined by the Tort Claims Trustee in accordance with the Tort Claims Trust Agreement, and the Tort Claim ADR Procedures.

12987629-3

(ii)     <u>Administrative Fees</u>.  All fees, costs and expenses of administering the Tort Claims Trust as provided in the Plan and the Tort Claims Trust Agreement including: (i) as reasonably necessary to meet current and estimated future liabilities of the Tort Claims Trust and/or the Tort Claims Trustee and to maintain the value of the Tort Claims Trust Assets; (ii) to pay reasonable administrative expenses (including any taxes imposed on the Tort Claims Trust and any professional fees of the Tort Claims Trustee and his Professionals); (iii) the fees and costs of the Tort Claims Administrator;  and (iv) to satisfy other liabilities incurred by the Tort Claims Trust in accordance with the Plan or the Tort Claims Trust Agreement.  The fees and costs of the Liquidating Trustee or any Professional of the Liquidating Trustee shall not be paid by the Tort Claims Trust or Tort Claims Trust Assets.

(iii)     <u>Indemnity</u>.  The Tort Claims Trust's obligations to defend, indemnify or hold harmless any Person are expressly set out in the Plan and/or the Tort Claims Trust Agreement.

7.4     <u>Tax Matters; Medicare/Medicaid/SSA Reporting and Set-Asides</u>

(a)     The Tort Claims Trust shall not be deemed to be the same legal Entity as the Debtors, but only the assignee of certain assets of the Debtors and a representative of the Estate for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code. The Tort Claims Trust is expected to be tax exempt. The Tort Claims Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq., as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 et seq., and Florida law and the regulations promulgated thereunder, and shall pay from the Tort Claims Trust Assets all taxes, assessments, and levies upon the Tort Claims Trust, if any.

(b)     Before making any Distribution of Tort Claims Trust Assets to any Beneficiary of the Tort Claims Trust, the Tort Claims Trustee shall (i) obtain written certification from the Tort Claimant to receive such a Distribution or their counsel that: (a) he or she has complied with reporting, and if necessary established any set-asides, required by applicable federal, state and local laws and regulations regarding settlements with minors and Medicare/Medicaid/SSA with respect to such Tort Claimant; (b) the Tort Claimant acknowledges that Medicare's interests in reimbursement for any incurred medical expenses that have been paid by Medicare have either already been satisfied and Medicare has acknowledged such satisfaction or will be satisfied from the Distribution of Tort Claims Trust Assets to the Tort Claimant; (c) satisfaction of Medicare's interests from the Distribution of Tort Claims Trust Assets to the Tort Claimant shall be the sole and exclusive responsibility of each individual Tort Claimant and each individual Tort Claimant agrees to provide proof of such satisfaction to the Tort Claims Trustee upon request; (d) each Tort Claimant agrees that the duties of each Tort Claimant stated in this paragraph are non-delegable and failure to perform such duties shall provide the Insurance Settlement Released Parties with a right to recover any monies paid caused by the failure to satisfy Medicare's interests including any additional expenses incurred and attorney fees; and (ii) provide a copy of such certification to the Debtors or the Tort Claims Trustee, as applicable, and the Settling Insurers.  The Tort Claims Trustee shall be required to submit reports, if any, that are required under Medicare Secondary Payer Act ("<u>MSPA</u>") or any applicable regulations regarding the liquidation and/or payment of any Tort Claim.

7.5     Appointment of the Tort Claims Trustee

The initial Tort Claims Trustee shall be Robert Fishman of the Algon Group.  The Tort Claims Trustee shall commence serving as the Tort Claims Trustee on the Effective Date; *provided, however*, that the Tort Claims Trustee shall be permitted to act in accordance with the terms of the Tort Claims Trust Agreement prior to the Confirmation Date as may be agreed by the Debtors and the Settling Insurers and Municipalities and approved by the Bankruptcy Court.

7.6     Rights and Responsibilities of Tort Claims Trustee

Subject to Section 7.2(b), the Tort Claims Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code solely to make Distributions to the holder of Class 6 Claims in accordance with the Tort Claims Trust Agreement and the Tort Claim ADR Procedures. The Tort Claims Trustee: (1) shall make timely Distributions and not unduly prolong the duration of the Tort Claims Trust; (2) may request an expedited determination of taxes of the Tort Claims Trust under Section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Tort Claims Trust for all taxable periods through the dissolution of the Tort Claims Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other agents on behalf of the Tort Claims Trust, and at the Trust's sole expense, as necessary or desirable to carry out the obligations of the Tort Claims Trustee hereunder and under the Tort Claims Trust Agreement.

7.7     Investment Powers; Permitted Cash Expenditures

All funds held by the Tort Claims Trust shall be invested in an interest bearing, collateralized bank account that complies with the Guidelines of the U.S. Trustee. The Tort Claims Trustee may expend the cash of the Tort Claims Trust in accordance with the Plan and the Tort Claims Trust Agreement.

7.8     Registry of Beneficial Interests

To evidence the beneficial interest in the Tort Claims Trust of each holder of such an interest, the Tort Claims Trustee shall maintain a registry of beneficiaries.

7.9     Non-Transferability of Interests

Any transfer of an interest in the Tort Claims Trust shall not be effective until and unless the Tort Claims Trustee receives written notice of such transfer.

7.10    Termination

The Tort Claims Trust shall terminate after the liquidation, administration and Distribution of the Tort Claims Trust Assets in accordance with the Tort Claims Trust Agreement and the Tort Claim ADR Procedures and the full performance by the Tort Claims Trustee of all other duties and functions set forth herein or in the Tort Claims Trust Agreement.

7.11    Immunity; Liability; Indemnification

(a)     The Liquidating Trustee, the Insurance Settlement Released Parties and the Tort Claims Trustee and any duly designated agent or representative of the Tort Claims Trustee, and any of their respective employees, agents, representatives, or professionals, shall not be liable for the act or omission of any other employee, agent, representative, or professional of the Tort Claims Trustee, except that the Tort Claims Trustee shall be liable for its specific acts or omissions resulting from such Tort Claims Trustee's misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Tort Claims Trustee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Tort Claims Trustee shall not be under any obligation to consult with its attorneys, accountants, financial advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Tort Claims Trustee unless such determination is based on the Tort Claims Trustee's recklessness, gross negligence, willful misconduct, or fraud.

(b)     To the fullest extent permitted by applicable law, the Tort Claims Trust shall defend, protect, hold harmless, and indemnify the Insurance Settlement Released Parties from and against any and all claims, demands, judgments, awards, penalties, liens, damages, losses, expenses, costs and fees, and liabilities of any kind arising out of or relating to or in any way involving or connected with the Barred Claims, the Tort Claims, the Channeled Claims or the Insurance Policies.

(c)     No recourse shall ever be had, directly or indirectly, against the Tort Claims Trustee personally, or against any employee, contractor, agent, attorney, accountant or other professional retained in accordance with the terms of the Tort Claims Trust Agreement or the Plan by the Tort Claims Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or Tort Claims Trust Agreement whatsoever executed by the Tort Claims Trustee in implementation of this Tort Claims Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Tort Claims Trustee under the Plan for any purpose authorized by the Tort Claims Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and  agreements of the Tort Claims Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Tort Claims Trust Assets or such part thereof as shall under the term of any such Tort Claims Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Tort Claims Trust Assets. Notwithstanding the foregoing, the Tort Claims Trust may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Tort Claims Trustee. The Tort Claims Trust shall not be covered by a bond.

(d)     The Tort Claims Trust shall defend, indemnify and hold harmless, the Tort Claims Trustee, its officers, directors, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of Florida is entitled to indemnify and defend its directors, trustees, officers and employees against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder.

(i)       Additionally, the Debtors or the Liquidating Trustee, as applicable, and each of its respective agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative or arbitrative action, by reason of any act or omission of the Tort Claims Trust or Tort Claims Trustee or respective agents, with respect to: (i) the Chapter 11 Cases and any act or omission undertaken by them prior to the commencement thereof, (ii) the assessment or liquidation of any Class 6 Claims, (iii) the administration of the Tort Claims Trust and the implementation of the Tort Claim ADR Procedures, or (iii) any and all activities in connection with the Tort Claims Trust Agreement, shall be indemnified and defended by the Tort Claims Trust, to the fullest extent that a corporation or trust organized under the laws of Florida is from time to time entitled to indemnify and defend its officers, directors, trustees and employees, against reasonable expenses, costs and fees (including attorneys' fees and costs), judgments, awards, amounts paid in settlement and liabilities of all kinds incurred by the Debtors or Liquidating Trustee, and their respective professionals, officers, and directors, in connection with or resulting from such action, suit or proceeding, provided such expenditures have been approved by the Tort Claims Trust in advance, such approval not to be unreasonably withheld.

(ii)      Reasonable expenses, costs, and fees (including attorneys' fees and costs) incurred by or on behalf of a Tort Claims Trustee, the Debtors, the Liquidating Trustee, and their respective agents in connection with any action, suit or proceeding, whether civil, administrative, or arbitrative, from which they are entitled to be indemnified by the Tort Claims Trust, shall be paid by the Tort Claims Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of such Tort Claims Trustee, the Debtors, the Liquidating Trustee, and their respective agents, to repay such amount in the event that it shall be determined ultimately by Final Order that such Tort Claims Trustee, the Debtors, the Liquidating Trustee, and their respective professionals, officers and directors is not entitled to be indemnified by the Tort Claims Trust.

7.12   <u>Treatment of Tort Claims</u>

(a)      <u>Trust Liability</u>.   On the Effective Date, the Tort Claims Trust shall automatically and without further act or deed assume any and all liability of the Debtors and the Insurance Settlement Released Parties for Tort Claims, which are and shall be channeled exclusively to the Tort Claims Trust pursuant to Section 13.6 hereof, and upon receipt of the Tort Claims Trust Assets from the Debtors shall have the sole and exclusive responsibility for preserving, managing and distributing the Trust Assets pursuant to the Tort Claims Trust Agreement and the Tort Claim ADR Procedures.

(b)      <u>Distributions to Tort Claimants</u>.   Tort Claimants shall receive Distributions from the Tort Claims Trust Assets in the amount(s) and at the time(s) provided for in the Tort Claims Trust Agreement and the Tort Claim ADR Procedures.   Any payment to a Tort Claimant constitutes payment for damages on account of property damage or personal physical injuries or sickness arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. For the avoidance of doubt, Tort Claimants' recovery on their Class 6 Claims shall be limited to the Distributions they are entitled to, if any, from the Tort Claims Trust Assets in the amount(s) and at the time(s) provided for in the Tort Claims Trust Agreement and the Tort Claim ADR Procedures, and they shall not be entitled to collect personally or

otherwise any additional amounts whatsoever on account of their Tort Claims from the Debtors, the Estates, Liquidating Trustee, or the Insurance Settlement Released Parties, or from the property or assets of the Liquidating Trustee or the Insurance Settlement Released Parties, even if they do not receive a Distribution pursuant to the Tort Claims Trust Agreement and the Tort Claim ADR Procedures.

(c)　Dismissal of Pending Litigation.  The Tort Claimants shall within ten (10) days of receipt of their respective Distribution from the Tort Claims Trust, file a notice of dismissal with prejudice of all Claims against the Debtors and/or the Insurance Settlement Released Parties, as applicable, in any presently pending lawsuit with each party to bear their own fees and costs. In the event that any Tort Claim asserted against the Debtors or any of the Insurance Settlement Released Parties in any lawsuit currently pending in any state or federal court is not dismissed as and when provided herein, the Tort Claims Trustee, the Liquidating Trustee and/or the Insurance Settlement Released Parties, as applicable, shall be authorized to apply to the applicable court and request that such lawsuit be dismissed, and in connection therewith such court shall be entitled to rely on the Plan and the Plan Confirmation Order in dismissing such lawsuit.

(d)　Objections and Litigation After the Effective Date.  As of the Effective Date, the Tort Claims shall be analyzed exclusively by the Tort Claims Administrator pursuant to the Tort Claim ADR Procedures. The Liquidating Trustee, the Settling Insurers and Municipalities shall have no right to object to any Tort Claim or any role in analyzing, assigning relative values to, and allocating Tort Claims Trust Assets to any Tort Claim.

(e)　Claim Withdrawal.  A Tort Claimant may withdraw his or her Tort Claim at any time on written notice to the Tort Claims Trustee. If withdrawn, (a) the Tort Claim will be withdrawn with prejudice and may not be reasserted, and such Tort Claimant shall still be subject to all of the terms and conditions of the Plan, including without limitation the releases of the Debtors and the Insurance Settlement Released Parties set forth in Section 13.7 hereof and the Channeling Injunction set forth in Section 13.6 hereof; and (b) any reserve maintained by the Tort Claims Trust on account of such Tort Claim shall revert to the Tort Claims Trust as a Tort Claims Trust Asset for Distribution in accordance with the Tort Claims Trust Agreement and the  Tort Claim ADR Procedures.

## ARTICLE VIII
## INSURANCE SETTLEMENT AGREEMENTS

8.1　Insurance Settlement Agreements

Each Insurance Settlement Agreement is hereby incorporated and made part of the Plan as if set forth fully herein. Upon the Plan Confirmation Order becoming a Final Order, each Insurance Settlement Agreement is and shall be fully binding on the Debtors, the Liquidating Trustee, the Insurance Settlement Released Parties, the Tort Claimants, the Tort Claims Trust, the Tort Claims Trustee, the Barred Persons, and all other Persons and Entities, along with the successors or assigns of any of the foregoing.

8.2     Additional Documentation; Non-Material Modifications

From and after the Effective Date, the Tort Claims Trustee, the Settling Insurers, Municipalities, the Purchaser and/or the Tort Claimants, as applicable, shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate the agreements contained in the Insurance Settlement Agreements without further order of the Bankruptcy Court. Additionally, the Tort Claims Trustee, the Settling Insurers, Municipalities, the Purchaser and the Tort Claimants, as applicable, may make technical or immaterial alterations, amendments, modifications, or supplements to the terms of the Insurance Settlement Agreements. A class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under this Section, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such class. An order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

8.3     Conflict

Except as expressly provided in the Plan, neither the Plan nor the Plan Confirmation Order shall amend, modify, waive, or alter in any way the Insurance Settlement Agreements or any of the Settling Insurers, Municipalities or Purchaser's rights and/or the Debtors', the Tort Claims Trustee and Liquidating Trustee's obligations thereunder.  In the event of any conflict between the Plan, on the one hand, and the Insurance Settlement Agreements, on the other hand, the Insurance Settlement Agreements shall control.

# ARTICLE IX
# PROVISIONS GOVERNING DISTRIBUTIONS

9.1     Manner of Cash Payments Under the Plan

Any Distribution pursuant to the Plan, to the extent posted in the United States mail, shall be deemed made when deposited by the Liquidating Trustee or Tort Claims Trustee (or their respective agent(s)), as applicable, into the United States mail.  At the option of the Liquidating Trustee, or Tort Claims Trustee, as applicable, any Cash payment to be made pursuant to the Plan shall be made by check drawn on a domestic bank, by wire transfer, or by ACH, from a domestic bank, or other method mutually agreed upon by the holder of the Allowed Claim and the Liquidating Trustee or Tort Claims Trustee.  Whenever any Distribution to be made under the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on that due date.

9.2     Entity Making Distributions

Distributions to holders of Allowed Claims (other than Allowed Tort Claims) shall be made by the Liquidating Trustee.  Distributions to the holders of Allowed Tort Claims shall be made by the Tort Claims Trustee pursuant to the Tort Claims Trust Agreement and the Tort Claim ADR

Procedures.  The Liquidating Trustee shall hold the Disputed Claims Reserve for all Claims (other than Tort Claims) that will receive a Distribution under the Plan.  Neither the Liquidating Trustee nor the Tort Claims Trustee shall be required to give any bond or surety or other security for the performance of their duties, unless otherwise ordered by the Bankruptcy Court.

9.3     Distribution Dates

Distributions to holders of Claims shall be made as provided in ARTICLE II, ARTICLE III, ARTICLE IV and ARTICLE VI of this Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

9.4     Record Date for Distributions

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date. The Liquidating Trustee or Tort Claims Trustee, as applicable, shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  In making any Distribution with respect to any Claim, the Liquidating Trustee or Tort Claims Trustee, as applicable, shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtors as of the Record Date.

9.5     Delivery of Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Liquidating Trustee or Tort Claims Trustee, as applicable, at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Liquidating Trustee or Tort Claims Trustee, as applicable, have not been notified in writing of a change of address.

9.6     Undeliverable and Unclaimed Distributions

In the event that any Distribution to any holder of an Allowed Claim made by the Liquidating Trustee or Tort Claims Trustee, as applicable is returned as undeliverable, the Liquidating Trustee or Tort Claims Trustee, as applicable, shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Liquidating Trustee or Tort Claims Trustee, as applicable, has determined the then current address of such holder; *provided, however*, that all Distributions to holders of Allowed Claims made by the Liquidating Trustee or Tort Claims Trustee, as applicable, that are unclaimed for a period of ninety (90) days after the date of the first attempted Distribution shall have its, his or her Claim for such undeliverable Distribution deemed satisfied and will be

forever barred from asserting any such Claim against the Debtors, the Liquidating Trustee or Tort Claims Trustee, as applicable, or any of their properties. Any Distributions which are undeliverable or have not been negotiated within the time set forth above shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Liquidating Trustee or Tort Claims Trustee, as applicable. The Liquidating Trustee or Tort Claims Trustee, as applicable, shall have no further obligation to make any Distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such Distributions shall be extinguished and forever barred.

9.7    <u>Compliance with Tax Requirements</u>

The Liquidating Trustee or Tort Claims Trustee, as applicable, may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims; *provided, however,* that the Liquidating Trustee or the Tort Claims Trustee, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims without first filing a notice with the Court (and serving such notice on the holder of the Claim) describing the nature and amount of the proposed withholding and providing the Creditor an opportunity to object. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims. The Liquidating Trustee or Tort Claims Trustee, as applicable, shall be authorized to collect such tax information from the holders of Claims (including social security numbers or other tax identification numbers) as they in their sole discretion deems necessary to effectuate the Plan. In order to receive Distributions under the Plan, all holders of Claims shall identify themselves to the Liquidating Trustee or the Tort Claims Trustee, as applicable, and provide all tax information the Liquidating Trustee or the Tort Claims Trustee, as applicable, deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder). The Liquidating Trustee or Tort Claims Trustee, as applicable, may refuse to make a Distribution to any holder of a Claim that fails to furnish such information within the time period specified by the Liquidating Trustee or Tort Claims Trustee, as applicable, and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, provided further that, if the Liquidating Trustee or Tort Claims Trustee, as applicable, fail to withhold in respect of amounts received or distributable with respect to any such holder and such Debtors are later held liable for the amount of such withholding, such holder shall reimburse the Liquidating Trustee or Tort Claims Trustee, as applicable, for such liability. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, and (b) no Distributions shall be required to be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Liquidating Trustee or Tort Claims Trustee, as applicable, for the payment and satisfaction of such tax obligations or has, to the Tort Claims Trustee or Liquidating Trustee's, as applicable, satisfaction, established an exemption therefrom.

9.8    No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

9.9    No Interest on Claims

Except as specifically provided for in this Plan or the Plan Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest on any Claim accruing on or after the Petition Date.  Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or similar charges.

9.10    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

9.11    Setoff and Recoupment

The Liquidating Trustee may set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that any of the Liquidating Trustee or Tort Claims Trustee, as applicable, or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidating Trustee or Tort Claims Trustee, as applicable, or the Estate of any right of setoff or recoupment that any  of them may have against the holder of any Claim.  Any such setoffs or recoupments may be challenged in Bankruptcy Court.  Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any Creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; *provided, however*, that such setoff or recoupment rights are or have been timely asserted; *provided further, however*, that all rights of the Liquidating Trustee or Tort Claims Trustee, as applicable, and the Estate with respect thereto are reserved.  A Creditor shall be deemed to have timely asserted its setoff or recoupment rights if it has asserted such rights in a timely-filed proof of claim or in any other manner reasonably calculated to give the Debtors or Liquidating Trustee notice thereof.

9.12    De Minimis Distributions; Charitable Donation

Notwithstanding anything to the contrary in the Plan, the Liquidating Trustee or Tort Claims Trustee, as applicable, shall not be required to make a Distribution to any Holder of an Allowed Claim if the dollar amount of the Distribution is less than $10.00 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.  On or

about the time that the final Distribution is made, the Liquidating Trustee or Tort Claims Trustee, as applicable, may make a donation of undistributable funds as defined by Local Rule 3011-1(C)(1), in the reasonable discretion of the Liquidating Trustee or Tort Claims Trustee, as applicable, to one or more of the following organizations (each of which qualifies for not-for-profit status under section 501(c)(3) of the Tax Code) with undistributable funds if, in the reasonable judgment of the Liquidating Trustee or Tort Claims Trustee, as applicable, the cost of calculating and making the final Distribution of the undistributable funds remaining is excessive in relation to the benefits to the or holders of Claims who would otherwise be entitled to such Distributions: (i) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida; or (ii) Legal Services of Greater Miami, Inc.

9.13    Intentionally Omitted

9.14    Withholding from Distributions

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan.  The Liquidating Trustee or Tort Claims Trustee, as applicable, may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the reasonable discretion of the Liquidating Trustee or Tort Claims Trustee, as applicable, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.  The Liquidating Trustee or Tort Claims Trustee, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Allowed Claims without first filing a notice with the Court (and serving such notice on the Holder of such Allowed Claim) describing the nature and amount of the proposed withholding and providing the Creditor an opportunity to object.

9.15    Distributions in Satisfaction; Allocation

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Equity Interests in the Debtors and their Estate, whether known or unknown, that arose or existed prior to the Effective Date.  Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest (if any).

9.16    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in the Chapter 11 Cases, including, without limitation, the General Bar Date, the Administrative Expense Claims Bar Date, the Tort Claims Bar Date, and any bar date established in the Plan or in the Plan Confirmation Order or other order of the Bankruptcy Court, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Cases, without the need for (a) any further action by the Liquidating Trustee or Tort Claims Trustee, as applicable, or (b) an order of the

Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

**ARTICLE X**
**DISPUTED CLAIMS**

The provisions of this ARTICLE X shall apply to Disputed Claims in Classes 1 through 5, and Class 7.  The provisions of this ARTICLE X shall not apply to Claims in Class 6, which shall be resolved as provided in the Tort Claims Trust Agreement and the Tort Claim ADR Procedures.

10.1    Disputed Claims Reserve

The Liquidating Trustee will withhold from the property that would otherwise be distributed to holders of Claims within a given Class an amount sufficient to be distributed on account of Claims that are not Allowed Claims within that Class as of the Effective Date, and shall place such withheld property in a Disputed Claims Reserve, which thereafter will be retained and administered by the Liquidating Trustee, as applicable.

10.2    Resolution of Disputed Claims

The Liquidating Trustee shall have the right to make and file Objections to Claims in the Bankruptcy Court, provided however that the Purchaser shall have the right to file objections to Priority Claims.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

10.3    Objection Deadline

All objections to Disputed Claims shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

10.4    Estimation of Claims

At any time, the Liquidating Trustee may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Liquidating Trustee has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Liquidating Trustee may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

10.5    No Distributions Pending Allowance

Notwithstanding any other provision in the Plan, if any portion of a Claim is Disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. Upon allowance, a holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim been allowed on the Effective Date.

10.6    Disallowed Claims

All Claims held by Persons or Entities against whom or which any of the Debtors or the Liquidating Trustee has commenced an Avoidance Action shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Disallowed Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed Disallowed Claims pursuant to this Section 10.6 shall be disallowed for all purposes (including for purposes of receiving Distributions) until the Avoidance Action against such Person or Entity has been settled or resolved by Final Order and any sums due to the Debtors or the Liquidating Trustee from such Person or Entity have been paid.

10.7    Resolution of Claims

On and after the Effective Date and except for objections to Claims filed by the Purchaser, the Liquidating Trustee shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims, and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court. Pursuant to section 510 of the Bankruptcy Code, the Liquidating Trustee reserves the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE XI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1    General Treatment; Rejected if not Previously Assumed

**Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, upon the Effective Date, all executory contracts and unexpired leases that exist between the Debtors and any Person or Entity shall be deemed rejected by the Debtors, except for any executory contract or unexpired lease (i) that has been assumed and assigned to the Purchaser, (ii) has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (iii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Effective Date, (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (v) is a D&O Liability Insurance Policy. Subject to the occurrence of the Effective Date, entry of the Plan Confirmation Order shall constitute approval of such assumption or rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by**

the Bankruptcy Court that each such assumption or rejection is in the best interests of the Debtors, the Liquidating Trustee, the Estate, and all parties in interest in the Chapter 11 Cases. Notwithstanding the foregoing, that certain Contribution and Exchange Agreement dated March 1, 2022 by and between Spin, Ford Next LLC and Tier Mobility SE shall be assumed and assigned to the Liquidating Trust as of the Effective Date to the extent such agreement is executory and to the extent such agreement is not executory, the Debtors' shall transfer all right, title, and interest in any Claims or Causes of Action arising thereunder, including, without limitation, those relating to coverage, indemnity, contribution, reimbursement, breach of contract, or any other matters, to the Liquidating Trust.

11.2    Bar to Claims Arising from Rejection, Termination or Expiration

Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Section 11.1 ("General Treatment; Rejected if not Previously Assumed") or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after (a) the *date of the entry of any order of the Bankruptcy Court authorizing rejection*, with respect to any executory contract or unexpired lease rejected by the Debtors or otherwise pertaining to such order, or (b) *the Confirmation Date*, with respect to any executory contract or unexpired lease that is deemed rejected pursuant to Section 11.1 ("General Treatment; Rejected if not Previously Assumed"). Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtors, or the Estates, assets, properties, or interests in property, or the Liquidating Trustee, or the Estates, assets, properties, or interests in property. Nothing contained herein shall be deemed an admission by the Debtors that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors or the Liquidating Trustee of any objections to such Claim if asserted.

11.3    Assumption of Executory Contracts and Unexpired Leases

(a)    Proof of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed and Assigned. Any and all proofs of claim relating to executory contracts or unexpired leases that have been assumed and assigned in the Chapter 11 Cases will be deemed amended and superseded by the applicable Cure Claim, are assumed by the Purchaser pursuant to the Asset Purchase Agreement and, pursuant to Section 365(k) of the Bankruptcy Code, shall be expunged, stricken and disallowed as against the Debtors, the Estates, the Liquidating Trustee and their respective properties.

(b)    Assumption of D&O Liability Insurance Policies. Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Debtors will be deemed to have assumed all D&O Liability Insurance Policies pursuant to Sections 105 and 365(a) of the Bankruptcy Code. Entry of the Plan Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan or Plan Confirmation Order, confirmation of the Plan will not discharge, release, impair, or otherwise modify any obligations, including but not limited to, indemnity obligations of the insurers under the D&O Liability

Insurance Policies assumed by the foregoing assumption of the D&O Liability Insurance Policies, any agreements, documents, and instruments related thereto.

11.4    Indemnification and Reimbursement

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtors for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtors against any Claims, costs, liabilities or causes of action as provided in the Debtors' operating agreement, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be (i) paid only to the extent of any applicable insurance coverage, and (ii) to the extent a proof of Claim has been timely filed and is Allowed, be treated as Subordinated Claims to the extent such Claims are not covered by any applicable insurance, including deductibles.  Nothing contained in the Plan shall affect the rights of directors, officers or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities or Causes of Action or limit the rights of the Debtors or the Debtors' Estates to object to or otherwise contest or challenge Claims or rights asserted by any current or former officer, director or employee of the Debtors.  Any D&O Insurance Policy to which one or more of the Debtors is a party as of the Effective Date, shall be deemed executory and shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless any such D&O Insurance Policy was previously assumed and assigned under the Asset Purchase Agreement, was rejected by the Debtors pursuant to a Final Order of the Bankruptcy Court, or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any D&O Insurance Policy shall remain available to all individuals within the definition of "Insured" in such D&O Insurance Policy.

# ARTICLE XII
# CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

12.1    Conditions Precedent to the Effective Date

The following are conditions precedent to the Effective Date that must be satisfied or waived:

(a)    The Court shall have entered the Plan Confirmation Order, in form and substance reasonably acceptable to the Committee, the Settling Insurers and the Purchaser, and the Plan Confirmation Order shall have become a Final Order.

(b)    There shall be no stay or injunction in effect with respect to the Plan Confirmation Order.

(c)    The Plan Documents shall have been duly executed and delivered; *provided, however*, that no party to any document requiring execution or delivery may unreasonably withhold its execution and delivery of such document to prevent this condition precedent from occurring.

(d)     The Plan Cash and the Cash comprising the Priority Claims Reserve shall have been delivered to the Liquidating Trustee, subject in all events to the terms of the Plan.

(e)     The Liquidating Trust Assets and the Tort Claims Trust Assets shall have been delivered to the Liquidating Trustee and the Tort Claims Trustee, respectively.

12.2    Waiver

Notwithstanding the foregoing conditions in ARTICLE XII, the Debtors reserve the right to waive the occurrence of or modify any condition precedent.  Any such written waiver of a condition precedent set forth in Section 12.1 (b) and (c) may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Notwithstanding the foregoing, any waiver of conditions under this Section 12.2 shall not affect the rights or obligations of any Settling Insurer under the corresponding Insurance Settlement Agreement.  Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

# ARTICLE XIII
# EFFECT OF CONFIRMATION; INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

13.1    Compromise and Settlement

Pursuant to sections 105(a), 363(b), (f), and (m), and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Plan Confirmation Order shall constitute approval of the Insurance Settlement Agreements and the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Equity Interests.

13.2    Vesting of Assets

Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, the Excluded Assets shall vest in the Liquidating Trustee free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or the Plan Confirmation Order.

Except as otherwise provided in the Plan, on the Effective Date, title to the Tort Claims Trust Assets shall vest in the Tort Claims Trust free and clear of all Claims, Liens, encumbrances, charges, and other Interests.  On the Effective Date, the Tort Claims Trust shall automatically and without further act or deed assume any and all liability of the Debtors and the Insurance Settlement Released Parties for Tort Claims, which are and shall be channeled exclusively to the Tort Claims Trust pursuant to Section 13.6 hereof, and upon receipt of the Tort Claims Trust Assets from the

Debtors shall have the sole and exclusive responsibility for preserving, managing and distributing the Tort Claims Trust Assets pursuant to the Tort Claims Trust Agreement and the Tort Claim ADR Procedures.

13.3    Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the provisions of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Liquidating Trustee, the Tort Claims Trustee, the Released Parties, the Insurance Settlement Released Parties, the holders of Barred Claims, the holders of Channeled Claims, and any holder of a Claim against, or Equity Interest in, the Debtors and each of their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan or received a Distribution under the Plan. For the avoidance of doubt, confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Debtors and their Estates will be wound down in accordance with the Plan.

13.4    Sale Order

Nothing contained in the Plan, the Disclosure Statement, or the Plan Confirmation Order, constitutes or shall be construed to (a) be inconsistent with the terms of the Sale Order or any modification or amendment to the Sale Order; or (b) waive, release, alter, modify or impair the obligations of the Debtors and the Purchaser under the Asset Purchase Agreement, the Transition Services Agreement and the Sale Order.

13.5    Term of Injunctions or Stays

Unless otherwise provided in the Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, including any Order entered in the Adversary Proceeding (whether interlocutory or Final), all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

13.6    Channeling Injunction

(a)    **In furtherance and subject to the Bankruptcy Court's approval of the Insurance Settlement Agreements:**

(i)    **any and all Channeled Claims, are hereby channeled to and shall be paid solely and exclusively from the Tort Claims Trust, which shall assume any and all liability of the Debtors and the Insurance Settlement Released Parties for such Tort Claims; and**

(ii)    **all Persons or Entities who have held or asserted, hold or assert, or may in the future hold or assert a Channeled Claim against the Debtors or the Insurance Settlement Released Parties are hereby permanently and forever barred, estopped, stayed,**

12987629-3

and enjoined from taking any action, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Channeled Claim against the Debtors or the Insurance Settlement Released Parties, or any of their property or assets, including without limitation:

      (1)     pursuing or seeking to pursue, by any manner or means, any Channeled Claim against the Debtors or the Insurance Settlement Released Parties;

      (2)     continuing or commencing, or seeking to continue or commence, by any manner or means, any action or proceeding of any kind with respect to any Channeled Claim against the Debtors or the Insurance Settlement Released Parties, or any of their property or assets;

      (3)     enforcing, attaching, collecting or recovering, or seeking to enforce, attach, collect or recover, by any manner or means, any judgment, award, decree, or order with respect to any Channeled Claim against the Debtors or the Insurance Settlement Released Parties, or any of their property or assets;

      (4)     creating, perfecting or enforcing, or seeking to create, perfect or enforce, by any manner or means, any lien, claim or encumbrance of any kind with respect to any Channeled Claim against the Debtors or the Insurance Settlement Released Parties, or any of their property or assets; and

      (5)     asserting, implementing or effectuating, or seeking to assert, implement or effectuate, by any manner or means, with respect to any Channeled Claim, any right of setoff, recoupment, indemnification, subrogation or other similar right of any kind, against:

      a.     the Debtors or the Insurance Settlement Released Parties;

      b.     any obligation due to any of any of the Debtors or the Insurance Settlement Released Parties; or

      c.     the property or assets of the Debtors or the Insurance Settlement Released Parties.

The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation. In the event of a violation of the Channeling Injunction, the Debtors or Liquidating Trustee, as applicable, the Tort Claims Trustee, and the Insurance Settlement Released Parties may seek an order from the Bankruptcy Court enforcing the Channeling Injunction and enjoining such violation and, in connection therewith, may seek an award of costs (including reasonable attorneys' fees and expenses) against the Person or Entity who is found to have violated the Channeling Injunction, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

Notwithstanding anything herein to the contrary, if the Bankruptcy Court does not approve the Insurance Settlement Agreements, the Channeling Injunction and the provisions of this Section 13.6 shall be ineffective, null and void.

13.7    Releases

(a)    **Releases by the Debtors and the Estates.**

(1)    **Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors and their current and former Affiliates and Representatives and the Estate shall be deemed to have provided a full, complete, unconditional and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtors and their current and former Affiliates and Representatives and the Estates), from any and all Claims, Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that the Debtors would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtors or the Estates, including those in any way related to the Chapter 11 Cases or the Barred Claims, which release shall include any and all Retained Causes of Action, if any, against the Released Parties, or any of them; *provided*, *however*, that nothing in this Section 13.7(a)(1) shall release or be interpreted as a release of the Purchaser's obligations under the Asset Purchase Agreement, the Global Settlement Term Sheet, the Sale Order or any other documents executed by the Purchaser at the Closing.**

(2)    **Without limiting in any fashion the releases by the Debtors and the Estates of the Released Parties as provided in Section 13.7(a)(1) above, notwithstanding anything contained in the Plan to the contrary and subject only to the Plan Confirmation Order becoming a Final Order, the Debtors and the Estates hereby fully, finally, and completely remise, release, acquit and forever discharge the Insurance Settlement Released Parties from any and all Claims, whether actual or alleged, known or unknown, accrued or unaccrued, existing or potential, or suspected or unsuspected, which release shall include, but shall not be limited to, any and all Tort Claims for coverage under the Insurance Policies arising out of or relating to or in any way involving the Chapter 11 Cases, the Plan or the Barred Claims, whether for wrongful death, personal injury, emotional distress, property damage, economic loss, environmental damage, remediation or exposure, or any other form of loss, expense, or other benefit covered or potentially covered under the Insurance Policies. For the avoidance of doubt, nothing contained herein is intended to release Claims or Causes of Action related to the D&O Liability Insurance Policies against any former directors and officers who are not Released Parties.**

(b)     **Releases by Releasing Parties.** To the fullest extent permitted by applicable law, except as otherwise provided in this Section 13.7(b), as of the Effective Date, each of the Releasing Parties shall be deemed to fully, completely, unconditionally, irrevocably, and forever release each of the Released Parties of and from any and all Claims and Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors and its current and former Affiliates and Representatives, whether direct, derivative, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise, and which, for the avoidance of doubt, shall include Claims arising out of or relating to the Chapter 11 Cases, the Plan, or the Barred Claims; *provided, however*, that nothing in this Section 13.7(b) shall release or be interpreted as a release of any of the Released Parties' or Liquidating Trustee's rights or obligations under the Plan (including with respect to Retained Causes of Action) or the Insurance Settlement Agreements; *provided, further, that* the releases set forth in this Section 13.7(b) shall not release any person or entity from any Retained Causes of Action, or any rights or obligations under the Global Settlement Term Sheet, the Asset Purchase Agreement, the Sale Order, or this Plan or Claims resulting from an act or omission determined by a Final Order of a court of competent jurisdiction to have constituted fraud, willful misconduct or gross negligence, provided that, each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions.

(c)     **Release by Tort Claims Trustee.** Notwithstanding anything contained in the Plan to the contrary and subject only to the Plan Confirmation Order becoming a Final Order, in consideration of and pursuant to the Insurance Settlement Agreements, the Tort Claims Trustee shall be deemed to fully, completely, unconditionally, irrevocably and forever release the Insurance Settlement Released Parties from any and all Claims and Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors and its current and former Affiliates and Representatives, whether direct, derivative, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise, and which, for the avoidance of doubt, shall include Tort Claims and any other Claims arising out of or relating to the Chapter 11 Cases or the Plan.

(d)     **Entry of the Plan Confirmation Order** shall constitute the Bankruptcy Court's approval of the releases set forth in  Section  13.7 pursuant to Bankruptcy Rule 9019

and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action released by this Plan; (b) in the best interests of the Debtors and all holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action thereby released.

(e)     EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING, WITHOUT LIMITATION, THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542 (WHICH STATES, "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY").

13.8    Exculpation

Notwithstanding anything contained herein the contrary, the Exculpated Parties shall neither have nor incur any liability relating to the Chapter 11 Cases to any Person or Entity for any and all Claims and Causes of Action arising after the Petition Date and through the Effective Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan or distributing property thereunder, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other post-petition act taken or omitted to be taken in connection with the Chapter 11 Cases; *provided*, *however* that the exculpation set forth in this Section 13.8 shall not exculpate any Person or Entity from Claims resulting from an act or omission determined by a Final Order of the Bankruptcy Court to have constituted fraud, willful misconduct or gross negligence; *provided that*, each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions; *provided further*, *however*, nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to rule 4-1.8(h) of the Florida Rules of Professional Conduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable

12987629-3

law or rules protecting such Released Parties from liability. The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.

13.9   Bar Order

In furtherance and subject to the Bankruptcy Court's approval of the Insurance Settlement Agreements, and for good and valuable consideration provided by the Insurance Settlement Released Parties, upon the Plan Confirmation Order becoming a Final Order:

(a)   All Persons and Entities holding a Barred Claim, including without limitation all Barred Persons, shall be permanently and forever barred, estopped, stayed, and enjoined from taking any action, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Barred Claim against the Insurance Settlement Released Parties, or any of their property or assets, including without limitation:

(1)   pursuing or seeking to pursue, by any manner or means, any Barred Claim against the Insurance Settlement Released Parties;

(2)   continuing or commencing, or seeking to continue or commence, by any manner or means, any action or proceeding of any kind with respect to any Barred Claim against the Insurance Settlement Released Parties, or any of their property or assets;

(3)   enforcing, attaching, collecting or recovering, or seeking to enforce, attach, collect or recover, by any manner or means, any judgment, award, decree, or order with respect to any Barred Claim against the Insurance Settlement Released Parties, or any of their property or assets;

(4)   creating, perfecting or enforcing, or seeking to create, perfect or enforce, by any manner or means, any lien, claim or encumbrance of any kind with respect to any Barred Claim against the Insurance Settlement Released Parties, or any of their property or assets; and

(5)   asserting, implementing or effectuating, or seeking to assert, implement or effectuate, by any manner or means, with respect to any Barred Claim, any right of setoff, recoupment, indemnification, subrogation or other similar right of any kind, against:

a.   the Insurance Settlement Released Parties;

b.   any obligation due to any of the Insurance Settlement Released Parties; or

c.      the property or assets of the Insurance Settlement Released Parties.

(b)      All Persons and Entities shall be permanently and forever barred, estopped, stayed, and enjoined from taking any action, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Claim against the Insurance Settlement Released Parties arising under or relating to the Insurance Policies, including (i) claims for contribution, subrogation or other equitable apportionment and (ii) claims asserting bad faith.

The Bar Order is an integral part of the Plan and is essential to the Plan's consummation and implementation. Absent the entry of the Bar Order, the Insurance Settlement Released Parties will not contribute the Insurance Settlement Proceeds or provide the other accommodations agreed to in the Plan. In the event of a violation of the Bar Order, any of the Insurance Settlement Released Parties may seek an order from the Bankruptcy Court enforcing the Bar Order and enjoining such violation and, in connection therewith, may seek an award of costs (including reasonable attorneys' fees and expenses) against the Person or Entity who is found to have violated the Bar Order, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

Notwithstanding anything herein to the contrary, if the Bankruptcy Court does not approve the Insurance Settlement Agreements, the Bar Order and the provisions of this Section 13.9 shall be ineffective, null and void.

13.10   <u>Injunction</u>

Except as otherwise expressly provided for in the Plan, from and after the Effective Date, all Persons and Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Liquidating Trustee, the Estates, and their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied pursuant to the Plan or the Plan Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Liquidating Trustee, the Estate, and their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Plan Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Plan Confirmation Order.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtors or any of their assets or properties solely to the extent that (a) such Claims or Equity

Interests have been released or satisfied pursuant to the Plan or the Plan Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Plan Confirmation Order. On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released pursuant to the Plan or Plan Confirmation Order, from:

(a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trustee, the Estates and their successors and assigns and their assets and properties;

(b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtors, the Liquidating Trustee, the Estates and their successors and assigns and their assets and properties;

(c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trustee, the Estates and their successors and assigns and their assets and properties; and

(d) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder).

On and after the Effective Date, all persons and entities other than the Liquidating Trustee are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right, or Retained Cause of Action of the Debtors for which the Liquidating Trustee retains sole and exclusive authority to pursue in accordance with the Plan.

13.11    Release of Liens

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document created, or continuing in effect, pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate distributed under the Plan shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert, as applicable, to the Debtors or Liquidating Trustee.

**ARTICLE XIV**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Plan Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases,

the Debtors, the Liquidating Trustee, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

(a) allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim against the Debtors, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims;

(b) grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Cases by the Debtors for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c) resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtors is party or with respect to which a Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(d) ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including by resolving any disputes regarding, as applicable, the Debtors' or Liquidating Trustee's entitlement to recover assets held by third parties;

(e) decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date;

(f) enter such orders as may be necessary or appropriate to implement, consummate or enforce the provisions of the Plan, including the Channeling Injunction and Bar Order, and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

(g) resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(h) issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

(i) enforce Articles within this Plan;

(j) resolve any cases, controversies, suits or disputes with respect to the releases, injunction, channeling injunction, Bar Order and other provisions contained in Article XII, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions, including, without limitation, awarding attorneys' fees to the Released Parties;

(k)     enter and implement such orders as necessary or appropriate if the Plan Confirmation Order is modified, stayed, reversed, revoked or vacated;

(l)     resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Plan Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

(m)     enter an order and a Final Decree closing the Chapter 11 Cases.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

### 15.1   Modification of Plan

Subject to the limitations contained in the Plan, and the terms and conditions of the Insurance Settlement Agreements, the Debtors reserve the right in there sole discretion, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Plan Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; *provided, however*, that any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan; and after the entry of the Plan Confirmation Order, the Liquidating Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### 15.2   Revocation of Plan

Subject to the limitations contained in the Insurance Settlement Agreements, the Debtors reserve the right in their sole discretion to revoke or withdraw the Plan prior to the entry of the Plan Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtors revokes or withdraws the Plan or if entry of the Plan Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

15.3     Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

15.4     Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

15.5     Reservation of Rights

The Plan shall have no force or effect unless and until the Effective Date occurs.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

15.6     Intentionally Omitted

15.7     Section 1125(e) Good Faith Compliance

Confirmation of the Plan shall act as a finding by the Court that the Debtors and each of their Representatives have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

15.8     Further Assurances

The Debtors, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Plan Confirmation Order.

15.9     Service of Documents

Any pleading, notice or other document required herein to be served on or delivered to the Debtors shall be sent by both email and first class, certified U.S. mail, postage prepaid as follows:

**To the Debtors:**          Christopher Rankin
                             Chief Restructuring Officer
                             61 The Kingsway
                             Toronto, Ontario
                             M8X 2T3 Canada
                             Chris@rankinpartners.com

12987629-3

**With a copy to:**    Berger Singerman LLP
           1450 Brickell Avenue, Suite 1900
           Miami, Florida 33131
           Telephone: 305-755-9500
           Attn: Paul Steven Singerman, Esq.
               singerman@bergersingerman.com
               Jordi Guso, Esq.
               jguso@bergersingerman.com

15.10 <u>Filing of Additional Documents</u>

   On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

15.11 <u>Intentionally Omitted</u>

15.12 <u>Bankruptcy Rule 9019 Request; Impact</u>

   The Plan or other Plan Document, may provide for one or more compromises or settlements.  Pursuant to Bankruptcy Rule 9019, the Debtors hereby requests approval of all compromises and settlements included in the Plan, and entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019 and Section 1123(b)(3)(A) of the Bankruptcy Code, of any such compromise or settlement.

Dated:  June 3, 2024

**BIRD GLOBAL, INC.,** *et al.,*     **BERGER SINGERMAN LLP**
                   *Counsel for Debtors and*
                   *Debtors-in-Possession*
                   1450 Brickell Avenue, Suite 1900
                   Miami, FL  33131
                   Tel: (305) 755-9500
                   Fax: (305) 714-4340

By: */s/ Christopher Rankin*     By: */s/ Jordi Guso*
   Name: Christopher Rankin     Paul Steven Singerman
   Title: Chief Restructuring Officer   Florida Bar No. 378860
                   singerman@bergersingerman.com
                   Jordi Guso
                   Florida Bar No. 0863580
                   jguso@bergersingerman.com

12987629-3

# EXHIBIT 1

## UNDERWRITERS INSURANCE SETTLEMENT AGREEMENT

Exhibit 1

## SETTLEMENT, RELEASE AND POLICY BUYBACK AGREEMENT

This Settlement, Release, and Policy Buyback Agreement (the "Agreement") is made as of April 18th, 2024, by and between Bird Global, Inc., Bird Rides, Inc, Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc. (collectively the "Debtors"), Blue Jay Transit, Inc. as assignee of Bird Scooter Acquisition Corp. (the "Purchaser"), and Lloyd's London Syndicates 1969 and 1971 (collectively "Underwriters")

## RECITALS

WHEREAS, on December 20, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). The Debtors' Chapter 11 cases (collectively, the "Bankruptcy Cases") are being jointly administered under lead case, *In re: Bird Global, Inc*., Case No. 23-20514-CLC ("Jointly Administered"); and

WHEREAS, prior to the Petition Date, the Debtors contracted with Underwriters to provide general liability insurance coverage related to the operation of their businesses and Underwriters subscribed to the policies of insurance that were issued to the Debtors and certain of their non-debtor affiliates, as named insureds, described and identified in Schedule "1" hereto (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Underwriters' Policies"); the Underwriters' Policies include any and all policies of insurance that: (a) were subscribed to by Underwriters or by any Underwriters Party to or on behalf of any of the Debtors; (b) under which any or all of the Debtors are an Insured, Named Insured, or Additional Insured; or (c) under which Debtors, Additional Insureds, and/or any third party or co-defendant may contend they are entitled to coverage or benefits; and

WHEREAS, under the Underwriters' Policies and all agreements related thereto (collectively, the "Insurance Program"), Underwriters subscribe to, *inter alia*, certain commercial general liability insurance for specified policy periods subject to certain limits, self-insured retentions, exclusions, terms, and conditions, as more particularly described therein; and the insureds, including one or more of the Debtors, are required to perform certain monetary and non-monetary obligations including, among other monetary obligations, the payment of insurance premiums, deductibles, self-insured retention amounts, expenses including, but not limited to, allocated loss adjustment expenses, retrospective premiums up to certain loss limits for each occurrence assessments, surcharges, all as more particularly described in the Insurance Program (collectively, the "Obligations"); and

WHEREAS, prior to the Petition Date, numerous Tort Claims (as defined below) were asserted by various individuals and/or entities against the Debtors and a myriad of other third parties, including municipalities claiming indemnity against Debtors or Additional Insured status (as defined below) under the Underwriters' Policies; and

WHEREAS, the Tort Claims are unsecured, contingent, unliquidated, and/or disputed and the other third parties, municipalities, and Additional Insureds believe they have meritorious

1

defenses to the Tort Claims, and absent this Agreement, would insist on fully litigating the liability issues, a process that could take years and result in no recovery for the majority of the Tort Claimants; and

WHEREAS, Underwriters contend that most of the Tort Claims fall below the Debtors' self-insured retention Obligations thereby not triggering Underwriters' obligations under the Underwriters' Policies, including the obligation to provide a defense to the Insureds or Additional Insureds; and

WHEREAS, Tort Claims against the Debtors were stayed pursuant to §362 of the Bankruptcy Code upon the filing of the Bankruptcy Cases; and

WHEREAS, on January 24, 2024, the Debtors commenced an adversary proceeding against 56 Tort Claimants styled *Bird Global, Inc. et al. vs. Gregory Amundson, et al.,* Adversary Case No. 24-01010-CLC (the "Related Adversary Case"), to obtain an extension of the automatic stay and a preliminary injunction prohibiting those Tort Claimants from prosecuting their Tort Claims against municipalities and other defendants whom Debtors are contractually bound to defend and indemnify (the "Municipality Tort Claims"); and

WHEREAS, the Bankruptcy Court has entered one or more preliminary injunctions enjoining the prosecution of the Municipality Tort Claims for an initial 180 days following the Petition Date; and

WHEREAS, certain disputes have arisen or may arise in the future between Underwriters and the Debtors regarding the respective rights and obligations under the Underwriters' Policies and the Insurance Program, including the extent of the Debtors' Obligations and available coverage under the Underwriters' Policies (the "Coverage Disputes"); and

WHEREAS, given the substantial time and expense the Parties will incur to litigate the Coverage Disputes and the Tort Claims (including the Municipality Tort Claims), the limited financial resources of the Debtors, the risks of litigation, the potential for appeals, and the risk of delay in monetizing the Tort Claims against the Debtors, without admitting liability or any other concession as to the validity of the positions or arguments advanced by each other, the Debtors and Underwriters have agreed to compromise, and fully and finally resolve any and all Coverage Disputes between and among them on the terms set forth in this Agreement, which include (i) the funding of the Tort Claim Settlement Fund for the benefit of the Tort Claimants, (ii) the efficient resolution of the Tort Claims pursuant to the procedures described herein with the aim of providing a prompt distribution to the Holders of Tort Claims, and (iii) the channeling of the Tort Claims exclusively to the Tort Claims Trust; and

WHEREAS, on March 8, 2024, the Bankruptcy Court entered an *Order (I) Authorizing and Approving (A) The Sale of Substantially All of The Debtors' Assets Free and Clear Of All Liens, Claims, and Encumbrances and (B) The Assumption and Assignment Of Certain Executory Contracts And Unexpired Leases In Connection Therewith, and (II) Granting Related Relief* (the "Sale Order"), pursuant to which the Court approved the sale of substantially all the Debtors' assets

2

to the Purchaser, including the assumption and assignment of certain essential municipal permits, insurance policies, and other material contracts to the Purchaser; and

WHEREAS, subject to the terms of this Agreement, the Purchaser has agreed to contribute to the Tort Claim Settlement Fund and in exchange (i) certain municipalities have consented to the Debtors' assignment and Purchaser's assumption of various essential permits to operate in such municipalities in accordance with the Sale Order; and (ii) Underwriters have consented to the Debtors' assignment and Purchaser's assumption of the Underwriters' Excluded Policies (as defined below); and

WHEREAS, the Parties intend that this Agreement be approved by the Bankruptcy Court pursuant to the Plan Confirmation Order and is expressly contingent on the approval of the Releases, the Channeling Injunction, and the Bar Order (each as defined below) provided for herein and in the Plan.

NOW, THEREFORE, in consideration of the forgoing Recitals and the mutual covenants contained in this Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, and subject to the approval of the Bankruptcy Court, the Parties agree as follows:

## I.    ARTICLE 1 DEFINITIONS

As used in this Agreement, the following terms shall have the meanings set forth below or in the Recitals. Capitalized terms not defined below, herein, or in the Recitals shall have the meanings given to them in the Plan and the Bankruptcy Code. In the event of a conflict, the definitions in this Agreement shall control.

1.    "Additional Insured" or "Additional Insureds" means any Person or entity who qualifies as an additional insured under the terms of the Underwriters' Policies and/or Underwriters' Excluded Policies (collectively, the "Policies"), including but not limited to any Person or entity the Debtors were required to add as an additional insured under the Policies: (a) pursuant to written contracts, agreements, regulations, local ordinances and/or terms and conditions in certain permit applications and permits issued by various entities or municipalities; or (b) under any oral or implied agreement where a certificate of insurance was issued showing that Person or entity as an Additional Insured, all as specified by the Policies. For purposes of this Agreement only, Additional Insureds include, but are not limited to, the Cities where the Debtors previously operated, and include, but are not limited to: Charleston, SC, Long Beach, CA, Los Angeles, CA, Newport News, VA, Sacramento, CA, Salt Lake City, UT, San Diego, CA, San Francisco, CA, Santa Clara, CA, Santa Monica, CA, Tempe, AZ, Washington, D.C., Orlando, FL, Chicago, IL, Portland, OR, Providence, RI, and St. Louis, MO.

2.    "Additional Insured Claim" means a Claim of an Additional Insured Claimant or any Claim by any Person or entity against Underwriters that, directly or indirectly, arises from, relates to or is in connection with a Tort Claim, including any such Claim for defense, indemnity, contribution, or similar relief.

3.      "Additional Insured Claimant" means an Additional Insured who has a Claim or may have a Claim or right against the Debtors and/or Underwriters.

4.      "Approval Date" means the date on which the Approval Order becomes a Final Order.

5.      "Approval Order" means the Plan Confirmation Order and any other Order entered by the Bankruptcy Court which approves this Agreement.

6.      "Bar Order" means the provisions of this Agreement, the Plan, and the Plan Confirmation Order that shall permanently bar, prohibit, enjoin and restrain the filing, commencing, prosecuting, conducting, asserting or continuing in any manner, directly, indirectly or derivatively of all Claims, as more particularly described in Section 2.2.2 hereof.

7.      "Channeled Claim" means any Tort Claim against any of the Debtors and/or any of the Insurance Settlement Released Parties.

8.      "Channeling Injunction" means the provisions of this Agreement, the Plan, and the Plan Confirmation Order that (i) shall permanently release and enjoin the enforcement, prosecution, continuation, liquidation, or commencement of any Tort Claim, and (ii) shall channel such Tort Claims to and paid solely and exclusively from the Tort Claims Trust, all as more particularly described in Section 2.2.1 hereof.

9.      "Claim" or "Claims" means (a) an asserted or unasserted right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) any past, present and future claims, causes of action, obligations, rights, suits, judgments, remedies, interests, actions, liabilities, demands, duties, injuries, damages, liens, interest, expenses, fees, or costs of whatever kind or nature (including attorney's fees and expenses), whether foreseen or unforeseen, known or unknown, asserted or unasserted, contingent or matured, liquidated or unliquidated, whether in tort, contract, extra-contractual or otherwise, whether statutory, at common law or in equity, including but not limited to claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, unfair claim settlement practices, statutory or regulatory violations, for indemnity or contribution, or punitive, compensatory, exemplary, extra-contractual, statutory or other damages or relief of any type, including, without limitation: (i) all claims for wrongful death, personal injury, emotional distress, property damage, economic loss, or environmental damage, remediation or exposure including, without limitation, any Tort Claim against a Municipality (whether asserted or unasserted); (ii) all claims on payment and performance bonds; (iii) all claims relating to the Policies (but subject to  any Exceptions under the Policies) including, without limitation, the issuance of the Policies, coverage under the Policies, the defense of litigation arising out of a Tort Claim, or any act or omission of any Settling Insurer of any type for which the Debtors, the Debtors' Insurers,

4

or any Claimant might or may seek relief in connection with the Policies including with respect to any claims arising out of or relating to or in any way involving, in whole or in part, directly or indirectly, whether through a direct claim cross-claim, third-party claim, contribution, rescission, injunctive or declaratory relief, subrogation claim, class action or otherwise and (iv) any other "claim," as that term is defined in section 101(5) of the Bankruptcy Code.

10.     "Estates" means, with regard to the Debtors, each estate created by the commencement by the Debtors of the Chapter 11 Cases pursuant to § 541 of the Bankruptcy Code.

11.     "Execution Date" means the date all Parties have executed the Agreement.

12.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

13.     "Insurance Settlement Released Parties" means Underwriters, the Underwriters' Parties, all Named Insureds, Additional Insureds, the Purchaser, the Purchaser Parties, the Debtors and includes any Person or entity the Debtors are contractually bound to indemnify including a Municipality or government entity.

14.     "Interests" means all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including but not limited to direct action claims, insurance coverage claims, Claims, Tort Claims, and any rights, claims, or interests by, or on behalf of any other Person or entity who may claim to be an insured, Named Insured, Additional Insured, or otherwise claim to be entitled to any insurance coverage or benefits for any Claims or any rights to contribution, indemnity, defense, subrogation, or similar relief related to or arising from the Debtors under the Policies and the Insurance Program.

15.     "Named Insureds" means any Person or entity identified as a Named Insured or Additional Named Insured under the Underwriters' Policies.

16.     "Parties" means Debtors, Purchaser and Underwriters.

17.     "Person" means and includes any natural person or persons, a group of natural persons acting as individuals, a committee, a board of directors, or any other group of

5

natural individuals acting in a collegial capacity, an individual or entity including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability company or limited partnership, a proprietorship, association, joint stock company, joint venture, or any other unincorporated association, business organization or enterprise, any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof, and any successor in interest, heir, executor, estate, personal executor, personal or legal representative, administrator, trust, trustee, trustee in bankruptcy, assignee for the benefit of creditors, or receiver of any person or entity.

18.    "Plan" means the Debtors' Joint Chapter 11 Plan of Liquidation and all exhibits annexed thereto or referenced therein, as it may be amended, modified or supplemented from time to time in accordance with the provisions of the Plan or the Bankruptcy Code and Bankruptcy Rules, in form and substance reasonably acceptable to Underwriters insofar as it relates to or in any way involves the Tort Claims, Underwriters' Policies, Underwriters' Excluded Policies, the Tort Claims Settlement Fund, or the Tort Claims Settlement Trust that among other things: (a) incorporates the terms of this Agreement and Schedules attached hereto; (b) requests approval of this Agreement as part of the Plan Confirmation Order; (c) establishes the Tort Claims Trust for the benefit of Holders of Tort Claims; (d) provides that the Settlement Amount pursuant to this Agreement shall be held exclusively for the Tort Claims Trust, including the payment of expenses of the Tort Claims Trust and cost of the Tort Claims ADR Procedures; (e) provides for the establishment, funding and administration, and approval of the Tort Claims ADR Procedure; (f) provides for full and complete releases by Holders of Tort Claims and the Trustee of the Tort Claims Trust of any and all Claims against each of the Insurance Settlement Released Parties; (g) releases, enjoins, and forever bars all Persons and entities, including, without limitation, Holders of Tort Claims and the Trustee of the Tort Claims Trust from suing on or otherwise pursing relief from each of the Insurance Settlement Released Parties for any and all Claims; (h) provides for the Channeling Injunction; and (i) provides for and approves of the sale of the Underwriters' Policies (other than the Underwriters' Excluded Policies) back to Underwriters, such that they will be treated as if the Underwriters' Policies never existed.

19.    "Plan Confirmation Order" means a Final Order of the Bankruptcy Court in the Bankruptcy Cases, in form and substance reasonably acceptable to Underwriters and the Purchaser, that confirms the Plan and incorporates and approves the Agreement.

20.    "Purchaser Contribution" means the lump sum payment of Two Million and 00/100 Dollars ($2,000,000.00) to be made on behalf of the Purchaser as part of the total Settlement Amount to the Tort Claim Settlement Fund. The Purchaser Contribution shall be advanced pursuant to a separate agreement by and between Underwriters and the Purchaser.

21.    "Purchaser Parties" means Purchaser and includes: (a) each of its past, present and future parents, subsidiaries, affiliates, and divisions, (b) each of their respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies. related companies, divisions, joint ventures, and acquired companies holding companies,

6

merged companies. related companies, divisions, joint ventures, and acquired companies; (c) each of their respective past, present and future directors, officers, managers, members, shareholders, employees, partners, principals, agents, attorneys, lenders, joint ventures, joint venturers, representatives, and managing agents, insurers, reinsurers, and associated third-parties; and (d) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or entities acting on behalf of, by, through or in concert with them.

22.     "Settlement Amount" means sum of Ten Million and 00/100 Dollars ($10,000,000.00) consisting of a lump sum payment of Eight Million and 00/100 Dollars ($8,000,000.00) to be made by or on behalf of Underwriters and the Purchaser Contribution of Two Million and 00/100 Dollars ($2,000,000.00), which amount is referred to in the Plan as the "Insurance Settlement Proceeds".

23.     "Tort Claim" means all Claims, whether asserted or unasserted, held by any Person or Entity against the Debtors, Underwriters, the Underwriters' Parties, the Purchaser Parties or any Person or Entity who may claim to be an Insured, Additional Insured, or otherwise claim to be entitled to coverage under any of the Policies or Insurance Program for bodily or personal injury, tort claim, or property damage related to, or arising out of the use, placement, operation, transportation, renting, leasing, and/or recovery of the Debtors' micro-mobility vehicles and/or arising out of the operation of the Debtors' businesses, including but not limited to, any Municipal Claim (as that term is defined under the Plan).

24.     "Tort Claimant" means any Person or entity holding or potentially holding a Tort Claim and also includes any Person or entity that may possess or assert any indirect Tort Claims by virtue of possessing any rights or entitlement of contribution, indemnification, or subrogation against the Debtors, Underwriters, the Underwriters' Parties, the Purchaser, the Purchaser Parties, or any other Person or entity who may be an Insured, Named Insured, Additional Insureds, or any co-defendant in any underlying proceeding.

25.     "Tort Claims Settlement Fund" means all assets and other corpus of the Tort Claims Trust inclusive of the Settlement Amount established exclusively for distribution to the Holders of allowed Tort Claims after payment of all other amounts required by this Agreement and the Plan, including, but not limited to: (a) all required statutory fees; and (b) all costs and expenses of administration of the Tort Claims Trust.

26.     "Tort Claims ADR Procedures" means the alternative dispute resolution protocol and procedures for determining eligibility and allowance of Tort Claims, liquidating allowed Tort Claims, and making distributions to the Holders of all allowed Tort Claim that is contained in the attached Schedule "3" that shall be approved by the Plan Confirmation Order.

27.     "Tort Claims Bar Date" means the date set by the Bankruptcy Court as the deadline for Tort Claimants to File Tort Claims.

28.     "Tort Claim Defenses" means any legal, equitable, or contractual defense that any of the Debtors, Named Insureds, Additional Insureds, Underwriters, the Purchaser, the

Purchaser Parties or any third party or co-defendant may have or may have under bankruptcy law or applicable non-bankruptcy law to the validity or amount of, or liability for, any Tort Claim, including any applicable statutes of limitation or repose.

29.    "Tort Claims Trust" means the trust to be established pursuant to this Agreement, the Plan, and Plan Confirmation Order for the benefit of Tort Claims.

30.    "Tort Claims Trust Agreement" means the form of trust agreement that is attached hereto as Schedule "4" that shall be included in the Plan and approved by the Plan Confirmation Order.

31.    "Underwriters" means collectively, those Certain Underwriters at Lloyd's, London subscribing to the Policies, including but not limited to the underwriting members of Syndicates Numbers 1969 and 1971 and are referred to in the Plan as the "Settling Insurers".

32.    "Underwriters Party" or "Underwriters' Parties" means Underwriters and includes: (a) each of their past, present and future parents, subsidiaries, affiliates, and divisions; (b) each of their respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies. related companies, divisions, joint ventures, and acquired companies; (c) each of their respective past, present and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and managing agents, claims handling administrators, affiliates, insurers, reinsurers, and associated third-parties; and (d) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or entities acting on behalf of, by, through or in concert with them. The Underwriters' Parties are referred to in the Plan as the Settling Insurers' Parties.

33.    "Underwriters' Policies" means the policies of insurance that: (a) are identified on the attached Schedule "1"; (b) under which any or all of the Debtors are an insured, Named Insured, or Additional Insured; or (c) under which Debtors, Additional Insureds, and/or any of the other Insurance Settlement Released Parties may contend they are entitled to coverage or benefits.

34.    "Underwriters' Excluded Policies" means those policies of insurance identified on the attached Schedule "2" that have been cured and assumed by the Purchaser as part of the Sale Order with the consent of Underwriters. For the avoidance of doubt, none of the Claims or Tort Claims identified in or contemplated by this Agreement (which consist of Claims or Tort Claims that accrued on or before the Closing Date (as defined in the Plan)) are subject to any coverage under the Underwriters' Excluded Policies.

35.    "Unknown Tort Claim" means any Tort Claim that is neither filed nor deemed filed on or by the Tort Claims Bar Date and is held by a Person or entity who: (a) asserts was incurred between the Tort Claims Bar Date and the Plan Effective Date; (b) has a Tort Claim that was barred by the statute of limitations as of the Tort Claims Bar Date but is no longer barred by the applicable statute of limitations for any reason, including the

enactment of legislation that revives previously time-barred Tort Claims; or (c) has a Tort Claim that is otherwise allowed by subsequent order of the Bankruptcy Court.

1.      **ARTICLE 2 THE SETTLEMENT, RELEASE AND BUYBACK AGREEMENT**

1.1.    Subject to the terms and conditions of this Agreement: (a) Underwriters shall pay or cause the Debtors to be paid the sum of Eight Million and 00/100 Dollars ($8,000,000.00), as provided for herein, in full and final settlement of all responsibilities under and arising out of the Underwriters' Policies and in consideration of the sale of the Underwriters' Policies to Underwriters free and clear of all Interests or Claims; and (b) Purchaser shall pay or cause the Debtors to be paid the sum of Two Million and 00/100 Dollars ($2,000,000.00) as provided herein and conditioned upon Purchaser and the Purchaser Parties receiving the benefit of the Releases, the Channeling Injunction, and the Bar Order provided herein and pursuant to the Plan. Both Underwriters' and the Purchaser's obligations to pay the settlement amounts hereunder are several, not joint, in nature; provided, however, that the failure or either Underwriters or the Purchaser to pay and deliver its portion of the Settlement Amount shall result in this Agreement being void ab initio and of no further force and effect.

1.2.    The Settlement Amount shall be paid to the Debtors or their designee within five (5) business days of the Plan Confirmation Order becoming a Final Order.

1.3.    Debtors shall hold the Settlement Amount in the trust account of their counsel for the benefit of Holders of Tort Claims until such time as the Tort Claims Trust is established and shall not commingle the Settlement Amount with any other assets of the Estates.

1.4.    The Settlement Amount is the maximum amount that Underwriters and the Purchaser shall be obligated to pay under this Agreement, including on account of any and all Claims under, arising out of, relating to, or in connection with the Underwriters' Policies or Insurance Program (including all Channeled Claims). The Parties further agree that subject to the entry of the Plan Confirmation Order approving this Agreement: (a) under no circumstances will Underwriters, the Underwriter Parties, the Purchaser or the Purchaser Parties ever be obligated to make any additional payments to or on behalf of the Debtors, their Estates, or any other Person or entity or any Tort Claimants in connection with this Agreement or in connection with any of the Underwriter Policies, in each case with respect to any Claims that, directly or indirectly, arise out of, relate to, or are in connection with any Tort Claims, including any Channeled Claims; (b) all limits of liability of the Underwriters' Policies, including all per occurrence and aggregate limits, are and shall be deemed to be fully and properly exhausted and the Parties further agree that the Settlement Amount set forth in Section 2.1 includes, respectively, the full purchase price of the Underwriters' Policies and consideration for the Releases, the Channeling Injunction, the Bar Order and other protections afforded by this Agreement, respectively; and (c) all obligations of Underwriters and the Underwriters' Parties under the Underwriters' Policies and Insurance Program are and shall be deemed to be extinguished.

1.5.    Subject to entry of the Plan Confirmation Order and the Plan Confirmation Order becoming a Final Order, Debtors agree that the Settlement Amount is the maximum

9

amount that Underwriters, the Underwriters' Parties, the Purchaser and the Purchaser Parties shall be obligated to pay with respect to all Claims and Tort Claims and Debtors have not at any time on or after the Petition Date, entered into, and shall not henceforth enter into any settlements of any Claims pursuant to which Underwriters may be obligated to pay any amounts under the Underwriters' Policies; provided, however, that nothing in this Agreement shall bar or prohibit Debtors from making distributions to the Holders of allowed Claims under and pursuant to the Plan.

1.6.    The Parties agree and represent that the consideration to be provided by Underwriters and the Purchaser pursuant to this Agreement (including the Settlement Amount) constitutes fair and reasonable exchanges for the benefits granted to Underwriters, the Underwriters' Parties, the Purchaser and the Purchaser Parties in this Agreement (including the Releases, the Channeling Injunctions and the Bar Order provided herein and in the Plan).

1.7.    Effective upon the delivery of the Settlement Amount, the Debtors agree and confirm that (a) any and all of Debtors' outstanding tenders to Underwriters for defense and/or indemnity of any Claims shall be deemed withdrawn; (b) Debtors shall not tender to Underwriters any Claims; (c) Debtors will not request that the Underwriters fund any judgments or settlements of any Claims; and (d) Underwriters shall have no further obligation to pay, handle, object to, or otherwise respond to any Claims.

1.8.    Nothing in this Agreement is intended to be or shall be construed as a waiver of any Party's rights or obligations under the Underwriters' Excluded Policies and except as expressly set forth herein, the Plan and Plan Confirmation Order shall have no effect on the Underwriters' Excluded Policies.

1.9.    Nothing in this Agreement precludes the Parties from internally allocating payments or receipt of payments made under this Agreement in such manner as each Party sees fit. Any such allocation by any of the Parties shall not be binding on the other Parties.

**2.    ARTICLE 3 THE BANKRUPTCY COURT APPROVAL OF THE AGREEMENT AND JOINT PLAN OF LIQUIDATION**

2.1.    This Agreement and the transactions contemplated hereby are contingent on the filing of the Plan that incorporates and is consistent, in all material respect, with this Agreement. In the event of a conflict between the Plan and this Agreement, this Agreement shall control and shall be deemed incorporated in the Plan to the extent necessary to effect such a result.

2.2.    The Debtors shall diligently prosecute confirmation of the Plan which shall include the following features:

2.2.1.    The Plan and Plan Confirmation Order shall include the Channeling Injunction pursuant to §105(a) of the Bankruptcy Code which provides that: (i) any and all Channeled Claims shall be channeled to and paid solely and exclusively from the Tort Claims Trust, which shall assume any and all liability of the Debtors and the Insurance Settlement Released Parties for such Tort Claims; and (ii) All Persons or Entities who have

10

held or asserted, hold or assert, or may in the future hold or assert a Channeled Claim against the Debtors or the Insurance Settlement Released Parties are hereby permanently and forever barred, estopped, stayed, and enjoined from taking any action, directly or indirectly, or commencing or continuing any suit, action, or other proceeding on, or asserting, enforcing, or attempting to assert or enforce, any Channeled Claim against the Debtors or the Insurance Settlement Released Parties, or any of their property or assets, including without limitation (1) pursuing or seeking to pursue, by any manner or means, any Tort Claim against the Debtors or any of the Insurance Settlement Released Parties; continuing or commencing, or seeking to continue or commence, by any manner or means, any action or proceeding of any kind with respect to any Tort Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets; (2) continuing or commencing, or seeking to continue or commence, by any manner or means, any action or proceeding of any kind with respect to any Tort Claim against the Debtors or any of the Insurance Settlement Released Parties under the Policies or other agreement; (3) enforcing, attaching, collecting or recovering, or seeking to enforce, attach, collect, or recover, by any manner or means, any judgment, award, decree, or order with respect to any Tort Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets; (4) creating, perfecting, or enforcing, or seeking to create, perfect, or enforce, by any manner or means, any lien, claim or encumbrance of any kind with respect to any Tort Claim against the Debtors or any of the Insurance Settlement Released Parties, or any of their property or assets; and (5) asserting, implementing or effectuating or seeking to assert, implement, or effectuate, by any manner or means, with respect to any Tort Claim, any right of setoff, recoupment, indemnification, subrogation, or any similar right of any kind, against: (a) the Debtors or the Insurance Settlement Released Parties; (b) any obligation due to any of the Debtors or the Insurance Settlement Released Parties; or (c) the property or assets of the Debtors or the Insurance Settlement Released Parties.

2.2.2.    The Plan and Plan Confirmation Order shall also include, and the Debtors shall be obligated to obtain the entry of, a Bar Order pursuant to 11 U.S.C. § 105(a) of the Bankruptcy Code to facilitate this Agreement and the terms and provisions contained herein, and as an essential, material and integral element of Underwriters and the Purchaser entering into this Agreement (without which Underwriters and the Purchaser would not enter into this Agreement or pay the Settlement Amount), which Bar Order shall permanently bar, prohibit, enjoin and restrain the filing, commencing, prosecuting, conducting, asserting or continuing in any manner, directly, indirectly or derivatively, any suit, action, cause of action, crossclaim, counterclaim, third-party claim, or other demand (including, without limitation, any and all of the Claims, which includes without limitation, any and all of the Tort Claims, all of which Claims are being released and barred herein) in any federal or state court or any other judicial or non-judicial proceeding (including, without limitation, any proceeding in any judicial, arbitral, mediation, administrative, or other forum) by any Barred Person (as defined below and in the Plan) against or affecting any of the Debtors or any of the Insurance Settlement Released Parties, that arises from, relates to, or derives from the Debtors or transactions involving or related to the Debtors' Estates, and which are based in whole and/or in part on any allegation, claim, demand, cause of action, matter or fact directly or indirectly relating in any way to or arising in connection with the Debtors, the Insurance Settlement Released Parties, the Underwriters'

11

Policies and/or the facts and circumstances underlying any Claim, including the Tort Claims, that have been made or could be made, including in connection with any Tort Claim or otherwise, whether or not asserted therein (collectively the "Barred Claims"). For purposes of the Bar Order, "Barred Persons" shall have the same meaning as set forth in the Plan and means any Persons and/or Entities having Claims against the Debtors or the Insurance Settlement Released Parties and their respective current and former officers, directors, shareholders, members, managers, employees, agents, attorneys, affiliates, parent companies, subsidiaries, partners, joint ventures, joint venturers, co-venturers, reinsurers, claim administrators, Representatives and associated third parties, whether or not that Person or entity filed a proof of claim, proof of interest, or otherwise has asserted any Claim against the Debtors' Estates. In the event such potential Holder of a Tort Claim timely objects and the Parties and/or the Bankruptcy Court do not resolve or overrule the objection to the satisfaction of the Insurance Settlement Released Parties, then any of the Insurance Settlement Released Parties shall have the right to withdraw from the Agreement without the need for Bankruptcy Court approval or the consent of any Party, and the Agreement shall then be null and void. The intent and purpose of the Bar Order are to enjoin directly the most expansive and comprehensive group of third parties, whether such party is known or unknown, identified or unidentified, suspected or unsuspected, named or unnamed class action members or potential class action members from pursuing any and all Claims or causes of action against the Insurance Settlement Released Parties, including that would implicate any of the Policies. Notwithstanding anything herein to the contrary, the Bar Order shall not relieve the Parties from their obligations under this Agreement. To be clear, the Bar Order shall prevent any and all actions related to any of the Tort Claims against and/or that may implicate the Insurance Settlement Released Parties and/or any of the Policies and Insurance Program.

      2.2.3.   The Plan and Plan Confirmation Order shall: (a) identify Underwriters, the Underwriters' Parties, the Purchaser and the Purchaser Parties as parties protected by the Releases, the Channeling Injunction and the Bar Oder; (b) contain a list of all other Insurance Settlement Released Parties which includes all Persons or entities protected by the Releases, the Channeling Injunction and Bar Oder; and (c) provide as follows:

          (a)     In consideration of the Releases, the Channeling Injunction, the Bar Oder and other covenants set forth herein, subject to the occurrence of the Effective Date of the Plan, each of the Debtors:

          (i)    Irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims and/or Interests they have or might have now or in the future against the Insurance Settlement Released Parties with respect to any and all Tort Claims, any contribution, subrogation, indemnification, or other similar Claims arising from or relating to any Tort Claim, and any of the Underwriters' Policies; and

          (ii)    Consents to the sale of Underwriters' Policies in accordance with this Agreement, understanding that it will be as if the Underwriters' Policies never existed, and to the contribution of the Settlement Amount to the Tort Claims Trust, as provided in this Agreement.

2.2.4.  The Parties intend to comply with the Medicare Secondary Payer Act ("MSPA") and agree that the Plan and Plan Confirmation Order, as applicable, shall provide that:

2.2.5.  Before making any distribution of Trust Assets to any Tort Claimant from the Tort Claims Trust, the Trustee shall (i) obtain written certification from the Tort Claimant to receive such a distribution or their counsel that: (a) he or she has complied with reporting, and if necessary established any set-asides, required by applicable federal, state and local laws and regulations regarding settlements with minors and Medicare/Medicaid/SSA with respect to such Tort Claimant; (b) the Tort Claimant acknowledges that Medicare's interests in reimbursement for any incurred medical expenses that have been paid by Medicare have either already been satisfied and Medicare has acknowledged such satisfaction or will be satisfied from the distribution of Trust Assets to the Tort Claimant; (c) satisfaction of Medicare's interests from the distribution of Trust Assets to the Tort Claimant shall be the sole and exclusive responsibility of each individual Tort Claimant and each individual Tort Claimant agrees to provide proof of such satisfaction to the Trustee upon request; (d) each Tort Claimant agrees that the duties of each Tort Claimant stated in this paragraph are non-delegable and failure to perform such duties shall provide Underwriters with a right to recover any monies paid caused by the failure to satisfy Medicare's interests including any additional expenses incurred and attorney fees; and (e) the Tort Claimant acknowledges and understands that the Settling Insurers (as defined in the Plan) are required to report any payment to a Medicare beneficiary in settlement of a claim under a liability insurance policy or self-insurance to Medicare (CMS); and (ii) provide a copy of such certification to the Debtors or Plan Administrator, as applicable, and the Settling Insurers.

2.2.6.  The Tort Claims Trust shall defend, indemnify, and hold Underwriters, the Underwriters Parties and the Purchaser Parties harmless from any Medicare Claims.

2.3.   The form and manner of notice of the hearing to confirm the Plan (as amended to the satisfaction of Underwriters or the Purchaser) are subject to advance approval by Underwriters and the Purchaser, which approval shall not be unreasonably withheld. Prior to entry of the Plan Confirmation Order, the Debtors shall continue to oppose any further motions to lift stay pursuant to 11 U.S.C. §362 of the Bankruptcy Code as to any Tort Claim.

2.4.   If the Plan Confirmation Order (or any other order of the Bankruptcy Court relating to this Agreement) shall be appealed by any Person or Entity (or a petition for certiorari or motion for rehearing or reargument shall be filed with respect thereto), Debtors shall take all reasonable steps to defend against such appeal, petition or motion: *provided however*, that nothing herein shall preclude the Parties, at the election of Underwriters or the Purchaser, from consummating the Agreement and the transactions contemplated herein if the Plan Confirmation Order has been entered and has not been stayed and Underwriters or Purchaser, in their sole discretion, waive in writing the requirement that the Plan Confirmation Order be a Final Order.

2.5.    The Parties shall not take any appeal from, or seek to reopen, reargue or obtain reconsideration of, or otherwise contest or challenge in any way, directly or indirectly, the Plan Confirmation Order (or any other order of the Bankruptcy Court relating to this Agreement), except to the extent that any such order shall be inconsistent with the terms hereof.

2.6.    The Parties shall cooperate in seeking and obtaining Bankruptcy Court approval of the Agreement and the Plan. Such cooperation shall include, without limitation, consulting with each other concerning the status of the Bankruptcy Cases including the status of the Plan, and Debtors providing Underwriters and the Purchaser with drafts of requested motions, notices, certificates of service, proposed orders and any such other pleadings and documents relating to this Agreement.

2.7.    Any amendments to the Plan, in so far as they relate to this Agreement, shall be in all respects consistent with this Agreement and shall, in all material respects be acceptable to Underwriters and the Purchaser, whose acceptance shall not be unreasonably withheld. Any amendments to the Plan in so far as they relate to this Agreement shall not deprive the Underwriters, the Underwriters' Parties, the Purchaser or the Purchaser Parties of any right or benefit under this Agreement or otherwise adversely affect their Interests under this Agreement.

2.8.    Provided none is in default of its obligations under this Agreement, none of the Parties shall file any motion, adversary proceeding, response, objection, or other pleading or document in the Bankruptcy Cases requesting the entry of any order or granting any other relief which could conflict with, supersede, abrogate, nullify, modify ,or restrict the terms of this Agreement and/or the rights of any Parties hereunder, or in any way prevent or interfere with the consummation or performance of the Agreement and the transactions contemplated herein.

2.9.    In the event that the Bankruptcy Cases are dismissed or converted to a case under Chapter 7 after the Plan Confirmation Order has been entered, the Parties agree that all terms, conditions, promises and obligations set forth in this Agreement shall survive and shall be and shall remain binding on the Parties and any successors or assigns of the Parties including the Debtors, Underwriters and the Purchaser, and the Plan Confirmation Order shall so provide.

## 3.    ARTICLE 4 RELEASES AND SALE FREE AND CLEAR

3.1.    Subject to the provisions of Section 6.2 of this Agreement and effective upon the receipt of the Settlement Amount by the Debtors or their designee:

(a)    without any further action of the Parties, Debtors on behalf of themselves and the Estates hereby fully, finally, and completely remise, release, acquit and forever discharge each of the other Insurance Settlement Released Parties from any and all past, present and future Claims that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims or Underwriters' Policies, including any Channeled Claims, and all Claims that, directly or indirectly, arise from, relate to, are filed in, or are

14

asserted in connection with the Debtors' Bankruptcy Cases (the "Releases"). The Releases of the Insurance Settlement Released Parties under this Section 4.1 shall include, but shall not be limited to, any and all Claims for coverage, indemnification, contribution, subrogation or otherwise under the Policies arising out of or relating to or in any way involving the Tort Claims whether for wrongful death, personal injury, emotional distress, property damage, economic loss, environmental damage, remediation or exposure, or any other form of loss, expense, or other benefit covered or potentially covered under the Policies or Insurance Program;

(b)     the Debtors on behalf of themselves and the Estates, hereby withdraw any and all requests, demands, or tenders for defense or indemnity previously submitted to Underwriters under the Underwriter Policies arising out of or relating to or in any way involving the Tort Claims, and further surrender, relinquish, and release any further right to tender or present any Claims whatsoever to Underwriters to the Underwriters' Parties under the Underwriters' Policies or Insurance Program. Furthermore, by virtue of the foregoing Releases and the Approval Order, Underwriters shall have no duty to defend or indemnify Debtors, on behalf of themselves and the Estates, or any other insured and Additional Insured under the Underwriters' Policies with respect to any past, present, or future Claim, nor shall Underwriters have any other duty or obligation whatsoever to any Tort Claimant or any other Person or entity with respect to any and all Claims; and

(c)     the Parties expressly waive any and all rights they may have under any contract, statute, code, regulation, ordinance, or at common law, which may limit or restrict the effect of a general release as to Claims released herein and in the Plan and the Approval Orders.

3.2.    The Releases of the Underwriters' Parties and the Purchaser Parties as set forth in 3.1 above are not intended to, and shall not, extend to or otherwise release or discharge any rights, privileges, benefits, duties, or obligations of any of the Parties by reason of, or otherwise arising under the Agreement, the Plan or the Plan Confirmation Order.

3.3.    Effective upon the receipt of the Settlement Amount by the Debtors or their designee, Underwriters hereby buy back the Underwriters' Policies that were issued to the Debtors and the Debtors' Interests in those policies, free and clear of all liens, Claims and Interests of all Persons or Entities, including the Interests of the Debtors, any other Person or entity claiming coverage by, through, or on behalf of any of the Debtors, any other insurer and any Tort Claimant. This sale is pursuant to §§363(b), (f), and (m) of the Bankruptcy Code. The Parties acknowledge and agree, and the Plan Confirmation Order shall find and conclude, that: (a) Underwriters are good faith purchasers of the Underwriters' Policies and Interests within the meaning of §363(m) of the Bankruptcy Code; (b) the consideration exchanged constitutes a fair and reasonable settlement of the Parties Coverage Disputes and of their respective rights and obligations relating to the foregoing Underwriters' Policies and Interests and constitutes reasonably equivalent value; (c) the Releases in this Agreement and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws; (d) upon the Plan Conformation Order becoming a Final Order, the Underwriters' Policies and Interests shall be terminated and

15

of no further force and effect and treated as if they never existed; (e) payment of the Settlement Amount by Underwriters constitutes Underwriters' full and complete performance of any and all obligations under the Underwriters' Policies and with respect to the foregoing Interests, including any performance owed to the Debtors and Tort Claimants with respect to the Underwriters' Policies subscribed to that were issued to the Debtors; (f) all Interests the Debtors and may have had, may presently have, or in the future may have in the Underwriters' Policies subscribed to that were issued to the Debtors and are released pursuant to the terms of this Agreement as of the Effective Date of the Plan; (g) the Debtors meet the requirements to complete the sale of the Underwriters' Policies and Interests free and clear of any liens or other Interests; and (h) the Debtors accept the payment of the Settlement Amount set forth in Section 1.1 in accordance with this Agreement in full and complete satisfaction of all Underwriters and the Underwriters Parties' past, present, and future obligations, including any obligations to any of the Debtors under Underwriters' Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such Claims arise from, relate to, or are in connection with the Channeled Claims, the Bankruptcy Cases, or otherwise under the Underwriters' Policies.

3.4.    Release and Waiver by the Insurance Settlement Released Parties: Upon the Plan Confirmation Order becoming a Final Order, exclusive of the obligations, requirements, and duties expressly set forth in this Agreement, the Plan, the Confirmation Order, the Sale Order, any other Order of the Bankruptcy Court creating obligations of the Debtors and the Asset Purchase Agreement, the Underwriters' Parties and the Purchaser Parties, on behalf of themselves, their agents, officers, directors, legal representatives, attorneys, subsidiaries, affiliates, successors, heirs, and assigns, fully and unconditionally wave, release, remise, and forever discharge the Debtors from all known and unknown claims or causes of action, suits, debts, sums of money, accounts, covenants, bonds, or obligations set forth in contracts, controversies, or obligations set forth in the Underwriters' Policies and Insurance Program, including attorneys' fees and costs, claims, and demands whatsoever, both in law and an equity that either Underwriters or the Purchaser ever had, now have, or may have against the Debtors or their estates, by reason of any manner, cause or thing whatsoever from the beginning of time to the date of this Agreement, arising out of or in any way relating to the Bankruptcy Cases; provided, however, that this release shall not constitute or be deemed to constitute a release or waiver of any of the rights obtained by, or any of the obligations imposed upon, the Parties pursuant to this Agreement.  In no event shall this release constitute or be deemed to constitute a release or waiver of any rights by Underwriters or the Purchaser against one another and/or or any third parties.

3.5.    Other than payment of the Additional DIP Funding Claim (as defined in the Plan) or as expressly set forth in the Plan, Underwriters and the Purchaser further waive their right to receive any distribution pursuant to the Plan including on account of any proof of claims and/or claims that could be asserted under any provisions of the Bankruptcy Code against the Debtors, or their estates, including but not limited to any claims pursuant to § 502 of the Bankruptcy Code, or any other applicable law.

16

3.6.    Debtors represent and warrant that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any Claims that are the subject of the Releases set forth in Section 3.1 above.

3.7.    The Parties acknowledge that there may be changes in the law with respect to interpretation of coverage under the Underwriters' Policies or otherwise and/or that the Parties may hereafter discover facts different from, or in addition to, those which they now believe to be true with respect to any and all of the Claims and entities herein released. Nevertheless, the Parties hereby agree that the Releases set forth above, and the releases provided for in the Plan and approved by the Approval Orders, shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

3.8.    The Releases set forth in Section 3.1 above shall not apply to or have any effect on the Underwriters' rights to any claim for reinsurance in connection with the Underwriters' Policies, nor shall Underwriters' assertion of any claim for reinsurance affect its obligations under this Agreement.

3.9.    Subject to the other provisions of this Agreement, to the extent that the Releases set forth in Section 3.1 above run in favor of any Persons or entities who are not signatories hereto, this Agreement is declared to be made for their respective benefits.

## 4.    ARTICLE 5 REPRESENTATIONS

4.1.    Each of the Parties separately represents and warrants as follows:

(d)    Subject to the entry of the Approval Order, each has the requisite power and authority to enter into this Agreement and to perform the obligations imposed on it by this Agreement subject only to approval of the Bankruptcy Court;

(e)    Subject to the entry of the Approval Order, the execution and delivery of and the performance of the obligations contemplated by this Agreement have been approved by duly authorized representatives of the Party and by all other necessary actions of the Party;

(f)    It has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

(g)    It has not and will not sell, assign, transfer, convey, or otherwise dispose of any rights or interests under the Underwriters' Policies and any Claims that it is releasing in this Agreement except as otherwise contemplated herein with respect to the Underwriters' Excluded Policies. Moreover, the Debtors and Purchaser represent, warrant, and agree that they will not in any way assist any Person or entity in the establishment of any Claim against Underwriters that arises out of, results from, or in any way relates to Underwriters' investigation, handling, defense, or settlement of Claims released under this Agreement, except as ordered by a court of competent jurisdiction. In the event that a subpoena or discovery requests are served upon the Debtors or Purchaser, the Debtors or

17

Purchaser shall give prompt notice to Underwriters and adequate opportunity to respond to any such subpoena or discovery request.

   (h) This Agreement has been thoroughly negotiated and analyzed by its counsel and has been executed and delivered in good faith, pursuant to arm's length negotiations, and for reasonable value and valuable consideration.

   (i) Nothing in this Agreement, including the Schedules hereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was, in fact, issued and/or affords coverage in connection with any Claims.

   (j) Each will use commercially reasonable efforts to seek entry of the Approval Orders.

## 5. ARTICLE 6 MISCELLANEOUS PROVISIONS

5.1. <u>Conditions Precedent.</u> Subject to Section 5.2 below, this Agreement is expressly subject to satisfaction of the following conditions having performed, waived or otherwise excused:(a) that the Plan Confirmation Order shall have been entered and shall have become a Final Order; (b) Underwriters and the Purchaser pay the Settlement Amount to the Debtors; and (c) the Release, the Channeling Injunction, and Bar Oder are approved by a Final Order of the Bankruptcy Court.

5.2. <u>Termination Rights</u>. Any Party may terminate this Agreement if the Bankruptcy Court does not enter the Approval Order or if the Approval Order does not become a Final Order on or before the 120th day following the Execution Date. In the event that this Agreement is terminated by one or more of the Parties: (a) this Agreement shall be deemed null and void; (b) Underwriters and the Purchaser shall not be obligated to pay Settlement Amount to the Debtors (or if either Party already paid the Settlement Amount, the Debtors shall return the respective payments to each Party); (c) the Parties shall have all of the claims, defenses, rights and obligations under or with respect to the Underwriters' Policies that they would have had absent this Agreement; and (d) any and all otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date that the Agreement is terminated.

5.3. <u>Amendments</u>. Neither this Agreement nor any term set forth herein may be changed, waived, discharged, or terminated except by a writing signed by each of the Parties (or their successors or assigns).

5.4. <u>No Precedential Value</u>. This Agreement and the Tort Claims ADR Procedure shall be without precedential value, and they are not intended to be, nor shall they be construed as, an interpretation of any insurance policies. This Agreement shall not be used as evidence, or in any other manner, in any court or other dispute resolution proceeding to create, prove, or interpret the obligations of Underwriters under the Underwriters' Policies, *provided*, *however*, that, subject to Section 5.17 of this Agreement below, this Agreement may be used as evidence in any defense of or by Underwriters of any obligations arising

18

under the Underwriters' Policies. The Parties acknowledge that this is a settlement of a disputed claim.

5.5.    Agreement Voluntarily Entered Into by Each of The Parties. This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them. The Parties represent and warrant to each other that they have read and fully understand each of the provisions of this Agreement and have relied on the advice and representations of competent legal counsel of their own choosing.

5.6.    Interpretation. This Agreement has been negotiated at arm's length and between and among Persons sophisticated and knowledgeable in the matters dealt with in this Agreement. In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties. Accordingly, no Party shall be presumptively entitled to have any provisions of the Agreement construed against the other Parties in accordance with any rule of law, legal decision, or doctrine. To the extent that any dispute arises as to the meaning of this Agreement, in whole or in part, it shall be construed in accordance with the Parties' intent to preclude future liability and exposure for the Parties to claims, rights, and causes of action, except to the extent covered by the Tort Claims Settlement Fund.

5.7.    No Admission of Liability. The Parties agree that this Agreement is the result of a compromise and that the execution and delivery of this Agreement by any of the Parties shall not constitute or be construed as an admission of any liability, a course of performance, or wrongdoing on the part of any of them. The Parties acknowledge that this Agreement is not, and cannot be construed as, an admission by any of the Parties that any claim, cause of action, demand, defense, indemnity, or other coverage obligation exists under the Underwriters' Policies, or that Underwriters have any other obligation of any nature whatsoever with respect to the Underwriters' Policies. By entering into this Agreement, the Parties have not waived nor will they be deemed to have waived any right, obligation, privilege, defense or position they may have asserted or might assert in connection with any Claims, matter, Person, entity or insurance policy outside the scope of this Agreement. Except as otherwise expressly provided in Section 2.9 above, no Person other than the Parties hereto shall have any legally enforceable rights or benefits under this Agreement.

5.8.    No Fraudulent Transfer. This Agreement, having been negotiated at arm's length in settlement of bona fide disputes and supported by adequate consideration, is not a preference under 11 U.S.C. §547, a fraudulent conveyance under 11 U.S.C. §§546 or 548, or avoidable under any other applicable bankruptcy or non-bankruptcy law. The Parties agree that the rights and interests being transferred hereunder are being transferred in exchange for reasonably equivalent value and that upon the Execution Date, the Parties shall be deemed estopped and barred from challenging the reasonably equivalent value of the amount paid pursuant to the Agreement. The Parties agree to assert in any proceeding challenging this Agreement or seeking to avoid any part of this Agreement that this Agreement was for equivalent value as set forth above, was reached in good faith and was negotiated with the advice of counsel.

5.9.  <u>Attorneys' Fees, Costs, and Expenses.</u> Each of the Parties shall bear its or his own costs, attorneys' fees, and expenses in connection with the negotiations and preparation of this Agreement; provided, however, that the Debtors' professionals may seek an award of the fees and expenses incurred by them in obtaining Bankruptcy Court approval of the Agreement which, if awarded, shall be paid from the first proceeds of the Settlement Amount.

5.10.  <u>Entire and Integrated Agreement.</u> This Agreement, along with the Schedules and attachments hereto, and the Approval Order, is intended by the Parties as a final expression of their agreement and is intended to be a complete and exclusive statement of the agreement and understanding of the Parties with respect to the subject matters contained herein. This Agreement supersedes any and all prior promises, representations, warranties, agreements, understandings, and undertakings between or among the Parties with respect to such subject matters, and there are no promises, representations, warranties, agreements, understandings, or undertakings with respect to such subject matters other than those set forth or referred to herein.

5.11.  <u>No Third-Party Beneficiaries.</u> Except for those parties included in the Releases, Channeling Injunction, and the Bar Order provided herein, nothing in this Agreement is intended or shall be construed to give any Person or entity not otherwise referred to or named herein, other than the Parties and their respective successors and permitted assigns and the Insurance Settlement Released Parties any legal or equitable right, remedy, or claim under or in respect to this Agreement or any provisions contained herein; this Agreement and any conditions and provisions hereof being and intended to be for the sole and exclusive benefit of the Parties, and for the benefit of no other Person or entity. Notwithstanding the foregoing, neither this Agreement nor the rights and obligations set forth herein shall be assigned without the prior written consent of the other Parties, except that this Section shall not prohibit any assignment by Underwriters or Purchaser (a) made by merger, consolidation, or operation of law or (b) to a Person or entity who succeeds to all or substantially all of their respective assets.

5.12.  <u>Agreement Regarding Documents and Electronically Stored Data.</u> Prior to the Petition Date, the Debtors retained various legal counsel to defend Debtors and Additional Insureds in connection with Claims that had been asserted, or which might be asserted, including but not limited to in the Tort Claims. In connection with these representations, counsel retained by the Debtors took possession of and/or copied certain paper documents and records and may have obtained items of electronically stored information and/or other electronic media (collectively the "<u>Tort Claim Records</u>"). As a further consideration for this Agreement, Debtors and Purchaser agree that effective on the Approval Date and without the necessity of any further action by Underwriters, Debtors, and Purchaser, as applicable, shall request its former counsel to provide Underwriters with copies of the Tort Claim Records, whether paper documents or electronically stored information.

5.13.  <u>Severability.</u> If any provisions of this Agreement or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect and be interpreted so as best to

reasonably effect the intent of the Parties. Notwithstanding the foregoing, all of the conditions precedent in this Agreement will remain in full force and effect following any determination that any other provisions of this Agreement are invalid or unenforceable.

5.14.   <u>Notice.</u> Any notice or request required or desired to be given pursuant to this Agreement shall be sufficient if made in writing and sent by first class mail, postage prepaid, facsimile, or e-mail to the Parties at the addresses set forth below or to such other Persons as any of them may designate in writing from time to time:

**(a)**     As to Debtors:

      Christopher Rankin
      Chief Restructuring Officer
      61 The Kingsway
      Toronto, Ontario
      M8X 2T3 Canada
      chris@rankinpartners.com

      With a copy to:

      Berger Singerman LLP
      1450 Brickell Avenue, Suite 1900
      Miami, Florida 33131
      Telephone: 305-755-9500
      Attn:   Paul Steven Singerman, Esq.
            singerman@bergersingerman.com
            Jordi Guso, Esq.
            jguso@bergersingerman.com

**(b)**     As to Underwriters:

      c/o Apollo
      One Bishopsgate
      London, United Kingdom EC2N 3AQ
      Attn:   Ian Beckett

      With a copy to:

      Markowitz, Ringel, Trusty & Hartog, P.A.
      9130 S. Dadeland Blvd., Suite 1800
      Miami, FL 33156
      Attn:   Jerry M. Markowitz, Esq.
            jmarkowitz@mrthlaw.com

      -and-

Fields Howell, LLP
301 S. State Street, Suite N200
Newtown, PA 18940
Attn:   Gregory L. Mast, Esq.
        gmast@fieldshowell.com

**(c)**     As to Purchaser:

Blue Jay Transit, Inc.
382 NE 191st Street
PMB 20388
Miami, FL 33179-3899
Attn:   Stewart Lyons
        stewart.lyons@bird.co

With a copy to:

Venable LLP
100 SE 2nd St Fl 44
Miami, FL 33131
Attn:   Paul J. Battista, Esq.
        pjbattista@venable.com

5.15.   Headings. The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

5.16.   Recitals. The recitals set forth at the beginning of this Agreement shall not be admissible to prove the truth of the matters asserted in any action or proceeding involving any of the Parties (other than an action or proceeding brought to enforce the terms of this Agreement), nor do any of the Parties intend such recitals to constitute admissions of fact by any of them.

5.17.   Agreement Inadmissible. Any evidence of the terms or negotiations, or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes establishing any rights, duties, or obligations of the Parties, except in (a) an action or proceeding to enforce the terms or effect of this Agreement, (b) proceedings before the Bankruptcy Court to secure the Approval Order, or (c) any possible action or proceeding between Underwriters and any of its reinsurers bearing responsibility for any of obligations of Underwriters under this Agreement. Except as set forth herein, this Agreement shall not be used as evidence or in any other manner in any court or dispute resolution proceeding to create, prove, or interpret the Parties' rights or obligations to each other or to any other Person.

5.18.   Additional Necessary Documents. The Parties, and each of them, agree to execute such additional documents as may be reasonably required in order to carry out the purpose and intent of this Agreement, or to evidence anything contained herein.

22

5.19.   <u>Execution in Counterparts</u>. This Agreement may be signed in multiple counterparts and the separate signature pages executed by Parties may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.

5.20.   <u>Governing Law</u>. This Agreement, and any proceeding that may be based upon, arise out of or relate or be incidental to this Agreement, the negotiation, execution, performance or consummation of the foregoing or the inducement of any Party to enter into the foregoing, whether now existing or hereafter arising (each, a "<u>Transaction Dispute</u>"), will be exclusively governed by and construed and enforced in accordance with the internal laws of the State of Florida, without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of Florida to be applied, except to the extent that such Laws are superseded by the Bankruptcy Code.

5.21.   <u>Jurisdiction</u>. The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any Transaction Dispute, and any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court.

5.22.   <u>Rules of Construction</u>. As used in this Agreement, the singular and masculine gender shall mean also mean the plural and feminine or neuter, as may be appropriate, "it" shall include "he" and "she"; and "each" and "all" includes "each" and "every." Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively; (b) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (c) the words "Include," "includes" or "Including" shall be deemed to be followed by the words "without limitation," and (d) the word "or" shall be disjunctive but not exclusive, References to this Agreement and other documents shall be deemed to include all subsequent amendments and other modification thereto.

[Signatures appear on the following page.]

23

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**Bird Global, Inc.; Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession**

By:    Christopher Rankin

Title:   Chief Restructuring Officer

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of  Lloyd's Syndicate 1969 and Lloyd's Syndicate 1971**

By:    Ian Beckett

Title:   Claims Manager

Date:   April 19 2024

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of Blue Jay Transit, Inc.**

By:

Title:   Authorized Officer

Date:   April 18 2024

DocuSign Envelope ID: 63795747-A525-46F3-A8E0-A75F90EB55A5

## Schedule 1

## Underwriters' Policies

| Policy Number | Policy Period | Insured |
|---|---|---|
| B0595XN5736018 | 10/03/2018 - 03/01/2019 | Bird Rides, Inc. |
| B0595XN5846019 | 02/01/2019 - 02/01/2020 | Bird Rides, Inc. |
| B0509BOWCN2000078 | 02/01/2020 - 02/01/2021 | Bird Rides, Inc. |
| B0509BOWCN2000277 | 02/01/2020 - 02/01/2021 | Bird Rides, Inc. |
| B0509BOWCN2150090 | 06/01/2021 - 06/01/2022 | Bird Rides, Inc. |
| B0509BOWCN2250539 | 06/01/2022 - 06/01/2023 | Bird Global, Inc., Bird Rides, Inc., Green Squrl LLC dba Sherpa Scoot Rides, Inc. |
| B0509BOWCN2250534 | 06/01/2022 - 06/01/2023 | Bird Global, Inc., Bird Rides, Inc., Green Squrl LLC dba Sherpa Scoot Rides, Inc. |
| B080120117U20 | 03/08/2020 - 03/08/2021 | Skinny Labs Inc. d/b/a Spin; Spin Mobility GmbH; Spin Mobility Ltd. |
| B080120117U21 | 03/08/2021 - 03/08/2022 | Skinny Labs Inc. d/b/a Spin; Spin Mobility GmbH; Spin Mobility Ltd. |
| B080120117U22 | 03/08/2022 - 03/08/2023 | Skinny Labs Inc. d/b/a Spin; Spin Mobility GmbH; Spin Mobility Ltd. |

**Schedule 2**

**Underwriters' Excluded Policies**

| Policy Number | Policy Period | Insured |
|---|---|---|
| B080120117U23 | 03/08/2023 - 03/08/2024 | Skinny Labs Inc. d/b/a Spin; Spin Mobility GmbH; Spin Mobility Ltd. |
| B0509BOWCN2350710 | 08/01/2023 - 07/01/2024 | Bird Global, Inc., Bird Rides, Inc., Green Squrl LLC dba Sherpa Scoot Rides, Inc. |
| B0509BOWCN2350711 | 08/01/2023 - 07/01/2024 | Bird Global, Inc., Bird Rides, Inc., Green Squrl LLC dba Sherpa Scoot Rides, Inc. |

**Schedule 3**

**Tort Claims ADR Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| BIRD GLOBAL, INC., et al., | Case No. 23-20514-CLC |
| Debtors. | Jointly Administered |
| _____/ | |

## [PROPOSED][1] TORT CLAIMS PROTOCOL AND
## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

The *Tort Claims Protocol and Alternative Dispute Resolution Procedures* (hereinafter the "ADR Procedures") contained herein provide the procedures for resolving all Tort Claims as defined in the *Debtors' Joint Chapter 11 Plan of Reorganization* proposed by Bird Global, Inc., and its Debtor Affiliates, in *In re Bird Global, Inc., et al.*, Case No. 23-20514-CLC (Bankr. S.D. FL [*  ], 2024) [Docket No. [*  ]] (as it may be further amended or modified, the "Plan"), as provided in and required by the Plan and the Tort Claims Trust Agreement (the "Tort Claims Trust Agreement").[2] The Plan and the Tort Claims Trust Agreement establish the Tort Claims Trust for the exclusive benefit of the Holders of Tort Claims, and provide for the appointment of an independent Tort Claims Administrator to evaluate and resolve the Tort Claims in accordance with these ADR Procedures. The Tort Claims Trustee is required to implement and administer these ADR Procedures in accordance with the Tort Claims Trust Agreement and the Plan.

### SECTION 1.

### INTRODUCTION

**1.1**    **Purpose**. The purpose of the Tort Claims Trust is to, among other things, assume all potential liability for all Tort Claims, to hold, preserve, maximize and administer the Tort Claims Trust Assets, and to establish procedures to liquidate and make a Distribution to all Tort Claim Beneficiaries as further set forth herein in accordance with § 502 of the Bankruptcy Code and applicable law (each, an "Allowed Tort Claim"), determine the allowed amount of each Tort Claim (the "Allowed Claim Amount"), and direct the making of Distributions to the Holders of Allowed Tort Claims. These ADR Procedures are adopted pursuant to the Plan and Tort Claims Trust Agreement and have been approved as reasonable by the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

---

[1]    Certain of the deadlines and other information contained in these [Proposed] ADR Procedures are blank. The Parties will solicit the views of the Tort Claims Trustee prior to finalizing the ADR Procedures, all of which shall be subject to the approval of the Bankruptcy Court at or before the Confirmation Hearing.

[2]    Capitalized terms used but not defined herein shall have the meaning set forth in the Debtors' Joint Plan of Liquidation and the Tort Claims Trust Agreement.

1

**1.2     Interpretation**. The ADR Procedures apply solely to the adjudication, resolution, allowance or disallowance of Tort Claims. Except as may otherwise be provided below, nothing in the ADR Procedures shall be deemed to create a substantive right for any Tort Claimant. The rights and benefits provided herein to Holders of Tort Claims shall vest in such Holders as of the Effective Date.

## SECTION 2

## OVERVIEW

**2.1     Tort Claim Trust Goals**. The Tort Claims Trust shall implement and administer these ADR Procedures in consultation with the Tort Claims Administrator and Tort Claims Trust Professionals with the goals of securing the just, speedy, and cost-efficient determination of every Tort Claim, providing substantially similar treatment to Holders of Tort Claims in accordance with these ADR Procedures, and promote the efficient and prompt distribution of the Tort Claims Trust Assets to the Holders of Allowed Tort Claims. To achieve this goal, these ADR Procedures set forth procedures for evaluating, adjudicating or resolving Tort Claims, and distributing the Tort Claims Trust Assets to Holders of Allowed Tort Claims. These ADR Procedures set forth herein shall be the sole and exclusive method by which the Holder of a Tort Claim may seek allowance and distribution on account of such Tort Claim.

**2.2     Summary of ADR Procedures**. The ADR Procedures are intended to provide a mechanism for the Tort Claims Administrator and Tort Claimants to evaluate and consensually resolve all Tort Claims. Under the ADR Notice and Immediate Claim Settlement Offer Procedure, after receiving notification of their inclusion in the ADR Procedures, Tort Claimants will complete and return the ADR Notice and Claim Form (as defined below) and provide such information to the Tort Claims Administrator as may be reasonably necessary. Upon receipt of the completed ADR Notice and Claim Form, the Tort Claims Administrator will determine if the Tort Claim gives rise to any causes of action against the Debtors and/or the Insurance Settlement Released Parties. The Tort Claims Administrator then has the opportunity to review the documents and information provided by the Tort Claimants to fully assess the validity and extent of any claims and/or damages relating to the Tort Claim. The Offer Exchange Procedures (as defined below) are intended to provide the Tort Claims Administrator and the Tort Claimants the opportunity to exchange written settlement offers and engage in informal settlement negotiations after they have evaluated the Tort Claim. If the Tort Claims Administrator and the Tort Claimant are unable to resolve the Tort Claim during this process, they may proceed to the Informal Resolution Procedures which is intended to allow the parties to meet and attempt to resolve the Tort Claim consensually without the participation of a third-party intermediary. Finally, the last step is an Arbitration Procedure that is intended to provide a more formal mechanism for amicable resolution of any remains and disputed Tort Claims. The Arbitration Procedure is based upon the terms of use (the "Terms of Use") governing the consumers' rental and use of the micro-mobility vehicles made available by the Debtors (the "Vehicles") and includes generally accepted arbitration procedures of professional alternative dispute resolution organizations. To the extent the Tort Claimants elect to have any third party co-defendant(s) participate in the Arbitration Procedure, the costs and fees of the Arbitrator shall be initially borne by the Tort Claims Trust, without prejudice to "fee shifting" if the Tort Claims Trustee prevails on its objection to the allowance of the Tort Claim, in which event the Tort Claimant shall be solely liable for the cost of the arbitration, consistent with the Terms of Use governing the use or rental of the Vehicles. The Binding Arbitration Procedure is intended to provide a final and formal mechanism for resolution of disputed Tort Claims simultaneously through joint binding Arbitration.

2.3    **General Principles**. To achieve maximum fairness and efficiency, and recoveries for Holders of Allowed Tort Claims, these ADR Procedures are founded on the following principles:

      A.    Objective Tort Claim eligibility criteria;

      B.    Clear and reliable proof requirements;

      C.    Administrative transparency;

      D.    A rigorous review and evidentiary process that requires the Tort Claims Administrator to determine Allowed Tort Claims amounts in accordance with applicable law;

      E.    Prevention and detection of any fraud; and

      F.    Independence of the Tort Claims Trustee and the Tort Claims Administrator.

2.4    **Exclusivity**. These ADR Procedures shall be the sole and exclusive method by which a Tort Claimant may seek the allowance and a Distribution on account of any Tort Claim.

2.5    **Confidentiality and Privilege**. All information that the Tort Claims Administrator or the Tort Claims Trustee receives in connection with the evaluation or payment of a Tort Claim shall be treated as confidential and shall be protected by all applicable state and federal privileges, including those directly applicable to settlement communications and shall not be disclosed absent an Order of the Bankruptcy Court compelling such disclosure or the written consent of the Tort Claimant (or such Tort Claimant's counsel of record). All information that the Tort Claims Administrator receives from any Tort Claimant (including from counsel to such Claimant) shall be subject to the settlement and mediation privilege and receipt of such information by the Tort Claims Administrator shall not constitute a waiver of any attorney-client privilege or attorney work-product claim or any similar privilege or doctrine.

2.6    **Governing Law**. Except for purposes of determining the allowance or the value of any Tort Claim, administration of these ADR Procedures shall be governed by, and construed in accordance with, the laws of the State of Florida. As provided in the Terms of Use, the review and adjudication of the allowance (or disallowance) and the amount of a Tort Claim under these ADR Procedures shall be governed by, and construed in accordance with, the laws of the State of California.

2.7    **Statute of Limitations or Repose.** The statute of limitations and statute of repose applicable to any Tort Claim shall be determined pursuant to the laws of the jurisdiction where such Tort Claim accrued.

2.8    **Conflict with Plan**. The terms of the Plan or the Plan Confirmation Order shall prevail if there is any conflict between the terms of the Plan or the Plan Confirmation Order and the terms of these ADR Procedures.

2.9    **Res Judicata Effect**. Any adjudication made by the Tort Claims Administrator or arbitrator pursuant to the ADR Procedures shall have no preclusive, res judicata, judicial estoppel or similar effect outside of these Bankruptcy Cases as against any joint tortfeasor who is not an Insurance

12898017-6

Settlement Agreement Released Party, nor may any such determination be admissible in or used against any Tort Claimant in any other matter, case, or proceeding.

**2.10    Document Access**. If requested, the Tort Claims Administrator shall grant Tort Claimants access to relevant, otherwise discoverable, non-privileged information and documents the Tort Claims Trust receives from the Debtors, the Insurance Settlement Released Parties, or any other cooperating third-parties to facilitate their submissions with respect to their Tort Claims. Such access may include non-privileged information and documents provided to the Tort Claims Trust by Tort Claimants that are not confidential and are relevant to the Tort Claimants' Tort Claims or other Allowed Tort Claims.

## SECTION 3

## DEFINITIONS AND RULES OF INTERPRETATION

**3.1    Incorporation of Plan Definitions**. Capitalized terms used but not defined in these ADR Procedures shall have the meanings ascribed to them in the Plan, the Insurance Settlement Agreement or the Bankruptcy Code.

**3.2.    Interpretation; Application of Definitions and Rules of Construction**. For purposes of these ADR Procedures, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference to a person as a  Holder of a Tort Claim includes that person's successors and assigns; (c) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to these ADR Procedures as a whole and not to any particular article, Section, subsection, or clause; (d) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation;" (e) any effectuating provisions of these ADR Procedures may be reasonably interpreted by the Tort Claims Trustee or the Tort Claims Administrator in such a manner that is consistent with the overall purpose and intent of these ADR Procedures without further notice to or action, order, or approval of the Bankruptcy Court; (f) the headings in these ADR Procedures are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (g) in computing any period of time prescribed or allowed by these ADR Procedures unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply; (h) "or" is not exclusive; and (i) all provisions requiring the consent of a Person or entity shall be deemed to mean that such consent shall not be unreasonably withheld.

## SECTION 4

## ADR PROCEDURES ADMINISTRATION

**4.1    Administration**. Pursuant to the Plan and the Tort Claims Trust Agreement, these ADR Procedures shall be administered by the Tort Claims Trustee in consultation with the Tort Claims Administrator, who is a neutral third party retained to review and reconcile the Tort Claims. The Tort Claims Trustee shall assist the Tort Claims Administrator in the administration and resolution of the Tort Claims in accordance with these ADR Procedures and provide information necessary for the Tort Claim Administrator to implement these ADR Procedures.

4

**4.2     Powers and Obligations.** The powers and obligations of the Tort Claims Trustee, and the Tort Claims Administrator are set forth in the Plan and Tort Claims Trust Agreement. The Tort Claims Administrator is a neutral administrator of the Tort Claims and as set forth herein, is responsible for reviewing each of the Tort Claims in accordance with these ADR Procedures. The Tort Claims Administrator's adjudication of each Tort Claim shall be the final review, subject only to reconsideration as set forth below.

**4.3     Cooperation Agreement.** The Tort Claims Administrator may require information, documentation, and/or require the participation of the Insurance Settlement Released Parties to evaluate Tort Claims pursuant to the ADR Procedures. To ensure the cooperation of any necessary parties, the Tort Claims Administrator may ask any of the Insurance Settlement Released Parties to enter into a cooperation agreement (the "Cooperation Agreement") in the form to be attached hereto as Exhibit [___] which provides for the preservation and protection of the parties' respective confidential and privileged information.

## SECTION 5

## CLAIMANT ELIGIBILITY

**5.1     Tort Claims.** The ADR Procedures apply to the Holders of Tort Claims that accrued on or before March 22, 2024 and which may be unsecured, unliquidated or liquidated, contingent, disputed, adjudicated in any arbitration, state or district court proceeding and/or settled pursuant to a written agreement involving bodily injury, including wrongful death, property damage, and the like against any of the Debtors and/or the arising out of the use, placement, operation, transportation, renting, leasing, and/or recovery of the Debtors' Vehicles and/or arising out of the operation of the Debtors' business, including any claim that is related thereto by way of, without limitation, subrogation, contribution, or indemnification. For the avoidance of doubt, Tort Claims do not include (a) workers' compensation Claims; (b) Claims arising under a real property lease against the Debtors; (c) Claims relating to the Debtors' securities; or (d) Claims by any employees, former employees, or contractors of the Debtors arising from their employment, employment agreements or contracts and/or related to the WARN Act.

**5.2     Tort Claims Submission Deadline.** Any Tort Claimant that has not filed a timely Proof of Claim on or before the Tort Claims Bar Date shall be forever barred from asserting such Tort Claim against any of the Insurance Settlement Released Parties and such Tort Claim shall be forever waived, barred and disallowed as against each of the Insurance Settlement Released Parties and not eligible for adjudication under these ADR Procedures or any Distribution under the Tort Claims Trust.

**5.3     Eligibility of Tort Claims.** To be eligible to receive any distribution from the Tort Claims Trust on account of a Tort Claim, a Tort Claimant must:

(1)     have a valid Tort Claim;

(2)     have timely filed a properly completed Proof of Claim on or before the Tort Claims Bar Date;

(3)     submit supporting documentation and evidence to the Tort Claims Administrator as provided below;

12898017-6

(4)     execute and deliver a Tort Claim Release Agreement as provided below; and

(5)     complete and provide any such other forms, information, documents, or other requirements set forth herein as reasonably necessary for the Tort Claims Trustee to effectuate any Distribution as otherwise may be approved hereunder.

**5.4     Disallowed Claims**. In the event that a Tort Claimant submits materials that are insufficient (as determined by the Tort Claims Administrator in accordance with these ADR Procedures) to satisfy the eligibility requirements contained in Section 5.3 above, the Tort Claim Administrator shall provide notice of each deficiency to such Tort Claimant and automatically defer adjudication of the related Tort Claim for a minimum of 30 days, to afford the Tort Claimant a fair opportunity to cure any such deficiencies. If the Tort Claimant fails to either timely supplement his or her Tort Claim with materials sufficient to resolve any deficiencies identified by the Tort Claims Administrator, or fails timely respond to the deficiency notice, then upon expiration of 30 days (or such other period as determined by the Tort Claims Administrator), the Tort Claim shall automatically be a Disallowed Tort Claim and the Tort Claim Administrator shall send a Disallowed Tort Claim Notice to such Tort Claimant. The Holder of such Disallowed Tort Claim shall not receive a Distribution from the Tort Claims Trust but shall remain bound by the terms of the Plan and Plan Confirmation Order.

**5.5     Withdrawal of Claims**. A Tort Claimant can irrevocably withdraw a Tort Claim at any time upon written notice to the Tort Claims Trustee. If withdrawn, (a) the Tort Claim will be withdrawn with prejudice and may not be reasserted, and such Tort Claimant shall remain bound by the terms of the Plan and the Plan Confirmation Order, including without limitation the releases of the Insurance Settlement Released Parties in Section 13.7 of the Plan, the Channeling Injunction of Section 13.6, and the Bar Order of Section 13.9 thereof; and (b) any reserve maintained by the Tort Claims Trust on account of such Tort Claim shall revert to the Tort Claims Trust as a Tort Claims Trust Asset for Distribution in accordance with the Tort Claims Trust Agreement and the Plan.

**5.6     Recovery Only With Respect to a Single Individual Tort Claim.** A Tort Claimant may assert no more than one Tort Claim pursuant to the ADR Procedures, and may recover only in respect of such singular Tort Claim from the Tort Claims Trust, based on the Tort Claim asserted in the Tort Claimant's Proof of Claim. For the avoidance of doubt, after filing his or her Proof of Claim, a Tort Claimant may not allege or seek to assert an additional or different Tort Claim unless otherwise allowed by the Tort Claims Administrator in his or her discretion.

**5.7     Tort Claims Previously Settled but Unpaid**. If, prior to the Closing Date (i) a Tort Claimant submitted his or her Tort Claim to the Debtors or participated in a mediation or arbitration proceeding for settlement consideration, and either: (ii) an arbitration was completed; or (iii) a written settlement agreement was entered into between the Debtors and the Tort Claimant to settle the Tort Claim for an amount certain, but the arbitrator did not release his or her judgment or the Debtors were unable to process the related transfer of settlement funds before the Petition Date, then such Tort Claimant may submit his or her Tort Claim Form to the Tort Claims Administrator and assert allowance of the Tort Claim in the amount agreed to or adjudicated prior to the Petition Date. A Tort Claimant must provide the Tort Claims Administrator with a copy of his or her executed settlement agreement, or other documentation evidencing that an arbitration award or settlement was reached prior to the Closing Date to support his or her Tort Claim. The Tort Claims Administrator shall allow the Tort Claim and it will be

6

eligible to receive a Distribution from the Tort Claims Trust without being required to participate in any further ADR Procedures hereunder.

**5.8     Tort Claims Previously Settled and Paid**. Any Tort Claimant who previously (i) reached a settlement with the Debtors related to a Tort Claim, (ii) submitted a release, and/or (iii) received payment with respect to his or her Tort Claim, shall not have an Allowed Tort Claim and shall not receive any Distribution from the Tort Claims Trust.

**5.9.     Tort Claims Previously Rejected or Dismissed**. Any Tort Claimant who filed a Tort Claim in any arbitration forum, or state or federal court prior to the Petition Date which was thereafter dismissed with prejudice and is not the subject of a pending appeal shall not be eligible to recover any payment whatsoever from the Tort Claims Trust.

**5.10     Tort Claims Otherwise Subject to Final Judgment**. Any Tort Claimant who filed a Tort Claim in any arbitration forum, or state or federal court, and whose Tort Claim was adjudicated and resulted in a final unfavorable judgment (e.g., a defense verdict) and is the not the subject of a pending appeal shall not be eligible to recover any payment whatsoever from the Tort Claims Trust.

**5.11     Non-Responsive Tort Claimants.** Except for those Tort Claimants who (a) have submitted a Reconsideration Request (as set forth below), or (b) (i) hold Tort Claims as a representative on behalf of a deceased or incompetent individual, and (ii) are required to obtain court approval before accepting any Allowed Tort Claim, Allowed Tort Claimants shall have 30 days from the date an offer is made by the Tort Claims Administrator to accept such offer. In the event that a Tort Claimant neither accepts such settlement offer within 30 days nor falls under either exception (a) or (b) of this Section, such Tort Claimant's Tort Claim shall be deemed waived and ineligible for compensation from the Tort Claims Trust and the Tort Claims Administrator may in his or her discretion, file a motion with the Bankruptcy Court, on notice to the Tort Claimant to seek the entry of an order striking and disallowing the Tort Claim.

**5.12     Non-Compensatory Damages and Other Theories of Liability**. In determining the amount of any Distribution to Tort Claimants, punitive damages and damages that can be classified as economic damages that do not compensate the Tort Claimant for property, bodily injury and/or emotional distress or mental anguish attributable to their bodily injury shall not be considered or allowed, even if these damages could have been considered or allowed under applicable non-bankruptcy law. Any distribution to a Tort Claimant shall be solely because of property damage, bodily injury and/or emotional distress or mental anguish attributable to the bodily injury to such Tort Claimant.

**5.13     Post-petition Interest**. No Holder of an Allowed Tort Claim shall receive or recover interest accruing on or after the Petition Date on any such Allowed Tort Claim.

**5.14     Release and Dismissal of Pending Litigation**. No Tort Claimant shall receive a Distribution until such Tort Claimant has executed and delivered to the Tort Claim Trust the "Tort Claim Release Agreement" in a form to be filed as part of a supplement prior to the Plan Confirmation Hearing and to attached hereto as Exhibit "A". Each Tort Claimant must release all Claims against the Debtors and the Insurance Settlement Released Parties. Upon request, the Tort Claims Trustee must provide copies of all executed Tort Claim Release Agreements to the Insurance Settlement Released Parties. For the avoidance of doubt, nothing herein shall require a Tort Claimant to release any Person that is not the Debtors or an Insurance Settlement Released Party. In addition, each Tort Claimant shall within ten (10)

days of receipt of a Distribution file a notice of dismissal with prejudice of all Tort Claims against the Debtors and any Insurance Settlement Released Parties, in any pending litigation with each party to bear its own fees and costs. In the event that any Tort Claim asserted against the Debtors or any Insurance Settlement Released Parties in any pending litigation shall be not have been dismissed as and when provided herein, the Tort Claim Trustee and/or the Insurance Settlement Released Parties shall be authorized to apply to the applicable court and request that such litigation be dismissed, and in connection therewith such court shall be entitled to rely on the Plan, the Plan Confirmation Order and these ADR Procedures in dismissing such lawsuit.

5.15    **Duty to Negotiate in Good Faith**. During the period of these ADR Procedures, each Tort Claimant and the Tort Claims Administrator shall negotiate in good faith in an attempt to reach an agreement for the compromise of the Tort Claims; provided, however, that any dispute as to the underlying value of the Tort Claim shall not, in and of itself, constitute bad faith.

5.16    **Failure to Comply with ADR Procedures**. If, absent written agreement by the Tort Claims Administrator and any Tort Claimant, a Tort Claimant fails to comply with the ADR Procedures, negotiate in good faith, or cooperate with the Tort Claims Administrator, or any participating third party co-defendant, if applicable, as may be necessary to effectuate the ADR Procedures, may result in the disallowance of the Tort Claim at the discretion of the Tort Claims Administrator and such Tort Claimant's Tort Claim shall be deemed waived and ineligible for a Distribution from the Tort Claims Trust and the Tort Claims Administrator may in his or her discretion, file a motion with the Bankruptcy Court, on notice to the Tort Claimant to seek the entry of an order striking and disallowing the Tort Claim.

5.17    **Admissibility of ADR Proceedings**. Other than as expressly provided herein, the submission of any Tort Claim to the ADR Procedures, the positions of the parties during compliance with the ADR Procedures, and any other admissions made during the ADR Procedures, shall not be admissible for any purpose in any case, matter, or proceeding including, without limitation, trial by any party or Joint Tortfeasor, or any proceeding under 11 U.S.C. § 502, and are expressly determined by the provisions herein not to be admissions by either party. Such positions and statements shall remain confidential among the parties and any arbitrator and protected by Rule 408 of the Federal Rules of Evidence.

## SECTION 6

## STAGE 1 - NOTICE OF ADR PROCEDURES AND OPTIONS

6.1    **ADR Notice and Claim Information and Settlement Demand Form**. No later than thirty (30) days following the Effective Date, or as soon thereafter as is practicable, the Tort Claims Administrator shall publish and cause to be served the claims materials for all Tort Claims, substantially in the form annexed hereto as Exhibit "B", to all known Holders of Tort Claims (the "ADR Notice") which shall include: (b) the Claim Information and Settlement Demand Form (the "Claim Form"); (b) a HIPAA Release Form in a form to be filed as part of a supplement prior to the Plan Confirmation Hearing (the "HIPAA Release"); and (c) a Tort Claims Release Agreement in a form to be filed as part of a supplement prior to the Plan Confirmation Hearing and attached hereto as Exhibit "C". The ADR Notice shall inform Tort Claimants that their Tort Claim is channeled to the Tort Claims Trust, is subject to the ADR Procedures, and if appropriate, provide them with the option to either (i) accept any Immediate Claim Settlement Offer (as hereinafter defined) that in the discretion of the Trust Claim Administrator may be included; or (ii) request the Claimant complete and sign under penalty of perjury and return to the Tort

8

Claims Administrator the ADR Notice and Claim Form together with all requested documents to support the Tort Claim which shall be evaluated by the Tort Claims Administrator to determine whether the Tort Claim is eligible to receive a Distribution from the Tort Claims Trust. The applicable HIPAA Release and Tort Claim Release Agreement shall be made available for completion electronically and may be executed by a Tort Claimant or his or her legal Representative via Adobe Sign or DocuSign, or a similar authorized electronic signature and notarization program, or such other simplified and expedient means established by the Trust Claims Administrator.

      A.    <u>Response Deadline</u>. The ADR Notice shall require the Claimant to respond so that the Tort Claims Administrator will actually receive a response from the Tort Claimant no later than forty-five (45) days after the date on which the ADR Notice is served (the "<u>Tort Claimant Response Deadline</u>").

      B.    <u>Sufficiency of Service of Notice and Communications</u>. For purposes of the ADR Procedures, service on a Tort Claimant and any communications (including responses) shall be deemed adequate if such service is provided to the Tort Claimant (i) at the email address(es) of their counsel, if counsel has appeared, specified in their filed Proof of Claim or in the pending litigation, if any; (ii) if Tort Claimant does not have counsel, then at the email address(es) of Tort Claimant, if known; and (iii) by mail, where the Debtors have a record of a physical address for the Tort Claimant. Service on the Tort Claims Trust by any Tort Claimant and any communications (including responses) to the Tort Claims Trust shall be deemed adequate if made by email at the email addresses set forth in the ADR Notice or if made by using a regularly recognized overnight delivery service sent to the Tort Claims Trust addresses set forth in the ADR Notice.

      C.    <u>Effect of Failure to Respond</u>. Failure of a Tort Claimant to sign and return the ADR Notice and/or an Immediate Claim Settlement Offer will be deemed as a failure to comply with the ADR Procedures. The Tort Claimant's ability to proceed with and participate further in the ADR Procedures will be at the discretion of the Tort Claims Administrator as set forth in Sections 5.11 and 5.16 above.

## SECTION 7

## STAGE 2 - IMMEDIATE CLAIM SETTLEMENT OFFERS

**7.1    Immediate Claim Settlement Offers**. The Tort Claims Administrator may, but is not required to, include in the ADR Notice an offer to allow the Tort Claim in the amount asserted by the Tort Claimant or any such lesser amount as determined in the discretion of the Tort Claims Administrator ""<u>Immediate Claim Settlement Offer</u>").

**7.2    Acceptance of Immediate Settlement Offer.** If an Immediate Claim Settlement Offer is included in the ADR Notice, the Tort Claimant shall have the option to sign and return the Immediate Claim Settlement Offer on or before the Response Deadline without being required to provide any additional information set forth in the ADR Notice and Claim Form. A Tort Claimant who elects to accept an Immediate Claim Settlement Offer in response to the ADR Notice or at such later time as such an offer is made to the Tort Claimant in the discretion of the Tort Claim Administrator, shall be entitled to the allowance of its Tort Claim in the amount contained in the Immediate Settlement Offer.

**7.3    Rejection of Immediate Settlement Offer**. If a Tort Claimant elects to reject the Immediate Claim Settlement Offer, the Tort Claimant must complete and return the ADR Notice and the Claim Form by the Response Deadline and as otherwise set forth below.

**7.4    Effect of Election**. A Tort Claimant who elects to accept an Immediate Claim Settlement Offer shall have no further claims or remedies with respect to the Tort Claim he or she has against the Tort Claims Trust, the Debtors or the Insurance Settlement Released Parties. Tort Claimants that accept an Immediate Claim Settlement Offer will not be eligible to receive any further Distribution pursuant to these ADR Procedures.

## SECTION 8

## STAGE 3 - OFFER EXCHANGE PROCEDURES

**8.1    Offer Exchange Procedures** The third stage of the ADR Procedures will be the settlement offer and exchange procedure, requiring the parties to exchange information and settlement offers and thereby provide the opportunity to resolve the Tort Claim on a consensual basis without any further litigation (the "Offer Exchange Procedures").

A.    Tort Claimant's Demand. The Claim Form contained in the ADR Notice requires that in the event a Tort Claimant (1) does not receive an Immediate Claim Settlement Offer; or (2) elects to reject an Immediate Claim Settlement Offer, the Tort Claimant must make a settlement demand, which may include a request for a reasonable amount of supplemental information or clarification of information from the Tort Claims Administrator (the "Tort Claimant's Demand"). The Tort Claimant's Demand must also provide the Tort Claims Administrator with certain information and documentation that will enable the Tort Claims Administrator to evaluate the Tort Claim and the Tort Claimant's Demand.

(1)    The Tort Claimant must return the completed ADR Notice and the Claim Form by the Response Deadline. The Tort Claimant shall not be required to provide duplicative information to the extent the Tort Claimant has already provided the requested claim information as supporting documentation attached to any timely filed Proof of Claim in the Cases.

(2)    The Tort Claimant's Demand may not exceed the amount of the Tort Claimant's most recent timely-filed Proof of Claim, if one was filed. For the avoidance of doubt, this does not mean that if a Tort Claimant filed a claim which did not make a specific demand, the claimant is limited to demanding zero. The Claimant's Tort Demand may liquidate any unliquidated amounts asserted in a Proof of Claim. The Claimant may not return the Claim Form with an unknown, unliquidated, indefinite, contingent, or similar description of the Tort Claim or the amount thereof.

B.    Response to Demand. Within thirty (30) days after the Tort Claims Administrator's receipt of a Tort Claimant's Demand, the Tort Claim Administrator shall serve a response on the Claimant and their counsel, if identified (the "Response"). The Response shall either: (1) accept the Tort Claimant's Demand; (2) make a counter-offer to settle the Tort Claim for a different amount (the "Offer"); or (3) request additional information.

10

(1)    Acceptance of Claim. The Tort Claim Administrator may accept the Tort Claim as asserted in the Tort Claimant's Demand. In such event, the Tort Claim will be deemed Allowed and receive a Distribution from the Tort Claim Trust.

(2)    Offer. The Tort Claim Administrator may make a written good faith offer of settlement based upon its review of the Tort Claim.

(3)    Additional Information. The Tort Claim Administrator may request a reasonable amount of supplemental information or clarification of information to assist in a good faith evaluation of any particular Tort Claim. The Tort Claimant shall serve such additional reasonable information so that the Tort Claim Administrator actually receive such information within 30 days of the mailing (or e-mailing if the Tort Claimant has counsel) of such request. If the Tort Clamant timely responds to such a request, the time period within which the Tort Claim Administrator may otherwise respond to the Tort Claimant's Demand shall be extended until 30 days after the Tort Claim Administrator has actually received the supplemental information. The Tort Claim will not be processed further until the additional information requested has been provided by the Tort Claimant to the Tort Claim Administrator.

C.    Tort Claimant's Reply. The Tort Claimant shall have 30 days after service of the Offer within which to reply (the "Reply Deadline"). The Tort Claimant's reply shall be in writing and signed by the Tort Claimant or an authorized representative.

(1)    If the Offer is accepted, the Tort Claim shall have an Allowed Tort Claim and receive a Distribution as set forth below.

(2)    If the Offer is rejected, or the Tort Claimant does not respond by the Reply Deadline, the Tort Claim will automatically advance to the next stage of the ADR Procedures. If the Tort Claimant does not respond by the Reply Deadline, the Tort Claim Administrator may seek relief in accordance with Sections 5.11 and 5.16.

**8.2    Confidentiality of Offer Exchange Procedures**. All offers made and communications exchanged during the Offer Exchange Procedures shall be provided to the Tort Claim Administrator. All such communications shall be confidential among and between the Tort Claim Administrator, any participating third-parties, if applicable and the Tort Claimant. No party shall disclose the contents of such offers or communications without the prior written consent of each of the other parties. Any and all statements and offers made during the Offer Exchange Procedures shall be subject to Federal Rule of Evidence 408 and shall not be subject to discovery in any subsequent proceeding.

### STAGE 3 - ALTERNATIVE PROCEDURES

**8.3    Tort Claim Determination of Allowance.** If the Tort Claims Administrator determines the Tort Claimant has established his or her Tort Claim by a preponderance of the evidence, the Tort Claim shall be allowed. If necessary, the Tort Claims Administrator can ask for additional information to make this determination. The Tort Claimant may refuse such a request at his or her own risk, including but not limited to disallowance of his or her Tort Claim.

11

**8.4    Tort Claim Amount Determination**. Once the Tort Claims Administrator determines a Tort Claim is allowed, the Tort Claims Administrator shall then determine the amount of such Tort Claim after considering all of the facts and evidence presented by the Tort Claimant in the Tort Claimant's filed Proof of Claim and any supplementary materials or information submitted to the Tort Claims Administrator. The Tort Claims Administrator may consider the credibility of the Tort Claimant and the facts alleged in support of the Tort Claim and, in the Tort Claims Administrator's sole discretion, reduce or deny the Tort Claim. After all Tort Claims have been evaluated, the Tort Claim Administrator shall determine the dollar value for each Tort Claim and the Tort Claimant's pro rata share of the Tort Claims Trust Assets, after accounting for necessary holdbacks to pay administrative fees and costs.

**8.5    Determinations by the Tort Claims Administrator**. The Tort Claims Administrator shall notify each Tort Claimant in writing of the expected monetary distribution with respect to the Allowed Tort Claim, which distribution may be greater or smaller than the actual distribution to be received based on the outcome of any remaining disputed or unresolved Tort Claims and the funds ultimately available for distribution. The Tort Claims Administrator's determination shall be final unless the Tort Claimant makes a timely request for reconsideration by the Tort Claims Administrator. The Tort Claimant shall not have a right to any other appeal of the Tort Claims Administrator's point award. Determinations shall be sent, in the case of a Tort Claimant represented by a lawyer to the Tort Claimant's attorney by email and, in the case of a *pro se* Tort Claimant, both by email, if one is provided, and by express courier.

**8.6    Requests for Reconsideration**. The Tort Claimant may request reconsideration by delivering a written request for reconsideration to the Tort Claims Administrator within [* ] calendar days after the date of mailing of the notice of the preliminary monetary distribution. Each written request must be accompanied by a non-refundable check for the reconsideration fee, of $[* ] hundred dollars. The Tort Claimant, with the request for reconsideration, may submit additional evidence and argument in support of such request. The Tort Claimant's monetary distribution amount may go up or down as a result of his or her request for reconsideration. The Tort Claims Administrator shall have sole discretion to determine how to respond to the request for reconsideration. The Tort Claims Administrator's determination of such request for reconsideration shall be final and not subject to any further reconsideration, review or appeal by any party, including the Bankruptcy Court.

## SECTION 9

## STAGE 4 - INFORMAL RESOLUTION PROCEDURES

**9.1    Informal Resolution Procedures**. If a settlement is not reached as a result of the Offer Exchange Procedures outlined in Section 8 above, then the Tort Claim Administrator, the Tort Claimant or counsel for the Tort Claimant, if represented by counsel, will meet in-person or over Zoom within [_ ] days to negotiate further to determine if a resolution can be reached (the "Informal Resolution Procedures").

## SECTION 10

## STAGE 5 - BINDING ARBITRATION

**10.1    Binding Arbitration**. If any Tort Claims are not resolved pursuant to the Offer Exchange Procedures or the Informal Resolution Procedures set forth in Sections 7 through 9 above, the next stage

12

of the ADR Procedures will be Arbitration. The following arbitration procedures will apply (the "Arbitration Procedures").

**10.2.    Designation of Arbitrator**. The Tort Claims Administrator shall select in his sole discretion, a single arbitrator (the "Arbitrator") to serve as the sole trier of fact and final arbiter as to the entitlement and amount of each disputed Tort Claim.

A.    Arbitrator Qualifications. The Arbitrator shall have the following minimum qualifications: (1) a current or retired member of a state bar; (2) experience in tort litigation of the type of case for which he or she is proposed; (3) demonstrable experience or familiarity with the applicable law of the jurisdiction where the claim would otherwise be tried; and (4) demonstrable experience or familiarity with courts and verdicts in the jurisdiction where the claim would otherwise be tried. For Tort Claims in the asserted amount of One Million ($1,000,000) Dollars or more, the Arbitrator shall have the additional qualification of five or more years' experience as a neutral. The Arbitrator shall be impartial and neutral and shall not have any financial or personal interest in or relation to the Tort Claim, the Bankruptcy Cases or, except where otherwise agreed by the parties, in any related matters.

**10.3    Manner and Notice of Arbitration.** The Tort Claims Administrator shall serve a Notice of Arbitration (the "Arbitration Notice"), in a form to be filed as part of a supplement prior to the Plan Confirmation Hearing and attached hereto as Exhibit "D", on the Tort Claimant within [* ] days after the completion of the Informal Resolution Procedures or at such earlier date as the Tort Claims Administrator determines to be appropriate.

A.    Representation by Counsel. Any party may be represented by legal counsel, although the participation of legal counsel shall not be required to conduct the Arbitration Procedures.

B.    Status Conference. Within [* ] days of his or her appointment, the Arbitrator shall conduct a global status conference at which Tort Claimant and the Tort Claims Administrator will be required to confer with respect to global procedural and substantive matters affecting the Arbitration of the applicable Tort Claim, including but not limited the selection of date(s), location(s), and time(s) for Arbitration to be scheduled. The Arbitrator may enter such procedural or substantive orders of general or special application which are consistent with the terms of these Arbitration Procedures as the Arbitrator deems appropriate. Such orders shall be confidential among the Arbitrator, the Tort Claimants, the Tort Claims Administrator, and any other party (a) that the Tort Claims Administrator determines is necessary in connection and consistent with his duties and responsibilities, and (b) who agrees to be bound by the confidentiality provisions of these Arbitration Procedures.

**10.4    Arbitration Statements**.

A.    Opening Statement. On or before [* ] days prior to the scheduled Arbitration, the Tort Claimant shall serve on the Arbitrator and the Tort Claims Administrator by email and no later than by 5:00 p.m. (PST), a non-confidential (as between the parties and the Arbitrator), pre-arbitration statement (the "Opening Statement"), not to exceed 10 pages, excluding any attachments, setting forth all of the Claimant's claims and identifying each and every cause of action or theory the Tort Claimant asserts, including a short and plain statement of the facts and

13

law upon which the Tort Claimant relies for recovery and maintains entitle it to relief. The Tort Claimant shall include, as exhibits or annexes to the Opening Statement, any documents, affidavits, or other evidentiary materials on which the Claimant relies, but which are not attached to the Claimant's Proof of Claim.

      B.    <u>Response Statement</u>. On or before [* ] days after service of the Opening Statement, the Tort Claims Administrator shall serve on the Arbitrator and the Tort Claimant, by email and no later than by 5:00 p.m. (PST), a non-confidential (as between the parties and the Arbitrator) response statement (the "<u>Response Statement</u>") not to exceed 10 pages, excluding attachments. The Response shall include such information as the Tort Claims Administrator deems appropriate. In preparing the Response Statement, the Tort Claims Administrator and his or her counsel shall be entitled to consult with such Persons or entities as they deem appropriate including but not limited to Insurance Settlement Released Parties, provided that the confidentiality of documents is preserved in the manner set forth below.

      C.    <u>Additional Materials</u>. At the Arbitrator's discretion and direction, the parties may submit additional, confidential letters or statements to the Arbitrator only, addressing settlement amounts and such related negotiation matters as the Arbitrator may request.

    **10.5**    **Location and Scheduling of Arbitration**. Following the Status Conference, the Arbitrator, Tort Claimant and the Tort Claims Administrator shall reasonably confer regarding the time, duration, and location of the Arbitration. All Arbitration sessions may take place virtually.

    **10.6**    **Arbitration Hearings**. Hearings on each Tort Claim shall last no more than two hours, subject to such extensions as the Arbitrator determines are required by the circumstances of each case. The Tort Claimant and the Tort Claims Trustee shall, in general, be entitled to equal time for their respective presentations. The parties may submit such depositions, documentary evidence, affidavits, and live testimony as they deem appropriate and as may be allowed by the Arbitrator.

      A.    <u>Procedural and Evidentiary Rules</u>. The Arbitrator shall determine and apply procedural and evidentiary rules in connection with the determination of each Tort Claim, taking generally into account, as applicable to an expedited proceeding such as that provided for herein, the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. The Arbitrator may extend deadlines for good cause.

      B.    <u>Final and Binding Ruling</u>. After consideration of each Tort Claim, the Arbitrator shall enter a ruling with respect to each such Tort Claim, and shall award such amount as the Arbitrator determines appropriate by applying to each Tort Claim the same general standards for court awards for similar claims and without taking into account the amount of money available for distribution to creditors. In the event that the Arbitrator determines that a Tort Claim is not entitled to any award, the Arbitrator shall briefly specify the reasons for such determination and the Tort Claim shall be disallowed by the Tort Claims Administrator. The Arbitrator shall not otherwise specify the rationale for the respective awards. The Arbitrator's determination with respect to each Tort Claim shall be final and binding in accordance with Federal Rule of Bankruptcy Procedure 9019(c).

      C.    <u>Limitation on Ruling on Non-participating Parties</u>. Notwithstanding anything herein to the contrary, the parties agree that the procedures set forth herein for the Arbitrator's determination of the amount of any Tort Claim, if any, as well as the actual determination thereof, are not

and shall not constitute a full and complete litigation of the merits of each such Tort Claim between the respective Tort Claimant and any non-participating joint tortfeasors such that the determination of any such Tort Claim shall not have any res judicata, collateral estoppel, or issue preclusion effect in any future proceedings, whether judicial or administrative in nature. Further, the Tort Claimants agree not to, and shall not, raise the issue(s) or defense(s) of res judicata, collateral estoppel, or issue preclusion in any future proceedings, whether judicial or administrative in nature, by reason of the determination of any Tort Claim hereunder.

**10.7    Fees and Costs of Arbitration**. The fees and costs of the Arbitrator shall be paid by the Tort Claims Trust. The Tort Claimant shall bear the cost and expense of its own counsel, experts, witnesses, and prosecution. If the arbitration results in the Tort Claim being disallowed, the fees and expenses of the arbitration may be assessed against the Tort Claimant, consistent with the Terms of Use.

**10.8    Confidentiality of Arbitration.** In addition to the inadmissibility provisions contained in **Section 6.7** above, all meetings and proceedings, including any statements made and evidence introduced during the Arbitration, shall be confidential among the Tort Claims Administrator, the Tort Claimant, and the Arbitrator, and no party shall disclose the contents of such meetings and proceedings without the prior written consent of each of the other parties. Any and all statements made and evidence introduced at these meetings and proceedings shall not be subject to discovery in any subsequent proceeding unless otherwise independently discoverable under the applicable rules, nor may the Arbitrator be compelled to disclose to any court or to any person outside the Arbitration Conference any of the records, reports, summaries, notes, communications, or other documents received or made by the Arbitrator while serving in such capacity. The Arbitrator may not testify or be compelled to testify regarding the Arbitration in connection with any arbitral, judicial or other proceeding. The Arbitrator will not be a necessary party in any proceedings relating to the Arbitration. Nothing contained in this paragraph prevents the Arbitrator from reporting the status, but not the substance, of the Arbitration efforts to any court.

**10.9    Duty to Participate in Arbitration Procedures** The failure of any party to participate in the Arbitration Procedures shall be governed by Local Bankruptcy Rule 9019-5(c)(iv)(B), and any such failure or any lack of good faith by any such party during the course of the Arbitration could result in the disallowance of the Tort Claim as set forth in Section 5.16.

# SECTION 11

## STAGE 6 - DISTRIBUTIONS UNDER THE TORT CLAIMS TRUST

**11.1    Distributions of Allowed Tort Claims**. Each Tort Claimant with an Allowed Tort Claim shall be entitled to a Distribution on account of such Allowed Tort Claim subject to sufficiency of funds in the Tort Claims Trust without regard to whether the Tort Claim arose prior to the commencement of the Bankruptcy Cases as follows:

A.      Distributions to Allowed Claims. No Distributions will be made to the Holders of Tort Claims unless and until such Tort Claims are Allowed Tort Claims. In the event that the sum of all Allowed Tort Claims exceeds the total then available for distribution from the Tort Claims Trust, the Tort Claims Trustee shall aggregate the total of all such Allowed Tort Claims and determine each Tort Claimant's relative percentage entitlement to distributions on a Pro Rata basis.

12898017-6

B. <u>Manner of Distribution</u>. Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a Holder of an Allowed Tort Claim shall be made at the address of the Tort Claimant as set forth in the Proof of Claim or ADR Notice and Claim Form filed by such Holder unless the Tort Claims Trustee has been notified in writing of a change of address. All Distributions by the Tort Claims Trustee on account of Allowed Tort Claims shall be by check payable to the Tort Claimant if not represented by counsel and/or jointly payable to the Tort Claimant and his or her retained counsel identified on the Tort Claimant's Proof of Claim or Claim Form.

C. <u>Documents Establishing Legal Representation</u>. Tort Claimants asserting a Tort Claim on behalf of a minor, incapacitated, or deceased person must, before any funds related to such Allowed Tort Claim may be distributed from the Tort Claims Trust, submit to the Tort Claims Trustee appropriate documentation confirming the Allowed Tort Claimant's legal authority to resolve the Tort Claim on behalf of the minor, incapacitated, or the deceased person and his/her estate. The Allowed Claim Amount for any such Allowed Tort Claim shall be set aside and held in escrow within the Tort Claims Trust pending the final resolution of various administrative issues involving the resolution of the Tort Claim including issues related to probate, guardianship, personal bankruptcy filings, or any lien resolution. Payment of Allowed Claims, once all applicable administrative issues related to a Tort Claimant's acceptance of his or her Allowed Claim Amount are resolved, the Tort Claims Trustees shall transfer to the Tort Claimant his or her net Allowed Claim Amount. Alternatively, if a Tort Claimant elected to receive his or her distribution pursuant to these ADR Procedures through his or her retained counsel, then the Tort Claims Trustee shall transfer the net Allowed Tort Claim amount to the retained counsel identified on the Tort Claimant's Proof of Claim or ADR Notice and Claim Form.

D. <u>Offsets</u>. The Tort Claims Administrator shall have the right to offset or reduce payment of an Allowed Tort Claim, on a dollar-for-dollar basis, based on any amounts paid, agreed upon, or reasonably likely to be paid to the relevant Tort Claimant on account of his or her Tort Claim as against any third party (or that reduces the liability thereof under applicable law) from any source other than the Tort Claims Trust.

E. <u>Fees Precluded</u>. No Tort Claimants shall receive on account of such Allowed Tort Claim more than the face amount of such award, provided, however, that in the event that all Tort Claims are paid in full under the ADR Procedures, then all Allowed Tort Claims shall be entitled to post-petition interest at the federal judgment rate. In addition, no Tort Claimant shall be entitled to the payment of attorneys' fees in addition to any Allowed Tort Claim.

F. <u>No Third-Party Distributions</u>. No Distribution under the Tort Claims Trust shall be made on account of or on behalf of any allowed Tort Claim that is payable by any third party that is not the Tort Claims Trust. To the extent that any other third party, including any participating joint tortfeasor, if applicable agrees to satisfy in full or in part an allowed Tort Claim, then immediately upon such agreement, the applicable portion of such Tort Claim may be disallowed and expunged without further notice to any party, or action, approval, or Order of the Bankruptcy Court.

**11.2 Payment Date**. The Tort Claims Trustee shall make Distributions to Allowed Tort Claimants provided in Section 11.1 within thirty (30) days after entry of an order approving the Tort Claims Trustee's Final Report (as defined below), and shall make any further and final Distributions to Allowed Tort Claimants in such other amounts as are practicable and prudent in light of payments of the Tort Claims Trustee's administrative fees and expenses made to the Tort Claims Trustee and its

16

professionals under the Tort Claims Trust, and subject to the overriding principle of equality of distribution among all Tort Claimants. Whenever any payment or Distribution to be made under the Tort Claim Trust shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following business day.

**11.3    Undeliverable Distributions**. If any Distribution to a Holder of an Allowed Tort Claim is returned to the Tort Claims Trust as undeliverable, no further Distributions shall be made to such  unless and until the Tort Claims Trustee is notified in writing of such holder's then-current address or other necessary information for delivery, at which time such previously undeliverable Distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-current address or other necessary information; provided, however, that any such undeliverable Distribution shall be deemed unclaimed property under 11 U.S.C. § 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of the initial attempted Distribution. After such date, all unclaimed property or interests in property shall revert to the Tort Claims Trust automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

**11.4    Non-Negotiated Distributions.** If any Distribution to a Holder of a Tort Claim is not negotiated for a period of 180 days after the Distribution, then such Distribution shall be deemed unclaimed property under 11 U.S.C. § 347(b) and re-vest in the Tort Claims Trust. After such date, all non-negotiated property or interests in property shall revert to the Tort Claims Trust automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

**11.5    Tort Claims Trustee's Final Report**. The Tort Claims Trustee shall file a report (the "Tort Claims Trustee's Final Report") with the Bankruptcy Court under seal setting forth all Distribution awards on Allowed Tort Claims and, if applicable, such relative Distribution percentages, which Tort Claims Trustee's Final Report will be filed under seal as set forth herein, and the information contained therein shall be deemed confidential. The Tort Claims Trustee shall serve a notice of filing of the Tort Claims Trustee's Report on the Tort Claimants and other parties in interest. Within 20 days after such service, any Tort Claimant or other party in interest may request a copy of the Tort Claims Trustee's Final Report by providing to the Tort Claims Trustee's counsel a written request therefor, together with a duly executed and binding confidentiality agreement by a Tort Claimant or other party in interest, in a form to be specified as an exhibit to the Plan. Upon timely receipt by the Tort Claims Trustee of such request and confidentiality agreement, the Tort Claims Trustee shall promptly provide a copy of the Tort Claims Trustee's Final Report to such Tort Claimant or other party in interest.

**11.7    Satisfaction of Claims**. Except as otherwise specifically provided in the Plan, any Distributions made on account of any Tort Claim pursuant to the Plan, the Tort Claims Trust Agreement, and the ADR Procedures shall be in complete and final satisfaction, settlement, and discharge of and exchange for the Tort Claim.

**11.8    Minimum Cash Distributions.** The Tort Claims Trust and Tort Claims Administrator shall not be required to make any Distribution of Cash less than twenty dollars ($20) to any Holder of an Allowed Tort Claim.

12898017-6

**11.9    Dismissal of Pending Litigation**. The Tort Claimants shall within ten (10) days of receipt of their respective Distribution from the Tort Claims Trust, file a notice of dismissal with prejudice of all Tort Claims against the Debtors and any other Insurance Settlement Released Parties as required by Section 5.4 of these ADR Procedures.

**SECTION 12**

**MISCELLANEOUS**

**12.1    Severability**. Should any provision contained in these ADR Procedures be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the ADR Procedures. The Tort Claims Administrator or the Tort Claims Trustee may amend these ADR Procedures and/or the Tort Claims Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of any party hereunder.

**12.2    Notice**. Whenever notice or service of papers is required under the ADR Procedures, it shall be given in the manner provided in the relevant section as follows:

If to the Tort Claims Trustee:

with copies to:

If to the Tort Claims Administrator:

with copies to:

12898017-6

**EXHIBIT A**

**COOPERATION AGREEMENT**

[TO BE FILED BEFORE THE PLAN CONFIRMATION DATE]

**EXHIBIT B**

**ADR NOTICE AND CLAIM FORM**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11

BIRD GLOBAL, INC., et al.,                                Case No. 23-20514-CLC

             Debtors.                                     Jointly Administered
_____/

## **ADR NOTICE AND DEADLINE FOR SUBMISSION OF INFORMATION**

Incident Date: _____
Claim No(s).:_____
Claimant: _____
Address: _____
Claimant's Attorney (if known): _____

Deadline to Respond ("<u>Response Deadline</u>"): _____

     You are receiving this notice (the "<u>ADR Notice</u>") because your Tort Claim against Bird Global, Inc. and its affiliated debtors (collectively, the "<u>Debtors</u>") or against any Indemnitees has been submitted to alternative dispute resolution pursuant to the alternative dispute resolution procedures (the "<u>ADR Procedures</u>") approved and established by Order of the United States Bankruptcy Court for the Southern District of Florida entered in the above-captioned cases on _____, 2024 [DE No. [ *]] (the "<u>Plan Confirmation Order</u>"). The ADR Procedures will be implemented, administered, and coordinated by the Tort Claims Administrator.

     A copy of the ADR Procedures, as approved by the Plan Confirmation Order, is annexed hereto. Any terms not defined herein or in any subsequent notices that you may receive regarding the ADR Procedures shall have the meanings attributed to them in the ADR Procedures and the Plan Confirmation Order.

     **YOU SHOULD CONSIDER CONSULTING A LAWYER.** Your participation in these ADR Procedures may either be by you or, if applicable, by a lawyer that has filed an appearance on your behalf in the Bankruptcy Court or the court in which your previously filed lawsuit or other proceeding is pending.

     The Tort Claims Administrator has reviewed your Proof of Claim and offers the amount set forth in the attached Immediate Claim Settlement Offer in full satisfaction of your Tort Claim(s). You must respond to the Immediate Claim Settlement Offer either by:

     (1)    signing this ADR Notice and completing the Immediate Claim Settlement Offer and accepting such offer; or

(2)      by rejecting the offer and completing the attached Tort Claim Information and  Settlement Demand Form.

If you accept the offer, you do not need to complete the Tort Claim Information and Settlement  Demand Form. If you reject the offer, you must complete and return the Claim Information and  Settlement Demand Form, which must include a settlement demand. **If you do not return this signed ADR Notice and the Immediate Claim Settlement Offer so that it is received by the Tort Claims Administrator by the Response Deadline, resolution of your Tort Claim will be governed by Section VII of the ADR Procedures. The Tort Claimant's ability to proceed with and participate in the ADR Procedures will be at the discretion of the Tort Claims Administrator. Any settlement reached pursuant to these ADR Procedures will be paid by the Tort Claims Trust. Pursuant to the Plan Confirmation Order, you must waive and release any and all claims against the Debtors, their Estates, and the Insurance Settlement Released Parties, to receive such payment(s).**

**If you do not accept the Immediate Claim Settlement Offer, or if no Immediate Claim  Settlement Offer was made, you are required to complete and return this ADR Notice and the attached Claims Information and Settlement Demand Form. You must complete all sections of the Claims Information and Settlement Demand Form, including (1) the Section I Settlement Demand which is the amount you offer to settle your Tort Claim for; and (2) the Section II Claim information section, along with all supporting documentation. The ADR Notice and the Claims Information and Settlement Demand Form must be returned to the Tort Claims Administrator by the Response Deadline. Failure to return this ADR Notice and the Claims Information and Settlement Demand Form by the Response Deadline will be deemed as a failure to comply with the ADR Procedures under Section VII thereof. The Tort Claimant's right to proceed with and participate in the ADR Procedures will be at the discretion of The Tort Claim Administrator.**

**Pursuant to the ADR Procedures and Plan Confirmation Order, your Settlement Demand may not (i) include or make an unliquidated, unknown, or similar demand; and/or (ii) exceed the amount of, or improve the priority set forth in, your most recent timely-filed proof of claim asserting a Tort Claim. For the avoidance of doubt, this does not mean that if you filed a Proof of Claim asserting a Tort Claim that did not make a specific demand, you are limited to demanding zero.**

**I HAVE READ AND UNDERSTAND THIS NOTICE.**

Date: _____

_____
Tort Claimant Signature or Authorized Person

_____
Print Claimant or Authorized Person Name

**EACH TORT CLAIMANT MUST SIGN THIS ADR NOTICE. ADDITIONAL TORT CLAIMANTS  MUST SIGN AND PRINT THEIR NAME ON A SEPARATE SHEET.**

*[optional]*

## IMMEDIATE CLAIM PAYMENT OFFER

Based on a review of documentation relating to your Tort Claim, the Tort Claims Administrator has determined that you have asserted your Tort Claim in the amount of $_____, and hereby offers to pay such Tort Claim in the amount of $[_____].

If you agree to payment of your Tort Claim by the Tort Claims Trust in the amount of $_____, please sign below and return this form to the Tort Claims Administrator at the addresses set forth in the ADR Procedures. If you accept this offer, you are not required to submit any additional documentation or information with the return of this form. If you do not accept this offer, you must complete and return the ADR Notice and the Claims Information and Settlement Demand Form according to the instructions set forth in the ADR Notice and the ADR Procedures.

**Payment of your Tort Claim by the Tort Claims Trust does not entitle you to any other cash payments from the Debtors and, if paid by the Tort Claims Trust you will be deemed to have satisfied, waived and released any and all Claims against the Debtors, their Estates, the Insurance Settlement Released Parties, the Tort Claims Trust and its professionals.**

I agree to allowance of my Tort Claim as set forth in this Immediate Claim Payment Offer

Date: _____

_____
Claimant Signature or Authorized Person

_____
Print Claimant or Authorized Person Name

_____
Relationship to Claimant if Authorize Person

EACH TORT CLAIMANT MUST SIGN THIS FORM. ADDITIONAL TORT CLAIMANTS MUST SIGN AND PRINT THEIR NAMES ON A SEPARATE SHEET.

SIGNATURE OF ATTORNEY

Date: _____

_____
Attorney for Claimant Signature

_____
Print  Attorney for Claimant Signature

12937273-5

## CLAIM INFORMATION AND SETTLEMENT DEMAND FORM[1]

### I.    SETTLEMENT DEMAND

**YOU MUST INCLUDE AN OFFER FOR WHICH YOU WOULD SETTLE YOUR TORT CLAIM. PLEASE NOTE THAT IF YOUR OFFER IS ACCEPTED BY THE TORT CLAIMS ADMINISTRATOR, THE TORT CLAIMS TRUST SHALL PAY SUCH TORT CLAIM AND YOU WILL BE DEEMED TO HAVE SATISFIED, WAIVED AND RELEASED ANY AND ALL CLAIMS AGAINST THE DEBTORS, THEIR ESTATES, THE INSURANCE SETTLEMENT RELEASED PARTIES, THE TORT CLAIMS TRUST AND ITS PROFESSIONALS.  IN ACCORDANCE WITH THE PLAN AND ADR PROCEDURES, THE INFORMATION PROVIDED BY YOU IN THIS FORM SHALL BE CONFIDENTIAL AND USED SOLELY TO EVALUATE AND ADJUDICATE YOUR TORT CLAIM.**

Amount for which you offer to settle the Tort Claim: $ _____

### II.    CLAIM INFORMATION

### TORT CLAIMANT MUST PROVIDE THE FOLLOWING INFORMATION:

1.    Name, address, and telephone number of counsel: _____

2.    Names, addresses, and telephone numbers of all Tort Claimants: _____

3.    Debtor against whom the Tort Claim is asserted: _____

4.    Your date of birth: _____

5.    Date of injury: _____

6.    Where did the incident occur? _____

_____

_____

---

[1] Tort Claimant is not required to provide information duplicative of supporting documentation attached to the relevant Proof of Claim filed in the Chapter 11 Cases.

12937273-5

Please specify the location and address.

7.      Are you pursuing this Tort Claim against any other party? Yes ☐ No ☐
If yes, against whom (list the name, the addresses and counsel for each party, if known)?

_____

Attach additional sheets if necessary.

8.      Did you notify the Debtor(s) in writing of the incident? (If yes, attach a copy of such writing.)
       Yes ☐ No ☐

9.      Is there a pending lawsuit regarding your Tort Claim? If yes, identify the court where the lawsuit is pending, the case number and the judge, if known and attach a copy of the complaint.

_____

10.     What type of injuries or damages do you have arising from the incident? Provide a medical description of any injuries. (Please state if the Tort Claim is based, in whole or in part, on an injury or damages to someone else.)

_____

11.     How did the injury occur?

_____

12.     Did you miss any work as a result of the incident? If so, how many days?

_____

13.     Provide the name and address of your employer(s) and your salary or rate of pay at the time of the incident.

_____

14.     Was anyone else injured or did anyone else sustain damages at the time of the incident? (If yes, list the names and addresses.)

_____

15.     List the names, addresses and phone numbers of all witnesses and people with relevant knowledge of your Tort Claim (including, but not limited to, any representatives or agents of the Debtors).

_____

12937273-5

16.    Are treatments still being provided for any injury? Yes ☐ No ☐

_____

_____

(If yes, provide the name and address of any and all doctors that are currently treating you for such injury and the nature of the treatment).

17.    Physician Data

    a.    Provide the name and address of any physician, clinic or hospitals that have treated this injury. Include treatment dates. (Attach additional sheets if necessary)

      _____

      _____

      _____

    b.    Itemize all damages you claim, including any damages for emotional distress, loss of consortium or pain and suffering.

      _____

      _____

      _____

    c.    Provide the total amount of the medical bills you incurred as a result of suffering your injury.

      _____

      _____

      _____

    d.    Itemize any other expenses you incurred as a result of the incident for which you are making a Tort Claim.

      _____

      _____

    e.    Provide a list of medical expenses and amounts paid by your insurance company as a result of your injury.

      _____

      _____

      _____

    f.    Provide the name, address and policy number of your insurance company.

      _____

      _____

12937273-5

18.     Attach the following documents:

a.      All medical records and bills for medical services received by the Tort Claimant as a result of the injury allegedly caused by the Debtor(s);

b.      Autopsy/Coroner report, if applicable;

c.      Death Certificate, if applicable; and

d.      Photographs, videotapes, and any other documentation you wish to be considered in the evaluation of your Claim.

*[Signature Page Follows]*

**NOTICE: UNDER FEDERAL LAW, CRIMINAL PENALTIES MAY BE IMPOSED FOR FILING A TORT CLAIM CONTAINING FALSE OR MISLEADING STATEMENTS.**

**I declare under penalty of perjury that the foregoing statements are true and correct.**

Date: _____

_____
Claimant Signature or Authorized Person

_____
Print Claimant or Authorized Person Name

_____
Relationship to Claimant if Authorize Person

SIGNATURE OF ATTORNEY

Date: _____

_____
Attorney for Claimant Signature

_____
Print Attorney for Claimant Signature

**EACH TORT CLAIMANT MUST SIGN THIS FORM. ADDITIONAL CLAIMANTS MUST SIGN AND PRINT THEIR NAMES ON A SEPARATE SHEET.**

12937273-5

**EXHIBIT C**

**FORM RELEASE**

[TO BE FILED BEFORE THE PLAN CONFIRMATION DATE]

**EXHIBIT D**

**ARBITRATION NOTICE**

[TO BE FILED BEFORE THE PLAN CONFIRMATION DATE]

12898017-6

**Schedule 4**

**Tort Claims Trust Agreement**

## TORT CLAIMS TRUST AGREEMENT

This TORT CLAIMS TRUST AGREEMENT dated as of [_____], 2024 (the "Trust Agreement") is made and entered into by and between Bird Global, Inc., Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession (the "Debtors") and [_____], not individually but solely as trustee (the "Trustee"). Unless otherwise specifically defined herein, capitalized terms used in this Trust Agreement shall have the meanings assigned to them in the Joint Plan or attributed to them in the Bankruptcy Code (as each is hereafter defined).

### RECITALS

A.    On December 20, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Cases"). The Cases are being jointly administered under lead case styled I*n re: Bird Global, Inc.*, Case No. 23-20514-CLC.  From and after the Petition Date, Debtors continued in possession of their property and continued to operate and manage its business as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.    On [_____], 2024, the Bankruptcy Court entered the *Order (I) Approving on a Final Basis the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code, and  (II) Confirming Joint Chapter 11 Plan of Liquidation* [D.E. No. ___] (the "Plan Confirmation Order") pursuant to which the Bankruptcy Court confirmed the *Debtors' Jo*int *Chapter 11 Plan of Liquidation* dated [_____] 2024  (the "Joint Plan") [D.E. No. ____].

C.    The Joint Plan and Plan Confirmation provide for, *inter alia*: (i) the creation of the Tort Claims Trust for the exclusive benefit of the Beneficiaries of Allowed Class 6 Tort Claims; (ii) the receipt of the Trust Assets from the Debtors;  (iii) the assumption by the Tort Claims Trust of any and all liability of the Settling Insurers and the Insurance Settlement Released Parties, which are and shall be channeled exclusively to the Tort Claims; (iii) the administration and liquidation of the Trust Assets and the distribution of the proceeds therefrom to the Beneficiaries in accordance with this Trust Agreement, the Tort Claims ADR Procedures, the Joint Plan and the Plan Confirmation Order, and (iv) the payment of administrative expenses and indemnity obligations in accordance with this Trust Agreement and the Joint Plan.

D.    Pursuant to Treasury Regulation § 301.7701-4 (d), the Tort Claims Trust is being created for the primary purpose of liquidating the Trust Assets in an expeditious but orderly manner for the benefit of the Beneficiaries with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Tort Claims Trust and the Joint Plan.

E.    The Tort Claims Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes, pursuant to §§ 671-677 of the IRC, with Beneficiaries to be treated as the grantors of the Tort Claims Trust and deemed to be the beneficial owners of the Trust Assets (subject to the rights of the creditors of the Tort Trust).

1

F.      Pursuant to the Joint Plan and the Plan Confirmation Order, the Trustee was duly appointed as a representative of the Estate pursuant to §§ 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.

**NOW, THEREFORE**, pursuant to the Joint Plan, the Plan Confirmation Order, and the Insurance Settlement Agreement, in consideration of the premises and the provisions in the Joint Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is agreed as follows:

## ARTICLE I
## AGREEMENT OF TRUST

**1.1.    CREATION AND NAME.** The Debtors hereby create a trust known as the "Tort Claims Trust" which is the trust provided for in the Joint Plan.

**1.2.    PURPOSE**. The purpose of the Tort Claims Trust is to: (i) assume any and all liability of the Debtors, the Settling Insurers and the Insurance Settlement Released Parties for all Tort Claims, which are and shall be channeled exclusively to the Tort Claims Trust; (ii) receive the Trust Assets from the Debtors; and (iii) distribute the Trust Assets to the Tort Claims Beneficiaries pursuant to this Trust Agreement and in accordance with the Tort Claims ADR Procedures attached hereto as Exhibit A (the "Tort Claims ADR Procedures"). In connection therewith, the Tort Claims Trust shall hold, manage, protect and monetize the Trust Assets (as defined in Section 1.3 below) in accordance with the terms of the Trust Agreement for the benefit of the Beneficiaries (as defined in Section 1.5 below). All Tort Claims shall be resolved exclusively in accordance with the terms of this Trust Agreement and the Tort Claims ADR Procedures and no distribution to any Beneficiary shall occur outside of the Tort Claims Trust or the Tort Claims ADR Procedures.

**1.3.    TRANSFER OF ASSETS**. Pursuant to and on the Effective Date of the Joint Plan, Debtors will cause the Trust Assets to be irrevocably transferred, absolutely granted, assigned, conveyed, set over and delivered to the Trustee, to be held in trust and for the uses and purposes stated herein and in the Joint Plan. The Trustee hereby agrees to accept and hold the Trust Assets and together with any income or gain earned thereon and proceeds derived therefrom, (collectively, the "Trust Assets") in trust for the Beneficiaries subject to the terms of this Trust Agreement, the Tort Claims ADR Procedures, and the Joint Plan. Additional assets may subsequently  be transferred to the Tort Claims rust in accordance with the Joint Plan, and the Tort Claims Trust shall receive such assets if so transferred pursuant to this Trust Agreement. Debtors shall execute and deliver any and such other documents to the Tort Claims Trust as the Trustee reasonably requests to effectuate the transfer and assignment of any assets comprising all or a portion of the Trust Assets to the Tort Claims Trust.  The Trustee is hereby authorized to file with governmental authorities any documents necessary or helpful to establish the Tort Claims Trust.

**1.4.    IRREVOCABILITY**.  The Tort Claims Trust is irrevocable. The Debtors shall not alter, amend, revoke or terminate the Tort Claims Trust. The Debtors shall have no power or authority to direct the Trustee to return any of the Trust Assets to the Bankruptcy Estates.

**1.5.    BENEFICIARIES**. The Beneficiaries of the Tort Claims Trust are Holders of Allowed Class 6 Tort Claims. The Beneficiaries shall be subject to the terms of the Joint Plan, the Plan Confirmation Order, this Trust Agreement, the Tort Claims ADR Procedures and any and all other Tort Claims Trust documents, including without limitation, all forms or other documents attached to the Tort Claims ADR Procedures.

**1.6.    ACCEPTANCE OF ASSETS AND ASSUMPTION OF LIABILITIES.**

(a)    In furtherance of the purposes of the Tort Claims Trust, the Trustee hereby accepts the trusteeship of the Tort Claims Trust created by this Trust Agreement and the grant, assignment, transfer, conveyance and delivery of Trust Assets to the Tort Claims Trust, subject to the terms and conditions set forth in this Trust Agreement, the Joint Plan and the Plan Confirmation Order. The Tort Claims Trust shall succeed to all of the Debtors' respective rights, title, and interest, including all legal privileges, in the Trust Assets and neither the Debtors nor any other person or entity transferring any settlement funds will have any further equitable or legal interest in, or with respect to, the Tort Claims Trust, or the Trust Assets; provided, however, that the Trustee succeeds to the Debtors' legal privileges solely with respect to the Trust Assets and not as to any other assets of the Debtors or their Estates.

(b)    In furtherance of the purposes of the Tort Claims Trust, the Trustee, on behalf of the Tort Claims Trust, hereby expressly assumes all responsibility for preserving, managing and distributing Trust Assets to the Beneficiaries. Tort Claims will be evaluated by the Tort Claims Reviewer in accordance with the Tort Claims ADR Procedures. After payment of any administrative fees and expenses of the Tort Claims Trust and establishment of any reserves that the Trustee determines are adequate, the Trustee shall make distributions of the Trust Assets to Beneficiaries in accordance with the evaluation and determination by the Tort Claims Reviewer pursuant to the Tort Claims ADR Procedures. In consideration of and as a condition to receiving a distribution from the Tort Claims Trust, each Tort Claims Beneficiary shall be required to execute and deliver to the Debtors, the Settling Insurers and the Insurance Settlement Release Parties, a Tort Claimant Supplemental Release (hereafter, a "<u>Supplemental Release</u>") in the form attached hereto as <u>Exhibit B</u>.

(c)    The Trustee shall have all the rights, powers and duties set forth in this Trust Agreement and the Joint Plan, and available under applicable law, for accomplishing the purpose of the Tort Claims Trust. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Tort Claims Trust  and in accordance with applicable law. The Trustee shall have the authority to bind the Tort Claims Trust within the limitations set forth herein and in the Joint Plan, but shall for all purposes  hereunder be acting in the capacity as Trustee, and not individually.

(d)    In furtherance of the purposes of the Tort Claims Trust, the Trustee assumes responsibility for, (i) making distributions to the Tort Claims Beneficiaries; (ii) receiving, collecting, liquidating, maintaining and distributing the Trust Assets in accordance with the Trust Agreement; and (iii) fulfilling all other obligations of the Tort Claims Trust under this Trust Agreement and the Joint Plan. The Tort Claims Trust will be administered consistent with the liquidating purpose of the Tort Claims Trust and with no objective to continue or to engage in the

12948107-2

conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Trust Assets or as otherwise provided in the Joint Plan.

(e)     All Trust expenses and all liabilities of the Tort Claims Trust shall be payable by the Trustee solely out of the Trust Assets; provided, however, that to the extent the Trustee is personally liable for any expenses or  liabilities of the types described in Sections 5.1 and 5.2 hereof, such expense and liabilities shall be payable by the Trustee out of the Trustee's assets.

## ARTICLE II
## CORPUS OF THE TRUST

**2.1.    TRUST COMPOSITION**. The Trust Assets shall consist of the proceeds of Insurance Settlement Agreement in the amount of Ten Million ($10,000,000) Dollars and any and all other property transferred to the Tort Claims Trust on the Effective Date pursuant to the Joint Plan. The Trustee may receive and accept the transfer of additional contributions or settlement funds in the future including (but not limited to) all rights of every kind, nature and description transferred to the Trust pursuant to the Joint Plan, and/or further orders of the Bankruptcy Court.

**2.2.    TRANSFER TO TRUSTEE**. From and after the Effective Date of the Joint Plan, pursuant to, and at such times set forth in the Joint Plan or other orders of the Bankruptcy Court, title to and all rights and interests in the Trust Assets shall be transferred to the Trustee free and clear of all Liens, claims, encumbrances or Interests of any kind in such property of any other Person or entity (including all Liens, claims, encumbrances or Interests of creditors of or holders of claims against Interests in the Debtors) in  accordance with §§ 1123 and 1146(a) of the Bankruptcy Code, except as otherwise expressly provided for in the Joint Plan or the Plan Confirmation Order. The Trustee, on behalf of the Trust, shall receive the Trust Assets when they are transferred to the Tort Claims Trust.

**2.3.    TRUSTEE'S RIGHT TO AND TITLE AND INTEREST IN TRUST ASSETS**.  Upon the transfer of the Trust Assets, the Trustee succeeds to all of the Debtors', the Estates', the Settling Insurers', and the Insurance Settlement Released Parties' right to and title and Interest in the Trust Assets, and the Debtors, the Estates, the Settling Insurers, and the Insurance Settlement Released Parties will have no further right to or title or Interest in or with respect to the Trust Assets or this Tort Claims Trust, except and as provided herein, in the Joint Plan or the Plan Confirmation Order.  Notwithstanding anything contained in this Section 2.3 to the contrary, the Debtors, the Estates, the Settling Insurers, and the Insurance Settlement Released Parties shall retain all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Channeled Claims that have under applicable law or by agreement including but not limited to all defenses to coverage, the existence, primacy, and/or scope of available coverage under any alleged applicable policy.

**2.4.    NO TAX ON TRANSFERS TO TRUST.**  Pursuant to §1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Trust, including any deeds, bills of sale or assignments executed in connection with any transfer to the Tort Claims Trust, or receipt, or disposition/sale of assets by

the Tort Claims Trust contemplated by the Joint Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.

**2.5.    SPENDTHRIFT PROVISION**. To the fullest extent permitted by law, neither the principal nor income of the Tort Claims Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court.

**2.6.    TRUST CORPUS**. The entirety of the Tort Claims Trust's corpus shall be available to pay Tort Claimants and authorized administrative fees and expenses of the Trust, the Tort Claims Trust and the Tort Claims Reviewer.  The Tort Claims Trust Corpus shall be allocated, administered, and distributed in accordance with the Join Plan, the Plan Confirmation Order, and the Tort Claims ADR Procedures.

### ARTICLE III
### POWERS AND DUTIES OF TRUSTEE

**3.1.    POWERS AND DUTIES**. The Trustee shall have, in addition to any other powers and discretions conferred on the Trustee by applicable trust law (to the extent not inconsistent with applicable Bankruptcy law and/or the Joint Plan), the Joint Plan and other provisions in this instrument, the following powers and discretions:

(a)    To act as custodian of, receive, control, manage and dispose of all Trust Assets for the benefit of the Beneficiaries as the Trustee deems appropriate to accomplish the purpose of the Tort Claims Trust, in accordance with the terms of this Trust Agreement, the Joint Plan, and the Plan Confirmation Order;

(b)    To protect and enforce the rights in and to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(c)    To open and maintain bank accounts on behalf of, deposit funds therein and draw checks thereon, as appropriate under this Trust Agreement, the Joint Plan and the Plan Confirmation Order;

(d)    To obtain all reasonably necessary insurance coverage with respect to any property that is or may in the future become a Trust Asset;

(e)    To incur on behalf of the Tort Claims Trust, and pay from the Trust Assets, all fees, costs and expenses of administering the Tort Claims Trust as provided in this Trust Agreement and the Joint Plan. These fees, costs and expenses include: (i) fees of the bankruptcy claims, noticing and distribution agent(s); (ii) fees and costs of Professionals employed by the Trustee, such as the fees and expenses of the Tort Claims Reviewer, investment advisors, accountants, agents, managers, attorneys-at-law, actuaries or auditors;

and (iii) the premiums charged by insurers, including, but not limited to, professional liability insurers. In no event, however, shall the Tort Claims Trust incur or the Trustee be responsible to pay any statutory U.S. Trustee Fees related to the distribution of the Tort Claims Trust Assets;

(f)     In accordance with the evaluation made by the Tort Claims Reviewer pursuant to the Tort Claims ADR Procedures, to make distributions to Beneficiaries in accordance with the Joint Plan;

(g)     In its discretion, to rely of the authenticity of the signature of the Tort Claims Reviewer, and the accuracy of the information set forth by, and the reasonableness of the determination of, the Tort Claims Reviewer in the administration of the Tort Claims ADR Procedures and assessment of the Class 6 Claims without any verification or confirmation;

(h)     To pay from the Trust Assets all indemnification obligations as provided in this Trust Agreement and the Joint Plan that become due prior to the termination of the Tort Claims Trust;

(i)     To make distributions from the Trust Assets to holders of Allowed Tort Claims pursuant to this Trust Agreement, the Tort Claims ADR Procedures , and the Joint Plan;

(j)     In its discretion, as a party in interest, to seek enforcement of any provision of the Joint Plan or the Plan Confirmation Order pertaining to the Tort Claims Trust;

(k)     To retain any attorney-at-law, the Tort Claims Reviewer, consultant, expert, accountant, investment advisor, bankruptcy management company or such other agents and advisors as are necessary and appropriate to effectuate the purpose of, and maintain and administer, the Tort Claims Trust and shall be entitled to rely on advice given by such advisors within his, her, or its areas of competence;

(l)     _____ shall serve as the Tort Claims Reviewer for the Trustee on the terms to be approved by the Bankruptcy Court. The Trustee may subsequently remove any Tort Claims Reviewer for cause. For purposes of this Trust Agreement, "cause" shall mean (i) the willful and continued refusal by the Tort Claims Reviewer to perform the Tort Claims Reviewer's duties as set forth in this Trust Agreement, the Tort Claims ADR Procedures, and the Joint Plan, (ii) gross negligence, misconduct, fraud, embezzlement, or theft, (iii) a breach of fiduciary duty, or (iv) other cause as the Trustee shall in good faith determine. In the event the Tort Claims Reviewer resigns, is removed, or is otherwise unable to perform the Tort Claims Reviewer's obligations, the Trustee shall have exclusive authority to appoint a new Tort Claims Reviewer. Nothing contained in this Trust Agreement shall prohibit the Trustee from also serving as the Tort Claims Reviewer if the Trustee determines that serving as both the Trustee and the Tort Claims Reviewer is in the best interest of the Tort Claims Trust and the Tort Claims Beneficiaries.

(m)     To make, sign, execute, acknowledge and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Tort Claims Trust or to maintain and administer the Tort Claims Trust;

(n)     To file a motion with the Bankruptcy Court, with notice to the parties in interest, for a modification of the provisions of this Trust Agreement if the Trustee determines that such modification is necessary to conform to legal and/or administrative requirements and to the purpose of the Tort Claims Trust;

(o)     Upon any event terminating the Tort Claims Trust, to defer distribution of Trust Assets for a reasonable period of time determined by the Trustee to be required to wind up the assets of the Tort Claims Trust, including the time needed to provide for the payment of debts and expenses of the Tort Claims Trust, although Beneficiaries' rights to distributions shall vest immediately;

(p)     To comply with Bankruptcy Code §345 with regard to the investment of Trust Assets;

(q)     To establish such accounts, funds and reserves, as required by the Joint Plan, for ease of administration. Nothing in this provision shall restrict the Trustee's authority to pool such accounts, funds or reserves for investment purposes or require separate bank accounts for such accounts, funds or reserves;

(r)     Notwithstanding anything in the Joint Plan or this Trust Agreement to the contrary, (i) the Trustee shall distribute the Trust Assets to the Tort Claims Beneficiaries in accordance with this Trust Agreement and the Tort Claims ADR Procedures upon the resolution of all Tort Claims, and (ii) the indemnification obligations imposed upon the Tort Claims Trust and the Trust Assets shall irrevocably terminate on the date that the Tort Claims Trust terminates; *provided*, however, that the Trustee's personal liability, if any, for any expenses or liabilities of the types described in Sections 5.1 and 5.2 hereof shall survive termination of the Tort Claims Trust;

(s)     The right to indemnification hereunder are not exclusive of other rights which any Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution; and

(t)     The Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**3.2.    OBLIGATIONS OF THE TRUSTEE**. Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall:

(a)     Comply with all federal, state and local laws and regulations regarding settlements with minors, Medicare/Medicaid/Social Security reporting and set-asides, and other similar issues, including reporting any payment to a Medicare beneficiary in

12948107-2

settlement of a claim under a liability insurance policy or self-insurance to Medicare (CMS);

(b)     Before making any distribution of Trust Assets to any Beneficiary of the Tort Claims Trust, the Trustee shall (i) obtain written certification from each Tort Claims Beneficiary to receive such a distribution or their counsel that: (A) he or she has complied with reporting, and if necessary established any set asides, required by applicable federal, state and local laws and regulations regarding settlements with minors and Medicare/Medicaid/SSA with respect to such Tort Claimant; (B) the Tort Claimant acknowledges that Medicare's interests in reimbursement for any incurred medical expenses that have been paid by Medicare have either already been satisfied and Medicare has acknowledged such satisfaction or will be satisfied from the distribution of Trust Assets to the Tort Claimant; (C) satisfaction of Medicare's interests from the distribution of Trust Assets to the Tort Claimant shall be the sole and exclusive responsibility of each individual Tort Claimant and each individual Tort Claimant agrees to provide proof of such satisfaction to the Trustee upon request; (D) each Tort Claimant agrees that the duties of each Tort Claimant stated in this paragraph are non-delegable and failure to perform such duties shall provide the Settling Insurers and the Insurance Settlement Released Parties with a right to recover any monies paid caused by the failure to satisfy Medicare's interests including any additional expenses incurred and attorneys' fees; and (E) the Tort Claimant acknowledges and understands that the Settling Insurers are required to report any payment to a Medicare beneficiary in settlement of a Claim under any liability insurance policy or self-insurance to Medicare (CMS); and (ii) provide a copy of such certification, and of the executed Tort Claimant Supplemental Release to the Debtors and to the Settling Insurers;

(c)     The Tort Claims Trust is obligated to defend, indemnify, and hold harmless the Debtors and the Insurance Settlement Released Parties from any reporting, filing obligations, payments, or Claims related to Medicare Claims reporting and payment obligations, whether relating to past conditional payments made, future payments to be made, or otherwise arising out of, relating to, or in connection with Tort Claims, including any obligations owing or potentially owing under MMSEA or MSPA and any claims related to the Tort Claims Trust's obligations under the Plan, the Trust Documents, and the Plan Documents. The Tort Claims Trust shall not be required to create a reserve for this potential obligation;

(d)     Before remitting funds to any Tort Claimant's counsel, or to the Tort Claimant if such Tort Claimant is acting pro se, in respect of any Channeled Claim, the Trustee shall obtain (i) a certification from said Tort Claimant (or such Tort Claimant's authorized decedent's estate representative) that said Tort Claimant has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Channeled Claim and (ii) that the Tort Claimant indemnifies the Tort Claims Trust for any such obligations; and

(e)     Pursuant to the Plan, Plan Confirmation Order, and the Tort Claims ADR Procedures, to cooperate with the Settling Insurers, including providing information

relating to the Tort Claims submitted to the Tort Claims Trust including: (i) the total number of Tort Claims filed, pending, settled, dismissed or allowed, as well as the total indemnity paid and total expense incurred; and (ii) for each Channeled Claim that has been resolved by through the Tort Claims ADR Procedures: (A) the Tort Claimant's name; (B) the last four digits of the Tort Claimant's social security number; (C) the names of the entity or entities the Tort Claimant identified as responsible for its Tort Claims; (D) the date of the incident giving rise to the Tort Claims; (E) the claim numbered used to identify the Tort Claims; and (F) the amount of distribution made to the Tort Claims Beneficiary. The Trustee in its discretion may satisfy its obligations under this subsection by providing a report (the "Report") concerning Tort Claims activity with respect to the time period that is subject of any request of the Debtors or the Settling Insurers for relevant files, information, and documents and including the information identified above. If the Trustee exercises its discretion to provide a Report, the Trustee shall still be obligated to make available to the Settling Insurers documents relating to the Tort Claims subject of the Report.

**3.3.     LIMITATIONS ON THE TRUSTEE**. Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

        (a)     To guaranty any debt;

        (b)     To loan Trust Assets;

        (c)     To make any transfer or distribution of Trust Assets other than those authorized by this Trust Agreement, the Joint Plan or the Plan Confirmation Order, and the ADR Tort Claims Procedures;

        (d)     To engage in any trade or business; and

        (e)     To engage in any investments or activities inconsistent with the treatment of the Tort Claims Trust as a liquidating trust within the meaning of Treasury Regulation §301.7701-4(d).

### ARTICLE IV
### TERMINATION OF THE TORT CLAIMS TRUST

**4.1.     WHEN TERMINATION SHALL OCCUR.** The Trustee shall terminate the Tort Claims Trust after its liquidation and the administration and distribution of the Trust Assets in accordance with this Trust Agreement and the Joint Plan and the Trustee's full performance of all other duties and functions set forth in this Trust Agreement and the Joint Plan. Notwithstanding anything to the contrary in the Joint Plan or the Trust Agreement, the Trustee may terminate the Tort Claims Trust  at any time after completing distribution of the Trust Assets to the Tort Claimants, subject to giving ten (10) days' notice to the Settling Insurers and the Insurance Settlement Released Parties. The Tort Claims Trust may not be terminated at any time by the Tort Claims Beneficiaries.

**4.2.     TERMINATION PROCEDURES.** After termination of the Tort Claims Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until its duties hereunder have been fully performed. The Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Trustee until distribution of all the Trust Assets. For purposes of this provision Trust Assets will be deemed distributed when all funds in the Tort Claims Trust have been fully distributed. At the Trustee's discretion, all of the books,  records, documents and files may be destroyed at any time following the later of:

       (a)     the first anniversary of the final distribution of the Trust Assets; and

       (b)     the date until which the Trustee is required by applicable law to retain such books, records, documents and files; provided that, notwithstanding the foregoing, the Trustee shall not destroy or discard any books, records, documents or files relating to  the Tort Claims Trust without giving the Debtors, the Settling Insurers, the Insurance Settlement Released Parties, and the Beneficiaries reasonable prior written notice thereof.

**4.3.     DISCHARGE, EXCULPATION AND EXONERATION**. Upon termination  of the Tort Claims Trust and accomplishing of all activities described in this Article, the Trustee and his professionals shall be discharged and exculpated from liability for any act or omission taken or omitted to be taken by the Trustee in good faith; provided, however, that this discharge and exculpation from liability shall not apply to acts or omissions taken or omitted to be taken on account of the recklessness, gross negligence, willful misconduct, knowing and material  violation of law or fraud of the Trustee or his designated agents or representatives or  Professionals). The Trustee may, at the expense of the Tort Claims Trust, seek an Order of the Bankruptcy  Court confirming the discharges, exculpations and exoneration referenced in the preceding  sentence.

**ARTICLE V**
**IMMUNITY, LIABILITY AND INDEMNIFICATION OF TRUSTEE**

**5.1.     LIMITATIONS ON LIABILITY**. Neither the Trustee nor any of its duly designated agents or representatives or Professionals shall be liable for any act or omission taken or omitted to be taken by the Trustee in good faith; provided, however, that this limitation on liability shall not apply to any acts or omissions taken or omitted to be taken by the Trustee on account of the recklessness, gross negligence, willful misconduct, knowing and material  violation of law, or fraud of the Trustee or its designated agents or representatives or Professionals. The Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys-at-law, accountants, financial advisors and agents and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons.  Notwithstanding such authority, the Trustee shall be under no obligation to consult with its attorneys-at-law, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Trustee, unless such determination is based on the Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud.

10

**5.2.    NO RECOURSE AGAINST TRUSTEE PERSONALLY**.  No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, agent, attorney-at-law, accountant or other Professional retained in accordance with the terms of this Trust Agreement or the Joint Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or trust agreement whatsoever executed by the Trustee in implementation of this Trust Agreement or the Joint Plan, or by reason of the creation of any indebtedness by the Trustee under the Joint Plan for any purpose authorized by this Trust Agreement or the Joint Plan, it being expressly understood and agreed that any such promise, contract, instrument, undertaking, obligation, covenant or trust agreement entered into by the Trustee, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets and shall be evidence only of a right of payment out of the Trust Assets.  Notwithstanding the foregoing, the Trustee and any of its duly designated agents or representatives or Professionals may be held personally liable for  acts or omissions taken or omitted to be taken by the Trustee on account of the recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Trustee or its designated agents or representatives or Professionals.  The Tort Claims Trust will not be covered by a bond.

**5.3.    INDEMNIFICATION.**

(a)    The Trustee, using Trust Assets, shall defend, indemnify and hold harmless the Trustee, his agents, representatives and employees to the fullest extent that a corporation or trust organized under the laws of Florida is entitled to defend, indemnify and hold harmless its trustees, officers, directors, agents, representatives, and employees against any and all costs (including attorneys' fees and costs) judgments, awards, amounts paid in settlement, liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder; provided that  either the Trustee nor its officers, directors, agents, representatives or employees shall be defended, indemnified or held harmless in any way for any liability, expense, claim, damage or loss for which they are ultimately liable under Section 5.1.

(b)    To the fullest extent permitted by applicable law, the Tort Claims Trust shall defend, protect, hold harmless, and indemnify the Settling Insurers and the Insurance Settlement Released Parties from and against any and all claims, demands, judgments, awards, penalties, liens, damages, losses, expenses, costs and fees, and liabilities of any kind arising out of or relating to or in any way involving or connected with the Tort Claims, the Channeled Claims, or the Settling Insurers' Insurance Policies.

**5.4.    OTHER    DUTIES,    OBLIGATIONS,    AND    INDEMNIFICATION RESPONSIBILITIES**.  To the extent not expressly provided for herein, the Tort Claims Trust will also assume all duties, obligations, and indemnification responsibilities as provided in the Joint Plan and the Insurance Settlement Agreement.

11

## ARTICLE VI
## COMPENSATION AND EXPENSE REIMBURSEMENT
## OF TRUSTEE AND ITS AGENTS

**6.1.    TRUSTEE COMPENSATION**. The Trustee shall be entitled to receive compensation from the Trust Assets as detailed in Exhibit C.

**6.2.    COMPENSATION OF TRUST**. Any Person retained by the Trustee pursuant to this Trust Agreement, the Joint Plan, or pursuant to the Tort Claims ADR Procedures will be entitled to reasonable compensation for services rendered.

**6.3.    REIMBURSEMENT OF EXPENSES**. Any and all reasonable and necessary costs and expenses incurred by the Trustee and any Person retained by the Trustee and the  Claims Reviewer in performing his or her respective duties under this Trust Agreement or in accordance with the Tort Claims ADR Procedures, will be  reimbursed by the Trustee from the Trust Assets.

## ARTICLE VII
## SUCCESSOR TRUSTEES

**7.1.    VACANCY CAUSED BY TRUSTEE DEATH, INCAPACITY, RESIGNATION, OR REMOVAL**.

(a)    The Trustee may resign upon thirty (30) days' written notice to be filed with the Bankruptcy Court. The Trustee shall, within thirty (30) days after such resignation takes effect, deliver to the successor Trustee all of the Trust Assets which were in the possession of the Trustee along with a complete list of Trust Assets and a complete accounting of all transactions engaged by the Trustee  while serving as such.

(b)    The Bankruptcy Court may remove a Trustee following notice and a hearing and upon finding that the Trustee has engaged in a breach of fiduciary duty, mismanagement or gross negligence. The removal will take effect upon the date the Bankruptcy Court specifies. In the event of removal, the Trustee shall, within thirty  (30) days after such removal takes effect, deliver to the successor Trustee all of the Trust Assets which were in the possession of the Trustee along with a complete list of Trust Assets and a complete accounting of all transactions engaged in by the Trustee while serving as such.

**7.2.    OUTGOING TRUSTEE OBLIGATIONS**. In the event of the resignation or removal of the Trustee, the outgoing Trustee shall:

(a)    Execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor Trustee to effect such resignation or removal and the conveyance of Trust Assets then held by the resigning or removed Trustee  to the successor Trustee;

12948107-2

(b)     Deliver to the successor Trustee all documents, instruments, records and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee;

(c)     Otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee; and

(d)     The resigning removed or departed Trustee hereby irrevocably appoints the successor Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust Agreement. Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment. The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Trustee and the appointment of the successor Trustee.

7.3.    **APPOINTMENT OF SUCCESSOR TRUSTEE**. Any vacancy in the office of Trustee, including the death, incapacity, resignation or removal of the Trustee or successor Trustee, shall be filled pursuant to further order of the Bankruptcy Court.

7.4.    **PRESERVATION OF RECORD OF CHANGES IN TRUSTEES**. A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of this Trust Agreement.

## ARTICLE VIII
## TRUSTEE REPORTING AND DISCHARGE

8.1.    **ANNUAL ACCOUNTINGS**. The Trustee shall prepare, at least annually, and upon termination of the Tort Claims Trust, a written accounting of the administration of the Tort Claims Trust listing the current assets (with fair market values) and detailing all transactions that occurred during the period covered by such accounting. Each such accounting shall be filed with the Bankruptcy Court. Copies of such accounting shall be available to the Settling Insurers, the Insurance Settlement Released Parties, and the Tort Claims Beneficiaries upon request.

8.2.    **APPROVAL OF ACCOUNTINGS AND DISCHARGE OF THE TRUSTEE**. The Trustee may file with the Bankruptcy Court a motion for approval of any accounting described in Section 8.1. Upon the entry of an order of the Bankruptcy Court approving any such accounting, the Trustee shall be discharged from all liability, with respect to all assets listed and transactions detailed in such accounting, to the Trust, any Beneficiary or any Person who or which has had or may then or thereafter have a claim against the Trust for acts or omissions in the Trustee's capacity as the Trustee or in any other capacity contemplated by this Trust Agreement or the Joint Plan.

# ARTICLE IX
## SECTION 468B SETTLEMENT FUND

**9.1.    GENERALLY**. In accordance with the Joint Plan, the Trustee will take all reasonable steps to ensure that the Trust will qualify and remain a "Designated" or "Qualified" Settlement Fund within the meaning of §468 of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and the regulations promulgated pursuant thereto. Debtors are the "transferors" within the meaning of Treasury Regulation §1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation §1.46B-2(k)(3). It is further intended that the transfers to the Trust will satisfy the requirement of §461(h)(1) of the Tax Code and Treasury Regulation §1.461-1 (a)(2).

**9.2.    EMPLOYER IDENTIFICATION NUMBER**. Upon establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation §1.468B-2(k)(4).

**9.3.    RELATION-BACK ELECTION**. If applicable, the Trustee and Debtors shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B 1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

**9.4.    FILING REQUIREMENTS**. The Trustee shall cause to be filed on behalf of the Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation §1.468B-2(k)(1). Debtors or Reorganized Debtor shall file an election statement(s) satisfying the requirements of Treasury Regulation §1.468B- 1(k)(2)(ii) so that the Trust is treated as a grantor trust under §671 of the Tax Code and the regulations promulgated thereunder. The election statement shall be included with the Trust's first timely filed trust income tax return. Debtors shall supply to the Trustee and to the Internal Revenue Service the statement described in Treasury Regulation §1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which Debtors of the Estates make a transfer to the Trust.

**9.5.    BROAD POWERS OF THE TRUSTEE**. The Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as they may be consistent with those expressly set forth above, as the Trustee deems necessary to reasonably ensure that the Trust is created as a "Designated" or "Qualified" settlement fund under §468B of the Tax Code and the regulations promulgated pursuant thereto. Further, the Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

# ARTICLE X
## BENEFICIARIES AND DISTRIBUTIONS
## TO BENEFICIARIES

**10.1.    NAMES AND ADDRESSES**. The Trustee shall keep a register (the "Register") in which the Trustee shall at all times maintain the names and addresses of the Beneficiaries and the distributions made to the Beneficiaries pursuant to this Trust Agreement and the Tort Claims ADR

14

Procedures. The Trustee may rely upon this Register for the purposes of delivering distributions or notices. In  preparing and maintaining this Register, the Trustee may rely on the name and address of each holder of an allowed Tort Claims as set forth in a Proof of Claim filed  by such holder, or proper notice of a name or address change, which has been delivered by such Beneficiary to the Trustee. The Trustee may deliver distributions and notices to counsel for any Beneficiary identified in such Beneficiary's proof of claim or proper notice of a name or address change.

**10.2. RIGHTS OF BENEFICIARIES**. The rights of a Beneficiary under this Trust Agreement and the Tort Claims ADR Procedures shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of such Beneficiary. A Beneficiary shall have no title to, right to, possession of, management of, or control of the Trust Assets, or any right to call for a partition or division of the Trust Assets. Title to all the Trust Assets shall be vested in the Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to such Persons under this Trust Agreement and the Tort Claims ADR Procedures.

**10.3. SUPPLEMENTAL RELEASE**. In consideration of and as a condition to receiving a distribution from the Trust, each Tort Claimant shall be required to execute and deliver to the Debtors, the Settling Insurers, and the Released Parties a Supplemental Release.

**10.4. RESOLUTION OF ALL TORT CLAIMS AND DISPUTED TORT CLAIMS.**

(a) If and only when all Tort Claims are determined and approved by the Tort Claims Reviewer pursuant to the Tort Claims ADR Procedures shall the Trustee be responsible to make Distributions to the Beneficiaries. If at such time the Trustee determines that the aggregate value of the Allowed Tort Claims exceed the available Trust Assets, all Beneficiaries shall receive pro rata distributions based on the value of their Allowed Tort Claims.

(b) Each Beneficiary shall receive a Distribution of the Trust Assets in full satisfaction, settlement, release, and discharge of and in exchange for its Tort Claims against the Debtors, the Settling Insurers, or any of the Released Parties, in accordance with the Joint Plan, the Trust Agreement and the Tort Claims ADR Procedures. In no event shall any Beneficiary be entitled to any other or further recovery from or against the Debtors, the Estates, the Settling Insurers, and the Released Parties, or any of their property or assets.

(c) Each Beneficiary shall only be entitled to assert and receive  a Distribution on no more than one individual Tort Claims.

**10.5. TAX IDENTIFICATION NUMBERS**. In order to receive Distributions, all Beneficiaries shall be required to provide tax information to the Trustee to the extent the Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Trustee for these purposes.

(a) The Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign,

state or local tax law with respect to any payment or Distribution. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this Trust Agreement.

(b)     The Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Joint Plan, the Plan Confirmation Order and this Trust Agreement.

(c)     The Trustee may refuse to make a payment or Distribution unless or until such information is delivered; provided however, that, upon the delivery of such information, the Trustee shall make such delayed payment or Distribution, without interest. Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the Trust. In no event shall any escheat to any federal, state or local government or any other entity.

**10.6.    DOCUMENTS ESTABLISHING LEGAL REPRESENTATION**. In addition to complying with the provisions contained in Sections 3.2(a) and (b) above, any Tort Claimant asserting an individual claim on behalf of a minor, incapacitated, or deceased person must, before any funds related to such Tort Claims may be distributed from the Tort Claims Trust, submit to the Trust appropriate documentation confirming the Allowed Tort claimant's legal authority to resolve the Tort Claims on behalf of the minor, incapacitated, or the deceased person and his/her estate.

**10.7.    BENEFICIARIES REPRESENTED BY COUNSEL**.

(a)     Distributions to any Beneficiary who has indicated on his or her Proof of Claim Form that he or she is represented by an attorney shall be made jointly to the Tort Trust Beneficiary and the attorney (or law firm). If a Tort Trust Beneficiary is not represented by an attorney, distributions shall be made payable to the Beneficiary.

(b)     Each Beneficiary's counsel fees will be deducted and paid from the Tort Claimant's individual recovery and shall not be paid from the gross amount available for distribution from the Tort Claims Trust.

(c)     The Trustee shall issue a Form 1099 to each unrepresented Beneficiary and holder of Allowed Class 6 Claim that receive a distribution pursuant to the Trust Agreement, and the Tort Claims ADR Procedures in the amount of such distribution. If such Tort Trust Beneficiary has indicated on his or her Proof of Claim Form that he or she is represented by an attorney, the Trustee shall issue a Form 1099 to such attorney.

## 10.8.   DELIVERY OF DISTRIBUTIONS, UNDELIVERABLE DISTRIBUTIONS, AND UNCASHED CHECKS.

(a)      All distributions to any Beneficiary that has indicated on his or her Proof of Claim Form that he or she is represented by an attorney, shall be made at the address of the attorney indicated on the Proof of Claim Form. All distributions to any Beneficiary that has not indicated on his or her Proof of Claim Form that he or she is represented by an attorney shall be made at the address of the Beneficiary indicated on the Proof of Claim Form.

(b)      In the event that any distribution to any Beneficiary is returned as undeliverable, no further distributions to such Beneficiary shall be made unless and until the Trustee is notified of such Beneficiary's, his or her attorney's, then-current address, at which time the missed distribution shall be made to such Beneficiary or his or her attorney, as applicable, without interest. All demands for undeliverable distributions shall be made on or before one hundred and eighty (180) days after the date such undeliverable distribution was initially made. Thereafter, the amount represented by such undeliverable distribution shall irrevocably revert to the Trust, and any Tort Claims in respect of such undeliverable distribution shall be discharged and forever barred from assertion against the Tort Trust, the Debtors, the Settling Insurers, and the Released Parties and their respective property.

(c)      In the event that any distribution to any Beneficiary remains uncashed for one hundred and eighty (180) days, the amount represented by such distribution shall irrevocably revert to the Tort Trust, and any Tort Claims in respect of such uncashed distribution shall be discharged and forever barred from assertion against the Tort Trust, the Debtor and its property.

(d)      Notwithstanding anything to the contrary in the Joint Plan, the Trustee, as applicable, shall not be required to make a Distribution to any Beneficiary if the dollar amount of the Distribution is less than $10 or otherwise so small that in the reasonable judgment of the Trustee, the cost of calculating and making the final Distribution of the undistributable funds remaining is excessive in relation to the benefits to the or holders of Tort Claims who would otherwise be entitled to such Distributions.  On or about the time that any final Distribution is made or thereafter, the Trustee may make a donation of any undistributable funds, any surplus funds, any undeliverable and/or uncashed distributions as defined by Local Rule 3011-1(C)(1), in the reasonable discretion of the Trustee to one or more of the following organizations (each of which qualifies for not-for-profit status under section 501(c)(3) of the Tax Code) with undistributable funds: (i) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida; or (ii) Legal Services of Greater Miami, Inc.

(e)      The Tort Claims Beneficiaries 'Interests in the Tort Claims Trust shall not (i) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly and any purported assignment, conveyance, pledge or transfer shall be null and void *ab initio*; (ii) be evidenced by a certificate or other

17

instrument; (iii) possess any voting rights except as provided in the Joint Plan;  (iv) give rise to any right or rights to participate in the management or administration of the Tort Claims Trust or the Trust Assets; (v) entitle the holders thereof to seek the removal or replacement of the Trustee or the Tort Claims Reviewer, whether by petition to the Bankruptcy Court or any other court or otherwise; (vi) entitle the holders thereof to receive any interest on Distributions; and (vii) give rise to any rights to seek a partition or division of the Trust Assets. Beneficiaries shall have no interest of any kind in any of the Trust Assets; rather, the Beneficiaries shall have an undivided beneficial interest only in cash assets of but only to the extent such cash assets are declared by the Trustee to be distributable as Distributions in accordance with the Trust Agreement and the Tort Claims ADR Procedures.

(f)     No Distribution contemplated by the Joint Plan, the Trust Agreement, or the Tort Claims ADR Procedures shall be made on account of any allowed Tort Claims that is payable by a third party or other insurer that is not the Tort Claims Trust or the Trustee, until the Tort Claimant has exhausted all remedies with respect to such third-party or alternative insurance policy.  To the extent that another third-party has agreed to satisfy in full or in part an allowed Tort Claims, then immediately upon such agreement, the applicable portion of such claim may be disallowed and expunged without further notice to any party, or action, approval, or Order of the Bankruptcy Court.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**11.1.   INCORPORATION OF PLAN AND PLAN CONFIRMATION ORDER**.  The Joint Plan and the Plan Confirmation Order are incorporated herein by reference. In the event of any conflict between this Trust Agreement and any Tort Claims Trust Documents, on the one hand, and the Joint Plan or the Plan Confirmation Order on the other hand, this Trust Agreement and the Tort Claims Trust Documents shall control; provided, however, that in the event of any conflict between this Trust Agreement and the Tort Claims Trust Documents, on the one hand, and the Insurance Settlement Agreement, the Settlement Approval Order or the Joint Plan provisions incorporating and implementing the Insurance Settlement Agreement, on the other hand, the Insurance Settlement Agreement, the Settlement Approval Order and the Joint Plan provisions incorporating and implementing the Insurance Settlement Agreement shall control.

**11.2.   NOTICES**. All notices or deliveries required or permitted hereunder shall be  given as directed in the Joint Plan, to the following:

If to the Tort Claims Trust or Trustee:

If to a Beneficiary:

Counsel who signed the Beneficiary's Proof of Claim or, for an unrepresented claimant, to the address for the claimant provided in the  Proof of Claim.

**11.3.    WAIVER**. No failure or delay of any party to exercise any right or remedy pursuant to this Trust Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

**11.4.    REIMBURSEMENT OF COSTS**. If the Trustee or the Tort Claims Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement thereof, the Trustee or the Tort Claims Trust, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of- fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

**11.5.    ENTIRETY OF TRUST AGREEMENT**. This Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter hereof. This Trust Agreement, together with the Exhibits hereto, the Insurance Settlement Agreement, the Settlement Approval Order, the Joint Plan, and the Plan Confirmation Order, contain the sole and entire understanding and agreement with respect to the subject matter thereof.

**11.6.    COUNTERPARTS**. This Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on such counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**11.7.    CAPTIONS**.  The captions of Articles and Sections are included for convenience only and are to be disregarded in interpreting this Trust Agreement.

**11.8.    INDEPENDENT LEGAL AND TAX COUNSEL**. All parties to this Trust Agreement have been represented by counsel and advisors (collectively referred to as "Counsel" of their own selection in this matter. Consequently, the parties agree that the language in all parts of this Trust Agreement shall in all cases be construed as a whole according to its fair meaning and neither strictly for nor against any party. It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the Internal Revenue Service or the taxing authorities of any state or territory of the United States of America.

**11.9.    APPLICABLE LAW**. This Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of Florida applicable to contracts and trust agreements made and to be performed therein, except that all matters of federal tax law and the Tort Claims Trust's compliance with §468B of the Tax Code and treasury Regulations thereunder shall be governed by federal tax law, and all matters of federal bankruptcy law shall be governed by federal bankruptcy law. Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Trust Agreement.

12948107-2

**IN WITNESS WHEREOF**, Debtors and the Trustee execute this Trust Agreement as of the date set forth in the opening paragraph.

**Trustee:**

_____

By:
Printed Name:
Title:

**Bird Global, Inc.; Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession**

_____

By:      Christopher Rankin
Title:    Chief Restructuring Officer
Date:    April [●], 2024

20

12948107-2

**EXHIBIT 2**

**GREAT AMERICAN INSURANCE SETTLEMENT AGREEMENT**

Exhibit 2

## SETTLEMENT, RELEASE AND POLICY BUYBACK AGREEMENT

This Settlement, Release, and Policy Buyback Agreement (the "Agreement") is made as of April 18, 2024, by and between Bird Global, Inc., Bird Rides, Inc, Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc. (collectively the "Debtors"), and Great American E&S Insurance Company (the "Insurer").

## RECITALS

WHEREAS, on December 20, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). The Debtors' Chapter 11 cases (collectively, the "Bankruptcy Cases") are being jointly administered under lead case, *In re Bird Global, Inc*., Case No. 23-20514-CLC (Jointly Administered); and

WHEREAS, prior to the Petition Date, Bird Rides, Inc. contracted with Insurer to provide general liability insurance coverage related to the operation of their businesses and Insurer issued or caused to be issued, to Bird Rides, Inc., as the named insured, the policies of insurance described and identified in Schedule 1 hereto (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Insurer's Policies"); the Insurer's Policies include any and all policies of insurance that: (a) were issued or allegedly issued by the Insurer or by any Insurer Party to or on behalf of any of the Debtors; (b) under which any or all of the Debtors are or allegedly are an insured, named insured, or Additional Insured; or (c) under which Debtors, Additional Insureds, and/or any Third Party Beneficiaries may contend they are entitled to coverage or benefits; and

WHEREAS, under the Insurer's Policies and all agreements related thereto (collectively, the "Insurance Program"), Insurer provides, *inter alia*, certain commercial general liability insurance for specified policy periods subject to certain limits, self-insured retentions, exclusions, terms, and conditions, as more particularly described therein; and the insureds, including Bird Rides, Inc., are required to perform certain monetary and non-monetary obligations including, among other monetary obligations, the payment of insurance premiums, all as more particularly described in the Insurance Program (collectively, the "Obligations"); and

WHEREAS, prior to the Petition Date, a number of Tort Claims (as defined below) were asserted by various individuals and/or entities against the Debtors and other parties, including municipalities, claiming indemnity against Debtors or Additional Insured status (as defined below) under the Insurer's Policies; and

WHEREAS, Tort Claims against the Debtors are stayed pursuant to § 362 of the Bankruptcy Code upon the filing of the Bankruptcy Cases; and

WHEREAS, on January 24, 2024, the Debtors commenced an adversary proceeding against 56 Claimants styled *Bird Global, Inc. et al. vs. Gregory Amundson, et al.,* Adversary Case No. 24-01010-CLC (the "Related Adversary Case"), to obtain an extension of the automatic stay and a preliminary injunction prohibiting those Claimants from prosecuting their Tort Claims

1

against municipalities and other defendants whom Debtors are contractually bound to defend and indemnify (the "Municipality Tort Claims"); and

WHEREAS, the Bankruptcy Court has entered one or more preliminary injunctions enjoining the prosecution of the Municipality Tort Claims for an initial 180 days following the Petition Date, through and including June 17, 2024; and

WHEREAS, certain disputes have arisen or may arise in the future between the Insurer and the Debtors regarding the respective rights and obligations under the Insurer's Policies and the Insurance Program, including the extent of the Debtors' Obligations and available coverage under the Insurer's Policies (the "Coverage Disputes"); and

WHEREAS, given the substantial time and expense the Parties will incur to litigate the Coverage Disputes, the limited financial resources of the Debtors, the risks of litigation, the potential for appeals, and the risk of delay in monetizing the Tort Claims against the Debtors, without admitting liability or any other concession as to the validity of the positions or arguments advanced by each other, the Debtors and the Insurer have agreed to compromise, and fully and finally resolve, any and all Coverage Disputes between and among them on the terms set forth in this Agreement, which include (i) the funding of the Settlement Fund for the benefit of Tort Claimants pursuant to the procedures described herein with aim of providing a prompt distribution to the holders of Tort Claims and (ii) the channeling of the Tort Claims exclusively to the Tort Claims Trust; and

WHEREAS, on March 8, 2024, the Bankruptcy Court entered an *Order (I) Authorizing and Approving (A) The Sale of Substantially All of The Debtors' Assets Free and Clear Of All Liens, Claims, and Encumbrances and (B) The Assumption and Assignment Of Certain Executory Contracts And Unexpired Leases In Connection Therewith, and (III) Granting Related Relief* (the "Sale Order"), pursuant to which the Court approved the sale of substantially all the Debtors' assets to Bird Scooter Acquisition Corp. (the "Buyer"), including the assumption and assignment of certain permits, insurance policies and other material contracts to the Buyer; and

WHEREAS, the Parties intend that this Agreement be approved by the Bankruptcy Court pursuant to the Plan Confirmation Order.

NOW, THEREFORE, in consideration of the forgoing Recitals and the mutual covenants contained in this Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, and subject to the approval of the Bankruptcy Court, the Parties agree as follows:

I.    DEFINITIONS

As used in this Agreement. the following terms shall have the meanings set forth below or in the Recitals. Capitalized terms not defined below, herein, or in the Recitals shall have the meanings given to them in the Plan and the Bankruptcy Code. In the event of a conflict, the definitions in this Agreement shall control.

2

1.1    "<u>Additional Insured</u>" or "<u>Additional Insureds</u>" means any Person or entity other than Bird Rides, Inc. who Debtors contend qualifies as an additional insured under the terms of the Insurer's Policies, including but not limited to any Person or entity the Debtors were required to add as an additional insured under the Policies: (a) pursuant to written contracts, agreements, regulations, local ordinances and/or terms and conditions in certain permit applications and permits issued by various entities or municipalities; or (b) under any oral or implied agreement where a certificate of insurance was issued showing that Person or entity as an Additional Insured, all as specified by the Policies. For purposes of this Agreement only, Additional Insureds include Charleston, SC, Long Beach, CA, Los Angeles, CA, New Port News, VA, Sacramento, CA, Salt Lake City, UT, San Diego, CA, San Francisco, CA, Santa Clara, CA, Santa Monica, CA, Tempe, AZ, Washington, D.C., Orlando, FL, Chicago, IL, Portland, OR, Providence, RI, and St. Louis, IL.

1.2    "<u>Additional Insured Claim</u>" means a Claim of a putative Additional Insured Claimant, any Claim by any Person or entity against the Insurer that, directly or indirectly, arises from, relates to or is in connection with a Tort Claim, including any such Claim for defense, indemnity, contribution, or similar relief;

1.3    "<u>Additional Insured Claimant</u>" means a putative Additional Insured who has a Claim or may have a Claim or right against the Debtors and/or the Insurer.

1.4    "<u>Additional Tort-Claims</u>" are those Claims comprised of Tort Claims, Additional Insured Claims that (i) were listed or scheduled in the Bankruptcy Case under Code 11 U.S.C. §521(a)(1), with the name, if known to Debtors, of the Claimant, in time to permit the timely filing of a proof of claim, or for which such Claimants had notice or actual knowledge of the Bankruptcy Cases in time for such timely filing; (ii) were named as defendants in the related Adversary Case; or (iii) for which a timely proof of claim was not filed in the Bankruptcy Case.

1.5    "<u>Approval Date</u>" means the date on which the Approval Order becomes a Final Order.

1.6    "<u>Approval Order</u>" means the Plan Confirmation Order and any other Order entered which approves this Agreement.

1.7    "<u>Bar Order</u>" means the provisions of this Agreement, Section 13.9 of the Debtors' Joint Plan of Liquidation, and the Plan Confirmation Order that shall permanently bar, prohibit, enjoin and restrain the filing, commencing, prosecuting, conducting, asserting or continuing in any manner, directly, indirectly or derivatively of all Claims, as more particularly described in Section 3.2 hereof.

1.8    "<u>Channeled Claim</u>" means any Tort Claim ultimately allowed, approved or otherwise resolved through the Tort Claims ADR Procedures.

1.9    "<u>Channeling Injunction</u>" means the Channeling Injunction contained in the Section 13.6 of the Debtors' Joint Plan of Liquidation and the Plan Confirmation Order, permanently releasing and enjoining the enforcement, prosecution, continuation, liquidation, or commencement of any Tort Claim that any Person or Entity holds or asserts or may in the future hold or assert against the Insurer and any Named Insured or Additional Insured under the Insurer's Policies.

3

1.10   "Claim" or "Claims" means any and all past, present, and future claims, demands, actions, requests, rights, causes of action, suits, judgments, arbitrations, administration remedies, interests, liabilities, duties, injuries, damages, expenses, fees, or costs of any kind or nature whatsoever (including attorneys' fees, expenses or costs advanced) whether foreseen or unforeseen, known or unknown, asserted or unasserted, contingent or matured, liquidated or unliquidated, whether in tort, contract, extra-contractual or otherwise, whether statutory, at common law or equity, including but not limited to claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, misconduct, unfair claim settlement practices or similar acts, statutory or regulatory violations, for indemnity or contribution, or punitive, exemplary, or extra-contractual damages of any type, including, without limitation, but subject to any Exceptions under the Policies, all Claims: (i) arising out of or relating to or in any way involving, in whole or in part, directly or indirectly, whether through a direct claim cross-claim, third-party claim, contribution, rescission, injunctive or declaratory relief, subrogation claim, class action or otherwise (a) Tort Claims, property and other damage claims, including without limitation any claims for wrongful death, personal injury, emotional distress, economic loss, environmental damages, remediation or exposure, or (b) arising under the Insurer's Policies, including without limitation the issuance or management of the Policies, any coverage under the Insurer's Policies, the defense of litigation arising out Tort Claims, or any act or omission of the Insurer or any Insurer Party of any type for which a Claimant might seek relief; or (ii) that would otherwise constitute a claim within the definition of §101(5) of the Bankruptcy Code.

1.11   "Debtors' Joint Plan of Liquidation" means the Chapter 11 Debtors' Joint Plan of Liquidation filed concurrently herewith by the Debtors in the Bankruptcy Cases, in form and substance reasonably acceptable to the Insurer insofar as it relates to or in any way involves the Tort Claims, the Insurer's Policies, the Tort Claims Settlement Fund, or the Tort Claims Settlement Trust that among other things: (a) incorporates the terms of this Agreement and Schedules attached hereto; (b) requests approval of this Agreement as part of the Plan Confirmation Order; (c) establishes the Tort Claim Trust for the benefit of holders of Tort Claims; (d) provides that the Settlement Payment pursuant to this Agreement shall be held exclusively for payment of the expenses of the Tort Claims Trust, including the cost of the Tort Claims ADR Procedures and the resolution and liquidation of Tort Claims; (e) provides for the establishment, funding and administration, and approval of the Tort Claims ADR Procedures; (f) provides for full and complete releases by holders of allowed Tort Claims, and the Trustee of the Tort Claims Trust of any and all Claims against the Insurer, the Debtors, the Buyer, the Insurer Parties and any Named or Additional Insureds under the Insurer's Policies and Insurance Program; (g) enjoins all Persons and entities, including without limitation holders of Tort Claims, and the trustee of the Tort Claims Trust from suing on or otherwise pursing relief from the Insurer, the Buyer, the Insurer Parties and any Named or Additional Insureds under the Insurer's Policies or Insurance Program for any and all Claims; and (h) provides for and approves of the sale of the Insurer's Policies back to the Insurer, such that they will be treated as if the Policies never existed.

1.12   "Estates" means, with regard to the Debtors, each estate created by the commencement by the Debtors of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.13   "Execution Date" means the date all Parties have executed this Agreement.

4

1.14    "Extra-Contractual Claim" means any claim against the Insurer for bad faith, or for contribution, subrogation or other comparable equitable relief.

1.15    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

1.16    "Injunctions" means the Channeling Injunction and the Supplemental Insurance Injunction.

1.17    "Insurer" means Great American E&S Insurance Company.

1.18    "Insurer Party or Insurer's Parties" means the Insurer and includes: (a) each of its past, present and future parents, subsidiaries, affiliates, and divisions; (b) each of its respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies. related companies, divisions, joint ventures, and acquired companies; (c) each of its respective past, present and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and managing agents, claims handling administrators, affiliates, insurers, reinsurers, and associated third-parties; and (d) each of its respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or entities acting on behalf of, by, through or in concert with them.

1.19    "Insurer's Policies" means the policies of insurance issued by any Insurer Party that: (a) are identified on the attached Schedule "1"; (b) under which any or all of the Debtors are or contend that they are an insured, named insured, or Additional Insured; or (c) under which Debtors, Additional Insureds, and/or any Third-Party Beneficiaries may contend they are entitled to coverage or benefits.

1.20    "Interests" means all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including but not limited to direct action claims, insurance coverage claims, Claims, Tort Claims, Additional Insured Claims, Third Party Beneficiary claims, and any rights, claims, or interests by, or on behalf of any other Person or entity who may claim to be an insured, Named Insured, Additional Insured, or otherwise claim to be entitled to any insurance coverage or benefits for any Claims or any rights to contribution, indemnity, defense, subrogation, or similar relief related to or arising from the Debtors under the Policies and the Insurance Program.

5

1.21    "Named Insureds" means any Person or entity identified as a Named Insured or Additional Named Insured under the Insurer's Policies.

1.22    "Parties" means Debtors and the Insurer.

1.23    "Person" means and includes any natural person or persons, a group of natural persons acting as individuals, a committee, a board of directors, or any other group of natural individuals acting in a collegial capacity, an individual or entity including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability company or limited partnership, a proprietorship, association, joint stock company, joint venture, or any other unincorporated association, business organization or enterprise, any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof, and any successor in interest, heir, executor, estate, personal executor, personal or legal representative, administrator, trust, trustee, trustee in bankruptcy, assignee for the benefit of creditors, or receiver of any person or entity.

1.24    "Plan Confirmation Order" means a Final Order of the Bankruptcy Court in the Bankruptcy Cases, in form and substance reasonably acceptable to the Insurer, that confirms the Plan and incorporates and approves the Agreement.

1.25    "Settlement Amount" means sum of Two Million Dollars ($2,000,000.00).

1.26    "Supplemental Insurance Injunction" shall mean an injunction, to be included in the Joint Plan, with terms reasonably acceptable to Insurer that enjoins any actions or Claims, including Extra-Contractual Claims, against the Insurer's Policies.

1.27    "Third-Party Beneficiaries" means any Person or entity including a municipality, government entity, manufacturer, seller, reseller, supplier, or distributor of any vehicles utilized by the Debtors that may not be specifically included as a Named Insured or Additional Insured under one or more of the Insurer's Policies but to whom the Debtors are otherwise obligated to indemnify under the terms of certain contracts or agreements entered into by and between the Debtors and these Persons or entities.

1.28    "Tort Claim" means all Claims (including any Unknown Tort Claim) held by any Person or entity against the Debtors, the Insurer, the Insurer's Parties, or any other Person or Entity who may claim to be an Insured, Named Insured, Additional Insureds, or otherwise claim to be entitled to coverage under any of the Insurer's Policies or Insurance Program for bodily or personal injury, tort claim, or property damage related to, or arising out of the use, placement, operation, transportation, renting, leasing, and/or recovery of the Debtors' and/or arising out of the operation of the Debtors' businesses.

1.29    "Tort Claimant" means any Person or entity holding or potentially holding a Tort Claim and also includes any Person or entity that may possess or assert any indirect Tort Claims by virtue of possessing any rights or entitlement of contribution, indemnification, or subrogation against the Debtors, the Insurer, the Insurer's Parties or any other Person or entity who may be an Insured, Named Insured, Additional Insureds, a Third-Party Beneficiary, or a co-defendant in any underlying litigation.

6

12912644-4

1.30    "Tort Claim Settlement Fund" means all assets and other corpus of the Tort Claim Trust inclusive of the Settlement Payment established exclusively for distribution to allowed Tort Claims after payment of all other amounts required by this Agreement and the Debtors' Joint Plan of Liquidation including, but not limited to: (a) payments to holders of allowed Tort Claims; (b) all required statutory fees; and (c) all costs and expenses of administration of the Tort Claim Trust.

1.31    "Tort Claims ADR Procedures" means the alternative dispute resolution procedures for determining and liquidating Tort Claims, as approved by the Bankruptcy Court.

1.32    "Tort Claims Bar Date" means the date set by the Bankruptcy Court as the deadline for Tort Claimants to File Tort Claims.

1.33    "Tort Claim Defenses" means any legal, equitable, or contractual defense that any of the Debtors, Additional Insureds, Third Party Beneficiaries, or the Insurer have or may have under applicable non-bankruptcy law to the validity or amount of, or liability for, any Tort Claim, including any applicable statutes of limitation or repose.

1.34    "Tort Claim Trust" means the trust to be established pursuant to this Agreement and the Debtors' Joint Plan of Liquidation.

1.35    "Tort Claim Trust Agreement" means the form of trust agreement that shall be approved by the Plan Confirmation Order. In the event of any conflict between the terms of the Debtors' Joint Plan of Liquidation and the terms of the Tort Claim Trust Agreement, the terms of the Debtors' Joint Plan of Liquidation shall govern.

1.36    "Unknown Tort Claim" means any Tort Claim that is neither filed nor deemed filed on or by the Tort Claims Bar Date and is held by a Person or entity who: (a) was incapacitated between the Tort Claims Bar Date and the Plan Effective Date; (b) has a Tort Claim that was barred by the statute of limitations as of the Tort Claims Bar Date but is no longer barred by the applicable statute of limitations for any reason, including the enactment of legislation that revives previously time-barred Tort Claims; or (c) as otherwise defined by subsequent order of the Bankruptcy Court.

## ARTICLE 2

## THE SETTLEMENT, RELEASE AND BUYBACK AGREEMENT

2.1    Subject to the terms and conditions of this Agreement: the Insurer shall pay or cause the Debtors to be paid the Settlement Amount, as provided for herein, in full and final settlement of all responsibilities under and arising out of the Insurer's Policies and in consideration of the sale of the Insurer's Policies free and clear of all Interests or Claims and the other Releases and Injunctions provided herein pursuant to the Debtors' Joint Plan of Liquidation.

2.2    The Settlement Amount shall be paid to the Debtors or their designee within five (5) business days of the Plan Confirmation Order becoming a Final Order.

2.3    Debtors shall hold the Settlement Payment in the trust account of their counsel for the benefit of holders of Tort Claims until such time as the Tort Claim Trust is established and shall not commingle the Settlement Payment with any other assets of the Estates.

7

2.4     The Settlement Amount is the maximum amount that the Insurer Parties shall be obligated to pay on account of any and all Claims under, arising out of, relating to, or in connection with the Insurer's Policies or Insurance Program (including all Channeled Claims). The Parties further agree that subject to the entry of the Plan Confirmation Order approving this Agreement: (a) under no circumstances will the Insurer or the Insurer Parties ever be obligated to make any additional payments to or on behalf of the Debtors, their Estates, or any other Person or entity or any Tort Claimants in connection with any of the Insurer Policies with respect to any Claims that, directly or indirectly, arise out of, relate to, or are in connection with any Tort Claims, including any Channeled Claims; (b) all limits of liability of the Insurer's Policies, including all per occurrence and aggregate limits, are and shall be deemed to be fully and properly exhausted and the Parties further agree that the Settlement Amount set forth in Section 1.20 and Section 2.1 includes the full purchase prices of the Insurer's Policies and consideration for the releases and other protections afforded by this Agreement, respectively; and (c) all obligations of the Insurer and the Insurer's Parties under the Insurer's Policies and Insurance Program are and shall be deemed to be extinguished.

2.5     Subject to entry of the Approval Order and the Approval Order becoming a Final Order, Debtors represent and warrant that the Settlement Payment is the maximum amount that the Insurer and the Insurer Parties shall be obligated to pay with respect to all Claims and Tort Claims and Debtors have not at any time on or after the Petition Date, entered into, and shall not henceforth enter into any settlements of any Claims pursuant to which the Insurer may be obligated to pay any amounts under the Insurer's Policies; *provided*, *however*, that nothing in this Agreement shall bar or prohibit Debtors from making distributions to the holders of allowed Claims under and pursuant to the Debtors' Joint Plan of Liquidation.

2.6     The Parties agree and represent that the consideration to be provided by the Insurer pursuant to this Agreement (including the Settlement Amount) constitute fair and reasonable exchanges for the consideration granted to the Insurer, the Insurer's Parties in this Agreement (including the Releases and Injunctions provided herein).

2.7     Effective upon the delivery of the Settlement Amount, the Debtors agree and confirm that (a) any and all of Debtors' outstanding tenders to the Insurer for defense and/or indemnity of any Claims shall be deemed withdrawn; (b) Debtors shall not tender to the Insurer any Claims; (c) Debtors will not request that the Insurer fund any judgments or settlements of any Claims; and (d) the Insurer shall have no further obligation to pay, handle, object to, or otherwise respond to any Claims.

2.8     Nothing in this Agreement precludes the Parties from internally allocating payments or receipt of payments made under this Agreement in such manner as each Party sees fit. Any such allocation by any of the Parties shall not be binding on the other Parties.

8

12912644-4

## ARTICLE 3

## THE BANKRUPTCY COURT APPROVAL OF THE AGREEMENT AND JOINT PLAN OF LIQUIDATION

3.1    This Agreement and the transactions contemplated hereby are contingent on the filing of the Debtors' Joint Liquidating Plan (sometimes referred to as the "Joint Plan") that incorporates and is consistent, in all material respect, with this Agreement. In the event of a conflict between the Debtors' Joint Liquidating and this Agreement, this Agreement shall control and shall be deemed incorporated in the Debtors' Joint Liquidating Plan to the extent necessary to effect such a result.

3.2    The Debtors shall diligently prosecute confirmation of the Debtors' Joint Liquidating Plan which shall include the following features:

3.2.1    The Joint Plan and Plan Confirmation Order shall include the Channeling Injunction pursuant to §105(a) of the Bankruptcy Code barring and permanently enjoining all Persons or Entities who have held or asserted, or may in the future hold or assert, Channeled Claims from taking any action, directly or indirectly, for purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim and channeling such Channeled Claims to the Tort Claim Trust which shall be the sole and exclusive source of payment for the Channeled Claims.

3.2.2    The Joint Plan and Plan Confirmation Order shall also include a Supplemental Insurance Injunction pursuant to 11 U.S.C. §§ 105(a) and 363 of the Bankruptcy Code that shall enjoin the holder of any Tort Claim or any Claim for coverage or other benefits under the Insurer's Policy from prosecuting such Claim against the Insurer.

3.2.3    The Joint Plan and Plan Confirmation Order shall: (a) identify the Insurer and the Insurer's Parties as parties protected by the Channeling Injunction and the Supplemental Injunction; (b) contain a list of all other Persons or entities protected by the Channeling Injunction and Supplemental Injunction; and (c) provide as follows:

(a)    In consideration of the releases and Channeling Injunction, the Supplemental Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Debtors:

(i)    Irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims and/or Interests they have or might have now or in the future against the Insurer, the Insurer's Parties, Insureds, Additional Insureds, and Third Party Beneficiaries with respect to any and all Tort Claims, any contribution, subrogation, indemnification, or other similar Claims arising from or relating to any Tort Claims, and any of the Insurer's Policies; and

(ii)    Consents to the sale of Insurer's Policies in accordance with this Agreement, understanding that it will be as if these Policies never existed, and to the contribution of the Settlement Payment proceeds from such sales and settlements to the Tort Claim Trust, as provided in this Agreement.

9

12912644-4

3.2.4   The Parties intend to comply with the Medicare Secondary Payer Act ("MSPA") and agree that the Debtors' Joint Plan of Liquidation and Plan Confirmation Order, as applicable, shall provide that before making any distribution of Trust Assets to any Beneficiary of the Tort Claims Trust, the trustee of the Tort Claims Trust (the "Trustee") shall (i) obtain written certification from the Tort Claimant to receive such a distribution or their counsel that: (a) he or she has complied with reporting, and if necessary established any set-asides, required by applicable federal, state and local laws and regulations regarding settlements with minors and Medicare/Medicaid/SSA with respect to such Tort Claimant; (b) the Tort Claimant acknowledges that Medicare's interests in reimbursement for any incurred medical expenses that have been paid by Medicare have either already been satisfied and Medicare has acknowledged such satisfaction or will be satisfied from the distribution of Trust Assets to the Tort Claimant; (c) satisfaction of Medicare's interests from the distribution of Trust Assets to the Tort Claimant shall be the sole and exclusive responsibility of each individual Tort Claimant and each individual Tort Claimant agrees to provide proof of such satisfaction to the Trustee upon request; and (d) each Tort Claimant agrees that the duties of each Tort Claimant stated in this paragraph are non-delegable and failure to perform such duties shall provide the Settling Insurers with a right to recover any monies paid caused by the failure to satisfy Medicare's interests including any additional expenses incurred and attorney fees; and (ii) provide a copy of such certification to the Debtors or Plan Administrator, as applicable, and the Settling Insurers.  The Trustee shall be required to submit reports, if any, that are required under the MSPA or any applicable regulations regarding the liquidation and/or payment of any Tort Claim.

3.2.4.1   The Tort Claims Trust shall defend, indemnify, and hold the Insurer and the Insurer's Parties harmless from any Medicare claims.

3.3   The form and manner of notice of the hearing to confirm the Joint Plan (as amended to the satisfaction of the Insurer) are subject to advance approval by the Insurer, which approval shall not be unreasonably withheld.  Prior to entry of the Plan Confirmation Order, the Debtors shall continue to oppose any further motions to lift stay pursuant to 11 U.S.C. § 362 of the Bankruptcy Code as to any Tort Claim.

3.4   If the Plan Confirmation Order (or any other order of the Bankruptcy Court relating to this Agreement) shall be appealed by any Person or entity (or a petition for certiorari or motion for rehearing or reargument shall be filed with respect thereto), Debtors shall take all reasonable steps to defend against such appeal, petition or motion: *provided however*, that nothing herein shall preclude the Parties, at the election of the Insurer, from consummating the Agreement and the transactions contemplated herein if the Approval Orders shall have been entered and have not been stayed and the Insurer, in its sole discretion, waive in writing the requirement that the Approval Order be a Final Order.

3.5   The Parties shall not take any appeal from, or seek to reopen, reargue or obtain reconsideration of, or otherwise contest or challenge in any way, directly or indirectly, the Plan Confirmation Order (or any other order of the Bankruptcy Court relating to this Agreement), except to the extent that any such order shall be inconsistent with the terms hereof.

3.6   The Parties shall cooperate in seeking and obtaining Bankruptcy Court approval of the Agreement and the Debtors' Joint Plan of Liquidation. Such cooperation shall include, without

10

limitation, consulting with each other concerning the status of the Bankruptcy Cases including the status of the Debtors' Joint Plan, and Debtors providing the Insurer with drafts of requested motions, notices, certificates of service, proposed orders and any such other pleadings and documents relating to this Agreement.

3.7    Any amendments to the Debtors' Joint Plan of Liquidation, in so far as they relate to this Agreement, shall be in all respects consistent with this Agreement and shall, in all material respects be acceptable to the Insurer, whose acceptance shall not be unreasonably withheld. Any amendments to the Debtors' Joint Plan of Liquidation insofar as they relate to this Agreement shall not deprive the Insurer or the Insurer's Parties of any right or benefit under this Agreement or otherwise adversely affect the Interests of the Insurer or the Insurer's Parties under this Agreement.

3.8    Provided none is in default of its obligations under this Agreement, none of the Parties shall file any motion, adversary proceeding, response, objection, or other pleading or document in the Bankruptcy Cases requesting the entry of any order or granting any other relief which could conflict with, supersede, abrogate, nullify, modify, or restrict the terms of this Agreement and/or the rights of any Parties hereunder, or in any way prevent or interfere with the consummation or performance of the Agreement and the transactions contemplated herein.

3.9    In the event that the Bankruptcy Cases are dismissed or converted to a case under Chapter 7, the Parties agree that all terms, conditions, promises and obligations set forth in this Agreement shall survive and shall be and shall remain binding on the Parties and any successors or assigns of the Parties including the Debtors and the Insurer, and the Plan Confirmation Order shall so provide.

## ARTICLE 4

## RELEASES AND SALE FREE AND CLEAR

4.1    Subject to the provisions of Section 6.2 of this Agreement and effective upon the receipt of the Settlement Payment by the Debtors or their designee:

(a)    without any further action of the Parties, Debtors on behalf of themselves and the Bankruptcy Estates hereby fully, finally, and completely remise, release, acquit and forever discharge the Insurer, the Insurer Parties, all named Insured, Additional Insureds and Third Party Beneficiaries under the Insurer's Policies, from any and all past, present and future Claims that directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims or the Insurer's Policies, including any Channeled Claims, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Debtors' Bankruptcy Cases (the "Releases"). The Releases of the Insurer, the Insurer Parties, the Named Insured, Additional Insured, and Third Party Beneficiaries under the Insurer's Policies under this Section 4.1 shall include, but shall not be limited to, any and all Claims for coverage, indemnification, contribution, subrogation or otherwise under the Insurer's Policies arising out of or relating to or in any way involving the Tort Claims whether for wrongful death, personal injury, emotional distress, property damage, economic loss, environmental damage, remediation or exposure, or any other form of loss,

11

expense, or other benefit covered or potentially covered under the Insurer's Policies or Insurance Program;

(b)    the Debtors on behalf of themselves and the Estates, hereby withdraw any and all requests, demands, or tenders for defense or indemnity previously submitted to the Insurer under the Insurer Policies arising out of or relating to or in any way involving the Tort Claims including any Extra-Contractual Claims, and further surrender, relinquish, and release any further right to tender or present any Claims whatsoever to the Insurer or to the Insurer's Parties under the Insurer's Policies or Insurance Program. Furthermore, by virtue of the foregoing Releases and the Approval Order, the Insurer shall have no duty to defend or indemnify Debtors, on behalf of themselves and the Estates, or any other insured and Additional Insured under the Insurer's Policies with respect to any past, present, or future Claim, nor shall the Insurer have any other duty or obligation whatsoever to any Tort Claimant or any other Person or entity with respect to any and all Claims;

(c)    the Insurer on behalf of itself and each of the Insurer's Parties hereby fully, finally, and completely remise, release, acquit and forever discharge the Debtors, the Estates, the Tort Claims Trust, the Tort Claims Trustee, the Tort Claims Administrator, and each of their successors, assigns and Representatives from any and all past, present and future Claims that directly or indirectly, arise out of, relate to, or are in connection with the operation of the Debtors' businesses, the Tort Claims or the Insurer's Policies, including any Channeled Claims, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Debtors' Bankruptcy Cases; and

(d)    the Parties expressly waive any and all rights they may have under any contract, statute, code, regulation, ordinance, or at common law, which may limit or restrict the effect of a general release as to Claims released herein and in the Debtors' Joint Plan of Liquidation and the Approval Orders.

4.2    The Releases set forth in Section 4.1 above are not intended to, and shall not, extend to or otherwise release or discharge any rights, privileges, benefits, duties, or obligations of any of the Parties by reason of, or otherwise arising under the Agreement, the Debtors' Joint Plan of Liquidation or the Plan Confirmation Order.

4.3    Effective upon the receipt of the Settlement Amount by the Debtors or their designee, the Insurer hereby buys back the Insurer's Policies that were issued to the Debtors and the Debtors' Interests in those policies, free and clear of all liens, Claims and Interests of all Persons or Entities, including the Interests of the Debtors, any other Person or Entity claiming coverage by, through, or on behalf of any of the Debtors, any other insurer and any Tort Claimant. This sale is pursuant to §§363(b), (f), and (m) of the Bankruptcy Code. The Parties acknowledge and agree, and the Plan Confirmation Order shall find and conclude, that: (a) the Insurer is a good faith purchasers of the Insurer's Policies and Interests within the meaning of § 363(m) of the Bankruptcy Code; (b) the consideration exchanged constitutes a fair and reasonable settlement of the Parties' Coverage Disputes and of their respective rights and obligations relating to the foregoing Insurer's Policies and Interests and constitutes reasonably equivalent value; (c) the Releases in this Agreement and the policy buyback comply with the Bankruptcy Code and

12

applicable non-bankruptcy laws; (d) upon the Plan Confirmation Order becoming a Final Order, the Insurer's Policies and Interests shall be terminated and of no further force and effect and treated as if they never existed; (e) payment of the Settlement Amount constitutes the Insurer's full and complete performance of any and all obligations under the Insurer's Policies and with respect to the foregoing Interests, including any performance owed to the Debtors and Tort Claimants with respect to the Insurer's Policies issued to the Debtors; (f) all Interests the Debtors and may have had, may presently have, or in the future may have in the Insurer's Policies that were issued to the Debtors and are released pursuant to the terms of this Agreement as of the Effective Date of the Debtors' Joint Liquidating Plan; (g) the Debtors meet the requirements to complete the sale of the Insurer's Policies and Interests free and clear of any liens or other Interests; and (h) the Debtors accept the payment of the Settlement Amounts set forth in Sections 4.1 in accordance with this Agreement in full and complete satisfaction of all the Insurer and the Insurer Parties' past, present, and future obligations, including any obligations to any of the Debtors under the Insurer's Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such Claims arise from, relate to, or are in connection with the Channeled Claims, the Bankruptcy Cases, or otherwise under the Insurer's Policies.

4.4    Debtors represent and warrant that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any Claims that are the subject of the Releases set forth in Section 4.1 above.

4.5    The Parties acknowledge that there may be changes in the law with respect to interpretation of coverage under the Insurer's Policies or otherwise and/or that the Parties may hereafter discover facts different from, or in addition to, those which they now believe to be true with respect to any and all of the Claims and entities herein released. Nevertheless, the Parties hereby agree that the Releases set forth above, and the releases provided for in the Debt'rs' Joint Plan of Liquidation and approved by the Approval Orders, shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

4.6    The Releases set forth in Section 4.1 above shall not apply to or have any effect on the Insurer's rights to any claim for reinsurance in connection with the Insurer's Policies, nor shall the Insurer's assertion of any claim for reinsurance affect its obligations under this Agreement.

4.7    Subject to the other provisions of this Agreement, to the extent that the Releases set forth in Section 4.1 above run in favor of any Persons or entities who are not signatories hereto, this Agreement is declared to be made for their respective benefits.

## ARTICLE 5

## REPRESENTATIONS

5.1    Each of the Parties separately represents and warrants as follows:

13

(a)     Subject to the entry of the Approval Order, each has the requisite power and authority to enter into this Agreement and to perform the obligations imposed on it by this Agreement subject only to approval of the Bankruptcy Court;

(b)     Subject to the entry of the Approval Order, the execution and delivery of and the performance of the obligations contemplated by this Agreement have been approved by duly authorized representatives of the Party and by all other necessary actions of the Party;

(c)     It has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

(d)     It has not and will not sell, assign, transfer, convey, or otherwise dispose of any rights or interests under the Insurer's Policies and any Claims that it is releasing in this Agreement.  Moreover, the Debtors represent, warrant, and agree that they will not in any way assist any Person or entity in the establishment of any Claim against the Insurer that arises out of, results from, or in any way relates to the Insurer's investigation, handling, defense, or settlement of Claims released under this Agreement, except as ordered by a court of competent jurisdiction. In the event that a subpoena or discovery requests are served upon the Debtors, the Debtors shall give prompt notice to the Insurer and adequate opportunity to respond to any such subpoena or discovery request.

(e)     This Agreement has been thoroughly negotiated and analyzed by its counsel and has been executed and delivered in good faith, pursuant to arm's length negotiations, and for reasonable value and valuable consideration.

(f)     Nothing in this Agreement, including the Schedules hereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was, in fact, issued and/or affords coverage in connection with any Claims.

(g)     Each will use commercially reasonable efforts to seek entry of the Approval Orders.

## ARTICLE 6

## MISCELLANEOUS PROVISIONS

6.1     <u>Conditions Precedent</u>.  Subject to Section 6.2 below, this Agreement is expressly subject to satisfaction of the following conditions having performed, waived or otherwise excused:(a) that the Plan Confirmation Order becomes a Final Order; (b) the Insurer pays the Settlement Amount to the Debtors; and (c) the Release, Channeling Injunction, and Supplemental Injunction are approved by the Bankruptcy Court.

6.2     <u>Termination Rights</u>.  Any party may terminate this Agreement if the Bankruptcy Court does not enter the Approval Order or if the Approval Order does not become a Final Order on or before the 120th day following the Execution Date, except that this Agreement may not be cancelled after the Insurer has paid the Settlement Amount.  In the event that this Agreement is terminated by one or more of the Parties: (a) this Agreement shall be deemed null and void; (b)

14

the Insurer shall not be obligated to pay Settlement Amount to the Debtors; (c) the Parties shall have all of the claims, defenses, rights and obligations under or with respect to the Insurer's Policies that they would have had absent this Agreement; and (d) any and all otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date that the Agreement is terminated.

6.3     <u>Amendments</u>. Neither this Agreement nor any term set forth herein may be changed, waived, discharged, or terminated except by a writing signed by each of the Parties (or their successors or assigns).

6.4     <u>No Precedential Value</u>. This Agreement and the Tort Claims ADR Procedures shall be without precedential value, and it is not intended to be, nor shall it be construed as, an interpretation of any insurance policies. This Agreement shall not be used as evidence, or in any other manner, in any court or other dispute resolution proceeding to create, prove, or interpret the obligations of the Insurer under the Insurer's Policies, *provided, however,* that, subject to Section 6.17 of this Agreement below, this Agreement may be used as evidence in any defense of or by the Insurer of any obligations arising under the Insurer's Policies. The Parties acknowledge that this is a settlement of a disputed claim.

6.5     <u>Agreement Voluntarily Entered Into by Each of The Parties.</u> This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them. The Parties represent and warrant to each other that they have read and fully understand each of the provisions of this Agreement and have relied on the advice and representations of competent legal counsel of their own choosing.

6.6     <u>Interpretation</u>. This Agreement has been negotiated at 'rm's length and between and among Persons sophisticated and knowledgeable in the matters dealt with in this Agreement. In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties. Accordingly, no Party shall be presumptively entitled to have any provisions of the Agreement construed against the other Parties in accordance with any rule of law, legal decision, or doctrine. To the extent that any dispute arises as to the meaning of this Agreement, in whole or in part, it shall be construed in accordance with the Parties' intent to preclude future liability and exposure for the Parties to claims, rights, and causes of action, except to the extent covered by the Tort Claims Settlement Fund.

6.7     <u>No Admission of Liability</u>. The Parties agree that this Agreement is the result of a compromise and that the execution and delivery of this Agreement by any of the Parties shall not constitute or be construed as an admission of any liability, a course of performance, or wrongdoing on the part of any of them. The Parties acknowledge that this Agreement is not, and cannot be construed as, an admission by any of the Parties that any claim, cause of action, demand, defense, indemnity, or other coverage obligation exists under the Insurer's Policies, or that the Insurer has any other obligation of any nature whatsoever with respect to the Insurer's Policies. By entering into this Agreement, the Parties have not waived nor will they be deemed to have waived any right, obligation, privilege, defense or position they may have asserted or might assert in connection with any Claims, matter, Person, entity or insurance policy outside the scope of this Agreement. Except as otherwise expressly provided herein as set forth in Section 4.7 above, no Person other than the Parties hereto shall have any legally enforceable rights or benefits under this Agreement.

15

12912644-4

6.8    <u>No Fraudulent Transfer</u>.  This Agreement, having been negotiated at arm's length in settlement of bona fide disputes and supported by adequate consideration, is not a preference under 11 U.S.C. §547 of the Bankruptcy Code, a fraudulent conveyance under 11 U.S.C. §§546 or 548 of the Bankruptcy Code, or avoidable under any other applicable bankruptcy or non-bankruptcy law. The Parties agree that the rights and interests being transferred hereunder are being transferred in exchange for reasonably equivalent value and that upon the Execution Date, the Parties shall be deemed estopped and barred from challenging the reasonably equivalent value of the amount paid pursuant to the Agreement. The Parties agree to assert in any proceeding challenging this Agreement or seeking to avoid any part of this Agreement that this Agreement was for equivalent value as set forth above, was reached in good faith and was negotiated with the advice of counsel.

6.9    <u>Attorneys' Fees, Costs, and Expenses.</u> Each of the Parties shall bear its or his own costs, attorneys' fees, and expenses in connection with the negotiations for and preparation of this Agreement; *provided*, *however*, that the Debtors' professionals may seek an award of the fees and expenses incurred by them in obtaining Bankruptcy Court approval of the Agreement which, if awarded, shall be paid from the first proceeds of the Settlement Amount.

6.10    <u>Entire and Integrated Agreement.</u> This Agreement, along with the Schedules and attachments hereto, and the Approval Order, is intended by the Parties as a final expression of their agreement and is intended to be a complete and exclusive statement of the agreement and understanding of the Parties with respect to the subject matters contained herein. This Agreement supersedes any and all prior promises, representations, warranties, agreements, understandings, and undertakings between or among the Parties with respect to such subject matters, and there are no promises, representations, warranties, agreements, understandings, or undertakings with respect to such subject matters other than those set forth or referred to herein.

6.11    <u>No Third-Party Beneficiaries</u>. Except at provided in Section 4.1 above, nothing in this Agreement is intended or shall be construed to give any Person or entity not otherwise referred to or named herein, other than the Parties and their respective successors and permitted assigns, any legal or equitable right, remedy, or claim under or in respect to this Agreement or any provisions contained herein; this Agreement and any conditions and provisions hereof being and intended to be for the sole and exclusive benefit of the Parties, and for the benefit of no other Person or entity. Notwithstanding the foregoing, neither this Agreement nor the rights and obligations set forth herein shall be assigned without the prior written consent of the other Parties, except that this Section shall not prohibit any assignment by the Insurer (a) made by merger, consolidation, or operation of law or (b) to a Person or entity who succeeds to all or substantially all of its assets.

6.12    <u>Agreement Regarding Documents and Electronically Stored Data.</u> Prior to the Petition Date, the Debtors retained various legal counsel to defend Debtors and Additional Insureds in connection with Claims that had been asserted, or which might be asserted, including but not limited to in the Tort Claims. In connection with these representations, counsel retained by the Debtors took possession of and/or copied certain paper documents and records and may have obtained items of electronically stored information and/or other electronic media (collectively the "<u>Tort Claim Records</u>"). As a further consideration for this Agreement, Debtors agree that effective on the Approval Date and without the necessity of any further action by the Insurer, the Debtors,

16

shall request its former counsel to provide the Insurer with copies of the Tort Claim Records, whether paper documents or electronically stored information.

6.13    <u>Severability</u>. If any provisions of this Agreement or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties. Notwithstanding the foregoing, all of the conditions precedent in this Agreement will remain in full force and effect following any determination that any other provisions of this Agreement are invalid or unenforceable.

6.14    <u>Notice.</u> Any notice or request required or desired to be given pursuant to this Agreement shall be sufficient if made in writing and sent by first class mail, postage prepaid, facsimile, or e-mail to the Parties at the addresses set forth below or to such other Persons as any of them may designate in writing from time to time:

(a)    As to Debtors:

Christopher Rankin
Chief Restructuring Officer
61 The Kingsway
Toronto, Ontario
M8X 2T3 Canada
Email: chris@rankinpartners.com

With a copy to:

Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone: (305) 755-9500
Attn:    Paul Steven Singerman, Esq.
         Jordi Guso, Esq.
Email: singerman@bergersingerman.com
        jguso@bergersingerman.com

(b)    As to Insurer:

Carol Smith
Senior Claims Technical Director
Email: csmith15@gaig.com

17

With a copy to:

Ruggeri Parks Weinberg LLP
1875 K Street NW, Suite 600
Washington, DC 20006-1251
Tel:    (202) 469-7754
Fax:    (202) 984-1401
Attn:   Joshua D. Weinberg, Esq.
Email:  jweinberg@ruggerilaw.com


6.15    Headings. The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

6.16    Recitals. The recitals set forth at the beginning of this Agreement shall not be admissible to prove the truth of the matters asserted in any action or proceeding involving any of the Parties (other than an action or proceeding brought to enforce the terms of this Agreement), nor do any of the Parties intend such recitals to constitute admissions of fact by any of them.

6.17    Agreement Inadmissible. Any evidence of the terms or negotiations, or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes establishing any rights, duties, or obligations of the Parties, except in (a) an action or proceeding to enforce the terms or effect of this Agreement, (b) proceedings before the Bankruptcy Court to secure the Approval Order, or (c) any possible action or proceeding between the Insurer and any of its reinsurers bearing responsibility for any of obligations of the Insurer under this Agreement. Except as set forth herein, this Agreement shall not be used as evidence or in any other manner in any court or dispute resolution proceeding to create, prove, or interpret the Parties' rights or obligations to each other or to any other Person.

6.18    Additional Necessary Documents. The Parties, and each of them, agree to execute such additional documents as may be reasonably required in order to carry out the purpose and intent of this Agreement, or to evidence anything contained herein.

6.19    Execution in Counterparts. This Agreement may be signed in multiple counterparts and the separate signature pages executed by Parties may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.  Signatures may be exchanged by electronic means and shall have the same effect as an original.

6.20    Governing Law. This Agreement, and any proceeding that may be based upon, arise out of or relate or be incidental to this Agreement, the negotiation, execution, performance or consummation of the foregoing or the inducement of any Party to enter into the foregoing, whether now existing or hereafter arising (each, a "Transaction Dispute"), will be exclusively governed by and construed and enforced in accordance with the internal laws of the State of Florida, without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of Florida to be applied, except to the extent that such Laws are superseded by the Bankruptcy Code.

6.21 <u>Jurisdiction</u>. The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any Transaction Dispute, and any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court.

6.22 <u>Rules of Construction</u>. As used in this Agreement, the singular and masculine gender shall mean also mean the plural and feminine or neuter, as may be appropriate, "it" shall include "he" and "she"; and "each" and "all" includes "each" and "every." Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively; (b) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (c) the words "Include," "includes" or "Including" shall be deemed to be followed by the words "without limitation," and (d) the word "or" shall be disjunctive but not exclusive, References to this Agreement and other documents shall be deemed to include all subsequent amendments and other modification thereto.

[Signatures appear on the following page.]

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**Bird Global, Inc.; Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession**

By:      Christopher Rankin
Title:   Chief Restructuring Officer
Date:   April 18, 2024


IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**Great American E&S Insurance Company**

By:      Carol Smith
Title:   Senior Claims Technical Director
Date:   _____

20

12912644-4

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**Bird Global, Inc.; Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession**

By:     Christopher Rankin
Title:   Chief Restructuring Officer
Date:   April __ 2024

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**Great American E&S Insurance Company**

By:     Carol Smith
Title:   Senior Claims Technical Director
Date:   April 24, 2024

12896814-2

**Schedule 1**

**Insurer's Policies Issued to Bird Rides, Inc.**

| | | |
|---|---|---|
| **Great American E&S Insurance Company** | **XS 2258521** | **3/8/2018-3/8/2019** |
| **Great American E&S Insurance Company** | **XS 2666331** | **11/20/2019-11/20/2020** |

21

**EXHIBIT 3**

**LEXINGTON INSURANCE SETTLEMENT AGREEMENT**

Exhibit 3

## SETTLEMENT, RELEASE AND POLICY BUYBACK AGREEMENT

This Settlement, Release, and Policy Buyback Agreement (the "Agreement") is made as of May 9, 2024, by and between Bird Global, Inc., Bird Rides, Inc, Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc. (collectively the "Debtors"), and Lexington Insurance Company ("Lexington").

## RECITALS

WHEREAS, on December 20, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). The Debtors' Chapter 11 cases (collectively, the "Bankruptcy Cases") are being jointly administered under lead case, *In re Bird Global, Inc.*, Case No. 23-20514-CLC (Jointly Administered); and

WHEREAS, prior to the Petition Date, Lexington issued Commercial Umbrella Liability policy number 023627637, effective from March 19, 2019 to February 1, 2020 to Bird Rides, Inc., which provides limits of insurance of $5,000,000 per occurrence, $5,000,000 general aggregate and $5,000,000 products-completed operations aggregate (the "Policy"). The limits of the Policy have been impaired and the remaining limits are $1,016,036.50. The Policy and any other policies of insurance issued by Lexington or any of the Lexington Parties (a) under which any or all of the Debtors are an insured, Named Insured, or Additional Insured; or (b) under which Debtors, Additional Insureds, and/or any Third-Party Beneficiaries may contend they are entitled to coverage or benefits are referred to herein as the "Policies"; and

WHEREAS, under the Policies and any and all agreements, if any, related thereto (collectively, the "Insurance Program"), Lexington provides, *inter alia*, commercial general liability insurance subject to the terms thereof, and the insureds, including one or more of the Debtors, are required to perform certain monetary and non-monetary obligations subject to the terms thereof, all as more particularly described in the Insurance Program (collectively, the "Obligations"); and

WHEREAS, prior to the Petition Date, a number of Tort Claims (as defined below) were asserted by various Persons against the Debtors and other parties, including municipalities claiming indemnity against Debtors or Additional Insured status (as defined below) under the Policy; and

WHEREAS, Tort Claims against the Debtors are stayed pursuant to §362 of the Bankruptcy Code upon the filing of the Bankruptcy Cases; and

WHEREAS, on January 24, 2024, the Debtors commenced an adversary proceeding against multiple Claimants styled *Bird Global, Inc. et al. vs. Gregory Amundson, et al.,* Adversary Case No. 24-01010-CLC (the "Related Adversary Case"), to obtain an extension of the automatic stay and a preliminary injunction prohibiting those Claimants from prosecuting their Tort Claims against municipalities and other defendants whom allege that the Debtors are contractually bound to defend and indemnify them (the "Municipality Tort Claims"); and

1

12914877-6

WHEREAS, the Bankruptcy Court has entered one or more preliminary injunctions enjoining the prosecution of the Municipality Tort Claims for an initial 180 days following the Petition Date, through and including June 17, 2024; and

WHEREAS, certain disputes have arisen or may arise in the future between Lexington and the Debtors regarding the respective rights and obligations under the Policies and the Insurance Program, including the extent of the Debtors' Obligations and available coverage under the Policies (the "Coverage Disputes"); and

WHEREAS, given the substantial time and expense the Parties will incur to litigate the Coverage Disputes, the limited financial resources of the Debtors, the risks of litigation, the potential for appeals, and the risk of delay in monetizing the Tort Claims against the Debtors, without admitting liability or any other concession as to the validity of the positions or arguments advanced by each other, the Debtors and Lexington have agreed to compromise, and fully and finally resolve any and all Coverage Disputes between and among them on the terms set forth in this Agreement; and

WHEREAS, on March 8, 2024, the Bankruptcy Court entered an *Order (I) Authorizing and Approving (A) The Sale of Substantially All of The Debtors' Assets Free and Clear Of All Liens, Claims, and Encumbrances and (B) The Assumption and Assignment Of Certain Executory Contracts And Unexpired Leases In Connection Therewith, and (III) Granting Related Relief* (the "Sale Order"), pursuant to which the Court approved the sale of substantially all the Debtors' assets to Bird Scooter Acquisition Corp. (the "Buyer"), including the assumption and assignment of certain permits, insurance policies and other material contracts to the Buyer; and

WHEREAS, the Parties intend that this Agreement be approved by the Bankruptcy Court pursuant to the Plan Confirmation Order.

NOW, THEREFORE, in consideration of the forgoing Recitals and the mutual covenants contained in this Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, and subject to the approval of the Bankruptcy Court, the Parties agree as follows:

## ARTICLE 1

## DEFINITIONS

As used in this Agreement. the following terms shall have the meanings set forth below or in the Recitals. Capitalized terms not defined below, herein, or in the Recitals shall have the meanings given to them in the Plan and the Bankruptcy Code. In the event of a conflict, the definitions in this Agreement shall control.

1.1    "Additional Insured(s)" means any Person who qualifies or purports to qualify as an additional insured under the terms of the Policies.

1.2    "Additional Insured Claim" means a Claim of any Additional Insured or any Claim by any Person against Lexington that, directly or indirectly, arises from, relates to or is in

2

connection with a Tort Claim, including any such Claim for defense, indemnity, contribution, or similar relief;

     1.3     "<u>Approval Date</u>" means the date on which the Approval Order becomes a Final Order.

     1.4     "<u>Approval Order</u>" means the Plan Confirmation Order and any other Order entered which approves this Agreement.

     1.5     "<u>Channeled Claim</u>" means any Tort Claim or any other Claim ultimately allowed, approved, or otherwise resolved through the Tort Claims ADR Procedures.

     1.6     "<u>Channeling Injunction</u>" means the Channeling Injunction contained in the Section 13.6 of the Plan and the Plan Confirmation Order, permanently releasing and enjoining the enforcement, prosecution, continuation, liquidation, or commencement of any Tort Claim that any Person holds or asserts or may in the future hold or assert against Lexington and any Named Insured or Additional Insured under the Policies.

     1.7     "<u>Claim</u>" or "<u>Claims</u>" means any and all past, present, and future claims, demands, actions, requests, rights, causes of action, suits, judgments, arbitrations, administration remedies, interests, liabilities, duties, injuries, damages, expenses, fees, or costs of any kind or nature whatsoever (including attorneys' fees, expenses or costs advanced) whether foreseen or unforeseen, known or unknown, asserted or unasserted, contingent or matured, liquidated or unliquidated, whether in tort, contract, extra-contractual or otherwise, whether statutory, at common law or equity, including but not limited to claims for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, misconduct, unfair claim settlement practices or similar acts, statutory or regulatory violations, for indemnity or contribution, or punitive, exemplary, or extra-contractual damages of any type, including, without limitation, all claims: (i) arising out of or relating to or in any way involving, in whole or in part, directly or indirectly, whether through a direct claim cross-claim, third-party claim, contribution, rescission, injunctive or declaratory relief, subrogation claim, class action or otherwise (a) Tort Claims, property, and other damage claims, including without limitation any claims for wrongful death, personal injury, emotional distress, economic loss, environmental damages, remediation or exposure, or (b) the Policies, including without limitation the issuance or administration of the Policies, any coverage under the Policies, the duty to defend, the duty to indemnify, any duty, if any, to settle any claim, breach of implied covenant of good faith and fair dealing, breach of any regulation and/or statute, and/or any act or omission of Lexington or any of the Lexington Parties of any type for which a Person might seek relief; or (ii) that would otherwise constitute a claim within the definition of §101(5) of the Bankruptcy Code.

     1.8     "<u>Claimant</u>" means the holder of a Claim.

     1.9     "<u>Estates</u>" means, with regard to the Debtors, each estate created by the commencement by the Debtors of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

     1.10     "<u>Execution Date</u>" means the date all Parties have executed the Agreement.

3

1.11    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

1.12    "Injunctions" means the Channeling Injunction and the Supplemental Injunction.

1.13    "Interests" means all liens, claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including but not limited to direct action claims, insurance coverage claims, Claims, Tort Claims, Additional Insured Claims, Third Party Beneficiary claims, and any rights, claims, or interests by, or on behalf of any other Person or entity who may claim to be an insured, Named Insured, Additional Insured, or otherwise claim to be entitled to any insurance coverage or benefits for any Claims or any rights to contribution, indemnity, defense, subrogation, or similar relief related to or arising from the Debtors under the Policies and the Insurance Program.

1.14    "Named Insured(s)" means any Person identified as a named insured or qualifies as a named insured under the Policies.

1.15    "Parties" means Debtors and Lexington.

1.16    "Person" means and includes any natural person or persons, a group of natural persons acting as individuals, a committee, a board of directors, or any other group of natural individuals acting in a collegial capacity, an individual or entity including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability company or limited partnership, a proprietorship, association, joint stock company, joint venture, or any other unincorporated association, business organization or enterprise, any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof, and any successor in interest, heir, executor, estate, personal executor, personal or legal representative, administrator, trust, trustee, trustee in bankruptcy, assignee for the benefit of creditors, or receiver of any person or entity.

1.17    "Plan" means the First Amended Joint Plan of Liquidation, as further modified to incorporate the terms of this Agreement, to be filed by the Debtors in the Bankruptcy Cases, in form and substance reasonably acceptable to Lexington insofar as it relates to or in any way involves the Tort Claims, the Policies, the Tort Claims Settlement Fund, or the Tort Claims Settlement Trust that among other things: (a) incorporates the terms of this Agreement and

4

Schedules attached hereto; (b) requests approval of this Agreement as part of the Plan Confirmation Order; (c) establishes the Tort Claim Trust for the benefit of holders of Tort Claims; (d) provides that the Settlement Payment pursuant to this Agreement shall be held exclusively for payment of the expenses of the Tort Claims Trust, including the cost of the Tort Claims ADR Procedures; (e) provides for the establishment, funding and administration, and approval of the Tort Claims ADR Procedures; (f) provides for the Releases as set forth in Section 4 of this Agreement; (g) provides for the Supplemental Injunction and Channeling Injunction; and (h) provides for and approves of the sale of the Policies back to Lexington in the manner set forth in Section 4.

1.18    "Plan Confirmation Order" means a Final Order of the Bankruptcy Court in the Bankruptcy Cases, in form and substance reasonably acceptable to Lexington, that confirms the Debtors' Plan and incorporates and approves the Agreement.

1.19    "Settlement Amount" means the sum of One Million Sixteen Thousand Thirty-Six Dollars and 50/100 ($1,016,036.50).

1.20    "Supplemental Injunction" shall mean an injunction, to be included in the Plan, with terms reasonably acceptable to Insurer that enjoins any actions or Claims against the Policies and/or Lexington.

1.21    "Third-Party Beneficiaries" means any Person including a municipality, government entity, manufacturer, seller, reseller, supplier, or distributor of any vehicles utilized by the Debtors that may not be specifically included or qualify as a Named Insured or Additional Insured under one or more of the Policies but to whom the Debtors are otherwise obligated to indemnify under the terms of certain contracts or agreements entered into by and between the Debtors and these Persons.

1.22    "Tort Claim" means all Claims (including any Unknown Tort Claim), whether asserted or unasserted, held by any Person against the Debtors, Lexington, the Lexington Parties, or any other Person who may claim to be an insured, Named Insured, Additional Insured, or otherwise claim to be entitled to coverage under any of the Policies, or Insurance Program for bodily or personal injury, tort claim, or property damage related to, or arising out of, or is connected to the use, placement, operation, transportation, renting, leasing, and/or recovery of the Debtors' micro-mobility vehicles or services and/or arising out of the operation of the Debtors' businesses.

1.23    "Tort Claimant" means any Person holding or potentially holding a Tort Claim and also includes any Person that may possess or assert any indirect Tort Claims by virtue of possessing any rights or entitlement of contribution, indemnification, or subrogation against the Debtors, Lexington, Lexington's Parties or any other Person or entity who may be an insured, Named Insured, Additional Insureds, a Third-Party Beneficiary, or a co-defendant in any underlying litigation.

1.24    "Tort Claim Settlement Fund" means all assets and other corpus of the Tort Claim Trust inclusive of the Settlement Payment established exclusively for distribution to allowed Tort Claims after payment of all other amounts required by this Agreement and the Plan including, but

not limited to: (a) payments to holders of allowed Tort Claims; (b) all required statutory fees; and (c) all costs and expenses of administration of the Tort Claim Trust.

1.25    "Tort Claims ADR Procedures" means the alternative dispute resolution procedures for determining and liquidating Tort Claims that is contained in Schedule "3" to the *Settlement, Release and Policy Buyback Agreement* between the Debtors, the underwriting members of Lloyd's Syndicate 1969 and 1971, and Bird Scooter Acquisition Corp., that shall be approved by the Plan Confirmation Order.

1.26    "Tort Claims Bar Date" means the date set by the Bankruptcy Court as the deadline for Tort Claimants to file Tort Claims.

1.27    "Tort Claim Defenses" means any legal, equitable, or contractual defense that any of the Debtors, insureds, Named Insureds, Additional Insureds, Third Party Beneficiaries, or Lexington have or may have under applicable non-bankruptcy law to the validity or amount of, or liability for, any Tort Claim, including any applicable statutes of limitation or repose.

1.28    "Tort Claim Trust" means the trust to be established pursuant to this Agreement and the Plan.

1.29    "Tort Claim Trust Agreement" means the form of trust agreement that is attached hereto as Schedule "4" to the *Settlement, Release and Policy Buyback Agreement* between the Debtors, the underwriting members of Lloyd's Syndicate 1969 and 1971, and Bird Scooter Acquisition Corp., that shall be approved by the Plan Confirmation Order. In the event of any conflict between the terms of the Plan and the terms of the Tort Claim Trust Agreement, the terms of the Plan shall govern.

1.30    "Lexington" means Lexington Insurance Company.

1.31    "Lexington Party(ies)" means Lexington an: (a) each of its past, present and future parents, subsidiaries, affiliates, and divisions; (b) each of its respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, joint ventures, and acquired companies; (c) each of its respective past, present and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and managing agents, claims handling administrators, affiliates, insurers, reinsurers, and associated third-parties; and (d) each of its respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

1.32    "Policies" means the Policy and any other policies issued by Lexington or any of the Lexington Parties: (a) under which any or all of the Debtors are an insured, named insured, or Additional Insured; or (b) under which Debtors, Additional Insureds, and/or any Third-Party Beneficiaries may contend they are entitled to coverage or benefits, including without limitation defense and/or indemnity.

1.33    "Unknown Tort Claim" means any Tort Claim that is neither filed nor deemed filed on or by the Tort Claims Bar Date and is held by a Person who: (a) asserts was incurred between the Tort Claims Bar Date and the Plan Effective Date; (b) has a Tort Claim that was barred by the

6

statute of limitations as of the Tort Claims Bar Date but is no longer barred by the applicable statute of limitations for any reason, including the enactment of legislation that revives previously time-barred Tort Claims; or (c) as otherwise defined by subsequent order of the Bankruptcy Court.

## ARTICLE 2

## THE SETTLEMENT PAYMENT

2.1     Subject to the terms and conditions of this Agreement: Lexington shall pay the Settlement Amount, as provided for herein.

2.2     The Settlement Amount shall be paid to the Debtors or their designee within five (5) business days of notice to Lexington that the Plan Confirmation Order has become a Final Order. Payment shall be made in accordance with written instructions provided by the Debtors to Lexington.

2.3     Debtors shall hold the Settlement Payment in the trust account of their counsel for the benefit of holders of Tort Claims until such time as the Tort Claim Trust is established and shall not commingle the Settlement Payment with any other assets of the Estates.

2.4     The Settlement Amount is the maximum amount that Lexington shall be obligated to pay under the Policies for any reason whatsoever, including but not limited to on account of any and all Claims under, arising out of, relating to, or in connection with the Policies and/or Insurance Program (including all Channeled Claims). The Parties further agree that subject to the entry of the Plan Confirmation Order approving this Agreement: (a) under no circumstances will Lexington or the Lexington Parties ever be obligated to make any additional payments to or on behalf of the Debtors, their Estates, the Buyer, or any other Person in connection with any of the Policies with respect to any Claims; (b) all limits of liability of the Policies, including all per occurrence and aggregate limits, are and shall be deemed to be fully and properly exhausted and the Parties further agree that the Settlement Amounts set forth in Section 2.1 include, respectively, the full purchase prices of the Policies and consideration for the releases and other protections afforded by this Agreement, respectively; and (c) all obligations of Lexington and the Lexington Parties under the Policies and Insurance Program are and shall be deemed to be extinguished.

2.5     Subject to entry of the Approval Order and the Approval Order becoming a Final Order, Debtors represent and warrant that the Settlement Payment is the maximum amount that Lexington and the Lexington Parties shall be obligated to pay with respect to all Claims and Tort Claims and Debtors have not at any time on or after the Petition Date, entered into, and shall not henceforth enter into any settlements of any Claims pursuant to which Lexington may be obligated to pay any amounts under the  Policies; *provided*, *however*, that nothing in this Agreement shall bar or prohibit Debtors from making distributions to the holders of Channeled Claims under and pursuant to the Plan.

2.6     The Parties agree and represent that the consideration to be provided by each Party pursuant to this Agreement (including the Settlement Amount) constitute fair and reasonable exchanges for the consideration granted to each Party in this Agreement (including the Releases and Injunctions provided herein).

12914877-6

2.7     Effective upon the delivery of the Settlement Amount, the Debtors agree and confirm that (a) any and all of Debtors' outstanding tenders to Lexington for defense and/or indemnity of any Claims shall be deemed withdrawn; (b) Debtors shall not tender to Lexington any Claims; (c) Debtors will not request that Lexington fund any judgments or settlements of any Claims; and (d) Lexington shall have no further obligation to pay, handle, object to, or otherwise respond to any Claims.

2.8     Nothing in this Agreement precludes the Parties from internally allocating payments or receipt of payments made under this Agreement in such manner as each Party sees fit. Any such allocation by any of the Parties shall not be binding on the other Parties.

## ARTICLE 3

## THE BANKRUPTCY COURT APPROVAL OF THE AGREEMENT AND PLAN

3.1     This Agreement and the transactions contemplated hereby are contingent on the filing of the Plan that incorporates and is consistent, in all material respect, with this Agreement. In the event of a conflict between the Plan and this Agreement, this Agreement shall control and shall be deemed incorporated in the Plan to the extent necessary to effect such a result.

3.2     The Debtors shall diligently prosecute confirmation of the Plan which shall include the following features:

3.2.1     The Plan and Plan Confirmation Order shall include, the Channeling Injunction pursuant to § 105(a) of the Bankruptcy Code barring and permanently enjoining all Persons who have held or asserted, or may in the future hold or assert, Channeled Claims from taking any action, directly or indirectly, for purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim and channeling such Channeled Claims to the Tort Claim Trust which shall be the sole and exclusive source of payment for Channeled Claims.

3.2.2     The Plan and Plan Confirmation Order shall also include the requirement that the Bankruptcy Court issue the Supplemental Injunction pursuant to 11 U.S.C. §§ 105(a) and 363 of the Bankruptcy Code.

3.2.3     The Plan and Plan Confirmation Order shall: (a) identify Lexington and the Lexington Parties as parties protected by the Channeling Injunction and the Supplemental Injunction; (b) contain a list of all other Persons protected by the Channeling Injunction and Supplemental Injunction; and (c) provide for the Releases and Sale Free and Clear as set forth in Article 4 herein.

3.2.4     The Parties intend to comply with the Medicare Secondary Payer Act ("MSPA") and agree that the Plan and Plan Confirmation Order, as applicable, shall provide that before making any distribution of Trust Assets to any Beneficiary of the Tort Claims Trust, the trustee of the Tort Claims Trust (the "Trustee") shall (i) obtain written certification from the Tort Claimant to receive such a distribution or their counsel that: (a) he or she has complied with reporting, and if necessary established any set-asides, required by applicable federal, state and local laws and regulations regarding settlements with minors and Medicare/Medicaid/SSA with respect to such Tort Claimant; (b) the Tort Claimant acknowledges that Medicare's interests in

reimbursement for any incurred medical expenses that have been paid by Medicare have either already been satisfied and Medicare has acknowledged such satisfaction or will be satisfied from the distribution of Trust Assets to the Tort Claimant; (c) satisfaction of Medicare's interests from the distribution of Trust Assets to the Tort Claimant shall be the sole and exclusive responsibility of each individual Tort Claimant and each individual Tort Claimant agrees to provide proof of such satisfaction to the Trustee upon request; and (d) each Tort Claimant agrees that the duties of each Tort Claimant stated in this paragraph are non-delegable and failure to perform such duties shall provide Lexington with a right to recover any monies paid caused by the failure to satisfy Medicare's interests including any additional expenses incurred and attorney fees; and (ii) provide a copy of such certification to the Debtors or Plan Administrator, as applicable, and the Settling Insurers. The Trustee shall be required to submit reports, if any, that are required under the MSPA or any applicable regulations regarding the liquidation and/or payment of any Tort Claim.

       3.2.4.1    The Tort Claims Trust shall defend, indemnify, and hold Lexington and the Lexington Parties harmless from any Medicare claims and/or any other claims as referenced in paragraph 3.2.4 above.

       3.3    The form and manner of any future notice of the hearing to confirm the Plan are subject to advance approval by Lexington, which approval shall not be unreasonably withheld. Prior to entry of the Plan Confirmation Order, the Debtors shall continue to oppose any further motions to lift stay pursuant to 11 U.S.C. §362 of the Bankruptcy Code as to any Tort Claim.

       3.4    If the Plan Confirmation Order (or any other order of the Bankruptcy Court relating to this Agreement) shall be appealed by any Person (or a petition for certiorari or motion for rehearing or reargument shall be filed with respect thereto), Debtors shall take all reasonable steps to defend against such appeal, petition or motion: *provided however*, that nothing herein shall preclude the Parties, at the election of Lexington, from consummating the Agreement and the transactions contemplated herein if the Approval Orders shall have been entered and have not been stayed and Lexington, in its sole discretion, waive in writing the requirement that the Approval Order be a Final Order.

       3.5    The Parties shall not take any appeal from, or seek to reopen, reargue or obtain reconsideration of, or otherwise contest or challenge in any way, directly or indirectly, the Plan Confirmation Order (or any other order of the Bankruptcy Court relating to this Agreement), except to the extent that any such order shall be inconsistent with the terms hereof.

       3.6    The Parties shall cooperate in seeking and obtaining Bankruptcy Court approval of the Agreement and the Plan. Such cooperation shall include, without limitation, consulting with each other concerning the status of the Bankruptcy Cases including the status of the Debtors' Joint Plan of Liquidation, and Debtors providing Lexington with drafts of requested motions, notices, certificates of service, proposed orders and any such other pleadings and documents relating to this Agreement.

       3.7    Any amendments to the Plan, in so far as they relate to this Agreement, shall be in all respects consistent with this Agreement and shall, in all material respects be acceptable to Lexington, whose acceptance shall not be unreasonably withheld. Any amendments to the Plan in so far as they relate to this Agreement shall not deprive the Lexington Parties of any right or benefit

under this Agreement or otherwise adversely affect the Interests of Lexington under this Agreement.

3.8    Provided none is in default of its obligations under this Agreement, none of the Parties shall file any motion, adversary proceeding, response, objection, or other pleading or document in the Bankruptcy Cases requesting the entry of any order or granting any other relief which could conflict with, supersede, abrogate, nullify, modify, or restrict the terms of this Agreement and/or the rights of any Parties hereunder, or in any way prevent or interfere with the consummation or performance of the Agreement and the transactions contemplated herein.

3.9    In the event that the Bankruptcy Cases are dismissed or converted to a case under Chapter 7, the Parties agree that all terms, conditions, promises and obligations set forth in this Agreement shall survive and shall be and shall remain binding on the Parties and any successors or assigns of the Parties including the Debtors and Lexington, and the Plan Confirmation Order shall so provide.

## ARTICLE 4

## RELEASES AND SALE FREE AND CLEAR

4.1    Subject to the provisions of Section 6.2 of this Agreement and effective upon the receipt of the Settlement Payment by the Debtors or their designee:

(a)    without any further action of the Parties, Debtors on behalf of themselves, the Estates hereby fully, finally, and completely remise, release, acquit and forever discharge Lexington, the Lexington Parties, all Named Insureds, Additional Insureds, any other insureds, and Third Party Beneficiaries under the Policies, from any and all past, present and future Claims, including without limitation any Claims that directly or indirectly, arise out of, relate to, or are in connection with: (1) the Tort Claims, 2) the Channeled Claims, (3) the Policies; and/or (4) the Debtors' Bankruptcy Cases (the "Releases"). The Releases of Lexington, the Lexington Parties, the Named Insureds, Additional Insureds, any other insureds, and Third Party Beneficiaries under the Policies shall include, but shall not be limited to, any and all Claims for coverage, indemnification, contribution, subrogation or otherwise under the  Policies arising out of or relating to or in any way involving the Tort Claims whether for wrongful death, personal injury, emotional distress, property damage, personal and advertising injury, economic loss, environmental damage, remediation or exposure, or any other form of loss, expense, or other benefit covered or potentially covered under the Policies or Insurance Program;

(b)    the Debtors on behalf of themselves and the Estates, hereby withdraw any and all requests, demands, or tenders for defense, indemnity, or otherwise seeking coverage previously submitted to Lexington under the Policies, and further surrender, relinquish, and release any further right to tender or present any Claims whatsoever to Lexington or the Lexington Parties under the Policies or Insurance Program. Furthermore, by virtue of the foregoing Releases and the Approval Order, Lexington shall have no duty to defend or indemnify Debtors, on behalf of themselves and the Estates, or any other insured and/or Additional Insured under the Policies with respect to any past,

DocuSign Envelope ID: B4FDBF23-9774-4C37-9A55-A75F86219820

present, or future Claim, nor shall Lexington have any other duty or obligation whatsoever under the Policies to any Person, including but not limited to any Claimant, with respect to any and all Claims; and

(c)     the Parties expressly waive any and all rights they may have under any contract, statute, code, regulation, ordinance, or at common law, which may limit or restrict the effect of a general release as to Claims released herein and in the Plan and the Approval Orders.

4.2     The Releases of Lexington and the Lexington Parties set forth in Section 4.1 above are not intended to, and shall not, extend to or otherwise release or discharge any rights, privileges, benefits, duties, or obligations of either Party arising under the Agreement, the Plan or the Plan Confirmation Order.

4.3     Effective upon the receipt of the Settlement Amount by the Debtors or their designee, Lexington hereby buys back the Policies and the Debtors' Interests in those policies, free and clear of all liens, Claims and Interests of all Persons, including but not limited to the Interests of the Debtors, any other Person claiming coverage by, through, or on behalf of any of the Debtors, any other insurer, and any Tort Claimant. This sale is pursuant to §§363(b), (f), and (m) of the Bankruptcy Code. The Parties acknowledge and agree, and the Plan Confirmation Order shall find and conclude, that: (a) Lexington is a good faith purchaser of the Policies and Interests within the meaning of §363(m) of the Bankruptcy Code; (b) the consideration exchanged constitutes a fair and reasonable settlement of the Parties' Coverage Disputes and of their respective rights and obligations relating to the foregoing Policies and Interests and constitutes reasonably equivalent value; (c) the Releases in this Agreement and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws; (d) upon the Plan Conformation Order becoming a Final Order, the Policies and Interests shall be terminated and of no further force and effect and treated as if they never existed; (e) payment of the Settlement Amount constitutes Lexington's full and complete performance of any and all obligations under the Policies and with respect to the foregoing Interests, including but not limited to any performance owed to the Debtors and/or Claimants with respect to the Policies; (f) all Interests the Debtors and may have had, may presently have, or in the future may have in the Policies are released pursuant to the terms of this Agreement; (g) the Debtors meet the requirements to complete the sale of the Policies and Interests free and clear of any liens or other Interests; and (h) the Debtors accept the payment of the Settlement Amounts set forth in Sections 4.1 in accordance with this Agreement in full and complete satisfaction of all Lexington's and the Lexington Parties' past, present, and future obligations, including any obligations to any of the Debtors under the Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such Claims arise from, relate to, or are in connection with the Channeled Claims, the Bankruptcy Cases, or otherwise under the Policies.

4.4     Debtors represent and warrant that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any Claims that are the subject of the Releases set forth in Section 4.1 above.

4.5     The Parties acknowledge that there may be changes in the law with respect to interpretation of coverage under the Policies or otherwise and/or that the Parties may hereafter discover facts different from, or in addition to, those which they now believe to be true with respect to any and all of the Claims and entities herein released. Nevertheless, the Parties hereby agree that the Releases set forth above, and the releases provided for in the Plan and approved by the Approval Orders, shall be and remain effective in all respects, notwithstanding any changes in the law and/or the discovery of such additional or different facts.

4.6     The Releases set forth in Section 4.1 above shall not apply to or have any effect on Lexington's rights to any claim for reinsurance in connection with the Policies, nor shall Lexington's assertion of any claim for reinsurance affect its obligations under this Agreement.

4.7     Subject to the other provisions of this Agreement, to the extent that the Releases set forth in Section 4.1 above run in favor of any Persons or entities who are not signatories hereto, this Agreement is declared to be made for their respective benefits.

## ARTICLE 5

## REPRESENTATIONS

5.1     Each of the Parties separately represents and warrants as follows:

(a)     Subject to the entry of the Approval Order, each has the requisite power and authority to enter into this Agreement and to perform the obligations imposed on it by this Agreement subject only to approval of the Bankruptcy Court;

(b)     Subject to the entry of the Approval Order, the execution and delivery of and the performance of the obligations contemplated by this Agreement have been approved by duly authorized representatives of the Party and by all other necessary actions of the Party;

(c)     It has expressly authorized its undersigned representative to execute this Agreement on the Party's behalf as its duly authorized agent;

(d)     It has not and will not sell, assign, transfer, convey, or otherwise dispose of any rights or interests under the Policies and any Claims that it is releasing in this Agreement.  Moreover, the Debtors represent, warrant, and agree that they will not in any way assist any Person or entity in the establishment of any Claim against Lexington that arises out of, results from, or in any way relates to Lexington's investigation, handling, defense, or settlement of Claims released under this Agreement, except as ordered by a court of competent jurisdiction. In the event that a subpoena or discovery requests are served upon the Debtors, the Debtors shall give prompt notice to Lexington and adequate opportunity to respond to any such subpoena or discovery request.

(e)     This Agreement has been thoroughly negotiated and analyzed by its counsel and has been executed and delivered in good faith, pursuant to arm's length negotiations, and for reasonable value and valuable consideration.

(f)     Nothing in this Agreement, including any Schedules hereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was, in fact, issued and/or affords coverage in connection with any Claims.

(g)     Each will use commercially reasonable efforts to seek entry of the Approval Orders.

**ARTICLE 6**

**MISCELLANEOUS PROVISIONS**

6.1     <u>Conditions Precedent</u>.  Subject to Section 6.2 below, this Agreement is expressly subject to satisfaction of the following conditions having performed, waived or otherwise excused: (a) that the Plan Confirmation Order becomes a Final Order; (b) Lexington pays the Settlement Amount to the Debtors; and (c) the Release, Channeling Injunction, and Supplemental Injunction are approved by the Bankruptcy Court.

6.2     <u>Termination Rights</u>.  Any party may terminate this Agreement if the Bankruptcy Court does not enter the Approval Order or if the Approval Order does not become a Final Order on or before the 120th day following the Execution Date. In the event that this Agreement is terminated by one or more of the Parties: (a) this Agreement shall be deemed null and void; (b) Lexington shall not be obligated to pay Settlement Amount to the Debtors (or if Lexington already paid the Settlement Amount, the Debtors shall return the payment to Lexington); (c) the Parties shall have all of the claims, defenses, rights and obligations under or with respect to  Policies that they would have had absent this Agreement; and (d) any and all otherwise applicable statutes of limitations or repose, or other time-related limitations, shall be deemed to have been tolled for the period from the Execution Date through the date that the Agreement is terminated.

6.3     <u>Amendments</u>. Neither this Agreement nor any term set forth herein may be changed, waived, discharged, or terminated except by a writing signed by each of the Parties (or their successors or assigns).

6.4     <u>No Precedential Value</u>. This Agreement and the Tort Claims ADR Procedures shall be without precedential value, and it is not intended to be, nor shall it be construed as, an interpretation of any insurance policies. This Agreement shall not be used as evidence, or in any other manner, in any court or other dispute resolution proceeding to create, prove, or interpret the obligations of Lexington under the Policies, *provided*, *however*, that, subject to Section 6.17 of this Agreement below, this Agreement may be used as evidence in any defense of or by Lexington of any obligations arising under the Policies.  The Parties acknowledge that this is a settlement of a disputed claim.

6.5     <u>Agreement Voluntarily Entered Into by Each of The Parties.</u> This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them. The Parties represent and warrant to each other that they have read and fully understand each of the provisions of this Agreement and have relied on the advice and representations of competent legal counsel of their own choosing.

13

12914877-6

6.6     Interpretation. This Agreement has been negotiated at arm's length and between and among Persons sophisticated and knowledgeable in the matters dealt with in this Agreement. In addition, this Agreement was drafted by experienced and knowledgeable legal counsel for each of the Parties. Accordingly, no Party shall be presumptively entitled to have any provisions of the Agreement construed against the other Parties in accordance with any rule of law, legal decision, or doctrine.  To the extent that any dispute arises as to the meaning of this Agreement, in whole or in part, it shall be construed in accordance with the Parties' intent to preclude future liability and exposure for the Parties to claims, rights, and causes of action, except to the extent covered by the Tort Claims Settlement Fund.

6.7     No Admission of Liability. The Parties agree that this Agreement is the result of a compromise and that the execution and delivery of this Agreement by any of the Parties shall not constitute or be construed as an admission of any liability, a course of performance, or wrongdoing on the part of any of them. The Parties acknowledge that this Agreement is not, and cannot be construed as, an admission by any of the Parties that any claim, cause of action, demand, defense, indemnity, or other coverage obligation exists under the Policies, or that Lexington has any other obligation of any nature whatsoever with respect to the Policies. By entering into this Agreement, the Parties have not waived nor will they be deemed to have waived any right, obligation, privilege, defense or position they may have asserted or might assert in connection with any Claims, matter, Person, or insurance policy outside the scope of this Agreement. Except as otherwise expressly provided herein as set forth in Section 4.7 above, no Person other than the Parties hereto shall have any legally enforceable rights or benefits under this Agreement.

6.8     No Fraudulent Transfer.  This Agreement, having been negotiated at arm's length in settlement of bona fide disputes and supported by adequate consideration, is not a preference under 11 U.S.C. §547, a fraudulent conveyance under 11 U.S.C. §§546 or 548, or avoidable under any other applicable bankruptcy or non-bankruptcy law. The Parties agree that the rights and interests being transferred hereunder are being transferred in exchange for reasonably equivalent value and that upon the Execution Date, the Parties shall be deemed estopped and barred from challenging the reasonably equivalent value of the amount paid pursuant to the Agreement. The Parties agree to assert in any proceeding challenging this Agreement or seeking to avoid any part of this Agreement that this Agreement was for equivalent value as set forth above, was reached in good faith and was negotiated with the advice of counsel.

6.9     Attorneys' Fees, Costs, and Expenses. Each of the Parties shall bear its own costs, attorneys' fees, and expenses in connection with the negotiations for and preparation of this Agreement; provided, however, that the Debtors' professionals may seek an award of the fees and expenses incurred by them in obtaining Bankruptcy Court approval of the Agreement which, if awarded, shall be paid from the first proceeds of the Settlement Amount.

6.10     Entire and Integrated Agreement. This Agreement, along with the Schedules and attachments hereto, and the Approval Order, is intended by the Parties as a final expression of their agreement and is intended to be a complete and exclusive statement of the agreement and understanding of the Parties with respect to the subject matters contained herein. This Agreement supersedes any and all prior promises, representations, warranties, agreements, understandings, and undertakings between or among the Parties with respect to such subject matters, and there are

12914877-6

no promises, representations, warranties, agreements, understandings, or undertakings with respect to such subject matters other than those set forth or referred to herein.

6.11    <u>No Third-Party Beneficiaries</u>. Except at provided in Sections 4.1 and 4.7 above, nothing in this Agreement is intended or shall be construed to give any Person or entity not otherwise referred to or named herein, other than the Parties and their respective successors and permitted assigns, any legal or equitable right, remedy, or claim under or in respect to this Agreement or any provisions contained herein; this Agreement and any conditions and provisions hereof being and intended to be for the sole and exclusive benefit of the Parties, and for the benefit of no other Person or entity. Notwithstanding the foregoing, neither this Agreement nor the rights and obligations set forth herein shall be assigned without the prior written consent of the other Parties, except that this Section shall not prohibit any assignment by Lexington (a) made by merger, consolidation, or operation of law or (b) to a Person or entity who succeeds to all or substantially all of its assets.

6.12    <u>Agreement Regarding Documents and Electronically Stored Data.</u> Prior to the Petition Date, the Debtors retained various legal counsel to defend Debtors and Additional Insureds in connection with Claims that had been asserted, or which might be asserted, including but not limited to in the Tort Claims. In connection with these representations, counsel retained by the Debtors took possession of and/or copied certain paper documents and records and may have obtained items of electronically stored information and/or other electronic media (collectively the "<u>Tort Claim Records</u>"). As a further consideration for this Agreement, Debtors agree that effective on the Approval Date and without the necessity of any further action by Lexington, the Debtors, shall request its former counsel to provide Lexington with copies of the Tort Claim Records, whether paper documents or electronically stored information.

6.13    <u>Severability</u>. If any provisions of this Agreement or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties. Notwithstanding the foregoing, all of the conditions precedent in this Agreement will remain in full force and effect following any determination that any other provisions of this Agreement are invalid or unenforceable.

6.14    <u>Notice.</u> Any notice or request required or desired to be given pursuant to this Agreement shall be sufficient if made in writing and sent by first class mail, postage prepaid, facsimile, or e-mail to the Parties at the addresses set forth below or to such other Persons as any of them may designate in writing from time to time:

(a)    As to Debtors:

Christopher Rankin
Chief Restructuring Officer
61 The Kingsway
Toronto, Ontario
M8X 2T3 Canada
Email: chris@rankinpartners.com

15

12914877-6

With a copy to:

Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Tel:    (305) 755-9500
Attn:    Paul Steven Singerman, Esq.
            Jordi Guso, Esq.
Email: singerman@bergersingerman.com
            jguso@bergersingerman.com

(b)    As to Lexington:

Craig Freedman
AIG, Vice President
Excess Casualty, AIG Property Casualty
30 Hudson Street, Jersey City, New Jersey 07302
Tel:    (646) 306-2137
Email: craig.freedman@aig.com

With a copy to:

Herold & Sager
550 Second Street
Suite 200
Encinitas, California 92024
Attn:    Linda Sager, Esq.
            Hilary Kuchinsky, Esq.
Tel:    (760) 487-1047
Fax:    (760) 487-1064
Email: lsager@heroldsagerlaw.com
            hkuchinsky@heroldsagerlaw.com

6.15    <u>Headings</u>. The section titles, captions, and headings contained in this Agreement are inserted as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the effect of any of its provisions.

6.16    <u>Recitals</u>. The recitals set forth at the beginning of this Agreement shall not be admissible to prove the truth of the matters asserted in any action or proceeding involving any of the Parties (other than an action or proceeding brought to enforce the terms of this Agreement), nor do any of the Parties intend such recitals to constitute admissions of fact by any of them.

6.17    <u>Agreement Inadmissible</u>. Any evidence of the terms or negotiations, or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes establishing any rights, duties, or obligations of the Parties, except in (a) an action or proceeding to enforce the terms or effect of this Agreement, (b) proceedings before the Bankruptcy Court to secure the Approval Order, or (c) any possible action or proceeding between Lexington and any

16

DocuSign Envelope ID: B4FDBF23-9774-4C27-9A55-A75F86219020

of its reinsurers bearing responsibility for any of obligations of Lexington under this Agreement. Except as set forth herein, this Agreement shall not be used as evidence or in any other manner in any court or dispute resolution proceeding to create, prove, or interpret the Parties' rights or obligations to each other or to any other Person.

6.18    <u>Additional Necessary Documents</u>. The Parties, and each of them, agree to execute such additional documents as may be reasonably required in order to carry out the purpose and intent of this Agreement, or to evidence anything contained herein.

6.19    <u>Execution in Counterparts</u>. This Agreement may be signed in multiple counterparts and the separate signature pages executed by Parties may be combined to create a document binding on all of the Parties and together shall constitute one and the same instrument.  Signatures may be exchanged by electronic means and shall have the same effect as an original.

6.20    <u>Governing Law</u>. This Agreement, and any proceeding that may be based upon, arise out of or relate or be incidental to this Agreement, the negotiation, execution, performance or consummation of the foregoing or the inducement of any Party to enter into the foregoing, whether now existing or hereafter arising (each, a "<u>Transaction Dispute</u>"), will be exclusively governed by and construed and enforced in accordance with the internal laws of the State of Florida, without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of Florida to be applied, except to the extent that such Laws are superseded by the Bankruptcy Code.

6.21    <u>Jurisdiction</u>.  The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any Transaction Dispute, and any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court.

6.22    <u>Rules of Construction</u>. As used in this Agreement, the singular and masculine gender shall mean also mean the plural and feminine or neuter, as may be appropriate, "it" shall include "he" and "she"; and "each" and "all" includes "each" and "every." Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively; (b) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (c) the words "Include," "includes" or "Including" shall be deemed to be followed by the words "without limitation," and (d) the word "or" shall be disjunctive but not exclusive, References to this Agreement and other documents shall be deemed to include all subsequent amendments and other modification thereto.

[Signatures appear on the following page.]

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**Bird Global, Inc.; Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession**

DocuSigned by:

*Christopher Rankin*

AA916D971A66478...

By:     Christopher Rankin
Title:   Chief Restructuring Officer
Date:   May __, 2024     09-May-2024 | 8:51:29 AM PDT

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**AIG Claims, Inc., on behalf of Lexington Insurance Company**

By:     _____
Title:   _____
Date:   _____

18

12914877-6

DocuSign Envelope ID: B4FDBE23-9774-4C27-9AEE-A7EE85219920

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**Bird Global, Inc.; Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession**

DocuSigned by:

*Christopher Rankin*

AA910D971A60470...

By:      Christopher Rankin
Title:   Chief Restructuring Officer
Date:   May __, 2024      09-May-2024 | 8:51:29 AM PDT

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

Excess Casualty,  **AIG Claims, Inc., on behalf of Lexington Insurance Company**

By:      *Craig Freedman*
Title:   Vice President
Date:    5/9/24

18

12914877-6

**EXHIBIT 4**

**MUNICIPALITY SETTLEMENT TERM SHEET**

Exhibit 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

BIRD GLOBAL, INC., *et al.*,

               Debtors.

_____/

Case No.: 23-20514-CLC

Chapter 11
(Jointly Administered)

**MUNICIPALITIES AND DEBTORS' SETTLEMENT TERM SHEET**

      This term sheet is entered into effective as of May 31, 2024 (the "Effective Date") and sets forth the terms of the settlement by and between the Debtors, Bird Global, Inc., Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc. (collectively, "Bird" or the "Debtors"), and the Cities of San Diego, Los Angeles, San Jose,  and Santa Monica, on their own behalf ("CA Municipalities") and as ad-hoc representatives of all municipalities in which Bird operated prior to March 22, 2024 (collectively, the "Municipalities", and with the Debtors, the "Parties").

      WHEREAS, in May, 2024, the Parties participated in a Judicial Settlement Conference before Judge Paul G. Hyman, Jr. over the course of four separate settlement conferences, with representative Tort Claimants, the Purchaser, and various insurance carriers ("Settlement Conference") related to the provisions of Bird's Joint Chapter 11 Plan of Liquidation, as may be amended from time to time ("Plan"),[1] establishing the Tort Claims Trust and the funding of the Tort Claims Trust;

      WHEREAS, at the Settlement Conference, the CA Municipalities, on their own behalf and prospectively on behalf of all Municipalities, agreed to, among other things, raise and, subject to confirmation of the Plan, contribute $3,000,000.00 to the Tort Claims Trust in accordance with the Plan ("Settlement");

      WHEREAS, the Debtors have further modified the First Amended Plan to, among other things, incorporate this Settlement Term Sheet and other agreements that were reached at the Settlement Conference and have provided the revised Plan to counsel for the CA Municipalities.

      In consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

      1.      The CA Municipalities, who have already agreed to contribute approximately $1,000,000.00 to the Trust, will work with all of the other Municipalities to obtain contributions

---

[1] Capitalized terms used in this Term Sheet and not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' First Amended Joint Chapter 11 Plan of Liquidation* [ECF No. 643] (the "First Amended Plan").

1

from such Municipalities to increase the monies available from all Municipalities from the current $1,000,000.00 to a total contribution from the Municipalities to the Tort Claims Trust of $3,000,000.00 ("Municipalities Trust Contribution").

2.      No later than two (2) business days after the Plan Confirmation Order becomes a Final Order, the CA Municipalities shall deliver the Municipalities Trust Contribution to the Debtors, which the Debtors shall hold in trust and promptly contribute to the Tort Claims Trust concurrently with the contribution of the remaining Insurance Settlement Proceeds to the Tort Claims Trust, in accordance with the Plan.

3.      If the CA Municipalities do not timely deliver the Municipalities Trust Contribution to the Debtors, the provisions of the Plan governing the establishment of the Tort Claims Trust, the Channeling Injunction and Bar Order shall be of no force and effect, and the Parties shall be restored to their original position as if this Settlement Term Sheet had not been executed.

4.      General Provisions:

(a) Cooperation: Execution of Documents.  The Parties agree to execute all documents reasonably required to effectuate this Settlement Term Sheet.

(b) Modification:  This Settlement Term Sheet may not be amended, modified, or rescinded except in a writing signed by all Parties executing this Settlement Term Sheet.

(c) Authorization to Sign: No Assignment.  The undersigned warrant and represent that they have the requisite legal authority to sign and execute this Settlement Term Sheet and acknowledge that by signing this Settlement Term Sheet, and subject to the entry of the Confirmation Order, such Parties are bound by its terms. Each Party warrants and represents that it has not assigned any claims or interests described herein, and covenants that it shall not assign any of the aforementioned claims or interests.

(d) Binding Effect:  This Settlement Term Sheet shall be binding upon, and inure to the benefit of, each of the Parties, their successor and assigns, executors, heirs and personal representatives.

*[Signatures appear on the following page]*

2

**IN WITNESS WHEREOF** and in agreement herewith, the undersigned have executed and delivered this Settlement Term Sheet.


AGREED TO AND ACCEPTED BY:

| | |
|---|---|
| **BIRD GLOBAL, INC., BIRD RIDES, INC., BIRD US HOLDCO, LLC, BIRD US OPCO, LLC, AND SKINNY LABS, INC.,** | **CITIES OF SAN DIEGO, LOS ANGELES, SAN JOSE, AND SANTA MONICA**, on their own behalf and as ad-hoc representatives of all municipalities in which Bird operated prior to March 22, 2024, |

By: _/s/ Christopher Rankin_
Name: Christopher Rankin
Title: Chief Restructuring Officer

By: _/s/ Steven M. Berman_
Steven M. Berman, Esq.
Fla. Bar No. 856290
SHUMAKER, LOOP & KENDRICK, LLP
101 E. Kennedy Blvd., Ste. 2800
Tampa, FL 33602
T: (813) 229-7600 | F: (813) 229-1660
Primary email: sberman@shumaker.com

3

**EXHIBIT 5**

**LIQUIDATING TRUST AGREEMENT**

Exhibit 5

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Agreement") dated as of [●], 2024 by and among Bird Global, Inc., Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession (the "Debtors")  and [Joseph J. Luzinski of Development Specialists, Inc.] (the "Liquidating Trustee") for the benefit of the Liquidating Trust Beneficiaries under the terms of the *Debtors' First Amended Joint Chapter 11 Plan of Liquidation* [Docket No. 643] (as the same has been or may be amended, modified, or supplemented from time to time, the "Plan") filed in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

## WITNESSETH

**WHEREAS**, on April 29, 2024, the Debtors filed the Plan;

**WHEREAS**, on June [●], 2024, the Bankruptcy Court entered an order confirming the Plan [Docket No. [●] (the "Confirmation Order");

**WHEREAS**, the Liquidating Trust is created pursuant to, and to effectuate, the Plan;

**WHEREAS**, the Liquidating Trust is created on behalf of, and for the sole benefit of, the Liquidating Trust Beneficiaries pursuant to the terms of this Agreement and the Plan;

**WHEREAS**, this Agreement is executed to facilitate the implementation of the Plan, which provides for the establishment of the Liquidating Trust for the purpose of collecting, distributing and liquidating the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries in accordance with the terms of this Agreement and the Plan; and

**WHEREAS**, pursuant to the Plan, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust as a transfer of the Liquidating

Trust Assets by the Debtors to the Liquidating Trust Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidating Trust Assets by the Liquidating Trust Beneficiaries to the Liquidating Trust in exchange for the beneficial interest herein, and to treat the Liquidating Trust Beneficiaries as the grantors and owners of the Liquidating Trust in accordance with sections 671–679 of the Internal Revenue Code of 1986, as amended, and for the Liquidating Trust to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d);

**WHEREAS**, the Liquidating Trust is intended to be treated as a grantor trust for federal income tax purposes, subject to the Liquidating Trustee's discretion to elect to treat the Liquidating Trust as a Disputed Ownership Fund for federal income tax purposes;

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein, and in the Plan, the Debtors and the Liquidating Trustee agree as follows:

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

1.1.    <u>Definitions</u>.

1.1.1.    "<u>General Unsecured Claims</u>" shall mean the Claims that are classified and treated as Class 5 Claims under the Plan.

1.1.2.    "<u>Holder</u>" shall mean the beneficial holder of any Claim or Interest.

1.1.3.    "<u>Liquidating Trust</u>" shall mean the liquidating trust established pursuant to the terms of this Agreement and the Plan, which is also defined in the Plan as the "Liquidating Trust."

1.1.4.    "<u>Liquidating Trust Assets</u>" shall mean (a) "Liquidating Trust Assets" as defined in the Plan, and (b) any other assets that are transferred to the Liquidating Trust.

1.1.5.    "<u>Settlors</u>" shall mean the Debtors.

-2-

1.1.6. "Trust" shall mean the Liquidating Trust established pursuant to the Plan and the terms of this Agreement.

1.1.7. "Trustee" or "Liquidating Trustee" shall mean (a) initially, Joseph J. Luzinski of Development Specialists, Inc., solely in his capacity as trustee, and (b) any successors or replacement trustee duly appointed under the terms of this Agreement and the Plan, who is defined in the Plan as the "Liquidating Trustee."

1.1.8. "Permitted Investments" shall include: (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States of America as an agency or instrumentality thereof, (c) such other investments as the Bankruptcy Court may approve from time to time, or (d) demand deposits or certificates of deposit at any bank or trust company that has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, *provided*, *however*, that the scope of any Permitted Investments shall be limited to include only those investments that a "liquidating trust", within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

1.1.9. Use of Plan Definitions. All capitalized terms that are used in this Agreement, but not defined herein, shall have the meaning of such term as set forth in the Plan.

1.1.10. Particular Words. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," "hereinafter," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

-3-

## ARTICLE II
## DECLARATION OF TRUST

2.1.    <u>Creation and Name</u>.  The Settlors hereby create the Liquidating Trust, which shall be known as the "Bird Global Liquidating Trust" and is the Liquidating Trust referred to as the "Liquidating Trust" in the Plan.

2.2.    <u>Purpose of Trust</u>.

2.2.1.   The Settlors and the Liquidating Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Liquidating Trust for, among other purposes, the purpose of (i) receiving and holding the Liquidating Trust Assets; (ii) administering, disputing, objecting to, compromising, or otherwise resolving all Disputed Claims; (iii) making Distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement; (iv) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treasury Regulation Section 301.7701-4(d); and (v) all other matters detailed herein, or other matters not expressly set forth herein, as may be reasonably necessary, in the opinion of the Liquidating Trustee, to effectuate the Plan and the terms of this Agreement.

2.2.2.   The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth in the Plan or in the Liquidating Trust Agreement.  Subject to the DOF Election (as defined herein), the Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes within the meaning of sections 671 through 679 of the Tax Code and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as the sole grantors and owners of the Liquidating Trust.  To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the

-4-

foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes). To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

2.2.3. The Liquidating Trust shall be deemed to be substituted as the party-in-lieu of the Settlors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, (ii) any and all tax or regulatory filings, including without limitation any state or federal returns or ERISA-related filings, and legacy accounts of the Settlors at the state or federal level (for the purpose of closing, reporting, or making payments related to the Estates) related thereto, and (iii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Liquidating Trust to file motions or substitutions of parties or counsel in each such matter.

2.3. <u>Transfer of Liquidating Trust Assets</u>.

2.3.1. The Settlors hereby grant, release, assign, convey, transfer and deliver, on behalf of the Liquidating Trust Beneficiaries, all of the Settlors' right, title and interest in the Liquidating Trust Assets, solely to the extent provided in the Plan, to the Liquidating Trust as of the Effective Date in trust for the benefit of the Liquidating Trust Beneficiaries, pursuant to §§ 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code and in accordance with the Plan and Confirmation Order, free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other Persons and Governmental Units to the maximum extent contemplated by, and permissible under, § 1141(c) of the Bankruptcy Code for the uses and purposes as specified in this Agreement and the Plan. The Liquidating Trust Assets can be used

-5-

to, among other things, satisfy the following: (i) all fees payable by the Liquidating Trust pursuant to 28 U.S.C. § 1930 until such time as the Bankruptcy Court enters a final decree closing each of the Chapter 11 Cases; (ii) any expenses incurred and unpaid, or to be incurred by the Liquidating Trustee in the performance of his administrative duties in connection with winding up the Settlors' Estates after the Effective Date (including, without limitation, any taxes imposed on or payable by the Settlors or the Liquidating Trust or in respect of the Liquidating Trust Assets); (iii) other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or this Agreement; and (iv) any other obligations as may be specifically set forth in the Plan or Confirmation Order, or as may otherwise be approved by an order of the Bankruptcy Court. Notwithstanding anything in this Agreement to the contrary, and subject to the Plan, the Liquidating Trustee, may abandon or otherwise not accept any Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value to the Liquidating Trust. Any Liquidating Trust Assets that the Liquidating Trust so abandons or otherwise does not accept shall not vest in the Liquidating Trust.

2.3.2.   Except as otherwise provided by the Plan, the Liquidating Trustee shall automatically, and without need for further notice or approval of the Bankruptcy Court or the Settlors, be designated as the representative of the Estates pursuant to § 1123 of the Bankruptcy Code to enforce, pursue, settle or assign any Retained Causes of Action transferred to the Liquidating Trust after the Effective Date in accordance with the terms of this Agreement, the Plan, and the Confirmation Order. Any proceeds of a Retained Cause of Action shall be distributed pursuant to the terms of the Plan.

2.4.   <u>Securities Law</u>. Under § 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidating Trust to the Liquidating Trust Beneficiaries under the Plan shall be

-6-

exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

2.5. <u>Appointment and Acceptance of Liquidating Trustee</u>. The Liquidating Trustee shall be deemed to be appointed pursuant to § 1123(b)(3)(B) and all other applicable sections of the Bankruptcy Code as of the Effective Date of the Plan. The Liquidating Trustee hereby accepts the Liquidating Trust created by this Agreement and the grant, assignment, transfer, conveyance, and delivery to the Liquidating Trust, on behalf, and for the benefit, of the Liquidating Trust Beneficiaries, by the Settlors of all of their respective right, title, and interest in the Liquidating Trust Assets, upon and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order.

2.6. <u>Funding</u>. The Liquidating Trust shall be funded with the Liquidating Trust Assets and/or litigation funding.

2.7. <u>No Reversion to Settlors</u>. In no event shall any part of the Liquidating Trust Assets be distributed to any of the Settlors after the Effective Date. Rights to any reversionary interests in the Liquidating Trust Assets shall be controlled by the Plan.

## ARTICLE III
## ADMINISTRATION OF THE TRUST

3.1. <u>Rights, Powers, Privileges and Duties of the Trustee</u>. The Liquidating Trustee shall have only the rights, powers, privileges, and duties expressly provided for in this Agreement, the

159230091.1

Plan and the Confirmation Order. Subject to the terms of the Plan and this Agreement, the Liquidating Trustee shall have the power to take the actions granted herein, and any powers reasonably incidental thereto, which the Liquidating Trustee reasonably determines to be necessary or appropriate to fulfill the purpose of the Liquidating Trust, including, but not limited to:

3.1.1.   Receive, manage, invest, dispose, liquidate, supervise, control, exercise authority over, and protect the Liquidating Trust Assets, including through the creation of reserves as provided for under the Plan or this Agreement, and generally oversee and provide management of the affairs of the Liquidating Trust;

3.1.2.   File tax returns or other reports required by governmental entities and pay taxes or other obligations incurred by the Liquidating Trust as permitted by the Plan, the Bankruptcy Code, or order of the Bankruptcy Court and challenge, dispute, negotiate and resolve the assessment of any of the foregoing by any foreign, domestic, federal, state, local or other taxing authority, as necessary for the dissolution of any Settlor;

3.1.3.   Retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Liquidating Trust Assets, including, but not limited to those professionals previously retained by the Committee;

3.1.4.   Calculate and make distributions of Liquidating Trust Assets;

3.1.5.   Investigate, prosecute, compromise, settle and/or assign, in accordance with the specific terms of this Agreement and the Plan, Retained Causes of Action or other legal rights vested in the Liquidating Trust;

-8-

159230091.1

3.1.6.   Object to Claims and address and resolve issues involving objections, reconciliation, and allowance of Claims in accordance with this Agreement and the Plan;

3.1.7.   Undertake all administrative functions necessary to implement the Plan and related to the Chapter 11 Cases after the Effective Date;

3.1.8.   Open bank accounts and any other depository or investment accounts deemed necessary in the Liquidating Trustee's sole discretion;

3.1.9.   Execute any documents and take any actions necessary to bind the Liquidating Trust and/or the Settlors, as may be necessary, as determined in the Liquidating Trustee's sole discretion;

3.1.10. On the Effective Date, the Liquidating Trustee shall: (a) take possession (or exert dominion and control over) of all books, records, and files (whether in hard copy or electronic form) necessary to the administration of the Liquidating Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with this Agreement and the Plan, that retention of same is no longer necessary or required, at which time the Liquidating Trustee shall arrange for the destruction or disposition of same in accordance with applicable privacy laws or as otherwise ordered by the Bankruptcy Court;

3.1.11. The Liquidating Trustee may, but shall not be required to, invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments, *provided*, *however*, that such investments must be permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.  For the avoidance of doubt, the Liquidating Trustee shall have no duty or

159230091.1

obligation to invest any of the Liquidating Trust Assets, and failure to invest any such assets shall not constitute a breach of duty on behalf of the Liquidating Trust or the Liquidating Trustee;

3.1.12. The Trustee may purchase, using the Liquidating Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any Losses (defined below) it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of fraud or willful misconduct, with respect to the implementation and administration of this Agreement;

3.1.13. Take all other actions consistent with the provisions of the Plan, the Confirmation Order, and this Agreement that the Liquidating Trustee deems reasonably necessary or desirable to administer the Liquidating Trust;

3.1.14. To exercise in a manner not inconsistent with the Plan all power and authority that may be or could have been exercised, commence or continue all proceedings that may be or could have been commenced or continued, and take all actions that may be or could have been taken by any officer, director, or shareholder of any Settlor with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and shareholders, including, without limitation, the dissolution of the Settlors, or as may be necessary to wind down the Settlors' business and affairs as expeditiously as reasonably possible.  Without limiting the foregoing, to the extent not otherwise completed by the Settlors prior to the Effective Date, the Liquidating Trustee shall undertake (and only to the extent the information necessary or required to assist with any of the below is within the control of the Liquidating Trustee) to:

-10-

A.    Assist the Settlors' payroll service provider to ensure that each terminated employee receives such applicable forms for the tax year 2024, including without limitation, an Internal Revenue Service Form W-2 and an Internal Revenue Service Form 1095;

B.    and

C.    Assist representatives and agents of the Settlors in completion of any existing tax, pension or similar audits.

3.2.    Subject to the foregoing and the provisions of the Plan, from and after the Effective Date, the Liquidating Trustee (i) may settle or compromise any Disputed Claim, and (ii) shall succeed to the Settlors' rights with respect to any objections filed by the Settlors that remain pending as of the Effective Date.  From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

3.3.    <u>Bond and Conflict of Interest</u>.

3.3.1.    <u>Bond</u>.  Notwithstanding any state or other applicable law to the contrary, the Liquidating Trustee (including any successor Liquidating Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

3.3.2.    <u>Liquidating Trustee's Conflict of Interest</u>.  The Liquidating Trustee shall disclose any conflicts of interest (actual or potential) that the Liquidating Trustee has with respect to any matter arising during administration of the Liquidating Trust.   In the event that the Liquidating Trustee cannot take any action by reason of an actual or potential conflict of interest, the Liquidating Trustee shall promptly seek relief before the Bankruptcy Court. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

159230091.1

3.4.   <u>Estimation</u>.   The Liquidating Trustee may determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court. The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Settlors or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.   In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.   If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Settlors or the Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.   All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.   Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

3.5.   <u>Retained Causes of Action</u>.   Subject to the Plan, on and after the Effective Date, the Liquidating Trustee may hire counsel, obtain litigation funding, and pursue Retained Causes of Action.   Proceeds recovered from all Retained Causes of Action will be deposited into a distribution account and will be distributed by the Liquidating Trustee to the Liquidating Trust Beneficiaries in accordance with the provisions of the Plan and this Agreement.   All Retained Causes of Action that are not expressly released or waived under the Plan are reserved and

-12-

preserved, transferred to and vest in the Liquidating Trust in accordance with this Plan. Settlement by the Liquidating Trust of any Retained Cause of Action transferred to the Liquidating Trust shall (i) not require approval of the Bankruptcy Court if the amount claimed by the Liquidating Trust against a defendant is less than one million dollars ($1,000,000); and (ii) require approval of the Bankruptcy Court, upon notice and a hearing, if the amount claimed by the Liquidating Trust against a defendant is unliquidated or equal to or exceeds one million dollars ($1,000,000).

3.6.    <u>Retention of Agents and Professionals</u>.  Subject to the Plan and in connection with the performance of the functions and responsibilities under this Agreement, the Liquidating Trustee shall have the right, without Court approval, to retain the services of attorneys, accountants or other professionals and agents, to assist and advise the Liquidating Trustee in the performance of its duties, and to compensate and reimburse expenses of such professionals in accordance with this Agreement.  For the avoidance of doubt, the Liquidating Trust can retain any professional currently retained by the Committee.  The Liquidating Trustee shall not be liable for any act taken or omitted to be taken, or suggested to be done, in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions were in writing.

3.7.    <u>Safekeeping of Assets</u>.  All Liquidating Trust Assets shall, until distributed or paid over as herein provided or in the Plan, be held in trust for the benefit of the Liquidating Trust Beneficiaries in accordance with the Plan and this Agreement.  The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by it herein and held for distribution or payment to the Liquidating Trust Beneficiaries, except as such interest or income shall actually be received by the Liquidating Trust.

3.8.    <u>Limitations on Trustee</u>.  The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or Liquidating Trust Beneficiaries, enter into or engage in any trade or

-13-

business, and no part of the Liquidating Trust Assets or the proceeds, revenue, or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business. Aside from potentially obtaining litigation financing, the Liquidating Trustee shall also not incur any other indebtedness or comingle the Liquidating Trust's funds.

3.9.    Investment. The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided, that* such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities. The Liquidating Trustee may only invest funds held in the Liquidating Trust in Permitted Investments, in a manner consistent with the requirements of the Bankruptcy Code or any order of the Bankruptcy Court modifying such requirements, and provided that the Liquidating Trustee does so, it shall have no liability in the event of insolvency of any institution in which it has invested any of the Liquidating Trust Assets or any proceeds, revenue, or income therefrom.

3.10.    Trustee Action.  The Liquidating Trustee shall hold, collect, conserve, protect, and administer the Liquidating Trust Assets in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth therein for the purposes set forth in the Plan and this Agreement.  Any good faith determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be subject to approval the Bankruptcy Court only as may be required by the Plan and this Agreement.

3.11.    Bankruptcy Court Approval of Trustee Actions.  Except as provided in the Plan or as otherwise specified in this Agreement, the Liquidating Trustee need not obtain an order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court.  Except as provided in the Plan or otherwise

159230091.1

specified in this Agreement, the Liquidating Trustee shall exercise its business judgment for the benefit of the Liquidating Trust Beneficiaries in order to maximize the value of the Liquidating Trust Assets and distributions to the Liquidating Trust Beneficiaries, giving due regard to the cost, risk, and delay of any course of action.  Notwithstanding the foregoing in this Section 3.11, the Liquidating Trustee may seek Bankruptcy Court approval for authority to take a particular action for which the Liquidating Trustee may desire to have explicit approval of the Bankruptcy Court with respect to the Liquidating Trust Assets, the Liquidating Trust, and the Settlors, and as provided in the Plan or this Agreement, including the administration and distribution of the Liquidating Trust Assets.  The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion.

3.12.    Privileged Documents.  All legal privileges of the Settlors and the Estates, including the attorney-client privilege, work product privilege, common interest privilege, or any other applicable privileges that apply to documents, communications (whether written or oral) and other information ("Privileged Information") are hereby transferred in their entirety to and shall vest in the Liquidating Trust and its representatives, and the Settlors and the Liquidating Trustee are directed to take all necessary actions to effectuate the transfer of such privileges.  Subject to the Plan, any disclosure or examination of Privileged Information shall be limited to the Liquidating Trustee and the attorneys and other advisors that the Liquidating Trustee has retained on behalf of the Liquidating Trust for the purpose of pursuing Retained Causes of Action or objecting to Claims not released by the Settlors, those parties' administrative support personnel, and any consulting, non-testifying experts retained by the Liquidating Trustee on behalf of the Liquidating Trust for the purpose of assisting the Liquidating Trust in pursuing such Retained Causes of Action and/or objecting to Claims.  Nothing in the Plan or this Agreement shall constitute a waiver of any

-15-

privilege belonging to the Settlors, the Estates or the Liquidating Trust. For the avoidance of doubt, the Liquidating Trust is a successor-in-interest to the Settlors and the Estates, and thus, the transfer of the Privileged Information as provided herein and in the Plan does not impair or waive any privilege. The Settlors and the Liquidating Trustee shall take all necessary actions to preserve and protect the transfer of such privileges, protections and immunities.

## ARTICLE IV
## DISTRIBUTIONS FROM THE TRUST

4.1.    <u>Distributions and Reserve of Liquidating Trust Assets</u>. Following the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall take continuing commercially reasonable efforts on behalf of the Liquidating Trust to collect, liquidate, and distribute all Liquidating Trust Assets in accordance with the terms of this Agreement and the Plan, subject to any reserves required or permitted by the Plan or this Agreement.

4.2.    <u>Distributions</u>. Subject to the terms of the Plan, the Liquidating Trustee shall distribute to the Liquidating Trust Beneficiaries on account of their Liquidating Trust Interests on a semi-annual basis or with such other frequency as the Liquidating Trustee determines in the exercise of its business judgment, Cash representing its net income plus all net proceeds from the sale or resolution, in the case of the Retained Causes of Action of the Liquidating Trust  Assets (including any Cash received from the Debtors and treating any Permissible Investment as Cash for purposes of this Section 4.2 less such amounts that may be reasonably necessary to (i) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (ii) pay reasonably incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Settlors or the Liquidating Trust, or in respect of the Liquidating Trust Assets, and attorneys' fees and expenses and the fees and expenses of other professionals), or (iii) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with

-16-

the Plan or the Agreement; *provided, however*, that the Liquidating Trustee shall not be required to make a Distribution pursuant to this Section 4.2 if the Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable.  The Liquidating Trustee shall make Distributions from the segregated Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries in accordance with the Plan or this Agreement. The Liquidating Trustee may engage a distribution agent to assist in the making of distributions.

4.3.   Reserves; Pooling of Reserved Funds; Distributions Net of Reserves and Costs; Right to Rely on Professionals.  Subject to the terms of the Plan, the Confirmation Order, and this Agreement, before any distribution can be made, the Liquidating Trustee shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Liquidating Trust, including attorneys' fees and expenses and the fees and expenses of other professionals.  For the avoidance of doubt, the Liquidating Trustee may withhold any distribution pending the Liquidating Trust's determination of whether to object to a Disputed Claim.  Any such withheld distribution shall become part of the Liquidating Trust's reserve for Disputed Claims and shall be distributed to the appropriate Beneficiary no later than the first distribution date after a decision is made not to object to the Disputed Claim in question or the Claim becomes Allowed.  The Liquidating Trustee need not maintain the Liquidating Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Liquidating Trust, but shall account for and treat all such reserved funds as being held in a segregated manner in its books and records.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the distributions.  Without limiting the generality of Section 6.4 of this Agreement, in

159230091.1

determining the amount of any distribution or reserve, the Liquidating Trustee may rely and shall be fully protected in relying on the advice and opinion of the Liquidating Trust's financial advisors, accountants, or other professionals.

4.4.    <u>Disallowance of Claims; Cancellation of Corresponding Beneficial Interests</u>.  In the event that any distribution to any Holder is returned as undeliverable or is otherwise unclaimed, no further distribution to such Holder shall be made unless and until the Liquidating Trustee is notified in writing of such Holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date.  After such date, with no further action by the Liquidating Trustee, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trustee automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan, and the Claim of any such Holder to such property or interest in such property shall be released, settled, compromised, and forever barred.  Nothing herein shall require the Liquidating Trustee to attempt to locate Holders or permitted designees, as applicable, of undeliverable distributions and, if located, to assist in any way such Holders or permitted designees, as applicable.

4.5.    <u>Distributions; Withholding</u>.  The Liquidating Trustee and/or any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan, this Agreement, and all other related agreements shall be

subject to any such withholding or reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each Holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations, including requiring as a condition to the receipt of a distribution, the compliance with Article IX of the Plan. The Liquidating Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. Additionally, in the case of a non-Cash distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (a) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (b) pay the withholding tax using its own funds and retain such withheld property.

      4.6.   <u>Voided Checks; Requests for Reissuance; Forms</u>. Subject to the terms of the Plan, distribution checks issued to Liquidating Trust Beneficiaries shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be made in writing directly to the Liquidating Trustee by the Beneficiary that was originally issued such check.  All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the check become unrestricted Liquidating Trust Assets in accordance

-19-

159230091.1

with Article IV of this Agreement. The Beneficiary shall bear all the risk that and shall indemnify and hold both the Liquidating Trust and the Liquidating Trustee harmless against any loss that may arise if, the Liquidating Trustee does not reissue the check promptly after receiving a request for its reissuance and the above deadline for cashing a reissued check passes without the check being reissued or cashed.  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Liquidating Trustee or such other Person designated by the Liquidating Trustee (which entity shall subsequently deliver to the Liquidating Trustee any such forms received) an executed IRS Form W-9 or (if the payee is a foreign Person) the appropriate IRS Form W-8 (including all relevant attachments).  If such request is made by the Liquidating Trustee or such other Person designated by the Liquidating Trustee and the Holder fails to comply before the date that is 90 calendar days after the request is made, the amount of such distribution shall irrevocably revert to the Liquidating Trustee and, the Holder shall be forever barred from asserting any right to such distribution against any Debtors, the Debtors' Estates and the Liquidating Trustee.

4.7.    <u>Minimum Distributions</u>.  The Liquidating Trustee shall not be required to make any payment to any Holder of an Allowed Claim on any Distribution Date of Cash less than $10.00.  If either (i) all Allowed Claims (other than those whose distributions are deemed undeliverable under the Plan) have been paid in full, or (ii) the amount of any final distributions to Holders of Allowed Claims would be $10.00 or less and the aggregate amount of Cash available for distributions to Liquidating Trust Beneficiaries is less than $25,000.00, then no further distribution shall be made by the Liquidating Trustee and any surplus Cash shall be donated and distributed to one or more of the following organizations (each of which qualifies as a tax-exempt organization

under Section 501(c)(3) of the Tax Code): (a) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (b) Legal Services of Greater Miami, Inc.

4.8.    Undeliverable Property.  In the event that any distribution to any Holder is returned as undeliverable or is otherwise unclaimed, no further distribution to such Holder shall be made unless and until the Liquidating Trustee is notified in writing of such Holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest; *provided, however*, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date.  After such date, with no further action by the Liquidating Trustee, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan, and the Claim of any such Holder to such property or interest in such property shall be released, settled, compromised, and forever barred.  Nothing herein shall require the Liquidating Trustee to attempt to locate Holders or permitted designees, as applicable, of undeliverable distributions and, if located, to assist in any way such Holders or permitted designees, as applicable.  Notwithstanding any provisions in the Plan to the contrary, all distributions to Holders of Claims shall be deemed completed, and the obligations of the Liquidating Trustee to make such distributions under the Plan shall be deemed satisfied, when made by the Liquidating Trustee.

4.9.    Manner of Payment.  At the option of the Liquidating Trustee any Cash payment to be made under the Plan and this Agreement may be made by a check, wire transfer, or ACH transfer.

159230091.1

4.10.   Compliance with Tax and Other Statutory Requirements.  As further contemplated by Section 11.7 of this Agreement, the Liquidating Trustee shall comply with all tax withholding reporting requirements and any other statutory requirements imposed on it and the Liquidating Trust by any Governmental Unit or any other applicable law, and all of the Liquidating Trustee's actions and distributions pursuant to the Plan and this Agreement shall be subject to such withholding, reporting and any other statutory requirements.  Any taxes withheld and deposited with the appropriate Governmental Unit shall be treated as if distributed to the applicable Holder for purposes of determining the distributions to which such Holder is entitled to receive. Notwithstanding any provision herein to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including (i) liquidating a portion of the distribution to be made under the Plan and this Agreement to generate sufficient funds to pay applicable withholding taxes, (ii) withholding distributions pending receipt of information necessary to facilitate such distributions, (iii) establishing any other mechanisms it believes are reasonable and appropriate, or (iv) obtaining, if such information is not already in the possession of the Liquidating Trust, (A) in the case of a U.S. Holder, a properly executed Internal Revenue Service Form W-9, and (B) in the case of a non-U.S. Holder, a properly executed applicable Internal Revenue Service Form W-8 and any other forms required by any applicable law (or in each of the cases of clauses (A) and (B) above, such Holder otherwise establishes eligibility for an exemption).  The Liquidating Trust shall have the right, but not the obligation, to allocate all distributions made under the Plan and this Agreement in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.  For tax purposes, the Liquidating Trust shall treat any Holder

of a wage-related claim as "single with no deductions," irrespective of any prior or current designation on the books and records of the Settlors.

4.11.  <u>Allocations</u>.  Except as otherwise required by law (as reasonably determined by the Liquidating Trustee), to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest through the Petition Date.

4.12.  <u>No Postpetition Interest on Claims</u>.  Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or specifically required by applicable bankruptcy law, the IRC or equivalent state law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

4.13.  <u>Setoffs and Recoupment</u>.  The Liquidating Trustee may, but shall not be required to, set off or recoup against any Claim, any claims of any nature whatsoever that the Liquidating Trustee may have against the Holder of such Claim; *provided that*, neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidating Trustee of any such claim the Liquidating Trustee may have against the Holder of such Claim.

4.14.  <u>United States Trustee Fees and Reports</u>.  After the Effective Date, the Liquidating Trustee shall pay as an expense of the Liquidating Trust all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Liquidating Trust's disbursements as required under the Plan and Confirmation Order until the Chapter 11 Cases are closed.  After the Effective Date, no later than the 20th day of the month following the end of each calendar quarter, the Liquidating

-23-

Trustee shall File with the Bankruptcy Court and serve on the Office of the United States Trustee quarterly reports summarizing the Post Confirmation receipts received and disbursements made by the Liquidating Trustee in the prior quarter.

    4.15.   <u>Claims Paid or Payable by Third Parties</u>.  A Claim shall be disallowed without an objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full in Cash on account of such Claim from a party that is not the Liquidating Trustee. To the extent that a Holder of a Claim receives a distribution from the Liquidating Trust on account of such Claim and receives payment from a party that is not the Liquidating Trustee on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the Liquidating Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Allowed Claim as of the date of any such distribution.

    4.16.   <u>Insurance</u>.  Subject to the Plan, the Liquidating Trustee shall use Liquidating Trust Assets in the Liquidating Trustee's reasonable business judgment to maintain customary insurance coverage, if available, for the protection of the Persons or Entities serving as Liquidating Trustee or administrator of the Liquidating Trust on and after the Effective Date.

**ARTICLE V**
**LIQUIDATING TRUST BENEFICIARIES**

    5.1.   <u>Incidents of Ownership</u>.  The Liquidating Trust Beneficiaries shall be the sole beneficiaries of the Liquidating Trust and the Liquidating Trust Assets, and the Liquidating

-24-

Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Agreement, the Plan and the Confirmation Order.

5.2.    <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary or any of the Settlors to: (a) any title in or to the Liquidating Trust Assets, (b) any right to call for a partition or division of such assets, or (c) require an accounting, except as specifically provided herein or in the Plan.

5.3.    <u>Register of Liquidating Trust Beneficiaries</u>.  The Liquidating Trustee shall maintain at all times a register of the names, distribution addresses, amounts of asserted and Allowed Claims, and the ratable interests in the Liquidating Trust of the Liquidating Trust Beneficiaries, as the same may be updated from time to time at the direction of the Liquidating Trustee in the ordinary course of administering the Liquidating Trust (the "<u>Claims Register</u>").  The initial Claims Register shall be delivered to the Liquidating Trustee by the Settlors and shall be based on the list of Allowed Claims maintained by the Settlors' claims and noticing agent as of the Effective Date. All references in this Agreement to Holders of beneficial interests in the Liquidating Trust shall be read to mean Holders of record as set forth in the Claims Register, as maintained by the Liquidating Trustee.  The Liquidating Trustee may utilize the Settlors' claims and noticing agent, or any other retained professional, to maintain the Claims Register.

5.4.    <u>Evidence of Beneficial Interest</u>.    Ownership of a beneficial interest in the Liquidating Trust Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.  The Liquidating Trustee may rely on the claims register maintained by the Clerk of the Bankruptcy Court or the Claims Register per Section 5.3 in this Agreement.

-25-

5.5.    <u>Notice of Transfer of Beneficial Interest</u>.  Beneficial interests in the Liquidating Trust shall be nontransferable except upon death of the interest holder or by operation of law.

5.6.    <u>Absolute Owners</u>.  The Liquidating Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Claims Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

5.7.    <u>Change of Address</u>.    A Beneficiary may, after the Effective Date, select an alternative distribution address by serving a notice upon the Liquidating Trustee that identifies such alternative distribution address.   Absent such notice, the Liquidating Trustee shall not recognize any such change of distribution address.  Such notification shall be effective only upon receipt by the Liquidating Trustee.

5.8.    <u>Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary</u>.  The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidating Trust shall not operate to terminate the Liquidating Trust during the term of the Liquidating Trust, nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Liquidating Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of the Beneficiary under this Agreement or in the Liquidating Trust.

5.9.    <u>Standing</u>.   Except as expressly provided in this Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Liquidating Trust Assets.

159230091.1

## ARTICLE VI
## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1.    <u>Standard of Care; Exculpation</u>.  Neither the Liquidating Trustee, nor any director, officer, member, affiliate, employee, employer, professional, successor, assign, agent, or representative of the Liquidating Trustee or any (each, an "<u>Exculpated Party</u>" and collectively, the "<u>Exculpated Parties</u>") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "<u>Losses</u>"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Agreement (including these exculpation provisions), as and when imposed on an Exculpated Party, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Liquidating Trustee's execution, delivery, and acceptance of, or the performance or nonperformance of, its powers, duties and obligations under this Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission or error of an Exculpated Party; *provided*, *however*, that the foregoing limitation shall not apply to any Losses found in a final judgment by the Bankruptcy Court (not subject to further appeal or review) to have resulted primarily and directly from the fraud, self-dealing, gross negligence or willful misconduct of such Exculpated Party.  Every act taken or omitted, power exercised or obligation assumed by the Liquidating Trust or any Exculpated Party pursuant to the provisions of this Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Liquidating Trust or any Exculpated Party acting for and on behalf of the Liquidating Trust and not otherwise; *provided*, *however*, that none of the foregoing Entities or persons are deemed to be responsible for any other such Entities' or persons' actions or inactions.  Except as provided in the first proviso of the first

-27-

sentence of this Section 6.1, every person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with the Liquidating Trust or any Exculpated Party shall have recourse only to the Liquidating Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships, and the Liquidating Trust and the Exculpated Parties shall not be individually liable therefore.  Except as provided in the first proviso of the first sentence of this Section 6.1, any liability of the Liquidating Trustee under this Agreement will be limited to the amount of annual fees paid to the Liquidating Trustee.  Without limiting the foregoing, the Liquidating Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and Confirmation Order.  Notwithstanding the third-party rights and limitation of liability set forth in this Article VI, any attorney that is an Exculpated Party shall remain subject to Model Rule of Professional Conduct 1.8(h).

6.2.   Indemnification.

(a)   The Liquidating Trust, the Liquidating Trustee, and any director, officer, member, affiliate, employee, employer, professional, successor, assign, agent, or representative of the Liquidating Trustee (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless, and indemnified from time to time by the Liquidating Trust against any and all Losses, including, without limitation, the costs for counsel or others in investigating, preparing, defending, or settling any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Agreement (including these indemnity provisions), as and when imposed on the Indemnified Party, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Liquidating Trustee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and

-28-

obligations under this Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Indemnified Party; *provided*, *however*, such indemnity shall not apply to any such Losses to the extent it is found in a final judgment by the Bankruptcy Court (not subject to further appeal or review) to have resulted primarily and directly from the fraud, self-dealing, gross negligence, or willful misconduct of such Indemnified Party. Satisfaction of any obligation of the Liquidating Trust arising pursuant to the terms of this Section shall be payable only from the Liquidating Trust Assets, shall be advanced prior to the conclusion of such matter and such right to payment shall be prior and superior to any other rights of Liquidating Trust Beneficiaries to receive a distribution of the Liquidating Trust Assets.

(b)    The Liquidating Trust shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefore on a current basis. Each Indemnified Party hereby undertakes, and the Liquidating Trust hereby accepts its undertaking, to repay any and all such amounts so paid by the Liquidating Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Agreement.

6.3.    <u>No Liability for Acts of Successor/Predecessor Trustees</u>. Upon the appointment of a successor Liquidating Trustee and the delivery of the Liquidating Trust Assets to the successor Liquidating Trustee, the predecessor Liquidating Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Liquidating Trustee shall have no further liability or responsibility with respect thereto. A successor Liquidating Trustee shall not be liable for the acts or omissions of any predecessor Liquidating Trustee unless a successor Liquidating Trustee expressly assumes such responsibility. A predecessor Liquidating Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor

-29-

Liquidating Trustee for any events or occurrences subsequent to the cessation of its role as Liquidating Trustee.

6.4.    <u>Reliance by Trustee on Documents or Advice of Counsel or Other Professionals</u>. Except as otherwise provided in this Agreement, the Liquidating Trustee, any director, officer, member, affiliate, employee, employer, professional, agent, or representative of the Liquidating Trustee may rely, and shall be protected from liability for acting or failing to act, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidating Trustee to be genuine and to have been presented by an authorized party.  The Liquidating Trustee shall not be liable for any action taken or omitted or suffered by the Liquidating Trustee in reasonable reliance upon the advice of counsel or other professionals engaged by the Liquidating Trustee in accordance with this Agreement.  The Liquidating Trustee shall be fully indemnified by the Liquidating Trust for or in respect of any action taken, suffered or omitted by it and in accordance with such advice or opinion.

6.5.    <u>No Liability for Good Faith Error of Judgment</u>.  The Liquidating Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order of a court of competent jurisdiction (not subject to further appeal or review) that the Liquidating Trustee was grossly negligent in ascertaining the pertinent facts.

6.6.    <u>Survival</u>.  The provisions of this Article VI shall survive the termination of this Agreement and the death, resignation, removal, dissolution, or replacement of the Liquidating Trustee.

**ARTICLE VII**

**SELECTION, REMOVAL, AND COMPENSATION OF TRUSTEE**

7.1.    <u>Initial Trustee</u>.  The initial Liquidating Trustee shall be Joseph J. Luzinski of Development Specialists, Inc.

-30-

7.2.  <u>Term of Service</u>.  The Liquidating Trustee shall serve until: (a) the completion of all the Liquidating Trustee's duties, responsibilities, and obligations under this Agreement and the Plan; (b) termination of the Liquidating Trust in accordance with this Agreement; or (c) the Liquidating Trustee's death or dissolution, incapacitation, resignation, or removal, as set forth below.

7.3.  <u>Resignation and Removal of Trustee</u>.  The Liquidating Trustee may resign at any time upon thirty (30) days' prior written notice filed with the Bankruptcy Court, *provided, however,* that such resignation shall only become effective upon the appointment of a permanent or interim successor Liquidating Trustee.  A successor Liquidating Trustee shall be appointed by the Bankruptcy Court based upon submissions from interested parties (including the Liquidating Trustee or any Beneficiary).  Any Person serving as Liquidating Trustee may be removed at any time for cause, including, without limitation, incapacity or failure or refusal to perform his duties under the Plan, this Agreement, and the Confirmation Order. Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Liquidating Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.  In the event of resignation or removal, death or incapacity of the Liquidating Trustee, the Bankruptcy Court shall appoint another Person or Entity to serve as Liquidating Trustee and thereupon the successor Liquidating Trustee shall become fully vested with all of the rights, powers, duties and obligations of the predecessor, and all responsibilities of the predecessor Liquidating Trustee relating to the Liquidating Trust shall be terminated; *provided, however*, that the Liquidating Trustee shall be deemed removed on the date the Chapter 11 Cases are closed, and no successor thereto shall be designated.

159230091.1

7.4.    <u>Powers and Duties of Successor Trustee</u>.  A successor Liquidating Trustee shall have all of the rights, privileges, powers, and duties of the predecessor Liquidating Trustee under this Agreement and the Plan.

7.5.    <u>Trust Continuance</u>.   The death, dissolution, resignation, or removal of the Liquidating Trustee shall not terminate the Liquidating Trust or revoke any existing agency created by the Liquidating Trustee pursuant to this Agreement or invalidate any action theretofore taken by the Liquidating Trustee, and the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Liquidating Trustee and all its successors or assigns.

7.6.    <u>Compensation of Liquidating Trustee.</u>  As described further on <u>Exhibit 1</u> attached hereto, beginning at the Effective Date (as defined in the Plan), subject to the Plan and this Agreement, the Liquidating Trustee shall be employed and compensated at the rate of $745 per hour. In addition, the Liquidating Trustee shall be reimbursed for all documented actual, reasonable and necessary out-of-pocket expenses incurred in the performance of the Liquidating Trustee's duties hereunder.  Any successor to the Liquidating Trustee shall also be entitled to reasonable compensation in connection with the performance of its duties, which compensation may be different from the terms provided herein and shall be approved by the Bankruptcy Court, plus the reimbursement of reasonable out-of-pocket expenses.  The compensation and procedures for reimbursement of reasonable out-of-pocket expenses of any successor to the Trustee may also be different from the terms provided herein.

7.7.    <u>Fiduciary Duties</u>.  Notwithstanding anything in this Agreement to the contrary, the Liquidating Trustee shall always act consistently with, and not contrary to, the purpose of the Liquidating Trust as set forth in this Agreement and the Plan and Confirmation Order and shall exercise his or her responsibilities accordingly; *provided*, *however*, that the Liquidating Trustee

-32-

shall not owe fiduciary obligations to any individual Beneficiary, creditor, individual Holder of a claim or interest, or defendants or potential defendants of Retained Causes of Action in their capacities as such, it being the intent of such fiduciary duties to ensure that the Liquidating Trustee's obligations are to maximize the value of the Liquidating Trust Assets, including the Retained Causes of Action.  For the avoidance of doubt, any fiduciary duty of the Liquidating Trustee shall be to the total body of Liquidating Trust Beneficiaries, as a collective whole.

**ARTICLE VIII**
**TRUST RIGHTS AND OBLIGATIONS**

8.1.   <u>Tax Obligations</u>. As further described in Article XI of this Agreement, and as provided in the Plan, the Liquidating Trustee shall administer the Liquidating Trust's tax obligations, including: (a) filing tax reports and return in accordance with applicable Treasury Regulations—*provided*, *however*, the Liquidating Trustee must elect to treat the portion of the Liquidating Trust Assets subject to the Disputed Claims as a disputed ownership fund described in Treasury Regulation Section 1.468B-9 (the "<u>DOF Election</u>") unless, as of the Trust Election Date, either all of the Liquidating Trust Assets subject to Disputed Claims have been distributed to the Liquidating Trust Beneficiaries or the percentage of the Liquidating Trust Assets subject to Disputed Claims distributable to each of the Liquidating Trust Beneficiaries has become fixed and determinable; (b) requesting, if necessary, an expedited determination of any unpaid tax liability of the Liquidating Trust for all taxable periods of the Liquidating Trust through the dissolution of the Liquidating Trust, as determined under section 505(b) of the Bankruptcy Code and applicable tax laws; and (c) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit.

8.2.   <u>Reporting and Filing Requirements</u>. Within thirty (30) days after the last day of each calendar quarter in which the Liquidating Trust shall remain in existence, the Liquidating

-33-

Trustee shall file a report with the Bankruptcy Court of all Liquidating Trust Assets held and received by the Liquidating Trust, all Cash disbursed to Liquidating Trust Beneficiaries, and all fees, income, and expenses related to the Liquidating Trust during the preceding period calendar year.

8.3.    <u>Further Compliance</u>. The Liquidating Trustee shall also timely prepare, file and distribute such additional statements, reports and submissions as may be necessary to cause the Liquidating Trust and the Liquidating Trustee to be in compliance with applicable law. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

8.4.    In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust, and subject to the Plan, on and after the Effective Date, the Liquidating Trustee is authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

**ARTICLE IX**

**MAINTENANCE OF BOOKS AND RECORDS**

9.1.    Consistent with the terms of the Plan, on the Effective Date, the Liquidating Trust shall: (a) take possession of all books, records, and files of the Settlors and their Estates, in all forms including electronic and hard copy, and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines, in his or her sole discretion and in accordance with this Agreement, that retention of same is no longer necessary or required.  Upon the Effective Date, the Liquidating Trust and the Liquidating Trustee will inure to the privilege held by the Settlors with respect to such documents and shall have the ability to enforce and/or waive such privilege.

-34-

9.2.    The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Liquidating Trust Assets and keep an accounting of all receipts and disbursements.  Except as expressly provided in this Agreement, the Plan, or the Confirmation Order, or as may be required by applicable law (including securities law), nothing in this Agreement is intended to require the Liquidating Trust to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or distribution out of the Liquidating Trust Assets.

9.3.    Liquidating Trust Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the Liquidating Trustee to inspect the Liquidating Trust's books and records, including the Claims Register, provided such Beneficiary shall have (i) entered into a confidentiality agreement in form and substance reasonably satisfactory to the Liquidating Trustee and (ii) agreed to pay all costs related to such inspection.  Satisfaction of the foregoing condition notwithstanding, if the Liquidating Trustee determines in good faith that the inspection of the Liquidating Trust's books and records, including the Claims Register, by any Beneficiary would be detrimental to the Liquidating Trust or violate or waive any privilege held by the Settlors or the Liquidating Trust or any confidentiality obligation of the Settlors or the Liquidating Trust with respect to the books and records or related to such documents, including without limitation, work product privilege, the Liquidating Trustee may deny such request for inspection.

## ARTICLE X
## DURATION OF TRUST

10.1.    <u>Duration</u>.  The Liquidating Trust shall become effective upon the Effective Date of the Plan, and the Liquidating Trust and its provisions herein shall remain and continue in full force and effect until the Liquidating Trust is terminated.

159230091.1

10.2.   <u>Termination</u>.  The Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and this Agreement, or (ii) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit; provided, however, that in no event shall a Liquidating Trust be dissolved later than five (5) years from the creation of such Liquidating Trust, unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth (5th) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, (i) that the expense of administering a Liquidating Trust so as to make a final distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, (ii) all Allowed Claims (other than those whose distributions are deemed undeliverable under the Plan) have been made in full, or (iii) the amount of any final distributions to Holders of Allowed Claims would be $10.00 or less and the aggregate amount of Cash available for distributions to Liquidating Trust Beneficiaries is less than $25,000.00, then, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (a) reserve any amount necessary to dissolve such Liquidating Trust, (b) donate any balance to one or more of the following organizations (each of which qualifies as a Tax Code section 501(c)(3) tax-

159230091.1

exempt organization): (1) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (2) Legal Services of Greater Miami, Inc.

10.3.    <u>Continuance of Trust for Winding Up</u>.  After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until the Liquidating Trustee's duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to windup the affairs of the Liquidating Trust.  Upon a motion by the Liquidating Trustee, the Bankruptcy Court may enter an order relieving the Liquidating Trustee, its agents and employees of any further duties, discharging, and releasing the Liquidating Trustee. After the termination of the Liquidating Trust, the Liquidating Trustee shall retain for a period of six (6) months the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Liquidating Trustee.  At the Liquidating Trustee's discretion, and without further order of the Bankruptcy Court, all of such records and documents may, but need not be, destroyed at any time after six (6) months from the completion and winding up of the affairs of the Liquidating Trust, except for any such records and documents that must be retained for a longer duration under applicable law.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidating Trust and after final distributions of the Liquidating Trust are made, the Liquidating Trustee shall have no further duties or obligations hereunder.  For the avoidance of doubt, the limitations on liability and indemnification rights contained in this Agreement shall apply to any actions taken by the Liquidating Trustee and his professionals during the course of winding up the affairs of the Liquidating Trust.

10.4.    <u>Wind-Down of Surviving Settlors</u>.  In addition to the Liquidating Trustee's rights and duties with respect to the Liquidating Trust as set forth herein, on and after the Effective Date,

-37-

the Liquidating Trustee shall also have the power and authority to take any action necessary to wind down the Estates and the business and affairs of the Settlors, taking into account any applicable requirements to maintain the existence of one or more of the Settlors in order to collect and liquidate the Liquidating Trust Assets.

**ARTICLE XI**
**TAX TREATMENT OF THE TRUST**

11.1.   <u>Intention of Parties to Establish Grantor Trust</u>.  Subject to the DOF Election, the Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes within the meaning of sections 671 through 679 of the Tax Code and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as the sole grantors and owners of the Liquidating Trust. To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

11.2.   This Agreement is intended to create the Liquidating Trust in order to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, for, among other purposes, the purpose of: (i) receiving and holding the Liquidating Trust Assets; (ii) administering, disputing, objecting to, compromising, or otherwise resolving all Disputed Claims; (iii) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and this Agreement; (iv) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treasury Regulation Section 301.7701-4(d). The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Plan.

-38-

11.3.  <u>Tax Returns</u>.  In accordance with the Plan, the Liquidating Trustee shall cause the filing of tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

11.4.  <u>Disputed Ownership Fund</u>.  The Liquidating Trustee must elect to treat that portion of the Liquidating Trust Assets subject to the Disputed Claims as a disputed ownership fund described in Treasury Regulation Section 1.468B-9 (the "<u>DOF Election</u>") unless, as of the Trust Election Date, as defined in the Plan, either all of the Liquidating Trust Assets subject to Disputed Claims have been distributed to the Liquidating Trust Beneficiaries or the percentage of the Liquidating Trust Assets subject to Disputed Claims distributable to each of the Liquidating Trust Beneficiaries has become fixed and determinable.

11.5.  <u>Federal Income Tax Treatment of Liquidating Trust</u>. The U.S. federal income tax classification of the Liquidating Trust will be determined pursuant to Subsections 11.5.1 and/or 11.5.2 below, as applicable.

11.5.1.  <u>Disputed Claims Resolved Before Trust Election Date.</u> Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), for all United States federal income tax purposes, all parties (including, without limitation, the Settlors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (i) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (ii) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for the related Liquidating Trust Interests. Subject to the terms of the Plan: (i)

-39-

the Liquidating Trust is structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" for U.S. federal income tax purposes within the meaning of Sections 671 through 679 of the Tax Code to the Liquidating Trust Beneficiaries, consistent with the terms of the Plan; (ii) Liquidating Trust Beneficiaries shall be treated as the beneficiaries and grantors of the Liquidating Trust; (iii) the sole purpose of the Liquidating Trust shall be the liquidation and distribution of the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), including the resolution of Allowed Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iv) all parties (including the Settlors, Liquidating Trust Beneficiaries, and the Liquidating Trustee) shall report consistently with such treatment (including the deemed receipt of the Liquidating Trust Assets, subject to applicable liabilities and obligations, by the Liquidating Trust Beneficiaries, followed by the deemed transfer of such Liquidating Trust Assets to the Liquidating Trust); (v) all parties shall report consistently for federal income tax purposes, and otherwise, with the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as determined by the Liquidating Trustee (or its designee); (vi) the Liquidating Trustee shall be responsible for filing returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a); (vii) the Liquidating Trustee shall annually send to each Liquidating Trust Beneficiary a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes; and (viii) all items of income, deductions and credit loss of the Liquidating Trust shall be allocated for federal income tax purposes to the Liquidating Trust Beneficiaries based on their respective interests in the Liquidating Trust, in such manner as the Liquidating

Trustee deems reasonable and appropriate. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

11.5.2. <u>Disputed Claims Unresolved by Trust Election Date</u>. If all Disputed Claims have not been resolved by the Trust Election Date, then the Liquidating Trustee will elect to treat that portion of the Liquidating Trust Assets subject to the Disputed Claims as a "disputed ownership fund" as described in and governed by Treasury Regulation Section 1.468B-9, and all impacted parties (including the Debtors, and solely to the extent applicable, Liquidating Trust Beneficiaries, and the Liquidating Trustee), solely with respect to the impacted assets, shall report for United States federal, state, and local income tax purposes consistently with such election. The Liquidating Trustee shall file all income tax returns with respect to any income attributable to the disputed ownership fund and shall pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto. Any taxes imposed on the disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund (including any assets of the Liquidating Trust allocable to Disputed Claims) and any subsequent distributions in respect of the allowance or disallowance of such claims will be reduced accordingly. In the event, and to the extent, that any Cash in any disputed ownership fund is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the disputed ownership fund, assets of the disputed ownership fund (including those otherwise distributable) may be sold to pay such taxes. The undisputed portion of the Liquidating Trust Assets will be treated as held in a grantor trust, with deemed distribution to and contribution from the Liquidating Trust Beneficiaries, as described in the immediately preceding paragraph. To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the

foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

11.6.   <u>Determination of Taxes</u>.   The Liquidating Trustee may request an expedited determination of any local, state and/or federal taxes of the Settlors or of the Liquidating Trust, under Bankruptcy Code section 505(b) for all returns filed for, or on behalf of, the Settlors and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust, and to take any and all action necessary to obtain payment of any tax refund(s) due to the Settlors, their Estates and/or the Liquidating Trust.

11.7.   <u>Filing, Reporting, Withholding</u>.   The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns, if any, for the Liquidating Trust.   The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.   The Liquidating Trustee is also authorized to make tax elections on behalf of the Liquidating Trust and/or Settlors.

11.7.1.   Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidating Trust) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than, if applicable, assets allocable to Disputed Claims) to the Holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust. Similarly, taxable loss

159230091.1

of a Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.

11.7.2. The tax book value of Liquidating Trust Assets for purpose of this Section 11.7 shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

11.7.3. As soon as reasonably practicable after the Liquidating Trust Assets are transferred to a Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets. Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes and shall be used consistently by such parties for all United States federal income tax purposes.

11.8.    Payment of Tax Obligations.    The Liquidating Trust shall be responsible for payment, out of Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or the Liquidating Trust Assets.

## ARTICLE XII
## MISCELLANEOUS

12.1.    Jurisdiction.    The Bankruptcy Court shall have jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Liquidating Trustee or any professional retained by the Liquidating Trustee.  Each party to this Agreement hereby irrevocably consents to the exclusive

-43-

159230091.1

jurisdiction and venue of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, forum *non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Agreement.

12.2.    <u>Amendments</u>.  The Liquidating Trustee may remedy any defect or omission or reconcile any inconsistencies in this Agreement, Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan.

12.3.    <u>Cumulative Rights and Remedies</u>.   The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

12.4.    <u>Limitation on Transferability</u>.  A beneficial interest in the Liquidating Trust shall be non-assignable and non-transferable except upon death of the interest Holder or by operation of law. An assignment or transfer shall not be effective until appropriate notification and proof thereof is submitted to the Liquidating Trustee, and the Liquidating Trustee may continue to pay all amounts to or for the benefit of the assigning or transferring Beneficiary until receipt of proper notification and proof of assignment or transfer.  The Liquidating Trustee may rely upon such proof without the requirement of any further investigation.  The Liquidating Trustee, in his or her sole discretion, may require any assignment or transfer agreement to be formally filed on the docket with the Bankruptcy Court prior to any decision by the Liquidating Trustee that such assignment or transfer will be valid and accepted.

159230091.1

12.5.   <u>Notices</u>.  All notices to be given to Liquidating Trust Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Holders at the addresses appearing on the books kept by the Liquidating Trust.  Any notice or other communication which may be, or is required, to be given, served, or sent to the Liquidating Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or e-mail or facsimile (if receipt is confirmed) addressed as follows:

If to the Liquidating Trustee:

[Joseph J. Luzinski
Development Specialists, Inc.
500 East Broward Boulevard
Suite 1700
Fort Lauderdale, Florida 33394
Email – jluzinski@dsiconsulting.com
Phone (305) 374-2717 ]

with a copy to Counsel to the Liquidating Trustee:

[●]

If to a Beneficiary:

To the name and distribution address set forth in the
Claims Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

12.6.   <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without giving effect to conflicts of law principles.

12.7.   <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto and their respective successors and assigns.

159230091.1

12.8.  <u>No Execution</u>.  All funds in the Liquidating Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to, or for the benefit of, a Beneficiary, and no Beneficiary or any other Person or Entity can bind, pledge, encumber, execute upon, garnish, or attach the Liquidating Trust Assets or the Liquidating Trust in any manner or compel payment from the Liquidating Trust except by final order of the Bankruptcy Court.

12.9.  <u>Plan and Confirmation Order</u>.  To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Plan, then the terms of the Plan shall govern and control. To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Confirmation Order, then the terms of the Confirmation Order shall govern and control.

12.10.  <u>References to the Plan and Confirmation Order</u>. Unless otherwise expressly specified herein, (i) whenever a provision hereof references, or is subject to, the Plan, such provision shall also be deemed to reference, and is subject to, the Confirmation Order; and (ii) whenever a provision hereof references, or is subject to, the Confirmation Order, such provision shall also be deemed to reference, and is subject to, the Plan.

12.11.  <u>Severability</u>.  If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

12.12.  <u>Further Assurances</u>.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

-46-

12.13.  <u>Integration</u>.  This Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan and in the Confirmation Order.  This Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise provided in this Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Liquidating Trust Beneficiaries any rights or remedies under or by reason of this Agreement.

12.14.  <u>Interpretation</u>.  The enumeration and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, limited liability companies, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.  Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" except for provisions in which the context otherwise requires.

12.15.  <u>Counterparts</u>.  This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.  Delivery of an executed

-47-

counterpart of this Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

[<em>Remainder of page intentionally left blank</em>]

159230091.1

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this

Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized

officers or representatives, all as of the date first above written.

Dated: June ___, 2024

                            Bird Global, Inc.; Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc., as debtors and debtors-in-possession (on behalf of itself and the Settlors)

By: _____
Name:  Christopher Rankin
Title:   Chief Restructuring Officer

By: _____
Name: Joseph J. Luzinski
Title:  Liquidating Trustee of the
         Bird Global Liquidating Trust

                                                            

**EXHIBIT 6**

**SCHEDULE OF RETAINED CAUSES OF ACTION**

Exhibit 6

## Schedule of Retained Causes of Action[1]

This <u>Exhibit 6</u> to the Plan contains the Schedule of Retained Causes of Action.  Section 6.17 of the Plan provides as follows:

**Preservation of Rights of Action.**

> **<u>The Debtors expressly reserve any and all Retained Causes of Action</u>.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtors, the Liquidating Trustee or the Tort Claims Trustee, as applicable, will not pursue any and all available Retained Causes of Action against them.**

> Except as otherwise provided in the Plan or a Final Order of the Bankruptcy Court, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Retained Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that each Debtor had immediately prior to the Effective Date on behalf of the respective Debtor's Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Retained Causes of Action against parties with a relationship with the Debtor, other than the Released Parties.

> On and after the Effective Date, subject to the terms of this Plan, the Insurance Settlement Agreements and the Sale Order, the Liquidating Trustee or the Tort Claims Trustee, as applicable, shall have standing to and may pursue such Retained Causes of Action.

> Subject to the Sale Order, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent, notice to or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court subject to the terms of this Plan; provided that, the Tort Claims Trustee shall have a joint interest in Retained Causes of Action related to the Ford Indemnity Obligations. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself.

---

[1] Capitalized terms used in this schedule and not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Second Amended Joint Plan of Liquidation*.

| | Matter | Case Number/Court |
|---|---|---|
| 1. | Unless otherwise released under the Plan or the Global Settlement Term Sheet or provided in or conveyed to the Purchaser pursuant to the Asset Purchase Agreement, the Sale Order and/or the Global Settlement Term Sheet, Causes of Action against any Person (including any Creditor), such as, but not limited to, claims to avoid and recover constructive or actual fraudulent conveyances under 11 U.S.C. §§ 544, 548, 550 and Fla. Stat. Ann. § 726.101 – 201, preferential transfers under 11 U.S.C. §§ 547 and 550, breach of contract, common law and statutory claims of corporate waste, unjust enrichment, conversion, fraud, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, professional negligence, or any other Causes of Action available to any of the Debtors or their Estates, at law or in equity. | |
| 2. | Claims or Causes of Action of the Debtors against any former officer or director, or any former attorney, accountant or auditor, of the Debtors who is not a Released Party. | |
| 3. | Except as provided in or released under the Asset Purchase Agreement, the Sale Order, the Global Settlement Term Sheet or the Plan, the Debtors or the Liquidating Trust, as applicable, expressly reserve all Causes of Action based in whole or in part upon any and all D&O Liability Insurance Policies, including Causes of Action against current or former insurance carriers, reinsurance carriers, insurance brokers, or underwriters, relating to coverage, indemnity, contribution, reimbursement, overpayment of premiums and fees, breach of contract, or any other matters. | |
| 4. | Unless otherwise provided in or released by the Final DIP Order, the Asset Purchase Agreement, the Sale Order or the Global Settlement Term Sheet, the Debtors or Liquidating Trust expressly reserve all Causes of Action based in whole or in part upon any and all liens regardless of whether such lien is specifically identified herein or in the Plan and any Causes of Action under 11 U.S.C. § 549. | |
| 5. | All of the Debtors' rights, Claims or Causes of Action under or relating to the *Contribution and Exchange Agreement* dated March 1, 2022 by and | |

| | | |
|---|---|---|
| | between Spin, Ford Next, LLC, and Tier Mobility SE, including, without limitation, those relating to coverage, indemnity, contribution, reimbursement, breach of contract, or any other matters. | |
| 6. | The Talon Causes of Action | *Bird Rides, Inc. v. Talon Auto, Inc., John Heinkel, Scooter Removal LLC, Daniel Borelli, and Boardwalk Electric Rides*, Case No. 37-2019-00015016-CU-BT-CTL (Cal. Sup. Ct.) |
| 7. | Any Claims and Causes of Action (to the extent they are Retained Causes of Action) that may constitute Objections, defenses, counterclaims, cross-claims or third-party claims with respect to all Proof of Claims and any other Claims asserted against the Liquidating Trust or the Tort Claims Trust. | |

For avoidance of doubt, Retained Causes of Action shall not include any Claims or Causes of Action against Zhejiang Jinbang Sports Entertainment Co., Ltd.

**THE DEBTORS RESERVE ALL RIGHTS TO AMEND, REVISE, OR SUPPLEMENT THIS EXHIBIT TO THE PLAN, AND ANY OF THE DOCUMENTS AND DESIGNATIONS CONTAINED HEREIN, AT ANY TIME BEFORE THE EFFECTIVE DATE OF THE PLAN, OR ANY SUCH OTHER DATE AS MAY BE PROVIDED FOR BY THE PLAN OR BY ORDER OF THE BANKRUPTCY COURT.**